**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UBIQUITI NETWORKS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No.: 1:18-cv-05369 |
| CAMBIUM NETWORKS, INC.; CAMBIUM NETWORKS, LTD.; BLIP NETWORKS, LLC; WINNCOM TECHNOLOGIES, INC.; SAKID AHMED; and DMITRY MOISEEV, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 12(b)(1)**

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................... 7

II.   Relevant Factual Allegations .................................................................................. 10

    A.    The Incorporated Documentation and Public Licenses Are Part of the Pleadings ..... 10

    B.    Cambium and Ubiquiti Wireless Networking Products and Firmware ..................... 11

    C.    The Ubiquiti Licenses and Open Source Software ................................................. 12

III.  Argument .................................................................................................................. 15

    A.    Ubiquiti's Copyright Claims Fail to Meet the *Iqbal / Twombly* Requirements .......... 15

        1.    Ubiquiti's Copyright Allegations are Insufficient to State a Claim in view of the Public Code ................................................................................................. 15

        2.    Ubiquiti Fails to Allege What Portions of its Firmware are Not Subject to Public Licenses ...................................................................................................... 17

        3.    Even Ignoring the Public Code, Ubiquiti's Allegations are Insufficient to State a Claim ........................................................................................................... 18

    B.    Cambium's Customers Lawfully Erase any Allegedly Copyrighted Firmware from Ubiquiti Devices ................................................................................................... 21

        1.    Deletion does not Violate Copyright Law ......................................................... 21

        2.    Deletion does not Violate Ubiquiti's Licenses .................................................. 22

    C.    Ubiquiti Fails to State a Claim for Violations of the CFAA and ICTA ..................... 22

    D.    Ubiquiti Fails to State a Claim for Violations of the DMCA ................................... 24

        1.    Ubiquiti "Waive[d] Any Legal Power" to Sue Under These Provisions ............. 25

        2.    Ubiquiti Fails to Allege That Its "Access Controls" Prevent Access to Its Firmware .................................................................................................... 25

    E.    Ubiquiti Fails to State a Claim Under 1202(b) Because it Fails to Allege "Remov[al]" of any CMI ........................................................................................................... 27

    F.    Ubiquiti Fails to State a Claim for Breach of Contract ............................................. 27

        1.    Ubiquiti Fails to Allege a Breach of a Particular Provision of a Particular Contract .................................................................................................................... 28

        2.    Ubiquiti Failed to Attach the Entire Agreement to the Complaint ...................... 28

    G.    Ubiquiti Admits Customers Are Not Confused ...................................................... 29

        1.    Alleged Confusion as to Source of Firmware .................................................... 29

        2.    Allegedly Deceptive Statements ...................................................................... 30

    H.    Ubiquiti's State Law Claims Are Preempted by the Copyright Act ......................... 31

        1.    Ubiquiti's Breach of Contract Claim (Claim 6) Is Preempted ............................ 31

        2.    Ubiquiti's Unfair Competition Claim (Claim 8) Is Preempted ............................ 31

        3.    Ubiquiti's Misappropriation Claim (Claim 13) Is Preempted ............................ 32

I.      Ubiquiti Fails to State a Claim for Rico Violations ..................................................... 32

    1.     Ubiquiti Fails to Allege Conduct of an Association-in-Fact Enterprise ............. 32

    2.     Ubiquiti's Section 1962(d) Claim (Claim 15) Necessarily Fails with its Section 1962(c) Claim (Claim 14) ..................................................................................... 34

J.      Ubiquiti Cannot State a Claim for Intentional Interference with Prospective Economic Advantage (Count 9) Because Cambium Is a Competitor .......................................... 34

K.     Ubiquiti Lacks Standing ............................................................................................. 35

    1.     Ubiquiti Lacks Standing Under the Copyright Act............................................... 35

    2.     Ubiquiti Lacks Standing for Breach of Contract ................................................. 36

IV.    Conclusion ...................................................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*188 LLC v. Trinity Industries, Inc.*,
300 F.3d 730 (7th Cir. 2002) .........................................................................................4, 30

*Althin CD Med., Inc. v. West Suburban Kidney Center, S.C.*,
874 F. Supp. 837 (N.D. Ill. 1995) ..........................................................................................29

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ..................................................................................................29

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)..........................................................................................................9, 13

*Bachman v. Bear, Stearns & Co.*,
178 F.3d 930 (7th Cir. 1999) ..................................................................................................27

*BASF Corp. v. Old World Trading Co.*,
41 F.3d 1081 (7th Cir. 1994) ..................................................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................3, 9, 10, 14, 15

*Bittman v. Fox*,
107 F. Supp. 3d 896 (N.D. Ill. 2015) ..................................................................................17

*Chicago Police Sergeants Ass'n v. City of Chicago*,
2011 WL 2637203 (N.D. Ill. July 6, 2011)...................................................................10, 11

*Chicago Teachers Union, v. Bd. of Educ. of the City of Chicago*,
950 F. Supp. 2d 984 (N.D. Ill. 2013) ..................................................................................29

*Computer Assocs. Int'l v. Quest Software, Inc.*,
333 F. Supp. 2d 688 (N.D. Ill. 2004) ..................................................................................11

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ..................................................................................................27

*Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*,
2018 WL 1514456 (W.D. Wis. Mar. 27, 2018)........................................................3, 14, 15

*DeGuelle v. Camilli*,
664 F.3d 192 (7th Cir. 2011) ..................................................................................................26

*Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*,
   707 F.3d 869 (7th Cir.2013) ............................................................23

*EEOC v. Concentra Health Serv., Inc.*,
   496 F.3d 773 (7th Cir.2007) ............................................................11

*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) ..........................................................29

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*,
   624 F.3d 834 (7th Cir. 2010) ............................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ....................................................................9, 10

*G.D. Searle & Co. v. Philips–Miller & Assocs., Inc .*,
   836 F. Supp. 520 (N.D. Ill.1993) ....................................................26

*Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*,
   No. 93 C 20244, 1994 WL 606171 (N.D. Ill. Oct. 24, 1994) ................26

*Halperin v. Int'l Web Servs., LLC*,
   123 F. Supp. 3d 999 (N.D. Ill. 2015) ..........................................17, 18

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*,
   223 F. Supp. 2d 953 (N.D. Ill. 2002) ................................................25

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................17

*Jamsports & Entm't, LLC v. Paradama Prods., Inc.*,
   382 F. Supp. 2d 1056 (N.D. Ill. 2005) ..............................................28

*Kaplan v. Shure Bros.*,
   266 F.3d 598 (7th Cir. 2001) ..........................................................30

*Kolupa v. Roselle Park Dist.*,
   438 F.3d 713 (7th Cir. 2006) ..........................................................11

*Ladien v. Presence RHC Corp.*,
   2017 IL App (1st) 152778-U (2017) ................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004) ......................................................19, 20

*Massey v. Merrill Lynch & Co.*,
   464 F.3d 642 (7th Cir.2006) ............................................................11

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010) ...................................................................................20

*Merideth v. Chicago Tribune Co., LLC*,
  2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .................................................................21

*Morningware, Inc. v. Hearthware Home Prod., Inc.*,
  No. 09 C 4348, 2012 WL 3835825 (N.D. Ill. Sept. 4, 2012)....................................26

*Oce N. Am., Inc. v. MCS Servs., Inc.*,
  748 F. Supp. 2d 481 (D. Md. 2010) .........................................................................17

*Packman v. Chi. Tribune Co.*,
  267 F.3d 628, 638 (7th Cir. 2001) ...........................................................................23

*Patel v. Mahajan*,
  No. 11 C 4545, 2012 WL 3234397 (N.D. Ill. Aug. 6, 2012).....................................28

*Qad. Inc. v. ALN Assocs., Inc.*,
  770 F. Supp. 1261 (N.D. Ill. 1991), aff'd, 974 F.2d 834 (7th Cir. 1992) ................10

*Reves v. Ernst & Young*,
  507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).......................................26

*SecureInfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) .......................................................................17

*Sherman v. Ryan*,
  392 Ill. App. 3d 712 (2009) .....................................................................................22

*Slep-Tone Entm't Corp. v. Coyne*,
  41 F. Supp. 3d 707 (N.D. Ill. 2014) .........................................................................24

