**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UBIQUITI NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CV-5369 |
| | ) | |
| CAMBIUM NETWORKS, INC. | ) | Judge Feinerman |
| CAMBIUM NETWORKS, LTD. | ) | |
| BLIP NETWORKS, INC. | ) | |
| WINNCOM TECHNOLOGIES, INC., | ) | |
| SAKID AHMED, and | ) | |
| DMITRY MOISEEV, | ) | |
| | ) | |
| Defendants. | ) | |

**UBIQUITI NETWORKS, INC.'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STANDARD OF REVIEW ................................................................................... 3

III.   ARGUMENT ....................................................................................................... 4

    A.   Ubiquiti's Copyright Infringement Claims Are Sufficiently Pled ........................ 4

        1.   Ubiquiti Has Standing and Does Not Assert Copyright Claims Based on Open Source Software ........................................................ 7

        2.   Ubiquiti Is Not Required to Identify Source Code Within Its Copyrighted Code with Specificity at the Pleading Stage ...................... 8

        3.   Cambium's Merits Based Arguments on the First Sale Doctrine and Its "Erase and Replace" Characterizations Are Contrary to the Well Pled Complaint ................................................................ 9

    B.   Ubiquiti's Breach of Contract, Unfair Competition, and Misappropriation Claims Are Not Preempted and Are Well Pled ................................................. 11

        1.   Ubiquiti's Claims Are Not Preempted ................................................... 11

        2.   Ubiquiti Sufficiently Pled Its Claim for Breach of Contract .................. 14

        3.   Ubiquiti's Unfair Competition and Misappropriation Claims Are Sufficiently Pled .................................................................. 16

    C.   Ubiquiti Has Stated Claims for Violation of the DMCA Sections 1201 and 1202 ................................................................ 16

        1.   Cambium's Challenges to Ubiquiti's Circumvention Claims Are Baseless ................................................................ 16

        2.   Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1201(a)(1) ................................................................ 17

        3.   Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1201(a)(2) ................................................................ 18

        4.   Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1202(b). ................................................................ 20

    D.   Ubiquiti Has Adequately Alleged Its Intentional Interference Claim ................ 21

    E.   Ubiquiti Has Adequately Alleged Lanham Act and Trademark Infringement Claims ................................................................ 22

    F.   Ubiquiti Has Stated Claims for Violation of the CFAA and ICTA .................... 24

    G.   Ubiquiti Has Adequately Alleged RICO Claims ................................................. 26

        1.   Ubiquiti Has Adequately Alleged an Association-in-Fact Enterprise ................................................................ 27

2.   The Hacking Enterprise Is Not a Run-of-the-Mill Commercial
Partnership ............................................................................................. 27

IV.   CONCLUSION............................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc.*,
731 F.2d 1160 (5th Cir. 1984) ...................................................................................27

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir. 2011) .....................................................................................3

*Arnold v. Janssen Pharmaceutica, Inc.*,
215 F. Supp. 2d 951 (N.D. Ill. 2002) ........................................................................16

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
377 F.3d 682 (7th Cir. 2004) .....................................................................................4

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ......................25

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015) ...................................................................................28

*Bittman v. Fox*,
107 F. Supp. 3d 896 (N.D. Ill. 2015) .................................................................24, 25

*Bowers v. Baystate Techs., Inc.*,
320 F.3d 1317 (Fed. Cir. 2003).........................................................................12, 14

*Caremark, Inc. v. Coram Healthcare Corp.*,
113 F.3d 645 (7th Cir. 1997) .....................................................................................4

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004)................................................................................18

*Computer Assocs. Int'l v. Quest Software, Inc.*,
333 F. Supp. 2d 688 (N.D. Ill. 2004) ....................................................................5, 7

*Couponcabin LLC v. Savings.com, Inc.*,
2:14-cv-39-TLS, 2016 WL 3181826 (N.D. Ind. June 8, 2016) ..............................24

*Davidson & Assocs. v. Jung*,
422 F.3d 630 (8th Cir. 2005) ...................................................................................13

*DeVry, Inc. v. Univ. of Med. & Health Sci.-St. Kitts*,
No. 08 C 3280, 2009 WL 260950 (N.D. Ill. Feb. 3, 2009)......................................23

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ...................................................3

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009)...................9

*Falcon v. City of Chicago*,
No. 17 C 5991, 2018 WL 2716286 (N.D. Ill. June 6, 2018) ...............................3, 11

*Feist Publ'ns Inc. v. Rural Tel. Co.*,
499 U.S. 340 (1991).......................................................8, 9

*Ferris Mfg. Corp. v. Carr*,
No. 14 C 04663, 2015 WL 279355 (N.D. Ill. Jan. 21, 2015) .................................16

*Flava Works, Inc. v. Clavio*,
No. 11 C 05100, 2012 WL 2459146 (N.D. Ill. June 27, 2012) .................................6

*Foremost Farms USA, Cooperative v. Diamond V. Mills, Inc.*,
No. 16-cv-551-JDP, 2017 WL 1390699 (W.D. Wis. Apr. 18, 2017)...................22

*Frankfurt v. Mega Ent'mt Grp. II*,
No. 15 CV 667, 2016 WL 3165750 (N.D. Ill. June 7, 2016) .................................14

*Frerck v. Pearson Educ., Inc.*,
No. 11-CV-5319, 2012 WL 1280771 (N.D. Ill. Apr. 16, 2012).........................4, 8

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*,
223 F. Supp. 2d 953 (N.D. Ill. 2002) .......................................12, 13, 14

*HyperQuest, Inc. v. N'Site Sols., Inc.*,
632 F.3d 377 (7th Cir. 2011) .......................................................7

*I.A.E., Inc. v. Shaver*,
74 F.3d 768 (7th Cir. 1996) .......................................................7, 10, 11

*ICC Evaluation Serv., LLC v Int'l Assoc. of Plumbing & Mech. Officials, Inc.*,
16-cv-00054, ECF No. 31 (D.D.C. Sept. 19, 2016).................................9

*In re Aimster Copyright Litig.*,
252 F. Supp. 2d 634 (N.D. Ill. 2002) .......................................................6

*In re ClassicStar Mare Lease Litig.*,
823 F. Supp. 2d 599 (E.D. Ky. 2011) .......................................................27

*In Securiton Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995).......................................................27

iv

*Int'l Airport Ctrs., LLC v. Citrin*,
  440 F.3d 418 (7th Cir. 2006) ................................................24

*Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*,
  No. 12 C 10275, 2013 WL 4011052 (N.D. Ill. Aug. 6, 2013) ....................................... *passim*

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*,
  999 F. Supp. 2d 1098 (N.D. Ill. 2014) .........................................20, 21

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
  No. 02 C 1823, 2002 WL 31507174 (N.D. Ill. Nov. 8, 2002) ................................................23

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993) ...........................................11, 19

*MDY Indus., LLC, v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2011) ..........................................5, 11

*Medscript Pharma., LLC v. My Script, LLC*,
  77 F. Supp. 3d 788 ((N.D. Ill. 2015)..........................................22

*Menzies v. Seyfarth Shaw LLP*,
  197 F. Supp. 3d 1076 (N.D. Ill. 2016) ..........................................28

*Merideth v. Chicago Tribune Co., LLC*,
  No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .......................................21

*MGM Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)..........................................................6

*Mid Am. Title Co. v. Kirk*,
  991 F.2d 417 (7th Cir. 1993) ..................................................9

*Morningware, Inc. v. Hearthware Home Prod., Inc.*,
  No. 09 C 4348, 2012 WL 3835825 (N.D. Ill. Sept. 4, 2012)................................................16

*Motorola, Inc. v. Lemko Corp.*,
  609 F. Supp. 2d 760 (N.D. Ill. 2009) ..........................................24

*Mt. Hawley Ins. Co. v. Guardmark, Inc.*,
  No. 01 C 5088, 2001 WL 766874 (N.D. Ill. July 5, 2001) ...................................15

