# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ICC EVALUATION SERVICE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-54 (EGS) |
| ) | |
| INTERNATIONAL ASSOCIATION OF ) | |
| PLUMBING AND MECHANICAL ) | |
| OFFICIALS, INC., and IAPMO ) | |
| EVALUATION SERVICE, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff ICC Evaluation Service, LLC ("ICC") brings this action against Defendants the International Association of Plumbing and Mechanical Officials, Inc. and IAPMO Evaluation Service, LLC (collectively "Defendants") alleging: (1) copyright infringement, in violation of 17 U.S.C. §§ 101 *et seq.* ("Copyright Act"); (2) breach of contract; (3) tortious interference with contract; and (4) tortious interference with prospective business relationships. *See generally* Am. Compl., ECF No. 13. Defendants move to dismiss ICC's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Defs.' Mot. Dismiss, ECF No. 15; Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem. Supp."), ECF No. 15-1. Upon consideration of the motion, the response and reply thereto, the

applicable law, and the entire record, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.**

**I. Background**

   ICC and IAPMO are competitors in a national market for services that evaluate building products to assess their compliance with building codes and regulations. *See* Am. Compl. ¶¶ 10-15. ICC prepares Evaluation Reports on building products and publishes them on its website, where they are available free of charge. *Id.* ¶ 1. In preparing the reports, ICC "employs highly experienced professionals, including licensed architects and engineers specializing in civil, structural, fire protection, and mechanical engineering." *Id.* ICC also develops original criteria, referred to as "Acceptance Criteria," on which it relies in preparing its Evaluation Reports. *Id.* ¶ 2.

   ICC alleges that Defendants "reproduced in substantial and significant part, and copied with minimal changes" seventeen works authored and copyrighted by ICC. *Id.* ¶ 25. The copyrighted works at issue are thirteen Evaluation Reports and four Acceptance Criteria. *Id.* ¶ 24. ICC also alleges that Defendants are in breach of ICC's "Website User Agreement" that prohibits, among other things, the reprinting, republishing, modification, or distribution of ICC's materials without express written permission. *Id.* ¶¶ 43-49. ICC further alleges that Defendants tortiously interfered with ICC's contractual relationships by

2

copying and reproducing its works, misrepresenting their
authorship, and failing to obtain advance approval for their
use. *Id.* ¶ 119. Finally, ICC alleges that Defendants tortiously
interfered with its business relationships by "offering to
produce evaluation reports at a lower cost and/or more quickly
by copying and reproducing . . . proprietary, copyrighted
Evaluation Reports." *Id.* ¶¶ 41-42; *see also id.* ¶¶ 125-26.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6) tests the legal sufficiency of a complaint.
*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A
complaint must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief, in order to give
the defendant fair notice of what the . . . claim is and the
grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (quotation marks omitted). The plaintiff
need not plead all of the elements of a *prima facie* case in the
complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14
(2002).

Despite this liberal pleading standard, to survive a motion
to dismiss a complaint "must contain sufficient factual matter,
accepted as true, to state a claim for relief that is plausible
on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quotation marks omitted). A claim is facially plausible when

3

the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

The court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), considering "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678. Only a complaint that "states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

4

## III. Analysis

### A. ICC's Amended Complaint States a Plausible Claim of Copyright Infringement.

To establish copyright infringement, a plaintiff must prove: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998)(quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 449 U.S. 340, 361 (1991)). For purposes of surviving a motion to dismiss, a complaint must allege: "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (quotation marks omitted). Incorporated within the fourth *Newborn* element is the requirement of "substantial similarity": the requirement that the plaintiff must show (a) that the defendant actually copied the plaintiff's work and (b) that the defendant's work is "substantially similar" to protectable elements of the plaintiff's work. *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 22 (D.D.C. 2010)(citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002)); *see also*

5

*McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015). Defendants argue that ICC has failed to satisfy the first, second, and fourth *Newborn* elements and thus has failed to state a claim of copyright infringement. Defs.' Mem. Supp. at 6-8; Defs.' Reply, ECF No. 22 at 2-7.

### 1. Identification and Ownership

Defendants argue that ICC's amended complaint fails to satisfy *Newborn*'s first and second requirements. Defs.' Reply at 6. They assert that the amended complaint fails to identify "what portions, if any, of the works at issue are, in fact, protected by copyright" and further fails to allege "that those protected portions have been infringed by Defendants." Defs.' Mem. Supp. at 7. According to the amended complaint, the registration certificate for each of the seventeen works at issue includes a notice of "Limitation of copyright claim." *See* Am. Compl., ECF No. 13-4 through 13-20, Exs. 4-20. For example, the copyright registration for ICC's Evaluation Report ESR-1215 provides as follows:

> **Material excluded from this claim:** Prior versions of this report; certain third-party text.