*Team Play, Inc. v. Boyer*,
  391 F. Supp. 2d 695 (N.D. Ill. 2005) .......................................................................14

*Tsitsopoulou v. Univ. of Notre Dame*,
  2011 WL 839669 (N.D. Ind. Mar. 7, 2011)..............................................................22

*United Food v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ...............................................................................27, 28

*Versata Software, Inc. v. Ameriprise Fin., Inc.*,
  No. A-14-CA-12-SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014)..................4, 11

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) ................................................................................4, 5

**STATUTES**

720 ILCS 5/17-51 .............................................................................................16

735 ILCS 5/2–606 ...........................................................................................22

17 U.S.C. § 106 .....................................................................................2, 15, 30

17 U.S.C. § 109(a) .....................................................................................2, 16

17 U.S.C. § 411(a) ...........................................................................................6

18 U.S.C. § 1962(c) ........................................................................................26

**OTHER AUTHORITIES**

David Nimmer, *Brains and Other Paraphernalia of the Digital Age*, 10 Harv. J.L.
& Tech. 1, 17 (1996) ..................................................................................16

Defendants Cambium Networks, Inc. ("Cambium") and Cambium Networks, Ltd. ("Cambium UK"), Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev (collectively the "Defendants"), hereby move to dismiss Ubiquiti Networks, Inc.'s complaint ("Ubiquiti") under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## I.    INTRODUCTION

Cambium and Ubiquiti are direct competitors that both manufacture wireless broadband networking devices and software for wireless internet service providers (WISPs). Defendants Ahmed and Moiseev are Cambium employees. Defendant Winncom is a distributor of both Ubiquiti and Cambium products. Defendant Blip is an end user of both Ubiquiti and Cambium products.

Ubiquiti's allegations in its complaint center around software used in its M-series devices—the "airOS" firmware (the "Ubiquiti Firmware"). No claim is based on the M-series hardware; all claims are based on the Ubiquiti Firmware. Ubiquiti M-series devices wirelessly connect to Ubiquiti's Access Points which are physically connected to a fixed broadband network.  Ubiquiti designed the Ubiquiti Firmware on the M-series devices to allow the devices to only interoperate with Ubiquiti Access Points and to not be operable with Access Points provided by other vendors, such as Cambium. Cambium provides its own Access Points and subscriber modules that are a corollary to Ubiquiti's M-series devices.

Despite the length and complexity of its complaint, Ubiquiti's allegations are simply that Cambium, and the other Defendants, are in violation of numerous laws because Cambium developed a solution (called "Elevate") to allow the owners of Ubiquiti M-series hardware devices to *erase* the Ubiquiti Firmware from the M-series devices and *replace* it with Cambium's firmware. This "erase and replace" allows the owners of the M-series devices to use them to interoperate with Cambium's Access Points. Because there is nothing illegal about erasing

unprotected firmware and replacing it to allow owners of the unprotected Ubiquiti M-series devices to use them how they see fit, Ubiquiti trumps up a massive complaint containing over 398 paragraphs of vague, conflicting, and confusing allegations, stylized with inflammatory yet wholly unsubstantiated descriptors (*e.g.,* the "Hacked Firmware"), that fail to support any of the 23 claims alleged therein.

Ubiquiti's allegations are all rooted in the same flawed premise: that it is somehow unlawful for an owner of a lawfully purchased Ubiquiti device to delete its software and replace it with Cambium's. However, Cambium and its customers are "***entitled***, without the authority of the copyright owner, to . . . ***dispose of the possession of***" Ubiquiti's firmware under the Copyright Act. 17 U.S.C. § 109(a). In addition, the Copyright Act does not provide for any "deletion" rights associated with a protected work. *Contra* 17 U.S.C. § 106. Nor does deletion trigger any breach under Ubiquiti's licenses. The numerous prohibitions all relate to ***use*** of its software, and never mention "deletion," "erasure," or "replacement" as a prohibition. *See* Ex. B[1] (the "Firmware License"); Ex. C (the "Ubiquiti EULA") (collectively, the "Licenses").

Critically, Ubiquiti's Complaint fails to clearly state ownership of any identified, protected firmware under any statutory scheme—whether copyright, CFAA, DMCA, or Illinois Computer Tampering Act—or even its own Licenses, while at the same time admitting that an extensive list of its firmware components are deleted during installation of Cambium's firmware. As to any remaining components, the Licenses attached as Exhibits to the Complaint state that Ubiquiti's Firmware includes Open Source or public third-party software, and expressly disclaims any ownership of that code. This includes numerous public open source components licensed under a GNU General Public License (*e.g.*, "GPL Ver. 2," and "GPL Ver. 3")

---

[1] All references to exhibits identified by letters are references to exhibits Ubiquiti attached to the Complaint.

(generally, the "Public Licenses"). Under the Public Licenses, Ubiquiti admittedly does not own the Open Source materials. Further, the Public Licenses also propagate to "infect" any other portions of Ubiquiti's firmware that use that code—likely Ubiquiti's entire firmware. On the face of the complaint Ubiquiti never separates out the portion of the Ubiquiti Firmware that forms the basis of all its claims that was not either deleted or subject to a Public License.

Setting aside the issue that Ubiquiti does not identify which parts of the Ubiquiti Firmware it owns or remain protectable, if any, it also does not identify the "portions" of the Ubiquiti Firmware that Cambium improperly "modified" or "copied" as alleged in its complaint. ¶ 67. Ubiquiti is required to identify what portions of its firmware are copied or modified to properly state a claim so that Cambium can assess those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007). Ubiquiti alleges only that two portions of the Ubiquiti Firmware remain and are reused: calibration and configuration "information," neither of which are entitled to copyright protection by Ubiquiti. ¶¶ 73, 77, 86 and 89. These user-specified "information" and settings are not copyright eligible—either because they are not alleged to be authored by Ubiquiti or because they are purely functional settings and therefore fail to meet even the low eligibility criteria for copyrightable expression. *See Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, 2018 WL 1514456, at *7 (W.D. Wis. Mar. 27, 2018). Despite 398 paragraphs of allegations, Ubiquiti failed to specifically identify any protectable firmware that it actually owns **and** was used or modified by Cambium.

Finally, Ubiquiti lacks standing because of the Public Licenses. The Public Licenses expressly allow every activity alleged by Ubiquiti to be unlawful, including copying, modifying, accessing, deleting, and circumventing access controls. These provisions apply to Ubiquiti's entire firmware distribution and thus bar all of Ubiquiti's claims because "[y]ou must cause any

work that you distribute or publish, that in whole or in part **contains or is derived from** [a GPL'd Program] to be licensed as a whole at no charge to all third parties under the terms of this [GPL] License." Exs. 4, 5; *see Versata Software, Inc. v. Ameriprise Fin., Inc*., No. A-14-CA-12-SS, 2014 WL 950065, at *5 (W.D. Tex. Mar. 11, 2014). Thus, separate from a failure to state a claim, Ubiquiti fails to allege actual ownership of the specific code to have been used by Cambium sufficient to establish standing, and the Public Licenses referenced in the Exhibits attached to the Complaint frustrate these claims even further. Therefore, the Court should dismiss the complaint.

## II.     RELEVANT FACTUAL ALLEGATIONS

### A.     The Incorporated Documentation and Public Licenses Are Part of the Pleadings

The Incorporated Documentation and Public Licenses are "central to [Ubiquiti's] complaint and are referred to in it" by reference to Ubiquiti's Licenses, which expressly require review of "any documentation that accompanies the Ubiquiti Firmware or is identified in the documentation for the Ubiquiti Firmware in order to determine which portions of the Ubiquiti Firmware are Open Source Software and are licensed under an Open Source Software license" (Ex. B at 3-4). Thus, these documents are part of the pleadings. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]e have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider . . . documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice."); *188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (discussing "well-settled" rule to discourage "artful pleading" by considering documents referenced in pleadings though not attached to Complaint).