*Navistar, Inc. v. New Baltimore Garage, Inc.*,
  No. 11-CV-6269, 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ..................................3, 17, 18

*New Kids On the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ..........................................24

v

*Pena v. Novartis Pharmas. Corp.*,
No. 04 C 3790, 2004 WL 2331841 (N.D. Ill. Oct. 14, 2004) ................................................15

*People v. Janish*,
2012 IL App (5th) 100150 (2012) .........................................................................................26

*Pfeffer v. Empire Stat, Inc.*,
No. 03 CIV.1404 LTS FM, 2006 WL 3096027 (S.D.N.Y. Nov. 1, 2006) ...............................8

*Philips Med. Sys. P.R., Inc. v. GIS Partners Corp.*,
203 F. Supp. 3d 221 (D.P.R. 2016)........................................................................................26

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) ............................................................................................12, 13

*Quality King Distributions, Inc. v. L'Anza Research Int'l*,
523 U.S. 135 (1998).................................................................................................................9

*Rust Envmn't & Infrastructure, Inc. v. Teunissen*,
131 F.3d 1210 (7th Cir. 1997) ...............................................................................................22

*SecureInfo Corp. v. Telos Corp.*,
387 F. Supp. 2d 593 (E.D. Va. 2005) .....................................................................................24

*Seng-Tiong Ho v. Taflove*,
648 F.3d 489 (7th Cir. 2011) ..................................................................................................12

*Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*,
78 F. Supp. 3d 852 (N.D. Ill. 2015) .......................................................................................21

*Slep-Tone Entmt. Corp. v. Elwood Enters.*,
Case No. 13 C 7346, 2014 WL 1612891 (N.D. Ill. Apr. 21, 2014).........................................23

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....................................................................................................8

*Sykes v. Mel Harris & Assocs., LLC*,
757 F. Supp. 2d 413 (S.D.N.Y. 2010).....................................................................................28

*Teleflora LLC v. Florists' Transworld Delivery, Inc.*,
C.A. No. 03-05858, ECF No. 238 (N.D. Cal. June 14, 2004) .................................................26

*Theofel v. Farey–Jones*,
359 F.3d 1066 (9th Cir. 2004) ................................................................................................25

*Thompson v. Spring-Green Lawn Care Corp.*,
126 Ill. App. 3d 99 (1984) ......................................................................................................16

vi

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ..............................................................................12

*Tony Jones Apparel, Inc. v. Indigo USA LLC*,
  No. 03 C 0280, 2003 WL 22220193 (N.D. Ill. Sept. 24, 2003)............................................22

*Universal City Studios, Inc. v. Reimerdes*,
  111 F. Supp. 2d 294 (S.D.N.Y. 2000)..........................................................................17, 19

*Velsicol Chem. LLC v. Magnetek, Inc.*,
  No. 17 C 2092, 2017 WL 2311245 (N.D. Ill. May 26, 2017) ................................................22

*Warth v. Selden*,
  422 U.S. 490 (1975)...........................................................................................4

**STATUTES**

17 U.S.C. § 102..................................................................................................14

17 U.S.C. § 106...................................................................................................5

17 U.S.C. § 301..................................................................................................12

17 U.S.C. § 410..................................................................................................5, 7

17 U.S.C. § 501...................................................................................................7

17 U.S.C. § 1201............................................................................................16, 17, 18

17 U.S.C. § 1202............................................................................................20, 21

18 U.S.C. § 1962..................................................................................................26

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)............................................................................................3

Fed. R. Civ. P. 12(b)(6)...........................................................................................3

6 PATRY ON COPYRIGHTS § 19:5 ...................................................................................8

Plaintiff Ubiquiti Networks, Inc. ("Ubiquiti"), by and through its undersigned counsel, hereby opposes the Motion to Dismiss filed by Cambium Networks, Inc. and Cambium Networks, Ltd. (collectively, "Cambium"), Blip Networks, LLC ("Blip"), Winncom Technologies, Inc. ("Winncom"), Sakid Ahmed, and Dmitry Moiseev (collectively, "Defendants").

## I.    INTRODUCTION

Ubiquiti has brought a detailed Complaint that is well supported and readily satisfies the Seventh Circuit standard that the allegations for each cause of action sufficiently state a claim. At its core, the Complaint alleges that Cambium's Hacked Firmware—Elevate—violates Ubiquiti's copyrights and license agreements. Cambium copied and made unauthorized use of firmware on Ubiquiti M-series devices in violation of license agreements to create the Hacked Firmware, "Elevate." Subsequently, Cambium and other Defendants promoted and distributed Elevate in further violation of the license agreements to induce Ubiquiti M-series device users to breach their license agreements with Ubiquiti and participate in hacking M-series devices with Elevate.

The Complaint sets forth claims based upon Ubiquiti's contractual, copyright, trademark, and other commercial rights and details Defendants' willful and commercially motivated misconduct. Copyright infringement claims are supported with (i) allegations of ownership of Ubiquiti's proprietary authorship in its airOS firmware and copyright registrations of specific versions of the firmware attached to the Complaint and (ii) Cambium's unauthorized copying, adaptation, distribution, and use of Ubiquiti's copyrights in those versions as well as its contribution to and inducement of infringement by third parties through its distribution of the Hacked Firmware. False advertising and trademark infringement violations are supported by explicit false statements by Cambium and by exhibits showing unauthorized use of Ubiquiti's trademarks. DMCA violations are supported by allegations of Cambium's circumvention of the verification mechanisms that protect the Ubiquiti firmware, transcripts of webinars in which

Cambium and other defendants are shown hacking Ubiquiti M-series devices, by Cambium's Quick Start Guide and by allegations of Cambium trafficking in Elevate and providing instructions to circumvent protective measures in Ubiquiti's products. RICO claims are supported by extensive allegations surrounding false and misleading statements made through the mails and wires by the Defendants as they worked together to form a Hacking Enterprise. The remaining claims are similarly well-supported with factual allegations. And, based on the allegations of the Complaint, Defendants' efforts to manufacture a standing challenge at this phase fail as a matter of law.

Rather than contending there are deficiencies in the Complaint as pled, most of Defendants' argument involves extraneous information outside the four corners of the Complaint that they contend is necessary to decide the Motion to Dismiss (Dkt. 33) ("MTD Br."). But, at best, this extraneous information goes to the merits of the case which can be addressed, if warranted, at the appropriate time. When they do address the Complaint, Defendants blatantly misconstrue Ubiquiti's allegations instead of squarely addressing them. *Compare* MTD Br. at 8 ("Ubiquiti's Complaint fails to clearly state ownership of any identified, protected firmware under any statutory scheme"), *with* Dkt. 1 ("Compl.") ¶ 30 ("Ubiquiti owns U.S. Copyright No. TXu001795146 for Ubiquiti firmware airOS version 5.2.1 and U.S. Copyright No. TXu00179514[7] for Ubiquiti firmware airOS version 5.3" as attached as Compl., Ex. A).

Defendants' efforts to paint a narrow picture of their conduct as merely an "erase and replace" operation with respect to Ubiquiti firmware that they assert is "*mostly*" open source does not entitle them to ignore the well-pled allegations in the Complaint or absolve them of liability. As discussed herein, Ubiquiti has not asserted infringement of open source code and owns copyright registrations specifically on non-open source portions of versions 5.2.1 and 5.3 of its firmware, which on their face specifically exclude "licensed in materials." *See* Compl., Ex. A.

2

Ubiquiti is asserting infringement of the copyrights it owns, not open source software. Thus, Defendants' briefing concerning open source software is irrelevant.

At bottom, Defendants' arguments are long on rhetoric and short on substance. Ubiquiti's claims are factually well supported and legally sound in accordance with Seventh Circuit standards. Accordingly, Defendants' Motion to Dismiss should be denied.