> **New material included in this claim:** New and revised text and table.

*Id.*, ECF No. 13-4, Ex. 4. Accordingly, Defendants argue, ICC has failed to satisfy the first and second *Newborn* requirements

because the works at issue are "not entirely original" and are
"not fully owned by Plaintiff." Defs.' Reply at 3.

ICC counters by acknowledging that it was not the author of
certain third-party text included in the works at issue and that
that third-party text is therefore not part of its copyrighted
material. Pl.'s Opp., ECF No. 20 at 15. But ICC asserts that, at
the motion to dismiss stage, it need not specify which discrete
portions of its copyrighted works are protected; rather it need
only "identify the 'specific original works' at issue"—*i.e.*,
the seventeen copyrighted works that form the basis of its
claim. *See id.* at 11-13.

Defendants' argument that ICC has failed to satisfy the
first two *Newborn* elements—identification and ownership of
specific original works—is unavailing. To satisfy the first
*Newborn* element, some courts require a copyright plaintiff to
distinguish protectable from unprotectable material and to
specify which material was copied by the defendant. *E.g.*,
*Ritani, L.L.C. v. Aghjayan*, 880 F. Supp. 2d 425, 442 (S.D.N.Y.
2012). Other courts, however, have held that a plaintiff
satisfies that element by simply "listing the copyright
registration numbers issued by the United States that correspond
to each of its copyrighted [works], annexing copies of the
United States Certificates of Copyright Registration, and
stating that the defendant has infringed upon one or more of

7

these copyrights." *Home & Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004). The Court is persuaded that the latter approach is preferable at the motion to dismiss stage, as "[t]here is no requirement that copyright claims must be pled with particularity." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *3-4 (N.D. Cal. May 11, 2009) (denying a motion to dismiss a copyright infringement claim even though portions of plaintiff's work were not protectable and plaintiff's complaint did not specify which portions of the protected work had been copied); *see also* 6 William F. Patry, *Patry on Copyright* § 19:5 (2016) ("While a plaintiff must plead ownership of a specific original work of authorship, it need not specify which individual elements within the work are protected."). Accordingly, ICC's failure to distinguish the protectable from the unprotectable portions of the seventeen relevant works and to indicate exactly which portions of the protectable material were copied is not fatal at the motion to dismiss stage. Instead, the amended complaint's list of seventeen copyrighted works, Am. Compl. ¶ 25, the appended registration certificates, *id.*, ECF 13-4 through 13-20, Exs. 4-20, and the amended complaint's allegations of infringement, *id.* ¶¶ 101-03, are sufficient to satisfy the first *Newborn* element.

8

Further, ICC satisfied the second *Newborn* element——copyright ownership——by appending to its complaint the copyright registration for each work that was allegedly copied. *See id.*, ECF 13-4 through 13-20, Exs. 4-20; *Prunte v. Universal Music Grp.* 484 F. Supp. 2d 32, 39 (D.D.C. 2007) (explaining that ownership attaches "after the Copyright office . . . registers the copyright").

### 2. "By What Acts [and] During What Time"

Defendants' second argument is that ICC fails to allege "how, or in what manner, Defendants copied, modified or otherwise used" ICC's protected works, thereby failing the fourth prong of the *Newborn* test. Defs.' Mem. Supp. at 8. In response, ICC argues that the amended complaint clearly identifies those publications published by Defendants that infringed ICC's protected works. Pl.'s Opp. at 10.

Defendants' argument here also fails. Throughout its amended complaint, ICC identifies the specific publications in which Defendants allegedly copied its protected works. *See, e.g.*, Am. Compl. ¶ 64 ("Defendants have knowingly and willfully copied substantial portions of ESR-2017 and are or have been publishing and distributing it on the Internet as 'IAPMO Evaluation Report No. 2017 . . . .'"); *id.* ¶ 67 ("Defendants have knowingly and willfully copied substantial portions of ES Evaluation Report No. ESR-2380 and are or have been publishing