Ubiquiti's Licenses are at the heart of at least Ubiquiti's contract, copyright, CFAA, and

ICTA claims, because these claims each stem from an alleged breach of one of these Licenses, and interpretation of the rights and restrictions granted therein is central to its pleadings. Ubiquiti's Licenses expressly require review of the Incorporated Documentation to "determine which portions of the Ubiquiti Firmware are Open Source Software and are licensed under an Open Source Software license[, and those licenses] shall take precedence over the rights and restrictions granted in [Ubiquiti's License] Agreement." Ex. B at 4; *see* Ex. C at 5.[2]

Inspection of the Incorporated Documentation shows that Ubiquiti's Firmware contains at the very least over 16,000 files and over 1.4 million lines of uncopyrightable open source code ("Public Code"), which Ubiquiti did not create and cannot claim ownership of. In fact, the Public Code is owned by 356 other Copyright holders. *See* Ex. 9.[3] Further, according to the terms of these Public Licenses, any code that Ubiquiti did write that incorporates, modifies, or adapts this Public Code becomes part of the Public Code, "infecting" code that Ubiquiti may have authored and negating Ubiquiti's ownership therein.

### B.     Cambium and Ubiquiti Wireless Networking Products and Firmware

While both companies have numerous product lines, the only relevant products in this proceeding are one particular line of Cambium's firmware – the ePMP Elevate firmware for Ubiquiti's M-series devices – and Ubiquiti's M-series devices with the Ubiquiti Firmware. ¶¶ 63-65, 71. Cambium's ePMP product line includes about 90 different products, including "access points," "subscriber modules," and accessory devices that enable WISPs to extend fixed wireless broadband network capabilities. ¶ 65, Ex. E at 2-5; Ex. I. The network architecture

---

[2] That Incorporated Documentation is attached as exhibits to this motion. Since the entire scope of the Incorporated Documentation is so large, Defendants have prepared digests of information that are also attached as exhibits to this motion.

[3] The exhibits that Defendants submit in support of this memorandum, which are "referenced in" and "central to," yet conspicuously not addressed in or attached to, Ubiquiti's Complaint (*see Williamson* at 436), are identified by numbers (whereas Ubiquiti's exhibits to the complaint are identified by letters).

Cambium and Ubiquiti use is similar. *See* ¶¶ 21, 22, Ex. I. Both networks utilize an "access point" that is physically connected to a fixed broadband network. ¶¶ 35, 64. The access point provides long-range extension of the broadband network over wireless radio-frequency channels to numerous "subscriber modules" that provide local wireless access. ¶ 21, 52, Ex. H at 2.

Cambium provides Elevate for free on a "erase and replace" basis to facilitate interoperability between **non**-Cambium subscriber modules and Cambium ePMP access points. ¶¶ 21-23, 93, 119; Ex. F at 2. Installing Cambium's Elevate firmware on competitor subscriber modules allows registration of that subscriber module to the Cambium ePMP access point. ¶ 52, Ex. D at 6. Ubiquiti alleges that user configuration parameters, such as IP Address (*e.g.,* "1.168.1.1), Device Name (*e.g.,* "Router 1"), frequency configuration, VLAN, and "calibration information" is copied or accessed after installation of Elevate. ¶¶ 77, 111; Ex. D at 5, 7.

Ubiquiti alleges ownership of U.S. Copyright Registrations for two versions of the code for its firmware and attaches both "Certificates of Registration" to the Complaint. ¶ 30, Ex. A. The Registration Certificates explicitly exclude licensed-in materials, such as Open Source code, from the copyrighted material.[4] Ex. A. The Registration Certificates do not specifically identify what the licensed-in materials are, and the Complaint does not acknowledge any excluded material much less provide guidance on identifying that material. *Id.*; *see generally*, ¶¶ 17-36.

### C.    The Ubiquiti Licenses and Open Source Software

Use of the Ubiquiti Firmware is subject to two Ubiquiti Licenses, including the Firmware License (Ex. B) and the Ubiquiti EULA (Ex. C). ¶ 37-42. Ubiquiti's Licenses expressly identify

---

[4] Despite multiple requests from Cambium, Ubiquiti has refused to immediately provide the copyrighted materials that it claims give rise to its complaint. Cambium has also requested those materials from the Copyright Office on a rush basis but has not yet obtained them. To the extent that those materials do not contain the entire firmware that Ubiquiti is claiming copyright registration of, Ubiquiti's complaint should be dismissed for the additional reason that it did not properly register its copyrights prior to bringing this lawsuit. *See* 17 U.S.C. § 411(a).

and define "Open Source Software":

> "Open Source Software" means any software or software component, module or package that ***contains, or is derived*** in any manner (in whole or in part) from, any software that is distributed as free software, open source software or similar licensing or distribution models, including . . . (a) GNU's General Public License (GPL) . . .

Ex. B at 2 (emphasis added). This open source software is incorporated into the Ubiquiti

Firmware and is subject to an in-bound license from a third-party:

> **OPEN SOURCE SOFTWARE**
> You hereby acknowledge that ***the Ubiquiti Firmware may contain Open Source Software***. You agree to ***review any documentation*** that accompanies the Ubiquiti Firmware or is identified in the documentation for the Ubiquiti Firmware ***in order to determine which portions of the Ubiquiti Firmware are Open Source Software and are licensed under an Open Source Software license***. To the extent any such license requires that Ubiquiti provide You the rights to copy, modify, distribute or otherwise use any Open Source Software that are inconsistent with the limited rights granted to You in this Agreement, then ***such rights in the applicable Open Source Software license shall take precedence over the rights and restrictions granted in this Agreement***, but solely with respect to such Open Source Software. You acknowledge that the Open Source Software license is solely between You and the applicable licensor of the Open Source Software. You shall comply with the terms of all applicable Open Source Software licenses, if any. ***Copyrights to the Open Source Software are held by the copyright holders indicated in the copyright notices in the corresponding source files or as disclosed at http://www.ubnt.com***.

*Id.* at 3-4 (emphasis added); *see also* Ex. C at 5. Thus, Ubiquiti's Licenses (1) identify open-

source licensed-in materials, and (2) specify that this material can be identified with reference to

the accompanying documentation and the "corresponding source files" provided on Ubiquiti's

website.

The Incorporated Documentation clarifies that substantial software components of

Ubiquiti's M-series devices, such as the boot-loader, operating system, and applications, are

licensed by Ubiquiti under the Public Licenses, potentially modified by Ubiquiti, and then

distributed to customers. As advertised in the Licenses, Ubiquiti's website contains a notice

acknowledging that "[s]ome of the software in the firmware ***is licensed under the GNU [GPL]*** and other Open Source and Free Software licenses," with an embedded hyperlink to the GNU General Public License ver. 3 (GPL ver. 3). Ex. 1 (emphasis added). The same webpage also contains a link to download the "corresponding source files." *Id*. While the complete contents of the "corresponding source" package is too large to attach here, Defendants have attached a listing of the over 16,000 individual open source software code files that are incorporated into the Ubiquiti Firmware. Ex. 3; Ex. 8. Each one of these files is in-licensed under at least one version of the GPL and incorporated into Ubiquiti's Firmware. Ex. 1; Ex. 2 (text of "readme.txt" included in the corresponding source package).

The GPL ver. 2 states that even works containing just a portion of a "Program" licensed under the Public Licenses must be licensed under terms that provide for ***unrestricted modification and use***. Exs. 5-7, § 2. The GPL ver. 3 goes even further to prevent Ubiquiti from ever asserting anti-circumvention laws against sub-licensees as a backdoor way to enforce rights on otherwise publicly available source code. Ex. 4, § 3 ("When you convey a covered work, you ***waive any legal power to forbid circumvention of technological measures***.**")** The Public Licenses also require that distribution of a compiled object code form of a work (*e.g.*, distributing Ubiquiti M-series devices with Ubiquiti Firmware) be accompanied by the corresponding source code for that work or some mechanism to obtain it. Ex. 4, § 6; Ex. 5, § 3.

Among the vast amount of code that Ubiquiti licenses and distributes under the GPL ver. 2 and/or GPL ver. 3 (presumably at the option[5] of the licensee) are two components of note: a boot loader ("U-Boot") and a package of numerous firmware components called "OpenWRT," including an operating system, kernel, file system, radio control software, and various other

---

[5] Ubiquiti's website states that the software in the Public Code is licensed under the GPL ver. 3, while various license files provided therein also reference the GPL ver. 2. *See* Ex. 1; Ex. 2.

applications for operating wireless networking devices. *See* Ex. 3 at 1, 71; Exs. 2, 6.