## II.     STANDARD OF REVIEW

Defendants' Motion to Dismiss is based on a fundamental misunderstanding of the distinction between what a party must allege to state a claim and what a party must eventually prove at trial. *See Falcon v. City of Chicago*, No. 17 C 5991, 2018 WL 2716286, at *2 (N.D. Ill. June 6, 2018) ("A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.") (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). At this early stage, Ubiquiti need only set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Navistar, Inc. v. New Baltimore Garage, Inc.*, No. 11-CV-6269, 2012 WL 4338816, at *2 (N.D. Ill. Sept. 20, 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Ubiquiti's pleading need only include enough factual allegations to raise the possibility of relief above the "speculative level" when such allegations are assumed to be true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). "[F]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must

accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Selden*, 422 U.S. 490, 501 (1975).

Further, the task in reviewing the sufficiency of a complaint is "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) (citation omitted)." Ubiquiti's claims should not be dismissed unless it is clear that any amendment would be futile. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Ubiquiti has gone well beyond these standards and has sufficiently and plausibly pled each claim.

## III.     ARGUMENT

Ubiquiti has sufficiently alleged all claims challenged in Defendants' Motion to Dismiss and asserted a basis for standing. Accordingly, this Court should deny Defendants' Motion to Dismiss.

### A.      Ubiquiti's Copyright Infringement Claims Are Sufficiently Pled.

Ubiquiti has pled all the requisite elements to state a claim for copyright infringement—namely: (1) ownership of a valid copyright, and (2) the unauthorized copying of protected elements. *Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, No. 12 C 10275, 2013 WL 4011052, at *3 (N.D. Ill. Aug. 6, 2013); *see also Frerck v. Pearson Educ., Inc*., No. 11-CV-5319, 2012 WL 1280771, at *2 (N.D. Ill. Apr. 16, 2012).

With respect to ownership, Ubiquiti has alleged that it "owns U.S. Copyright No. TXu001795146 for Ubiquiti firmware airOS version 5.2.1 and U.S. Copyright No. TXu179514[7] for Ubiquiti firmware airOS version 5.3." Compl. ¶ 30; *see also id.* ¶ 283; *id.*, Ex. A (U.S. Copyright Registration Certificates). Although proof is not required at the pleading stage, copyright registration certificates are "*prima facie* proof" that Ubiquiti owns valid copyrights for

these works.  *See Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 697-98 (N.D. Ill. 2004); 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration . . . shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."); *see also Intercom*, 2013 WL 4011052, at *2 (explaining that allegations of copyright ownership alone are sufficient at the pleading stage).  Cambium also acknowledges Ubiquiti's ownership.  *See* MTD Br. at 12.

With respect to the unauthorized copying of protected elements (and violation of Ubiquiti's other exclusive rights), Ubiquiti has made factually detailed allegations of direct, contributory, and inducement of copyright infringement.  For allegations of Cambium's direct infringement, *see* Compl. ¶ 284 ("violating the Ubiquiti Firmware License Agreement and making unauthorized copies and use of Ubiquiti Firmware"), *id.* ¶ 285 (creating "an unauthorized derivative work of the Ubiquiti firmware"), and *id.* ¶ 286 ("demonstration of hacking a Ubiquiti M-series device in instructional videos . . . and in live classes.").  *See also id.* ¶¶ 43-46, 72-73.  These infringing acts by Cambium violate Ubiquiti's exclusive rights, as the owner of copyright, to reproduce the copyrighted works, prepare derivative works, distribute copies of the works, and publicly display and perform the works.  *See* 17 U.S.C. § 106(1)-(5).  Further, to the extent necessary at this stage, Ubiquiti has also alleged that these acts violate the conditions of Ubiquiti's Firmware License Agreements.  *See* Compl. ¶¶ 37-42, 301-05; *MDY Indus., LLC*, v. *Blizzard Entm't, Inc.*, 629 F.3d 928, 940-41 (9th Cir. 2011) (explaining, for example, that a video game player who violates a term of use that "forbids creation of derivative works . . . would exceed the scope of her license and violate one of [the copyright owner's] exclusive rights under the Copyright Act.").

To state a claim for contributory copyright infringement, a plaintiff must plead: "(1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3)

the defendant's material contribution to the infringement." *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) (internal citations omitted); *see also In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 649 (N.D. Ill. 2002). For inducement of infringement, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005).

Ubiquiti satisfies these elements by alleging that (1) Cambium's customers directly infringe Ubiquiti's copyrights by exceeding the scope of the Firmware License Agreements, including by "making unauthorized copies of copyrighted portions of [the firmware] and by copying, installing or re-installing copies [of the firmware] on M-series devices without authorization for the sole purpose of facilitating the hacking of Ubiquiti M-series devices," Compl. ¶ 83; (2) Cambium has knowledge of the limited scope and prohibitions of the Firmware License Agreement, *id.* ¶¶ 301-05; and (3) with that knowledge, Cambium provides tutorials, demonstrations, live classes, and links to induce Ubiquiti customers to make unauthorized copies of Ubiquiti firmware, download Cambium's Hacked Firmware, Elevate, and circumvent technological measures protecting the firmware in order to install Cambium's Hacked Firmware on M-series devices and infringe. *See id.* ¶¶ 86, 89, 103, 111, 285, 287. All of the acts of infringement are alleged to be willful, undertaken with knowledge of wrongdoing and undertaken with commercial motives. *See id.* ¶¶ 43-46, 83, 86, 89, 103, 111, 285, 289. Accordingly, Ubiquiti's allegations are more than sufficient to give Cambium notice of its claim of contributory copyright infringement as well as inducement.

6

Defendants make three separate arguments on extraneous information that are not consistent with the well pled copyright allegations. As set forth below, these arguments fail.

### 1. Ubiquiti Has Standing and Does Not Assert Copyright Claims Based on Open Source Software.

Cambium argues that Ubiquiti lacks standing to bring claims under the Copyright Act because it does not have "any exclusive rights in the Public Code." MTD Br. at 35-36. This argument is not based on any allegations in Ubiquiti's Complaint.

Ubiquiti has not alleged infringement of any open source software, *i.e.*, "the Public Code." Rather, Ubiquiti's copyright allegations concern only its registered copyrights in versions 5.2.1 and 5.3 of airOS. *See* Compl. ¶ 30 (identifying Ubiquiti's copyright registrations); *id.*, Ex. A (attaching the copyright registrations which explicitly exclude "licensed in materials," such as open source software). As established above, the copyright registrations themselves constitute *prima facie* evidence of Ubiquiti's ownership of valid copyrights. *See* 17 U.S.C. § 410(c); *accord Computer Assocs. Int'l,* 333 F. Supp. 2d at 697-98. As the owner of the asserted copyrights on non-open source software, Ubiquiti has standing to bring suit for their infringement. *See* 17 U.S.C. § 501(b); *accord HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (The Copyright Act provides that the "legal or beneficial owner of an exclusive right under a copyright" may bring an action for infringement.); *Intercom*, 2013 WL 4011052, at *2 (Evidence of ownership of an exclusive right is not required to survive a motion to dismiss.).

To the extent Defendants raise questions about the validity of Ubiquiti's copyrights due to potential "infection" from Public Code licensed under the GPL, these assertions are baseless.[1]

---

1 The General Public License ("GPL") version 2 states that "mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this license." MTD Br., Ex. 5 at 2-

More importantly, however, these assertions address the merits of the case, not the sufficiency of the allegations, and are inappropriate at the pleading stage. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasizing that district courts should not weigh the probability of allegations on a motion to dismiss).

### 2. Ubiquiti Is Not Required to Identify Source Code Within Its Copyrighted Code with Specificity at the Pleading Stage.