9

and distributing it on the Internet as 'UES Evaluation Report
No. 386 . . . .'"); *id.* ¶ 97 ("Defendants have knowingly and
willfully copied substantial portions of ES Acceptance Criteria
No. 86 and are or have been publishing and distributing it on
the Internet as 'IAPMO-ES Evaluation Criteria 004-2010.'"). By
providing this one-to-one correspondence between its
specifically identified copyrighted works and allegedly
infringing works published by Defendants, and by providing
specific dates for the registration of the various copyrights at
issue in this case, *see, e.g., id.* ¶ 63 ("Effective September
21, 2015, [ICC] registered with the Copyright Office its
copyright in ES Evaluation Report No. ESR-2017 . . . ."), ICC
has sufficiently specified "by what acts" and "during what time"
Defendants allegedly infringed its copyrights. In fact, ICC has
exceeded what is required by *Newborn*'s fourth prong by
specifying a one-to-one correspondence between its copyrighted
works and Defendants' allegedly infringing works. *See, e.g.,*
*Frerck v. Pearson Educ., Inc.*, No. 11-cv-5319, 2012 WL 1280771,
at *3 (N.D. Ill. Apr. 16, 2012) (explaining that plaintiff
making a copyright infringement claim can survive a motion to
dismiss even without pleading "specific details as to each
infringing act").

    To the extent that Defendants' argument concerning the
fourth *Newborn* prong is grounded in the notion that ICC has

failed to properly plead "substantial similarity" between its
copyrighted works and the allegedly infringing works, *see* Defs.'
Reply at 4-5, this argument also fails. In some circuits, the
"substantial similarity" analysis occurs at the motion to
dismiss stage. *E.g.*, *Ritani*, 880 F. Supp. 2d at 441 ("[T]he
courts in this Circuit considering motions to dismiss copyright
claims have held that a plaintiff with a valid copyright must
allege that (1) defendant has actually copied the plaintiff's
work; and (2) the copying is illegal because a substantial
similarity exists between the defendant's works and protectable
elements of plaintiff's.") (quotation marks omitted). In this
Circuit, however, the courts have taken differing approaches.
*Compare Roe v. Bernabei & Wachtel P.L.L.C.*, 85 F. Supp. 3d 89,
99 (D.D.C. 2015)("At the pleading stage, a party alleging
copyright infringement need only claim ownership over the
copyrighted work, that the party has registered the work in
accordance with statute, and that the defendant infringed."),
*and Prunte*, 484 F. Supp. 2d at 41 ("Substantial similarity is a
question that should be decided either by a factfinder at trial
or, in some cases, in the context of a motion for summary
judgment, not on a motion to dismiss for failure to state a
claim under Rule 12(b)(6)."), *with Gaines v. District of
Columbia*, 961 F. Supp. 2d 218, 223-24 (D.D.C. 2013) (dismissing
copyright infringement claim on grounds that there was

11

"absolutely no similarity" between the copyrighted work and the allegedly infringing work).

The Court is of the view that *Prunte*'s admonition to generally avoid the "substantial similarity" analysis at the motion to dismiss stage is correct. Because "substantial similarity is customarily an extremely close question of fact," *Sturdza*, 281 F.3d at 1296, the analysis is better suited for the summary judgment context.[1]

Accordingly, ICC has stated a claim for copyright infringement. Defendants' motion to dismiss that claim is **DENIED**.

---

[1] If the "substantial similarity" analysis were warranted at this stage, ICC would have to both "identify[] which aspects of [its] work[s] . . . are protectible by copyright" and show that the allegedly infringing works are "so similar to [its] work[s] that an ordinary reasonable person would conclude that the defendant[s] unlawfully appropriated [ICC's] protectible expression." *Sturdza*, 281 F.3d at 1295-96 (quotation marks omitted); *see also Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 46 (D.D.C. 1999). At this juncture, although ICC has offered side-by-side comparisons of certain of its works and certain of Defendants' allegedly infringing works that could permit a reasonable observer to conclude that appropriation occurred, *see* Pl.'s Opp. at 5-9; *Gustave-Schmidt*, 226 F. Supp. 2d at 196 (a court may consider documents "incorporated by reference in the complaint" when considering a motion to dismiss), ICC has yet to identify which portions of its works are protectable by copyright.