## III.  ARGUMENT

### A.  Ubiquiti's Copyright Claims Fail to Meet the *Iqbal* / *Twombly* Requirements

The Supreme Court has clarified that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). A complaint "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Twombly*). It is not enough to provide conclusory statements, with the hope that discovery will flesh out additional details. The heightened pleading standard prevents "a plaintiff with a largely groundless claim" from taking "the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value." *Twombly*, 550 U.S. at 557-58; *see also Iqbal*, 129 S. Ct. at 1953.

To state a claim for copyright infringement, a plaintiff must at least allege copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The complaint fails to plausibly allege that Cambium copied Ubiquiti's firmware and, in particular, fails to allege portions of the firmware that Ubiquiti actually owns.

#### 1.  Ubiquiti's Copyright Allegations are Insufficient to State a Claim in view of the Public Code

As discussed above, Ubiquiti's Licenses admit that it incorporates extensive portions of open source code into its firmware—at the very least over 1.4 million lines of code and over 16,000 source code files, and potentially much more. *See* Ex. 8; *supra* § II.A, C. Yet Ubiquiti never acknowledges this while alleging that it created its "proprietary airOS operating system" firmware at its own effort and expense, and that it has copyrights "for [numerous] Ubiquiti

firmware airOS" versions. ¶¶ 23, 30, 290, 283. But Ubiquiti cannot claim copyright in this vast amount of Public Code because it is "not only not [Ubiquiti's] original work but work that was actually copied from [other parties]." *Qad. Inc. v. ALN Assocs., Inc.*, 770 F. Supp. 1261, 1267 (N.D. Ill. 1991), aff'd, 974 F.2d 834 (7th Cir. 1992). Ubiquiti is now "egregious[ly] . . . us[ing] its copyright to sue [Cambium] and to restrain it from the use of material over which [Ubiquiti] itself had no rights." *Id*. Not only is this a defense to infringement, it is also "a complete bar to [Ubiquiti's] prosecution of its copyright infringement case against [Cambium]." *Id.* at 1266.

Ubiquiti's allegations would have the Court believe that they originally authored, line for line, each of the over 1.4 million lines of Public Code they claim copyright in, while Cambium took, copied, and modified Ubiquiti's "proprietary" firmware. *See* ¶ 23; Ex. 8. But inspection of Ubiquiti's own exhibits and the Incorporated Documentation shows that it is actually Ubiquiti that took and copied code from other parties. *See* Ex. B at 3-4 (noting that Ubiquiti's Firmware contains Public Code); Ex. 1 (identifying that Ubiquiti's Firmware includes code licensed under the Public Licenses); Ex. 3 (list of files from Ubiquiti's published Public Code that identifies open source projects including source directories that Ubiquiti has wholly incorporated into its firmware). Moreover, Ubiquiti's EULA acknowledges uncertainty as to who owns the copyrights to its firmware—"Ubiquiti *or* its [third-party] licensors." Ex. C at 5. Ubiquiti has failed to state a claim for copyright infringement because it has failed to articulate any *original* elements of its firmware, thus Defendants have no notice of what copyrightable elements they stand accused of copying based on the Complaint. *Feist 'Publ'ns, Inc.* at 361; *see Twombly* at 557-58.

Ubiquiti's allegations of copyright infringement of "its" firmware are "directly at odds" with its Licenses and with elements of Ubiquiti's claims that show it simply does not own what it asserts. *Chicago Police Sergeants Ass'n v. City of Chicago*, 2011 WL 2637203, at *7 (N.D. Ill.

July 6, 2011). "A Plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Id.* at \*7 (internal citations omitted); *see also Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir.2006); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006), abrogation recognized, *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 777 (7th Cir.2007). Here, Ubiquiti has pled that it owns copyright rights in the Public Code and it would be necessary to contradict Ubiquiti's Licenses and the Incorporated Documentation to prevail on its claims. Ubiquiti has therefore pled itself out of court.

## 2. Ubiquiti Fails to Allege What Portions of its Firmware are Not Subject to Public Licenses

Ubiquiti has also completely failed to address the Public Licenses that are incorporated into its License Agreements. *See supra* § II.C, Exs. B, C. The Public Licenses include numerous versions of the GPL, which is an "open source" public software license:

> In keeping with this open source ethos, the GPL allows for free use and redistribution of [Public Code], including in other software (i.e., the creation of a derivative work), on the condition the original licensor continues the open source trend and makes the source code freely available. In other words, the GPL is a "viral" license in the sense the incorporation of a GPL-covered software program into a new program "infects" the new program and requires it to become open source, too.

*Versata* at \*1. Thus, it is not only true that "[t]he GPL would prevent plaintiff from attempting to claim a copyright in that modified version of [GPL software]," but the GPL also then "infects" any new program it is incorporated into and requires that it also become open source. *See Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 698 (N.D. Ill. 2004); *Versata* at \*1; *see also* Ex. 5 § 2; Ex. 4.

By incorporating the Public Licenses, Ubiquiti's Licenses actually prohibit Ubiquiti's copyright claims. This is because the Public Licenses, to which Ubiquiti admits it is bound, require that "[y]ou must cause any work that you distribute or publish, that in whole or in part

*contains* or is *derived from* the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License," and those terms specifically allow you to "modify," "copy and distribute such modifications." Ex. 5 § 2; *see* Ex. 4. Ubiquiti's use of the Public Code in its firmware thus completely bars all of its claims stemming from any alleged access, copying, modification, or distribution. Moreover, in failing to address the Public Licenses in its Complaint, the only plausible interpretation of Ubiquiti's Licenses is that its entire firmware is licensed under a Public License.

In sum, Ubiquiti can claim no copyright in the Ubiquiti Firmware because it was authored by others—namely the contributors of the open source code. The Public Code identifies over 360 different copyright holders. *See* Ex. 9. To the extent that any copyrighted or proprietary portions of the Ubiquiti Firmware actually exist, the incorporated open source licenses eviscerate any restrictions on use of that code because the entire Ubiquiti Firmware is licensed as a modification or derivative work of the underlying open source code.

### 3. Even Ignoring the Public Code, Ubiquiti's Allegations are Insufficient to State a Claim

Notwithstanding Ubiquiti's use of Public Code, Ubiquiti's allegations are insufficient to state a claim for copyright infringement for additional reasons. Ubiquiti alleges copyright infringement in two contexts: (1) that Cambium copies and modifies Ubiquiti's firmware in developing Elevate (*e.g.,* ¶¶ 43, 307, 310); and (2) portions of the Ubiquiti firmware are copied and modified during installation and operation of Elevate (*e.g.,* ¶¶ 45-46, 67, 73, 180, 259). Both allegations are insufficient to support Ubiquiti's claims.

Ubiquiti's factual allegations regarding alleged infringing acts in Cambium's development activity amount to a single sentence plead "[o]n information and belief":

> 43. On information and belief, prior to November 30, 2016, *Cambium acquired* one or more Ubiquiti M-series wireless devices and at least one

> version of Ubiquiti's Air/OS firmware *for the unauthorized purposes of* reverse engineering the Ubiquiti firmware for M-series devices, accessing proprietary Ubiquiti information embedded in the firmware, *copying portions of the firmware, modifying the firmware and user interfaces and developing and trafficking in Hacked Firmware* targeting Ubiquiti M-series devices . . . .

¶ 43 (emphasis added). While pleading an allegation "upon information and belief" is not *per se* insufficient to meet the *Iqbal* pleading standard, such allegations must be grounded in at least some factual information that makes an inference of culpability plausible. *See Iqbal* at 1949. Ubiquiti fails to allege even a single fact tending to substantiate its allegations here. For example, Ubiquiti fails to allege that Cambium even had access to any human-readable (source code) version of Ubiquiti's firmware code. (For the record, it did not.) The only plausible conclusion drawn from the alleged acquisition of an M-series device is that Cambium had access to the binary non-readable form of the firmware code (though even this is not plainly stated). *See* ¶ 43. Ubiquiti has failed to allege how it even would have been technically possible to modify this binary code. In fact, such a modification would likely break that code, or at least cause significant errors and inefficiencies in its operation. Ubiquiti has therefore failed to plausibly allege circumstances where Cambium would copy and modify Ubiquiti's Firmware.