Cambium asserts that Ubiquiti must allege the particular "portions of the firmware that Ubiquiti actually owns" as well as "notice of what copyrightable elements [Cambium] stand[s] accused of copying." MTD Br. at 15-16. Cambium is incorrect. *See generally Frerck*, 2012 WL 1280771, at *2-3 (rejecting defendant's argument that plaintiff must plead "specific details as to each infringing act").

It is well-established that, at the pleading stage, Ubiquiti is not required to identify particular source code within its firmware that is protected by copyright. *See Pfeffer v. Empire Stat, Inc.*, No. 03 CIV.1404 LTS FM, 2006 WL 3096027, at *3 (S.D.N.Y. Nov. 1, 2006) (denying motion to dismiss and emphasizing that plaintiff is not required to allege "what, if anything, [was] specifically original" in the copyrighted work); *see also* 6 PATRY ON COPYRIGHTS § 19:5. Cambium's reliance on *Feist Publ'ns Inc. v. Rural Tel. Co.*, 499 U.S. 340 (1991) as imposing a heightened pleading standard (MTD Br. at 16) is misplaced, as the Seventh Circuit has stated it does "not read *Feist* to require additional detail at the pleading stage." *See Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 422 (7th Cir. 1993) (noting that "copyrightable originality in a compilation claim is often subtle, and therefore a determination at the pleading stage will often be impossible").

---

3; *see also* GPL version 3 license, *id.*, Ex. 4 at 4, and other attached GPL licenses, *id.*, Ex. 6 at 3, Ex. 7 at 2.

Further, Ubiquiti is not required to identify which specific portions of its firmware Cambium copied. *See Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (denying motion to dismiss and emphasizing that "Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings [because] [t]here is no requirement that copyright claims must be pled with particularity."); *see also ICC Evaluation Serv., LLC v Int'l Assoc. of Plumbing & Mech. Officials, Inc.*, 16-cv-00054, ECF No. 31 at *8 (D.D.C. Sept. 19, 2016) (finding that plaintiff's "failure to distinguish the protectable from the unprotectable portions of the seventeen relevant works and to indicate exactly which portions of the protectable material were copied is not fatal at the motion to dismiss stage").

### 3. Cambium's First Sale Doctrine and "Erase and Replace" Characterizations Are Contrary to the Allegations.

Cambium makes two additional arguments that its copyright infringement is excused. However, Cambium does not squarely address Ubiquiti's factual allegations and the law which are fully supportive of Ubiquiti's well pled claims.

*First,* Cambium argues that the so-called first sale doctrine bars Ubiquiti's copyright infringement claims. MTD Br. at 22. Not so. Cambium admits the firmware is licensed. *See id.* at 12 ("Use of the Ubiquiti Firmware is subject to two Ubiquiti Licenses."). The first sale doctrine does not apply to a licensee. *Quality King Distributions, Inc. v. L'Anza Research Int'l*, 523 U.S. 135, 146-147 (1998) (First sale "is available only to the 'owner' of a lawfully made copy" and does "not provide a defense . . . against any non-owner such as a . . . licensee."). Accordingly, Cambium's reliance on the first sale doctrine as a basis for dismissal fails as a matter of law.

*Second*, Cambium purports to rewrite the Complaint to allege merely an "erase and replace" scheme, which Cambium claims is not prohibited under the copyright laws. *See* MTD

Br. at 12, 21-22. But, Cambium ignores the allegations in the Complaint—allegations that go far beyond merely erasing and replacing. As discussed above, Cambium's conduct infringes each of Ubiquiti's exclusive rights in its registered copyrights by copying, creating derivatives of, distributing, displaying and performing Ubiquiti's firmware in violation of the conditions of the Firmware License Agreements. *See supra* § III.A. Notably, Cambium's Elevate Hacked Firmware removes, modifies and copies portions of Ubiquiti's firmware—much more than mere deletion. *See* Compl. ¶¶ 44-46. Moreover, Cambium is incorrect that the "Ubiquiti's Firmware License only provides restrictions on 'using,' 'copying,' 'modifying' and 'distributing' the firmware" and not on deletion. MTD Br. at 22. To the contrary, Ubiquiti's Firmware License Agreements expressly prohibit deletion or "removal" of firmware code in attempts to:

> defeat, avoid, bypass, **remove**, deactivate, or otherwise circumvent **any software protection mechanisms** in the Ubiquiti Firmware, including without limitation any such mechanism **used to restrict or control the functionality of the Ubiquiti Firmware** . . .

*See* Compl., Ex. B at 1 (emphasis added); *see also id.*, Ex. C at 3. Thus, Cambium's *deletion* of firmware does constitute a separate violation of the Firmware License Agreements, which thereafter require destruction, *i.e.*, deletion, and cessation of use of the firmware for failure to comply with the terms of the license:

> Unauthorized copying of the Ubiquiti Firmware or **failure to comply with the above restrictions will result in automatic termination of this Agreement** and will make available to Ubiquiti other legal remedies. . . . Upon termination of this license for any reason **You will destroy all copies of the Ubiquiti Firmware. Any use of the Ubiquiti Firmware after termination is unlawful.**

Compl., Ex. B at 4 (emphasis added); *accord id.*, Ex. C at 5.

Accordingly, installation and operation of the Hacked Firmware, which uses modified and copied portions of the firmware, and deletes other portions, violates corresponding restrictions in

the Firmware License Agreements. All use of the firmware thereafter by Cambium and third parties who install Cambium's Hacked Firmware on M-series devices constitutes copyright infringement. *See MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 518 (9th Cir. 1993) ("[T]he loading of copyrighted computer software from a storage medium . . . into the memory of a central processing unit ('CPU') causes a copy to be made. In the absence of ownership of the copyright or express permission by license, such acts constitute copyright infringement"); *see also MDY Indus.*, 629 F.3d at 940-41 (Breaches of "conditions" of a license constitute copyright infringement, if the "licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights" under the Copyright Act); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 n.8 (7th Cir. 1996) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license."). Cambium's efforts to ignore the allegations of the Complaint should be rejected. *See Falcon*, 2018 WL 2716286, at *2; *Intercom*, 2013 WL 4011052, at *2-5.

### B. Ubiquiti's Breach of Contract, Unfair Competition, and Misappropriation Claims Are Not Preempted and Are Well Pled.

In Counts 6, 8, and 13, Ubiquiti has stated claims for breach of contract, unfair competition, and misappropriation. *See* Compl. ¶¶ 300-314, 321-30, & 351-56. None of these state law claims are preempted by the Copyright Act and they are sufficiently pled.

#### 1. Ubiquiti's Claims Are Not Preempted.

In the Seventh Circuit, for a state law claim to be preempted: (1) "the work in which the right is asserted must be fixed in tangible form and *come within the subject matter of copyright* as specified in § 102" and; (2) "the right must be equivalent to any of the rights specified in § 106 [of the Copyright Act]." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (emphasis added); *accord* 17 U.S.C. § 301(a). Thus, "to avoid preemption, a state law must regulate conduct

that is qualitatively distinguishable from that governed by federal copyright law—*i.e.*, conduct other than reproduction, adaptation, publication, performance, and display." *Toney v. L'Oreal USA, Inc*., 406 F.3d 905, 909-10 (7th Cir. 2005) (citations omitted). In other words, a state law cause of action survives preemption if it satisfies the widely-adopted "extra element" test. *See Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002) ("The Court will not preempt the state causes of action if the additional elements change the nature of the copyright infringement claim."). Here, the state law causes of action contain extra elements, and thus, are not preempted.

*First*, contrary to Cambium's assertion, it is well-established that state law breach of contract claims are not preempted by the Copyright Act. *Compare* MTD Br. at 31, *with ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996) ("[A] simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced."); *Bowers v. Baystate Techs., Inc*., 320 F.3d 1317, 1324 (Fed. Cir. 2003) ("[M]ost courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles."). The Seventh Circuit's widely cited decision in *ProCD, Inc. v. Zeidenberg*, explains that "[r]ights 'equivalent to any of the exclusive rights within the general scope of copyright' are rights established by law—rights that restrict the options of persons who are strangers to the author"; by contrast, contracts, "generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" 86 F.3d at 1454. The single case Cambium cites follows *ProCD* and indicates claims should be preempted only "if the allegations of breach are based on *nothing more* than the act of infringement." *Higher Gear*, 223 F. Supp. 2d at 958 (citations omitted) (emphasis added).