**B. ICC's State Law Claims of Breach of Contract and Tortious Interference are Preempted by the Copyright Act.**

Section 301 of the Copyright Act expressly provides for the preemption of state law claims under certain circumstances:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). As the D.C. Circuit has explained: "In broadly pre-empting state statutory and common-law copyright regulation, Congress sought to enhance predictability and certainty of copyright ownership by establishing a uniform method for protecting and enforcing certain rights in intellectual property." *Sturdza*, 281 F.3d at 1303 (citation, quotation marks, and alteration omitted). However:

> [N]othing in the Copyright Act annuls or limits any rights or remedies under the common laws or statutes of any State with respect to a work that does not come within the subject matter of copyright or activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright.

*Id.* at 1304 (quoting 17 U.S.C. § 301(b)(1), (3)) (quotation marks and alteration omitted). In other words, a state law claim is preempted by the Copyright Act only if both the "subject matter" and "equivalency" requirements are met: "the copyrighted

13

work must be the type of work protected by copyright law and the state law right must be equivalent to a right protected by the Copyright Act." *Id.* (citing *Wrench L.L.C. v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001)); *see also Ass'n of Am. Med. Colls. v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 22 (D.D.C. 2004).

ICC does not dispute that its state law claims satisfy the "subject matter" requirement. The "subject matter" of copyright extends to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). ICC's Evaluation Reports and Acceptance Criteria that form the basis for its state law claims are just such "original works of authorship" that are fixed in a "tangible medium of expression." Further, the scope of the Copyright Act's "subject matter" extends "beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected." *Wrench*, 256 F.3d at 455; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849-50 (2d Cir. 1997) (holding that "subject matter" within the meaning of § 301 includes "uncopyrightable" as well as "copyrightable" elements). Accordingly, the works at issue here fall within the "subject matter" of copyright within the meaning of § 301.

Whether ICC's claims are preempted thus turns on the "equivalency" requirement. A right protected by state law is *not*

14

equivalent to a right protected by the Copyright Act if it satisfies the "extra element" test: "[I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Sturdza*, 281 F.3d at 1304 (quoting *Wrench*, 256 F.3d at 456). "To determine whether a state law claim is qualitatively different from a copyright claim——that is, whether the state claim has an 'extra element'——courts generally examine both the elements of the state law cause of action and the way the plaintiff has actually pled that cause of action." *Id.*

Defendants argue that ICC's breach of contract and tortious interference claims are preempted by the Copyright Act because they are "copyright claims loosely disguised as tort and contract law claims." Defs.' Mem. Supp. at 9. ICC counters that each of its state law claims satisfies the "extra element" test and therefore avoids preemption. Pl.'s Opp. at 17. Each of ICC's state law claims will be addressed in turn.

### 1. Breach of Contract

In the District of Columbia, the elements of a breach of contract claim are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a

breach of that duty; and (4) damages caused by breach." *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). ICC's amended complaint alleges that Defendants breached a contract with ICC——specifically ICC's Website User Agreement——when Defendants:

> willfully, repeatedly, and systematically copied [ICC]
> Evaluation Reports available on the [ICC] website and
> modified those reports, failed to preserve [ICC's]
> copyright notice on those reports, and used those copies
> and modified versions thereof for commercial purposes,
> including distributing those copies and modified
> versions and representing that the copies and modified
> reports reflected and included Defendants' own
> evaluations and conclusions.

Am. Compl. ¶ 112.

Defendants argue that ICC's breach of contract claim fails to satisfy the "extra element" test because it boils down to "a claim regarding the alleged copying, reproducing or distributing [of] materials protected by copyright," and thus does not assert a right different than one provided by the Copyright Act. Defs.' Mem. Supp. at 11-13. ICC counters that the "extra element" test has been satisfied in two different ways. First, it contends that the existence of a promise between two parties——here, between ICC and Defendants——constitutes an "extra element." Pl.'s Opp. at 20-21. Second, it asserts that Defendants' purported removal of copyright notices from the copyrighted

16

works taken from ICC's website also constitutes an "extra element" for purposes of breach of contract. *Id.* at 21-22.

Courts have taken two conflicting approaches to the "extra element" analysis in the context of a breach of contract claim. Some courts have held that the mere contractual promise not to copy, reproduce, perform, or distribute provides an "extra element" sufficient to create a right distinct from any right created by the Copyright Act. *See Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 442 n.5 (S.D.N.Y 2011) (citing *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1327 (11th Cir. 2010); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453-55 (7th Cir. 1996); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990)). Other courts, however, are of the view that a contract claim should be preempted when the contractual rights are essentially "identical to or derivative of rights conferred by the Copyright Act." *See id.* (citing *Ritchie v. Williams*, 395 F.3d 283, 287-88 (6th Cir. 2005); *Wrench*, 256 F.3d at 457).