The second category of Ubiquiti's insufficient allegations are that Elevate somehow copies, modifies, and accesses portions of the Ubiquiti firmware. *See, e.g.,* ¶¶ 45, 67, 73, 76, 77, 86, 111, 140, and 285. For example, Ubiquiti alleges:

> 45. The Hacked Firmware selectively modifies and copies portions of Ubiquiti firmware. . . .
> 67. The Ubiquiti Firmware is modified—portions remain, portions are modified, portions are removed and portions are copied—when the Cambium Hacked Firmware is installed.

¶¶ 45, 67. Given that Ubiquiti's code is in the millions of lines (Ex. 8) and is to a large extent Open Source code over which Ubiquiti has no rights to control, what firmware code allegedly has been modified or copied has not been identified.

Further, Ubiquiti makes clear that the vast majority of its firmware is deleted upon installation of Elevate. Specifically, Ubiquiti admits that Elevate (1) "deletes the Ubiquiti kernel," (2) "deletes the Ubiquiti file system software," (3) "completely replaces the radio software," and (4) "deletes and replaces" the "entire Ubiquiti user interface." ¶¶ 56, 74, 75, 78, 82. Having identified what is deleted (and therefore is not modified or copied), Ubiquiti is required to identify what portions of its firmware are copied or modified in order to properly state a claim so that Cambium can assess these claims. *See Twombly* at 557-58. Ubiquiti alleges this **only** with respect to two portions of its firmware: the calibration and configuration "information." ¶¶ 73, 77, 86, 89. In fact, these are the only portions of its firmware that are not deleted that Ubiquiti acknowledges exist.

Ubiquiti only alleges ownership of a copyright in this information by virtue of its copyright registrations, which lend a rebuttable presumption of copyright ownership in the firmware. *See* Ex. A; *Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695, 699 (N.D. Ill. 2005). Ubiquiti then alleges that the calibration and configuration information are "portion[s] of th[at] firmware," and that those portions are presumably registered under that copyright. ¶¶ 73, 77. However, Ubiquiti fails to address what configuration or calibration information is—for example, who created it, what it defines, where it resides on an M-series device, or what the file(s) that contain this information are named. And even were the "configuration information" or "calibration information" is included in deposit material for a registered copyright (which is not even alleged here), that information cannot be the basis of a copyright infringement claim "because the [information] is not part of the core protectable expression in [the copyrighted code]." *See Datacarrier S.A.* at *7. For example, the court in *Datacarrier S.A.*, granted summary judgment on claims of copyright infringement as to computer code because the claim was based

on copied "configuration information" and "customization data" that was used to "configure the ATM [machine] to operate in a certain way." *Id.* at *1, *6. The court dismissed those claims even where that information was included in the copyright registration deposit material held with the Library of Congress. *Id.* at *6. Here, Ubiquiti's copyright claims are based entirely on this same type of data—configuration and calibration data that is presumably used to configure the M-series device to operate in a certain manner.

Because the Complaint does not sufficiently allege copying of constituent elements of Ubiquiti's Firmware that are original and copyrightable, the Court should dismiss Ubiquiti's Complaint for failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6), *Twombly* at 555.

### B. Cambium's Customers Lawfully Erase any Allegedly Copyrighted Firmware from Ubiquiti Devices

In addition to its improperly pled allegations of copying and modifying its firmware, Ubiquiti also alleges that Elevate deletes Ubiquiti's firmware. *See* ¶¶ 56, 78, 269 (user interfaces); 74 (kernel); 75 (file system software); 47, 82, 85 (radio software). Ubiquiti does not identify any Ubiquiti Firmware components that were not deleted, that they own exclusively, and that were improperly used.[6] Having failed to plausibly allege modification or copying of its firmware, Ubiquiti's copyright and breach of contract claims therefore require that mere deletion would violate some law or agreement. It does not.

### 1. Deletion does not Violate Copyright Law

The Copyright Act accords only five rights: reproduction, adaptation, public distribution, [and] public performance. *See* 17 U.S.C. § 106. "Deletion" is not one of the enumerated rights. Indeed, the Copyright Act expressly reserves the right of "disposal" for licensees of a

---

[6] Ubiquiti alleges that "calibration and configuration information" are "preserved" (¶ 86), but such information cannot form the basis of a copyright infringement claim (*see Datacarrier S.A.* at *7).

copyrighted work. 17 U.S.C. § 109(a).[7] Allegations of unlawful deletion are not plausible under a statutory regime where licensees are "entitled" to delete copies of works by statutory right.

Deletion of Ubiquiti's firmware is no more unlawful than throwing away a CD-ROM or diskette embodying a software program. Finding otherwise would have the absurd result of imposing liability for uninstalling a computer program on a generic personal computer. "By virtue of the statutory provision colloquially called the 'first sale doctrine,' the owner of the copy may, without permission from the copyright proprietor, read it, give it to a friend, rent it as part of a library, sell it to a second-hand store, *rip it in half, or demolish it*." David Nimmer, *Brains and Other Paraphernalia of the Digital Age*, 10 Harv. J.L. & Tech. 1, 17 (1996).

### 2. Deletion does not Violate Ubiquiti's Licenses

It is no wonder then that Ubiquiti's Licenses fail to restrict deletion of its firmware in any regard. *See* Exs. B, C. Specifically, Ubiquiti's Firmware License only provides restrictions on "using," "copying," "modifying," and "distributing" the firmware. *See* Ex. B. Ubiquiti's EULA provides similar limitations. *See* Ex. C. However, these Licenses fail to restrict "deletion" of firmware, and Ubiquiti does not allege otherwise. Cambium cannot be held liable for breaching a provision of a contract that does not exist. In fact, Ubiquiti's alleged deletion of the firmware obviates any notion of using the firmware in violation of the agreement because Ubiquiti has failed to allege how firmware could be *used* after it has been *deleted*. Thus, even if deletion were prohibited by Ubiquiti's licenses—a license to *use* its software—mere deletion without an antecedent use is not actionable.

### C. Ubiquiti Fails to State a Claim for Violations of the CFAA and ICTA

Ubiquiti's Computer Fraud and Abuse Act ("CFAA") claims (Claims 1A – F) and Illinois

---

[7] § 109(b) governs disposal by "rental, lease, or lending" of computer programs in certain circumstances, but those activities are not at issue here.

Computer Crime Prevention Law 720 ILCS 5/17-51 (the Illinois Computer Tampering Act ("ICTA")) claim (Claim 3) allege that a reality of modern computing technology—installing and uninstalling software on a computing device—is tortious (and possibly criminal). According to Ubiquiti, customers download and install Cambium's Elevate software on an M-series device that they lawfully purchased from Ubiquiti. ¶ 53. Ubiquiti erroneously postulates that this violates Ubiquiti's Licenses and therefore constitutes unauthorized access to the device and firmware, thereby violating the CFAA and the ICTA. *E.g.,* ¶¶ 171, 180, 193, 277-281. Each of these claims requires Ubiquiti to allege some unauthorized access or unauthorized damage beyond alleged violation of a contract from a non-owner of the device. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 900 (N.D. Ill. 2015) (dismissing CFAA claim for lack of unauthorized access); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009–12 (N.D. Ill. 2015) (dismissing ICTA claim for failure to allege an unauthorized access or access in excess of authorization when Plaintiff installed the software on Plaintiff's own computer); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (owner of server, not software licensor, controls access under CFAA).

Ubiquiti has not adequately pled that Cambium accessed customer devices "without authorization" under the CFAA because owners of the device explicitly allow Elevate to access their devices.[8] *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1066-1068 (N.D. Cal. 2012) (voluntary installation of mobile phone firmware update was "authorized" under CFAA); *SecureInfo* at 608–10 (failure to allege that the access to defendants' own server was unauthorized or exceeded authorization by the defendant in dismissing CFAA claims); *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010). Ubiquiti only alleges that

---

[8] The device owner, rather than the licensor of software installed on a device controls authorization to that device for purposes of establishing a violation of the CFAA or ICTA. *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 610 (E.D. Va. 2005).

Elevate is "intentionally install[ed] . . . on Ubiquiti M-series devices." *See* ¶ 171; *see e.g.,* ¶¶ 72, 73 (voluntary installation). Ubiquiti has not alleged that installation of Elevate is involuntary or done without consent of the owner.