*Here*, the breach of contract claim satisfies the extra element test because the firmware Licenses Agreements created numerous private rights and obligations between Ubiquiti and Cambium that go beyond the mere right of Ubiquiti to not have its works infringed. *See* Compl. ¶¶ 40, 301-13; *id.*, Ex. B; *id.*, Ex. C (prohibiting alteration, reverse engineering, disassembly of object code, derivation of underlying ideas and algorithms, use in violation of laws (*e.g.*, those that related to legal frequency channels), and failing to destroy all copies of the firmware upon termination of the license).[2]

*Further*, Ubiquiti's unfair competition claim satisfies the extra element test and is not preempted. Ubiquiti has alleged that Cambium, in violation of the firmware License Agreements, "reverse engineered the firmware . . . in order to study the structure and proprietary aspects of the firmware to create Hacked Firmware capable of circumventing Ubiquiti's access control mechanisms, including mechanisms used to verify firmware as permissible on M-series devices." Compl. ¶ 49; *id.* ¶¶ 39-42. It is well-established that this type of reverse engineering is qualitatively different than exclusive rights under the Copyright Act—and is not preempted. *See ProCD*, 86 F.3d at 1455; *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) (upholding state law claim where defendants "contractually accepted restrictions on their ability to reverse engineer by their agreement to the terms of the TOU and EULA"); *accord Bowers*, 320 F.3d at 1325-26; *see also* 17 U.S.C. § 102(b).[3] Preemption is equally inapplicable to the other aspects of

---

[2] Cambium misleadingly characterizes these allegations as limited to stating that "Cambium copied, modified, and reproduced Ubiquiti's copyrighted code (¶¶ 307-310)." MTD Br. at 31. This ignores the full scope of the allegations in paragraphs 307-310 as well as Ubiquiti's additional allegations in, *inter alia*, paragraphs 300-314, which include the prohibitions identified above. *See also* Compl., Ex. B & Ex. C.

[3] Cambium relies on a single case discussing reverse passing off to support its unfair competition preemption argument. *See* MTD Br. at 31-32. However, this case does not create a *per se* rule preempting unfair competition claims based on reverse engineering—it simply stated that "claims based on 'reverse

Ubiquiti's unfair competition claims that Cambium ignores, which all go well beyond copyright rights—namely, those based on Defendants' propagation of "false and misleading promotional materials for the Hacked Firmware . . . in an effort to mislead and induce [Ubiquiti's] customers [to] become customers of Cambium." Compl. ¶ 325; *id.* ¶¶ 90, 93-99, 101, 106-09.

***Finally***, Ubiquiti's misappropriation claims are based on Cambium's misappropriation of Ubiquiti's goodwill and reputation—a subject wholly independent of the copyrighted works. *See* Compl. ¶¶ 18-20, 324, 327-29, 351, 354. Goodwill and reputation are not "fixed in tangible form" and do not "come within the subject matter of copyright." *See* 17 U.S.C. § 102(a) (listing only subject matter that is "fixed in any tangible medium of expression," such as literary works and motion pictures). Accordingly, Ubiquiti's misappropriation claims are not preempted by the Copyright Act.

### 2. Ubiquiti Sufficiently Pled Its Claim for Breach of Contract.

Ubiquiti has pled all the requisite elements to state a claim for breach of contract. "To state a claim for breach of contract under Illinois law, a plaintiff must allege the following elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Frankfurt v. Mega Ent'mt Grp. II*, No. 15 CV 667, 2016 WL 3165750, at *6 (N.D. Ill. June 7, 2016). The Complaint outlines in detail Cambium's breaches of both the EULA and Firmware License Agreement. *See* Compl. ¶¶ 72-82, 84, 89, 91, 127-30, 300-20.

Cambium admits the existence of a valid and enforceable contract by recognizing that the Firmware License Agreements—attached to the Complaint as Exhibits B and C—govern its use

---

passing off,' where a defendant sells a plaintiff's product as his own,' are generally preempted." *Higher Gear*, 223 F. Supp. 2d at 959.

of the firmware.  MTD Br. at 10-13, 22.  The Firmware Licenses govern the use of Ubiquiti's M-series devices and firmware and Cambium accepted these operative terms when it used the M-series devices.  Compl. ¶¶ 38-39.  There is no dispute as to whether Ubiquiti performed by delivering the products identified in the Firmware License Agreements.  Ubiquiti has alleged breach and injury by alleging, *inter alia*, that Cambium modified, reverse engineered and made unauthorized use of the firmware in a manner that caused damage to Ubiquiti, its installed base of licensed firmware and its M-series technology platform at its clientele.  *Id.* ¶¶ 43, 306-14.  This is sufficient to state a claim for breach of contract.

Defendants rely on Illinois state court pleading rules to support their assertion that Ubiquiti needs to attach every contract that possibly could have governed the use of the M-series devices to the Complaint.  *See* MTD Br. at 28-29.  However, courts within the Seventh Circuit have "declined to apply Illinois contract pleading rules to actions filed in federal court."  *Pena v. Novartis Pharmas. Corp.*, No. 04 C 3790, 2004 WL 2331841, at *1 (N.D. Ill. Oct. 14, 2004) (collecting cases declining to apply Illinois state court pleading rules).

Ubiquiti is under no obligation to attach every version of the EULA, Firmware License Agreement or other related documents.  Instead, a plaintiff "at his election, may set [the contract] forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect."  *Mt. Hawley Ins. Co. v. Guardmark, Inc.*, No. 01 C 5088, 2001 WL 766874, at *2 (N.D. Ill. July 5, 2001).

Any alleged failure to attach a complete contract is of no moment to the sufficiency of Ubiquiti's claim.  *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) (emphasizing that federal courts do not require attaching critical documents to complaint); *see also Ferris Mfg. Corp. v. Carr*, No. 14 C 04663, 2015 WL 279355, at *5 (N.D. Ill. Jan. 21,

15

2015) (rejecting a contract attachment argument and collecting cases holding same). Thus, Defendants' reliance on inapplicable state court pleading rules is misplaced.

### 3. Ubiquiti's Unfair Competition and Misappropriation Claims Are Sufficiently Pled.

Cambium did not raise a plausibility challenge to Ubiquiti's unfair competition and misappropriation claims, and thus, has provided no basis for dismissal aside from its flawed preemption theory. There is no basis for dismissal of the unfair competition claim because Ubiquiti has pled all the requisite elements. *See* Compl. ¶¶ 321-30; *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 113 (1984) (discussing elements). The same is true for the misappropriation claim. *See* Compl. ¶¶ 18-20, 90, 93-99, 324, 327-28, 351, 351-56; *see also Morningware, Inc. v. Hearthware Home Prod., Inc.,* No. 09 C 4348, 2012 WL 3835825, at *7 (N.D. Ill. Sept. 4, 2012) (discussing elements).