The Court is persuaded that the "extra element" test should not be satisfied by the mere promise not to infringe upon those rights already protected by the Copyright Act. *See* 17 U.S.C. § 106.[2] As the *Wrench* court reasoned, if a promise to refrain from

---

[2] Section 106 provides in full:

reproducing, performing, distributing, or displaying a copyrighted work is deemed an "extra element" and thereby causes a contract claim to avoid preemption, that result "would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of § 106." 256 F.3d at 457-58; *see also Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 931 (S.D.N.Y. 1996) ("[A] breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction,

---

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
    (1)  to reproduce the copyrighted work in copies or phonorecords;
    (2)  to prepare derivative works based upon the copyrighted work;
    (3)  to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
    (4)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
    (5)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
    (6)  in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

performance, distribution, or display).") In other words, because a promise not to infringe the rights protected by the Copyright Act simply reiterates the rights created by the Copyright Act, a claim based on the breach of such a promise should be preempted.

ICC's breach of contract claim is preempted by the Copyright Act. ICC asserts that its Website User Agreement creates a contract between it and Defendants, and the promise inherent in that agreement is sufficiently an "extra element." Pl.'s Opp. at 21. But this promise "amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work." *Wrench*, 256 F.3d at 457. As such, it merely reiterates the rights ICC has under the Copyright Act. Absent any "qualitative difference" from a copyright infringement claim, ICC's breach of contract claim is preempted. *See Sturdza*, 281 F.3d at 1304.

Additionally, ICC's argument that an "extra element" can be found because Defendants breached the Website User Agreement by removing copyright notices from ICC's copyrighted works is unavailing. *See* Pl.'s Opp. at 21-22. There is no qualitative difference between the right to be free from the unauthorized removal of one's copyright notice from one's protected work, as ICC claims it was promised under the contract, and the right to be free from the unauthorized reproduction of one's protected

19

work or the right to be free from preparation of derivative work based on one's protected work, as guaranteed by the Copyright Act. *See* 17 U.S.C. § 106(1)-(2). In other words, the contractual promise not to remove the copyright mark preserves rights already created by the Copyright Act.

Accordingly, ICC's breach of contract claim is not qualitatively different from its copyright claim and is therefore preempted by the Copyright Act.

### 2. Tortious Interference with Contract

In the District of Columbia, to make out a *prima facie* case of tortious interference with contract, the plaintiff must demonstrate: "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Havilah Real Prop. Servs., L.L.C. v. VLK, L.L.C.*, 108 A.3d 334, 345-46 (D.C. 2015) (quotation marks omitted). ICC alleges that Defendants intentionally "induced and/or caused" ICC's customers to breach their contracts with ICC by:

> (a) providing [ICC's] Evaluation Reports to Defendants to be copied and used by them, and/or (b) permitting reproduction of significant parts of [ICC] Evaluation Reports in Defendants' evaluation reports, and/or (c) permitting Defendants to "misrepresent" authorship of [ICC's] proprietary and copyrighted material, and/or (d) failing to obtain advance approval from [ICC] when there was a question about the use of an [ICC] Evaluation Report.

20

Am. Compl. ¶ 119.

Defendants argue that the gravamen of this claim is "still
that Defendants allegedly copied and used the reports,
reproduced the reports, and allegedly misrepresented authorship
of the reports and failed to obtain approval or a license from
[ICC] regarding use of the Evaluation Reports," which implicates
rights Defendants assert are "co-terminus with copyright law."
Defs.' Mem. Supp. at 13-14. ICC counters that its tortious
interference with contract claim is vindicating rights separate
and apart from those guaranteed by the Copyright Act because the
requirement of intent constitutes an "additional element," Pl.'s
Opp. at 26, and because its allegation that Defendants
"misrepresent[ed]" its copyrighted works and failed to obtain
"advance approval" to use those works are rights not protected
by the Copyright Act. *Id.* at 26-27.

ICC's tortious interference with contract claim is
preempted by the Copyright Act. To avoid preemption of a
tortious interference with contract claim, the defendant must
"interfere[] with the plaintiff's contractual rights through
conduct *other* than 'reproduction[,] . . . preparation[,] . . .
distribution[,] . . . performance[,] . . . or display' of the
copyrighted work." *Sturdza*, 281 F.3d at 1304 (quoting 17 U.S.C.
§ 106). In this case, ICC has not sufficiently alleged that
Defendants have engaged in "other" contractual interference.