For the same reason, Ubiquiti has not alleged that Cambium accessed customer devices "without the authorization of a computer's owner or in excess of the authority granted to him or her" under the ICTA. *See, e.g.,* ¶ 73. In *Halperin*, the court dismissed Plaintiff's ICTA claim for failure to sufficiently plead that the Plaintiff either (1) had ***not*** consented to install the program, or (2) that he consented to install a ***different program*** that did not disclose that the offending software would "come along for the ride." *Halperin* at 1009–12. Ubiquiti fails to allege either, and instead only alleges that installation is voluntary and "intentional[]." *See* ¶ 171.

Ubiquiti has also failed to allege that Cambium caused any damage without authorization as required to state a claim under CFAA § 1030(a)(5)(A), instead admitting that users authorize installation of Elevate to "replace[]"Ubiquiti's firmware. ¶¶ 63-65.

## D.    Ubiquiti Fails to State a Claim for Violations of the DMCA

Ubiquiti alleges violations of the Digital Millennium Copyright Act's Anti-Circumvention provisions 17 U.S.C. §§ 1201(a)(1) and (2) (Claims 2A-B). But Ubiquiti has completely "waived any legal power" to bring such claims against users of its software by virtue of the Public License terms embedded in Ubiquiti's Licenses and accessible with each and every airOS firmware listing on its own website. *See* Exs. 1, 4. In addition, Ubiquiti fails to properly allege circumvention of a technological measure that "effectively controls access" to a copyrighted work under the statute because Ubiquiti only alleges that the device firmware is ***only*** encountered when updating the firmware and not encountered at any other time when ***accessing*** the firmware as required.

1. **Ubiquiti "Waive[d] Any Legal Power" to Sue Under These Provisions**

As discussed above, Ubiquiti incorporates vast amounts of open source Public Code into its firmware that is licensed under Public Licenses. *See supra* § II.A, C. Ubiquiti's Licenses direct its licensees to review its website to determine the incorporated open source projects and any applicable Public Licenses. Ex. B. Once the licensee arrives at said website, a notice states "[s]ome of the software in the firmware *is licensed under the GNU [GPL]*." with an embedded hyperlink to the GPL ver. 3. Ex. 1 (printout of www.ubnt.com/download page for the Ubiquiti Firmware with hyperlink to the text of the GPL ver. 3). In fact, the same GPL ver. 3 is linked to over 70 times on Ubiquiti's website (once for each available airOS firmware version). *See* Ex. 1.

The GPL ver. 3 bars Ubiquiti from asserting anti-circumvention laws:

> 3. Protecting Users' Legal Rights From *Anti-Circumvention Law*.
>    No covered work shall be deemed part of an effective technological measure under any applicable . . . laws *prohibiting or restricting circumvention* of such measures.
>    When you convey a covered work, you *waive any legal power to forbid circumvention of technological measures* to the extent such circumvention is effected by exercising rights under this License with respect to the covered work, and you *disclaim any intention to limit operation or modification of the work as a means of enforcing, against the work's users, your or third parties' legal rights to forbid circumvention of technological measures*.

Ex. 4, § 3. Thus, Ubiquiti has "waive[d] any legal power to forbid circumvention of technological measures" under the very claims it asserts here by distributing its firmware with this license.

2. **Ubiquiti Fails to Allege That Its "Access Controls" Prevent Access to Its Firmware**

Because the DMCA refers to "control[ling] access to a work protected under this title," it does not naturally apply when the "work protected under this title" is otherwise readily accessible. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir.

2004) (holding that substitute printer cartridges that circumvented an "authentication sequence" controlling the *use* of print engine software did not circumvent an "access control").

Ubiquiti alleges that one of two "technological measures" control access to its firmware: (a) "signature protected firmware" (for newer firmware versions) or (b) "software for detecting unauthorized firmware" (for older versions). ¶ 247. Ubiquiti's only allegations regarding how these "measures" operate is self-defeating:

> 248.    Cambium, individually and acting in concert and with third parties, has violated Ubiquiti's rights under 17 U.S.C. § 1201(a)(1) by directly circumventing *access control measures that effectively control the ability to update or alter the firmware on Ubiquiti M-series devices* by using the Hacked Firmware, which passes through Ubiquiti's *access control measures for detecting unauthorized firmware*, and allows the Hacked Firmware to install on Ubiquiti M-series devices and thereafter make unauthorized access and use of portions of Ubiquiti's copyrighted Firmware to take control of Ubiquiti M-series devices.

¶ 248. These allegations fail to state a claim because neither "measure" is alleged to control *access* to the firmware they are purported to protect—they are merely alleged to "control the ability to update or alter the firmware" and "detect[] unauthorized firmware." *See id*. And since these access controls are only alleged to be encountered during firmware "update," Ubiquiti fails to allege these measures are encountered during normal operation of the device to prevent, for example, use of the firmware or "read[ing] the literal code of the [device firmware] directly from the [device] memory." *Lexmark* at 547; *see also MDY Indus., LLC v. Blizzard Entm't, Inc.,* 629 F.3d 928, 952–53 (9th Cir. 2010) (holding that blocking one form of accessing copyrighted elements (access while connected to a server) but leaving open another (access when not connected) "is not an effective access control measure").

Moreover, to the extent that allegations regarding controlling the firmware upgrade process are considered a measure that "effectively controls access," Ubiquiti's own release notes for its firmware instruct users how to circumvent these measures. Ex. 10 at 4 (instructing users

how to "allow unsigned firmware to be loaded"). Ubiquiti has thus failed to state a claim.

### E. Ubiquiti Fails to State a Claim Under 1202(b) Because it Fails to Allege "Remov[al]" of any CMI.

Ubiquiti asks the Court to hold Cambium liable for failing to add Ubiquiti's copyright information to a "Cambium User Interface" that is part of Cambium's own firmware. ¶ 269. This does not establish liability under the law. "For Defendant to be held liable under § 1202(b), one of two things must have happened: (1) The [firmware] came into Defendant's possession with CMI [(copyright management information)] attached, and Defendant intentionally and improperly removed it, or (2) the [firmware] came into Defendant's possession without CMI attached, but Defendant knew that CMI had been improperly removed, and Defendant used the [firmware] anyway." *Merideth v. Chicago Tribune Co., LLC*, 2014 WL 87518, at *3 (N.D. Ill. Jan. 9, 2014) (dismissing 1202(b) allegations for failure to contain sufficient factual content to allow a reasonable inference that either scenario happened).

Ubiquiti's complaint alleges neither. The only portion of firmware that Cambium stands accused of removing CMI from is the "user interface software." ¶ 268-69. But Ubiquiti actually alleges that installing Elevate "deletes and replaces the user interfaces on Ubiquiti M-series devices with a completely different [] user interface" (¶ 78; *see also* ¶¶ 56, 269), thus obviating any requirement that Cambium maintain Ubiquiti's copyright information (on software for which Ubiquiti does not have a copyright). Ubiquiti has also failed to identify any copyrighted portions of its firmware that remain on the M-series device after installation of Elevate, and Cambium is therefore not required to maintain any CMI to identify this information. *See supra* § III.A.

### F. Ubiquiti Fails to State a Claim for Breach of Contract

In addition to the fact that Ubiquiti's Licenses do not prohibit any of the allegedly breaching activity—*i.e.,* deletion of firmware and use of configuration and calibration

information (*See supra* § III.B.2)—Ubiquiti's breach of contract claims also fail for the additional reasons that Ubiquiti fails to allege a breach to a particular provision of a particular license and that Ubiquiti fails to attach the entire agreement to the complaint.

### 1. Ubiquiti Fails to Allege a Breach of a Particular Provision of a Particular Contract

Ubiquiti's complaint identifies two different licenses with different terms and restrictions: the "Firmware License Agreement" (Exhibit B; ¶ 37) and the "EULA" (Exhibit C; ¶ 42). However, Ubiquiti only selectively quotes from the collective text of ***both*** licenses while claiming that Cambium's copying constitutes a breach even though copying is expressly allowed under one of those licenses. ¶ 42; *see also* ¶¶ 304-306. Thus, Ubiquiti fails to identify a particular license and a particular provision that is breached as a breach of contract claim requires. *See Tsitsopoulou v. Univ. of Notre Dame*, 2011 WL 839669, at *5 (N.D. Ind. Mar. 7, 2011) (dismissing complaint for failing to identify a particular contract and any particular provision that was allegedly breached).