### C. Ubiquiti Has Stated Claims for Violation of the DMCA Sections 1201 and 1202.

#### 1. Cambium's Challenges to Ubiquiti's Circumvention Claims Are Baseless.

Cambium cites no case from this Court or elsewhere within the Seventh Circuit in support of its attacks on Ubiquiti's 17 U.S.C. § 1201 related claims, and it cites no case for its assertion that Ubiquiti has waived the right bring such claims because of "infection" from Public Code licensed under GPL version 3. MTD Br. at 11, 24-27. Given the *prima facie* validity of Ubiquiti's registered copyrights in its firmware—which exclude the Public Code—Cambium's assertions

here under § 1201 are inapplicable, not supported by any case law, and, at best, are to be addressed at the merits stage after discovery.  MTD Br. at 24-25.[4]

### 2. Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1201(a)(1).

Ubiquiti has pled all the requisite elements to state a claim for violation of 17 U.S.C. § 1201(a)(1)(A)—namely, that (1) plaintiff uses a technological measure; (2) to effectively control access to a copyright protected work; and (3) defendant circumvents such technological measure without authorization of the copyright owner.  *See Navistar, Inc.*, 2012 WL 4338816, at *3-5; 17 U.S.C. § 1201(a)(1)(A) ("No person shall circumvent a technological measure that effectively controls access to a work protected under this title.").

To satisfy the first element, Ubiquiti has pled that its firmware is "controlled by technological measures, namely signature protected firmware" for versions 5.6.15 and later and "software for detecting unauthorized firmware" for versions 5.6.14 and lower.  Compl. ¶ 247; *see also id.* ¶ 88.  These authentication measures are computer programs, which qualify as technology for purposes of § 1201(a).  *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000).  For the second element, the technological measure must "effectively control[] access to a copyright[ed] work."  17 U.S.C. § 1201(a)(1)(A); *id.* § 1201(a)(3)(B).  Perfect control is not required.  *See, e.g.*, *Reimerdes*, 111 F. Supp. 2d at 317-318 (rejecting argument that a "40–bit encryption key, is a weak cipher that does not 'effectively control' access" and finding instead

---

[4] Cambium's assertion that "the same GPL ver. 3 is linked to over 70 times on Ubiquiti's website (once for each available airOS firmware version)" and that Ubiquiti has thus "distributed its firmware with this license" is unfounded and irrelevant.  MTD Br. at 25.  The actual language in Ubiquiti's firmware license agreements refers users to review the particular license terms applicable to individual open source programs that work with the Ubiquiti firmware and M-series devices.  *See* Compl., Ex. B at 1-2; *id.*, Ex. C § II(c)(ii).  As shown in footnote 1, GPL licenses (including version 3) include a provision that allows aggregation of separate programs with a GPL program without "infection."  *See supra* footnote 1.

it "'effectively controls access' . . . whether or not it is a strong means of protection"); *see also Navistar, Inc.*, 2012 WL 4338816, at *3-5 (agreeing with other court that a "password system" can be an effective technological measure). Ubiquiti has alleged, *inter alia*, that its technological measures control the ability to access firmware update functionality and otherwise use its copyright protected firmware on Ubiquiti M-series devices through a verification process, which, in the ordinary course, rejects improperly formatted firmware. Compl. ¶¶ 9, 55, 86, 247-48. This is sufficient under the statute. *See* 17 U.S.C. § 1201(a)(3)(B).

Ubiquiti has also sufficiently pled the last element. Cambium circumvents Ubiquiti's technological measure without authorization by reverse engineering the firmware to create Hacked Firmware, and in particular, that Cambium "formats the Hacked Firmware to be accepted by Ubiquiti's Firmware update process and to hack the . . . installed firmware in violation of Ubiquiti's Firmware License Agreements" to defeat the authentication mechanisms. *Id.* ¶¶ 48-49, 55, 247-248. Ubiquiti has further alleged that Cambium's Hacked Firmware "[m]akes unauthorized access to portions of the firmware that remain on the M-series device after the hack." *Id.* ¶ 46. Ubiquiti has sufficiently alleged that such acts are without authorization, as Ubiquiti's Firmware License Agreements expressly prohibit "circumvent[ion of] any software protection mechanisms." *Id.* ¶¶ 39, 129; *see also id.*, Ex. B; *id.*, Ex. C. Ubiquiti's Section 1201(a)(1) claim is sufficient and should not be dismissed.

### 3. Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1201(a)(2).

Other than Cambium's merits-related waiver argument for which it cites no supporting case law, Cambium did not contest the sufficiency of Ubiquiti's 1201(a)(2) allegations. *See* MTD Br. at 24. Ubiquiti has alleged all the requisite elements to state a claim for violation of §

1201(a)(2).  *See* Compl. ¶¶ 254-64; *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178,

1203 (Fed. Cir. 2004) (interpreting Seventh Circuit law).

In short, Ubiquiti has alleged ownership of a valid copyright in its firmware, protected by

technological measures that effectively control access to the work—namely, its authentication and

signature protection mechanisms.  Ubiquiti has alleged Cambium has circumvented these access

control measures and that third parties can now access the firmware without authorization in a

manner that infringes the copyright in the firmware—in particular, by explaining how Cambium

has (1) marketed and made available its Hacked Firmware to Ubiquiti customers, Compl. ¶¶ 92-

98, 108-10; (2) encouraged those customers to install the Hacked Firmware in violation of the

Ubiquiti Firmware License Agreements, *id.* ¶¶ 37-42, 125; and (3) thereby caused the customers

to infringe Ubiquiti's copyrights by reproducing and modifying the firmware outside the scope of

the Firmware License Agreements.  *Id.* ¶¶ 62, 67, 103, 111; *see also MAI Sys. Corp.*, 991 F.2d at

518 ("loading of copyrighted computer software . . . into the memory of a [CPU] causes a copy to

be made [and] constitute[s] copyright infringement" in the absence of authorization).

Ubiquiti also has presented numerous allegations demonstrating how Cambium has

marketed the Hacked Firmware for use in circumventing Ubiquiti's technological measures,

including,

> in-person educational seminars demonstrating hacking Ubiquiti M-
> series devices with Hacked Firmware . . .; disseminating quick start
> guides and on-line videos demonstrating how to circumvent
> technological measures on Ubiquiti M-series devices and install the
> Hacked Firmware; and disseminating instructions on how to defeat
> Ubiquiti's signature protected firmware on Ubiquiti Firmware
> versions 5.6.15 and later on Cambium's community website.

*Id.* ¶ 258; *see also id.* ¶¶ 94-101; *cf. Reimerdes*, 111 F. Supp. 2d at 325 (finding that posting

decryption software on defendants' website and linking to other decryption tools violated

19

§1201(a)(2)).  Ubiquiti's allegations concerning Cambium's reverse engineering to create and format Hacked Firmware that could defeat Ubiquiti's signature and authentication mechanisms also allege that the Hacked Firmware was "designed or produced primarily for circumvention." Compl. ¶¶ 55, 254; *see also id.* ¶¶ 48-49, 247-248, 257, 259.  Thus, Ubiquiti has sufficiently pled its claim against Cambium for violation of Section 1201(a)(2).

### 4. Ubiquiti Sufficiently Pled Its Claim for Violation of Section 1202(b).

A claim under 17 U.S.C. § 1202(b) is sufficiently pled where: (1) plaintiff's copyrighted work was conveyed with "copyright management information [CMI]" and (2) defendant intentionally removed or altered such CMI.  *See Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1103 (N.D. Ill. 2014).  Ubiquiti has pled the requisite elements.  *See* Compl. ¶¶ 265-75.

Ubiquiti alleges the first element sufficiently in stating that "the Firmware includes user interface software . . . within the Ubiquiti Firmware [that] includes copyright management information that is presented to the user on each page of the user interface that identifies Ubiquiti as the *copyright owner of the Ubiquiti Firmware* for each M-series device."  Compl. ¶ 268; *id.*, Ex. B; *id.*, Ex. C.  In addition to this easily findable notice, Ubiquiti also alleges the second element sufficiently in stating (1) Cambium removes Ubiquiti's "copyright management information, and replaces the copyright management information with a new statement that Cambium is the copyright owner"; (2) such deletion is improper because "Ubiquiti Firmware remains on the Ubiquiti M-series device even after it is hacked with the Hacked Firmware"; and (3) "Cambium has removed the Ubiquiti copyright management information in order to conceal Cambium's infringement of Ubiquiti's copyrights in the Ubiquiti Firmware, knowing that this will induce and/or facilitate infringement."  *Id.* ¶¶ 269-70.  Notably, this Court in *Leveyfilm* held that the two following allegations were "enough . . . to raise a reasonable expectation that discovery will reveal

20

evidence of illegal" conduct by the defendant sufficient to survive the motion to dismiss: (1) plaintiff "alleged that it always include[d]" the owner's "name with the photo when distributing it" and (2) that the defendant "published the photo without [the owner's] name attached." *Leveyfilm, Inc.*, 999 F. Supp. 2d at 1103. Ubiquiti's allegations are sufficient under the applicable standards.