First, contrary to ICC's assertion, the *scienter* requirement of tortious interference is not an "extra element" that permits the claim to avoid preemption. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature.") (quotation marks omitted). Second, ICC's allegation that Defendants failed to obtain "advance approval" to use its copyrighted works does not take the tortious interference with contract claim outside of preemption because "advance approval" is a right expressly established in § 106. 17 U.S.C. § 106 ("[T]he owner under this title has the exclusive rights to do and to *authorize* any of the following . . . .") (emphasis added). And third, ICC's assertion that Defendants have "misrepresented" its copyrighted works is essentially an allegation of "failure to attribute," which "is alone insufficient for a state-law claim to avoid Copyright Act preemption." *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74 (D.D.C. 2000); *see also Peckarsky v. Am. Broad. Co.*, 603 F. Supp. 688, 696 (D.D.C. 1984) ("Although section 106 does not explicitly protect the right of attribution of authorship, assertion of such a claim in an otherwise pre-empted common law action will not save the common law claim from pre-emption."). Because ICC's claim of tortious interference with contract fails to assert rights qualitatively

22

different from those created by the Copyright Act, it is
preempted.

### 3. Tortious Interference with Prospective Business Relationships

In the District of Columbia, the elements of a *prima facie*
case of tortious interference with prospective business
relationships are the same as those of a *prima facie* case of
tortious interference with contract. *Havilah*, 108 A.3d at 346.
ICC alleges that Defendants intentionally interfered with its
business relationships by "offering products that could not have
been produced at the speed or at the cost offered without the
unlawful use of [ICC]'s works." Am. Compl. ¶ 126.

Defendants again assert that this claim is a repackaged
copyright infringement claim, Defs.' Mem. Supp. at 14 ("The
gravamen of this claim is the unauthorized reproduction,
modification and distribution of [ICC's] works."), and, as such,
is preempted by the Copyright Act. *Id.* at 14-15. ICC counters
that the *scienter* requirement provides an "extra element" that
precludes preemption. Pl.'s Opp. at 30. And it asserts that the
"wrongful offering of similar evaluation reports or evaluation
criteria more quickly and for less money is the gravamen of
[its] claim." *Id.* at 31 (quotation marks omitted). ICC asserts
that that conduct differs from the rights protected by the
Copyright Act. *Id.*

23

ICC's claim of tortious interference with prospective business relationships is preempted by the Copyright Act. First, as with the claim of tortious interference with contract, the *scienter* requirement of tortious interference with prospective business relationships is not an "extra element" that permits the claim to avoid preemption. *Comput. Assocs.*, 982 F.2d at 717. Second, ICC's assertion that Defendants engaged in a "wrongful offering" that permitted Defendants to offer evaluation reports and criteria "more quickly and for less money" than ICC, Pl.'s Opp. at 30-31, asserts a claim that is not "*qualitatively different* from a copyright claim." *See Sturdza*, 281 F.3d at 1304 (emphasis added). An allegation of a "wrongful offering" is qualitatively no different than an allegation that Defendants have infringed ICC's exclusive rights "to reproduce" and "to distribute" its copyrighted works. *See* 17 U.S.C. § 106(1), (3). Further, that the Defendants allegedly profited at the expense of ICC from the reproduction and distribution——*i.e.*, the "wrongful offering"——does not satisfy the "extra element" test. *See M-I L.L.C. v. Stelly*, 733 F. Supp. 2d 759, 789-90 (S.D. Tex. 2010) (holding that a claim of tortious interference with prospective business relations is preempted "to the extent it is based on [plaintiff] losing prospective business that would otherwise flow from its exclusive use of [copyrightable material]"); *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d

24

1211, 1219 (E.D. Cal. 2004) (holding that a tortious interference with prospective economic advantage claim was preempted even though plaintiff alleged "loss of business").[3]

Defendants' motion to dismiss is therefore **GRANTED** with respect to ICC's claims of breach of contract, tortious interference with contract, and tortious interference with prospective business relationships.

**IV. Conclusion**

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's state law claims of breach of contract, tortious interference with contract, and tortious interference with prospective business relationships are hereby dismissed. An appropriate Order accompanies this Memorandum Opinion.

SO ORDERED.

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 19, 2016**

---

[3] Having concluded that ICC's state law claims are preempted, the Court does not address Defendants' alternative argument that ICC's state law claims are deficient as a matter of law.