These allegations are particularly egregious because the EULA is only "applicable to any Ubiquiti firmware downloaded from the Ubiquiti website" and Ubiquiti fails to allege that Defendants downloaded any Ubiquiti Firmware much less agreed to the EULA at all. *See* ¶¶ 41-42. Accordingly, these claims fail to put Cambium on notice of any alleged breach to a particular provision of a license and must be dismissed. *See Tsitsopoulou* at *5.

### 2. Ubiquiti Failed to Attach the Entire Agreement to the Complaint

When governing provisions of a contract are not attached as part of the Complaint, a breach of contract "claim [is] properly dismissed for violation of section 2-606." *Ladien v. Presence RHC Corp.*, 2017 IL App (1st) 152778-U (2017), ¶ 24 (citing 735 ILCS 5/2–606 and *Sherman v. Ryan*, 392 Ill. App. 3d 712, 733 (2009)). Ubiquiti has failed to attach numerous

Public License agreements that are referenced in its Licenses and that govern Cambium's use of the firmware. Ubiquiti's Licenses provide that "[t]o the extent any such [Public License] requires that Ubiquiti provide You the rights to **copy, modify, distribute or otherwise use** any Open Source Software that are inconsistent with the limited rights granted to You in this Agreement, then **such rights in the applicable [Public License] shall take precedence over the rights and restrictions granted in this Agreement**." Ex. B at 3-4; *see* Ex. C at 5. Therefore, Ubiquiti's breach of contract claims must be dismissed.

### G.   Ubiquiti Admits Customers Are Not Confused

In order for Ubiquiti's claims under the Lanham Act—False Advertising (Count 5), Trademark (Count 10), and False Designation of Origin (Count 11)—and its common law Trademark claim (Count 12) to survive a motion to dismiss, Ubiquiti must allege some customer confusion. However, Ubiquiti's pleadings make clear that its customers are not confused about the source of Cambium's Elevate firmware. This bars each of Cambium's claims. "To prevail on a Lanham Act claim, a plaintiff must establish that (1) [its] mark is protectable, and (2) the defendant's use of the mark is **likely to cause confusion among consumers**." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

#### 1.   Alleged Confusion as to Source of Firmware

"Only a confusion about origin supports a trademark claim, and 'origin' for this purpose means the 'producer of the tangible product sold in the marketplace.'" *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.,* 707 F.3d 869, 872 (7th Cir.2013). But Ubiquiti's own allegations make clear that there could be no confusion as to the source of Elevate: *e.g.,* (a) Elevate release announced on Cambium website (¶ 93); (b) Cambium refers to Elevate as a "replacement" for Ubiquiti's firmware (*id.*); (c) Elevate is downloaded from its website (*id.*); (d) during instructional webinars, Cambium distinguishes Elevate from the "**old manufacturers' firmware**"

(¶ 103) (e) Elevate is advertised as hardware "agnostic" and that it operates on "radio hardware from one or multiple vendors" (¶ 107). These allegations do not plausibly support Ubiquiti's conclusory claims of customer confusion because they prove that customers know that Cambium is the source of Elevate—not Ubiquiti. *See* ¶¶ 341, 345, 349, 295. Moreover, any alleged use of Ubiquiti's marks is a nominative fair use by Cambium because Ubiquiti admits that Cambium uses the names to identify the Ubiquiti devices that its firmware is compatible with and/or running on and Ubiquiti has not provided any factual allegations suggesting this use implies sponsorship by Ubiquiti. *See Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 717–18 (N.D. Ill. 2014); *see* ¶ 57.

### 2. Allegedly Deceptive Statements

Similarly, to establish liability for false advertising, "a plaintiff must show that the challenged advertisement is literally false, or, ***if literally true or ambiguous***, that it is 'misleading in context, ***as demonstrated by actual customer confusion***.'" *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1088–89 (7th Cir. 1994). With respect to allegedly false statements, Ubiquiti only alleges that Cambium misrepresents the amount of Ubiquiti Firmware remaining operative after Cambium's firmware is installed. *See, e.g.,* ¶¶ 103. The extraordinary deficiencies in Ubiquiti's allegations regarding the installation of Cambium's firmware are discussed above and do not plausibly support that Cambium's statements here are "literally false." *See supra* § III.A. The remainder of Ubiquiti's allegations regarding allegedly false statements are that Cambium makes such statements "by omission" or "impli[cation]," yet, Ubiquiti has failed to establish that any of the alleged statements are false. ¶¶ 101, 104, 113. For example, Ubiquiti alleges that "Cambium fails to tell customers that the use of [Cambium Firmware] . . . violates FCC requirements and rules" yet fails to specify any particular FCC rule that is violated. ¶ 66. Therefore, Ubiquiti fails to allege facts that support its Lanham Act and

common law Trademark claims, and those claims should be dismissed.

### H. Ubiquiti's State Law Claims Are Preempted by the Copyright Act

Because Ubiquiti's breach of contract, unfair competition, and misappropriation claims are based on the same rights protected in a copyright infringement claim, these claims must be dismissed as preempted. *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 958-59 (N.D. Ill. 2002) (finding preemption to extent claim alleged violations of license prohibitions against unauthorized copying and creation of derivative products).

#### 1. Ubiquiti's Breach of Contract Claim (Claim 6) Is Preempted

Ubiquiti's breach of contract claim, which alleges that Cambium copied, modified, and reproduced Ubiquiti's copyrighted code (¶¶ 307-310), should be dismissed because it is based on nothing more than the alleged act of copyright infringement. *See Higher Gear* at 958. Ubiquiti alleges that the Ubiquiti Firmware is copyright-protected material (¶ 38), and that Cambium has "infringe[d] Ubiquiti's copyrights in the Ubiquiti firmware by **violating the Ubiquiti Firmware License Agreement and making unauthorized copies and use of Ubiquiti Firmware**." ¶ 284. It also alleges that Cambium infringed Ubiquiti's copyrights by "creat[ing] an unauthorized derivative work of the Ubiquiti firmware." ¶ 285. Ubiquiti alleges that the facts that form the basis of Ubiquiti's breach of contract claim also show infringement of its copyright, and thus its breach of contract claim is preempted.

#### 2. Ubiquiti's Unfair Competition Claim (Claim 8) Is Preempted

Similarly, Ubiquiti's unfair competition claim should be dismissed. Unfair competition claims based on "reverse passing off" are preempted by the Copyright Act. *Higher Gear* at 959 (preempting unfair competition claim where defendant allegedly developed and marketed its own version of plaintiff's software without putting the time and expense into developing the software). Here, Ubiquiti's unfair competition claim is based on allegations that Cambium

31

"reverse engineered the Ubiquiti Firmware to reap the benefits of Ubiquiti's substantial investment of time and money and to free-ride on Ubiquiti's costly investment." ¶ 323. Thus, as in *Higher Gear*, Ubiquiti's reverse passing off-based unfair competition claim is preempted.

### 3. Ubiquiti's Misappropriation Claim (Claim 13) Is Preempted

The Copyright Act also preempts Ubiquiti's common law misappropriation claim. *See Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2012 WL 3835825, at *8 (N.D. Ill. Sept. 4, 2012); *Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*, No. 93 C 20244, 1994 WL 606171, at *4–5 (N.D. Ill. Oct. 24, 1994); *G.D. Searle & Co. v. Philips–Miller & Assocs., Inc .*, 836 F. Supp. 520, 524–26 (N.D. Ill.1993). Ubiquiti's misappropriation claim is based on Cambium's alleged copying and distribution of the Ubiquiti firmware, which Ubiquiti also alleges infringes its copyright in the firmware. ¶ 353. Accordingly, the misappropriation claim is preempted and should be dismissed.

### I. Ubiquiti Fails to State a Claim for Rico Violations

### 1. Ubiquiti Fails to Allege Conduct of an Association-in-Fact Enterprise

To state a section 1962(c) RICO claim, a plaintiff must allege conduct of an enterprise. 18 U.S.C. § 1962(c); *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173, 122 L. Ed. 2d 525 (1993) (emphasis in original). Despite Ubiquiti's conclusory allegation that Cambium, its parent corporation Cambium UK, its VP of Engineering, its Project Engineer, and its distributor Winncom together formed an association-in-fact "hacking enterprise," (¶¶ 2, 131, 142), Ubiquiti fails to plausibly allege facts sufficient to show that the parties were acting in common to pursue a common legal interest.