Cambium, however, argues that because Ubiquiti "does not have a copyright" on its firmware, Cambium is not required to maintain any CMI to identify this information. MTD Br. at 27. This argument is baseless. Ubiquiti has two registered copyrights on its firmware—which exclude open source software. Compl. ¶ 30. Ubiquiti is not required to identify any particular portions copied by Cambium at the pleading stage. *See supra* § III.A.2. Cambium's theory as to why its removal of CMI should not constitute a violation of § 1202(b) is a separate matter to be addressed at the merits stage.[5]

### D.     Ubiquiti Has Adequately Alleged Its Intentional Interference Claim.

Ubiquiti pled all the requisite elements to state a claim for intentional interference with contract under Illinois law. *See Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 866 (N.D. Ill. 2015) ("To state a claim of intentional interference with contract, a plaintiff must plead (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and

---

[5] Cambium's reliance on *Merideth v. Chicago Tribune Co., LLC*, is also misplaced because unlike the Ubiquiti firmware that has been downloaded by Cambium with Ubiquiti's copyright notices (on the user interface, the Firmware License Agreements, and the firmware itself), the plaintiff in *Merideth* failed to "allege that the photographs came into [d]efendant's possession with CMI attached." *Merideth v. Chicago Tribune Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *3 (N.D. Ill. Jan. 9, 2014).

unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages."); *see also* Compl. ¶¶ 331-38.

### E. Ubiquiti Has Adequately Alleged Lanham Act and Trademark Infringement Claims.

Cambium challenges the sufficiency of Counts 5, 10, 11, and 12—Ubiquiti's claims under the Lanham Act for false advertising, trademark infringement, and false designation or origin, and to Ubiquiti's common law trademark infringement claims—on three grounds. ***First***, Cambium asserts that Ubiquiti has supposedly admitted its customers are not confused. *See* MTD Br. at 29.[6] But, Ubiquiti has alleged the exact opposite—that consumers *are* confused. *See* Compl. ¶¶ 296, 341 ("Cambium's conduct is likely to cause and will continue to cause confusion, mistake and deception among consumers as to the source, origin, sponsorship or approval by Ubiquiti"), ¶¶ 345, 349.

Defendants' disagreement with the factual veracity of these allegations is of no moment at the motion to dismiss phase, as Defendants cannot ignore the allegations in the Complaint. *See generally Velsicol Chem. LLC v. Magnetek, Inc.*, No. 17 C 2092, 2017 WL 2311245, at *6 (N.D. Ill. May 26, 2017) (Court cannot "ignore allegations . . . that are included in Plaintiffs' complaint."). The likelihood-of-confusion analysis, which is "fact-intensive . . . ordinarily does not lend itself to a motion to dismiss." *Foremost Farms USA, Cooperative v. Diamond V. Mills, Inc.*, No. 16-cv-551-JDP, 2017 WL 1390699, at *4 (W.D. Wis. Apr. 18, 2017).

---

[6] Notably, Cambium does not challenge—nor could it credibly challenge—that Ubiquiti has adequately pled the remaining elements of Counts 5, 10, 11, and 12. *See Medscript Pharma., LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 795 n.4 (N.D. Ill. 2015) (listing elements for Lanham Act false advertising claim); *Tony Jones Apparel, Inc. v. Indigo USA LLC*, No. 03 C 0280, 2003 WL 22220193, at *3 (N.D. Ill. Sept. 24, 2003) (listing elements for trademark infringement claim); *Rust Envmn't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213-14 (7th Cir. 1997) (listing elements for Lanham Act – false designation of origin claim).

Beyond the above identified allegations, the Complaint contains numerous additional allegations supporting a finding of associational confusion. Ubiquiti has alleged that Cambium used Ubiquiti's name and trademarks without authorization in promoting Elevate. Compl. ¶¶ 68, 97, 295-96, 340, 344; *id.*, Ex. I at 7. The use of the Ubiquiti's marks in such Cambium promotion, particularly given its misleading nature, plausibly may lead to consumer confusion as to Ubiquiti's role in connection with Cambium's product.

*Second*, Defendants suggest that the Complaint does not allege literally false statements in connection with Lanham Act false designation of origin and false advertising claims. *See* MTD Br. at 30. But, Ubiquiti has pled many of Defendants' advertising statements are literally false (*see id.* ¶¶ 103, 112-13, 130, 295, 367), which Defendants admit is sufficient to state a claim. *See* MTD Br. at 30 (citing *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 (7th Cir. 1994); *see also Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2002 WL 31507174, at *4 (N.D. Ill. Nov. 8, 2002) (declining to dismiss Lanham Act claim for failure to allege likelihood of confusion because "[i]f a statement at issue is actually false, which Textus alleges is the case, then Textus does not need to show that the statement either deceived or is likely to deceive a substantial segment of the audience").

*Third*, Cambium presents a premature "fair use" affirmative defense. MTD Br. at 30. As an initial matter, courts routinely decline to consider a fair use defense at the motion to dismiss phase. *See, e.g.*, *Slep-Tone Entmt. Corp. v. Elwood Enters.*, Case No. 13 C 7346, 2014 WL 1612891, at *5 (N.D. Ill. Apr. 21, 2014) (collecting cases). However, even if the Court were to consider a fair use defense, "[t]he nominative fair use defense is a non-statutory doctrine that applies when the defendant uses the plaintiff's trademarks to refer to the plaintiff's goods or services in a *non-confusing manner*." *DeVry, Inc. v. Univ. of Med. & Health Sci.-St. Kitts*, No. 08

C 3280, 2009 WL 260950, at *5 (N.D. Ill. Feb. 3, 2009) (citing *New Kids On the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)) (emphasis added). The defense covers situations "where the use of the trademark does not attempt to capitalize on consumer confusion." *New Kids*, 971 F.2d at 308. Here, by contrast, the Complaint expressly alleges use of Ubiquiti's marks in a confusing manner—one designed to deceive consumers. *See, e.g.*, Compl. ¶ 349. Thus, any fair use defense cannot succeed, and, plainly, cannot serve as a basis for dismissal.

### F. Ubiquiti Has Stated Claims for Violation of the CFAA and ICTA.

Ubiquiti has adequately alleged that Cambium's access to the Ubiquiti M-series devices is without authorization because Cambium's Hacked Firmware exceeds the scope of any authorized access. Under established Seventh Circuit law, access is unauthorized where a party exceeds the scope of the access granted. *See Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006); *see also Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 767 (N.D. Ill. 2009) ("Allegations that an employee e-mailed and downloaded confidential information for an improper purpose are sufficient to state a claim that the employee exceeded her authorization"); *Couponcabin LLC v. Savings.com, Inc.*, 2:14-cv-39-TLS, 2016 WL 3181826, at *4 (N.D. Ind. June 8, 2016) (finding CFAA claim adequately pled emphasizing that "[b]y alleging that the Defendants knowingly and intentionally circumvented the Plaintiff's security measures after the Plaintiff blocked access from certain cloud computing/internet service providers"). As pled in the Complaint, authorized access to the Ubiquiti firmware ended upon breach of the contractual terms set forth in the Terms of Use and Firmware License Agreement and End User License Agreement. *See* Compl. ¶¶ 37-42.