Cambium, Cambium UK, and Cambium's VP of Engineering and Engineer cannot form

an enterprise together because "[a] firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself." *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). Thus, of the five comprising the alleged "hacking enterprise," Winncom is the only entity with which Cambium could have formed an association-in-fact. *See* ¶¶ 2, 142.

An association-in-fact enterprise requires more than a "garden-variety" commercial relationship. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009); *United Food v. Walgreen Co.*, 719 F.3d 849, 854–55 (7th Cir. 2013) (dismissing RICO claims stemming from allegations amounting to a "normal commercial relationship" instead of an association-in-fact enterprise, noting that the plaintiff did not allege "that officials from either company involved themselves in the affairs of the other," that personnel for either company were involved in the actions needed to be taken by the other company to perpetuate the fraud, or "that the profits from the illegal drug-switching scheme were siphoned off to the [enterprise] or to individual enterprise members." *Id.* at 854-856).

Here, Ubiquiti's allegations related to Cambium and Winncom's relationship and conduct demonstrate no more than a mutually beneficial, "garden-variety" commercial relationship between manufacturer and distributor, like in *Crichton* and *Walgreen Co.* Ubiquiti alleges that Winncom advertised for Cambium (¶¶ 135, 152-53, 160); "report[ed] to Cambium regarding its distribution and sales" (¶ 360); hosted an ePMP product demonstration at a WISPApalooza event (¶ 153, 160); and served as a "connected partner" for Cambium, for which it received various benefits (*id.* ¶ 155). This is all consistent with a normal commercial relationship wherein a distributor gets a discount for encouraging sales of the manufacturer's product. The complaint also contains generic allegations related to Cambium's direction of the "hacking enterprise" and the "hacking enterprise's" goal to attain financial gain and what was generally being done to

reach that goal. *See, e.g.,* ¶¶ 138-47. These conclusory allegations are not sufficient to show that Cambium and Winncom "were acting in concert on behalf of a shadow enterprise." *Walgreen Co.,* at 855. Further, as in *Walgreen Co.*, Ubiquiti does not allege that Cambium's or Winncom's officials were involved in the affairs of the other, that Cambium was involved in Winncom's advertising or distribution of or that Winncom was involved in Cambium's coding of Elevate, or that profits from use of Elevate were "siphoned off" to the alleged enterprise. Ubiquiti has thus failed to state a claim under section 1962(c).

### 2. Ubiquiti's Section 1962(d) Claim (Claim 15) Necessarily Fails with its Section 1962(c) Claim (Claim 14)

Ubiquiti's 18 U.S.C. § 1962(d) claim is premised on the same facts as its Section 1962(c) claim, and thus also fails. *Patel v. Mahajan*, No. 11 C 4545, 2012 WL 3234397, at *5 (N.D. Ill. Aug. 6, 2012). Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." While Ubiquiti's section 1962(d) claim is brought against all defendants other than Cambium, and adds allegations that Blip conspired with Cambium UK, Winncom, Ahmed, and Moiseev, it is premised on the same facts that were alleged, and failed, to amount to a section 1962(c) violation and must be dismissed for the same reasons.

### J. Ubiquiti Cannot State a Claim for Intentional Interference with Prospective Economic Advantage (Count 9) Because Cambium Is a Competitor

"An entity that is competing for prospective business, and is doing so lawfully, cannot be held liable for tortious interference with prospective advantage." *Jamsports & Entm't, LLC v. Paradama Prods., Inc.,* 382 F. Supp. 2d 1056, 1060 (N.D. Ill. 2005). Ubiquiti alleges that Cambium is its competitor (¶¶ 90, 134), and as demonstrated throughout this memorandum, fails to allege facts to support any claims that Cambium's actions violated federal or state law.

### K.      Ubiquiti Lacks Standing

In association with Cambium's "factual challenge" to standing, the Court should consider the Public Code and Incorporated Documentation. *See Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444 (7th Cir. 2009). When considering a motion that launches a factual attack against jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (internal quotations omitted); *see also Chicago Teachers Union, v. Bd. of Educ. of the City of Chicago*, 950 F. Supp. 2d 984, 986 (N.D. Ill. 2013).

Here, Ubiquiti's allegations that it owns 100% of the source code and copyrights to its firmware, and that Cambium licenses this firmware from Ubiquiti, are critical to its copyright and contract claims. *See* ¶¶ 23, 30, 300-314; Ex. A. To the extent the Court deems these allegations facially sufficient to confer standing, Cambium attaches the Public Code and Incorporated Documentation as evidence that clearly calls Ubiquiti's standing into question on at least these claims (Exs. 1 – 10). This evidence shows that Ubiquiti is neither the copyright holder, owner, or exclusive licensee of the entire firmware it asserts.

### 1.      Ubiquiti Lacks Standing Under the Copyright Act

"Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C. § 501(b). Section 501(b) provides that '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.' . . . . *[I]f the owner, assignee or exclusive licensee grants only a nonexclusive license, the recipient has no standing to sue for copyright infringement*." *Althin CD Med., Inc. v. West Suburban Kidney Center, S.C.,* 874 F. Supp. 837, 842 (N.D. Ill. 1995). Ubiquiti lacks any exclusive rights in the Public Code, and the Public

Licenses fail to provide it with any of those exclusive rights. *See* 17 U.S.C. § 106. Ubiquiti's inbound Public Licenses provide a non-exclusive, limited license in some copyright rights. *See, e.g.,* Ex. 5. Moreover, the Public Code is publicly available and licensed to many others. Ubiquiti is therefore not an "exclusive" licensee in this Public Code and therefore lacks standing.

### 2. Ubiquiti Lacks Standing for Breach of Contract

"[A] cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros.*, 266 F.3d 598, 602 (7th Cir. 2001) (internal citations omitted). Ubiquiti lacks privity of contract because Cambium's license comes from third-party licensors, not Ubiquiti. Ubiquiti's Firmware License states: "You acknowledge that the Open Source Software license is solely between You and the applicable licensor of the Open Source Software." Ex. B at 4. Ubiquiti does ***not*** have standing to assert a breach of these Public Licenses and has not otherwise alleged any particular portions of its code that are not subject to such Public Licenses. Ubiquiti's complaint must establish exclusive ownership and infringement or breach as to only the same portion of the Ubiquiti Firmware that are not Public Code, Open Source Software, or otherwise covered by the Public Licenses. Having failed to do so, Ubiquiti therefore lacks standing to bring at least its copyright and contract claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Ubiquiti's complaint fails to satisfy the *Iqbal/Twombly* pleading standards and that Ubiquiti lacks standing. Ubiquiti's "artful pleading" does not resolve these deficiencies. *See Trinity* at 755. The complaint should therefore be dismissed with prejudice. To the extent it is not dismissed with prejudice, any amended complaint should identify (1) protectable, copyrighted portions of Ubiquiti's firmware,

(2) why those components are not subject to Public Licenses, and (3) how Defendants modify or use those portions so Defendants can actually assess Ubiquiti's claims.

Dated: October 15, 2018

Respectfully submitted,

MICHAEL BEST & FRIEDRICH, LLP

*/s/ James P. Fieweger*
    One of their attorneys

Arthur J. Gollwitzer (06225038)
agollwitzer@michaelbest.com
James P. Fieweger (6206915)
jpfieweger@michaelbest.com
MICHAEL BEST & FRIEDRICH, LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
312.222.0800 (Phone)


G. Hopkins Guy III (CA Bar No. 124811)
hop.guy@bakerbotts.com
Jon V. Swenson (CA Bar No. 233054)
jon.swenson@bakerbotts.com
Karina Smith (CA Bar No. 286680)
karina.smith@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Phone)
650.739.7699 (Facsimile)

Andrew D. Wilson (DC Bar No. 1030144)
1299 Pennsylvania Ave. NW
Washington, DC 20004-2400
202.639.1312 (Phone)
202.508.9336 (Fax)
andrew.wilson@bakerbotts.com

*Attorneys for Defendants Cambium Networks, Inc. et. al*