Cambium relies on inapposite case law in order to claim that its access was permissible and not without authorization. *See* MTD Br. at 23. None of the cases Cambium cited permit a

party to hack a computer in violation of the terms of licensing agreements.[7] To the contrary, *Bittman v. Fox*, 107 F. Supp. 3d 896 (N.D. Ill. 2015) emphasizes that the purpose of the CFAA is to prevent hacking. *See id.* at 901. *Bittman* involved third-parties creating a Facebook page supposedly in violation of Facebook's terms of use, not the direct access of any of the Plaintiffs' proprietary data as is the case here. *Id.* at 900-01. In *Halperin v. International Web Services, LLC*—a case Cambium also relies on—the Court opined that exceeding the terms of the scope of an EULA may be sufficient to state a claim for violation of the ICTA, but held that the Plaintiff had failed to provide adequate notice regarding whether that was the theory of liability because, *inter alia*, the Plaintiff failed to either attach the EULA or identify provisions that were allegedly breached. 123 F. Supp. 3d 999, 1011 (N.D. Ill. 2015). By contrast, here, Ubiquiti has attached the Firmware License Agreements and outlined with specificity the fact that the unauthorized access is due to breach of the Firmware License Agreements restrictions. *See, e.g.*, Compl., Exs. B & C; *id.* ¶¶ 193, 203, 215, 235.

Cambium is incorrect that only the "owner" of the server, and not a software licensor can control access for purposes of the CFAA or ICTA. There is no strict "ownership" requirement to state a claim for violation of the CFAA as Cambium asserts. Indeed, "[i]ndividuals other than the computer's owner" may bring an action under the CFAA because they "may be proximately harmed by unauthorized access, particularly if they have rights to data stored on [the computer]." *Theofel v. Farey–Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (emphasis added) ("[D]istrict court erred by reading an ownership or control requirement into the Act," leading it to erroneously

---

[7] Defendants' reliance on *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 600 (E.D. Va. 2005) is misplaced as *SecureInfo* does not follow the Seventh Circuit's test as outlined in *Citrin* for what constitutes unauthorized access.

dismiss CFAA claim "on the theory that the Act does not apply to unauthorized access of a third party's computer"); *see also BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *16 (S.D. Tex. Mar. 29, 2016), *modified on reconsideration*, No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) ("[I]n light of the plain language of the [CFAA], several courts—including one recently within our circuit—have determined that there is no ownership requirement of the protected computer at issue to state a viable CFAA claim.") (collecting cases); *Philips Med. Sys. P.R., Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 231 (D.P.R. 2016) (citing to *Theofel* with approval); *Teleflora LLC v. Florists' Transworld Delivery, Inc.*, C.A. No. 03-05858, ECF No. 238 at 8-9 (N.D. Cal. June 14, 2004) (declining to dismiss CFAA claim based on unauthorized access to plaintiff's data on a third-party's computer system).

Cambim's ownership argument also fails for the ICTA claim. *See People v. Janish*, 2012 IL App (5th) 100150 (2012) ¶ 22 (determining ownership for purposes of computer tampering is "much broader" than traditional property law). It is sufficient that Ubiquiti owns the firmware on protected M-series devices that Cambium's Elevate firmware hacks. *See id.* (emphasizing actual possession of computer is not required, rather a mere interest in property on the computer is sufficient).

### G.  Ubiquiti Has Adequately Alleged RICO Claims.

Ubiquiti has alleged a wide-spread RICO conspiracy between Cambium, Winncom, Dmitry Moiseev, and Sakid Ahmed (the "Hacking Enterprise") through which Defendants carried out mail and wire fraud. *See* Compl. ¶¶ 131-167, 358. The Complaint also alleges that the Hacking Enterprise conspired with Defendant Blip to make false advertisements and statements regarding the Hacked Firmware to ensure financial gain. *See id.* ¶¶ 373-97. This is sufficient to state claims for violation of RICO. 18 U.S.C. § 1962. Defendants' misguidedly challenge the propriety of including employees, an employer, and third parties in an association-in-fact-enterprise.

Defendants also challenge the RICO claims by asserting that the Hacking Enterprise engaged in only run-of-the-mill commercial activities. This challenge is without merit, as Ubiquiti alleges that the Hacking Enterprise engaged in a purposeful, coordinated effort to infringe on Ubiquiti's intellectual property and contractual rights exceeding the scope of run-of-the-mill commercial activities.

### 1. Ubiquiti Has Adequately Alleged an Association-in-Fact Enterprise.

Contrary to Defendants' assertion, there is nothing improper about an association-in-fact enterprise consisting of employees, their employer, and other third-parties—precisely what the Hacking Enterprise involves. *See, e.g.*, *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 635 (E.D. Ky. 2011) ("The interconnectedness of the various parties, as corporate entities, agents, and officers of one another does not mean" they cannot form an association-in-fact enterprise); *In Securiton Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) (upholding finding of RICO enterprise which consisted of*, inter alia*, an individual defendant and two of his corporations); *Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1168 (5th Cir. 1984) (association of company and its employees and another individual for the purpose of selling office supplies to the plaintiff and concealing those sales constituted an enterprise), *rev'd on other grounds*, 135 F.3d 960 (5th Cir. 1998).

### 2. The Hacking Enterprise Is Not a Run-of-the-Mill Commercial Partnership.

Ubiquiti has alleged a Hacking Enterprise that engaged in fraudulent and unlawful activities that went far beyond "garden variety" commercial activities. Defendants joined together and acted in concert, relying on each other for specific roles, in order to ensure consumer deception and financial gains beyond those they could have obtained through "run-of-the-mill" commercial activities. *See* Compl. ¶¶ 359-64. Indeed, Cambium does not even challenge the fact that the

Complaint adequately pleads that the Hacking Enterprise engaged in numerous acts of mail and wire fraud to further their scheme and ensure personal gains. *See id.* ¶¶ 93-105, 110-126, 160. And, Ubiquiti has expressly alleged that the activities of the Hacking Enterprise and its co-conspirator Blip went beyond the usual business relationships that may have otherwise lawfully existed between these entities. *See, e.g.*, *id.* ¶ 376 ("The members of the Hacking Enterprise worked together to exceed the permissible and ordinary scope of a manufacturer-distributor relationship. So too did co-conspirator Blip."). This is sufficient to plead the existence of a RICO Enterprise. *See Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1094-95 (N.D. Ill. 2016); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 426–27 (S.D.N.Y. 2010) (finding that the complaint alleged a plausible RICO enterprise comprising of a debt-buying company, debt collection agency, process service company and others); *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655-656 (7th Cir. 2015) (distinguishing "between two situations: a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest, versus a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest," with the latter being sufficient to form a RICO Enterprise).

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. Ubiquiti's claims are well supported by Ubiquiti's ownership of copyrighted firmware, Cambium's breach of license agreements and specific allegations of Cambium's and other Defendants' misconduct with respect to Ubiquiti's firmware, customers, and Cambium's Elevate product.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Elizabeth B. Herrington*
Elizabeth B. Herrington (IL Bar No. 6244547)
Zachary Ryan Lazar (IL Bar No. 6325727)
77 West Wacker Drive
Chicago, IL  60601-5094
312.324.1000 (Telephone)
312.324.1001 (Facsimile)
beth.herrington@morganlewis.com
zachary.lazar@morganlewis.com

Robert C. Bertin (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
202.739.3000 (Telephone)
202.739.3001 (Facsimile)
robert.bertin@morganlewis.com

Mark L. Krotoski
1400 Page Mill Road
Palo Alto, CA 94304-1124
650.843.4000 (Telephone)
650.843.4001 (Facsimile)
mark.krotoski@morganlewis.com

Amy M. Dudash (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
215.963.5000 (Telephone)
215.963.5001 (Facsimile)
amy.dudash@morganlewis.com

*Attorneys for Plaintiff Ubiquiti Networks, Inc.*