**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TELEFLORA LLC, a Delaware limited liability company<br><br>Plaintiff(s),<br>v.<br><br>FLORISTS' TRANSWORLD DELIVERY, INC., a Michigan Corporation<br><br>Defendant(s). | NO. C 03-05858 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

This case involves claims of copyright, trade secret, unfair competition, intentional interference with contractual relations, and violations of federal and state computer fraud statutes. Plaintiff, Teleflora and Defendant, Florists' Transworld Delivery, Inc. ("FTD"), are direct competitors that provide software and other services to florists to manage their day-to-day business, and to send "flowers by wire." The dispute centers around allegations that FTD interfered with Teleflora's "flower by wire" business by altering proprietary software used by Teleflora's customers in order to switch customers to FTD's system. Presently before the Court is FTD's motion to dismiss multiple claims in Teleflora's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On April 5, 2004, the Court heard arguments from both parties on FTD's motion to

dismiss. For the reasons stated below, the Court GRANTS in part and DENIES in part FTD's motion to dismiss.

## II. BACKGROUND

Teleflora is a Delaware limited liability company with its principal place of business in Los Angeles, California. Teleflora provides various services to florists. Such services include licensing floral shop management software and the operation of a floral clearinghouse that promotes and facilitates long-distance delivery of fresh flowers through Teleflora member florists in the San Francisco Bay Area and other locations nationwide.

FTD is a Michigan corporation with its principal place of business in Downers Grove, Illinois. FTD provides floral services and products, technology products and services, floral shop supplies, and a floral clearinghouse that permits the long distance delivery of fresh flowers to florists in the San Francisco Bay Area and throughout the country. Teleflora alleges that FTD focused a significant portion of its business activities in Alameda and Contra Costa County and within this District.

Teleflora's Complaint includes claims for: (1) Misappropriation of Trade Secrets arising under Cal. Civil Code § 3426 *et seq.*; (2) Copyright Infringement arising under the Copyright Laws of the United States; (3) Fraud and Related Activity in Connection with a Computer under 18 U.S.C. § 1030 *et seq.*; (4) Unauthorized Access to Computers, Computer Systems and Computer Data under Cal. Penal Code § 502; (5)-(7) Tortious Interference with Contract arising under the state laws of California; and (8) Unfair Competition under Cal. Bus. & Prof. Code § 17200.

The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, with concurrent supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391, where a substantial portion of the events giving rise to this claim occurred.

FTD moves the Court to dismiss the following claims: claims three and four for computer fraud and abuse under federal and state law; claims five, six, and seven for intentional interference

2

with contractual relations; and claim eight for violation of Cal. Bus. & Prof. Code § 17200.

**A. The Alleged "Credit Card Hack"**

Teleflora and FTD are competitors in the "flowers by wire" market. Each operates a floral clearinghouse that allows its respective members to order flowers in one location to be delivered elsewhere. Complaint, ¶¶ 2-3, 8. If a member florist receives an order for flowers to be delivered by another florist, that florist can use either Teleflora's computerized order network (the "Dove Network") or FTD's (the "Mercury Network"). Complaint, ¶ 12. Both the sending and receiving florists must be subscribers of the chosen network for orders to be transmitted. Id. A florist can subscribe to either network, but must obtain special software to use both simultaneously. Additionally, both FTD and Teleflora offer members the ability to process their flower shop's credit card transactions. Complaint, ¶ 14. Both companies compete for their members' credit card processing business as well as for flower orders.

Both FTD and Teleflora offer an in-shop computer software system designed to help florists in running their businesses. These systems integrate and automate the day-to-day tasks and business functions of flower shops, including, for example, order management, inventory control, delivery management, and human resources functions. Complaint ¶ 15. Teleflora's shop management system is called "RTI," and it is distributed pursuant to a license agreement (the "RTI Software License Agreement"). Teleflora alleges that FTD has full knowledge of Teleflora's RTI Software licensing agreements. Complaint, ¶ 96; ¶¶ 17, 20. FTD's competing shop-management software is called FTD Advantage. Approximately a year ago, both RTI and FTD Advantage allowed florist users to choose whether to process their credit card transactions through either FTD or Teleflora. Complaint, ¶¶ 27-32. In the previous versions of the RTI software, Teleflora included software modules that enabled credit card processing through FTD. Complaint, ¶ 28. However, Teleflora deliberately removed the software modules in the current versions of RTI and prohibits any use of them with RTI in the absence of express authorization from Teleflora. Id. Teleflora alleges that FTD obtained an unauthorized copy of copyrighted software modules that enable credit card

3

processing through FTD. Allegedly, FTD makes, and distributes unauthorized copies of these software modules and modifies existing Teleflora customer systems by "accessing" Teleflora members' RTI systems and modifying them by inserting infringing copies of the modules without Teleflora's approval. Teleflora contends that this alteration effectively reroutes credit card processing to FTD. Complaint, ¶¶ 34-36.

Teleflora alleges that this type of conduct is expressly prohibited by the RTI Software License Agreement, which prohibits the RTI licensee florist from modifying the RTI software, or providing access to it to any third party. Complaint, ¶¶ 24, 25. FTD claims that this sort of "tying in" of the credit card business to the Dove Network system is an anti-competitive practice and that FTD is simply trying to offer customers a legitimate choice of which company the customer wants to use for credit card transactions. Furthermore, FTD contends that any activation of the old software modules on customers' computers was carried out with their permission.

### B. The Alleged "Dove Hack"

The other conduct complained about by Teleflora gives rise to the so called "Dove Hack." Teleflora sells software, (the "Dove Network Software") that enables its customers to gain access to the Dove Network and to send and receive orders electronically over the Teleflora Dove Network. Complaint, ¶¶ 7, 12. The Dove Network Software, like RTI, is distributed pursuant to a license agreement that defines the end-user's rights with respect to the software. Complaint, ¶44. Teleflora alleges that FTD had full knowledge of these license agreements. Complaint, ¶ 104. The Dove Network Software allegedly cannot interface with an FTD or third-party shop-management system without activating a "Foreign System Interface," or "FSI." The FSI is normally disabled in Teleflora's default system. Complaint, ¶45. The FSI cannot be enabled without Teleflora's express authorization, and is done on a customer-by-customer basis. Complaint, ¶ 45.

Teleflora claims that FTD has created a "hack" by offering a "Mercury Foreign Interface" software module that allegedly "accesses the Dove Network Software installed in a Teleflora-licensee's flower shop and then wrongfully alters it by enabling the Dove FSI." Id. This enablement

4

allows a customer's Dove Network Software to work directly with the FTD Advantage shop management system in direct violation of the customer's Dove Network Software License Agreement. Complaint, ¶ 49. See also ¶ 54, 80, 89.

FTD claims that it implemented the Mercury Foreign Interface with permission of the customers using the Dove Network Software, and that Teleflora does not identify a single florist involved in this "hack" nor does it attach a copy of the software license agreements that are allegedly violated.

Teleflora alleges that FTD's actions in connection with the "Dove Hack" violate 18 U.S.C. § 1030 (federal Computer Fraud and Abuse Act); California Penal Code § 502 (California's computer fraud statute); intentional interference with contract, and unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* Complaint, ¶¶ 118-121.

### C. The Alleged Contract Interference Scheme

The third conduct complained of by Teleflora involves an alleged "scheme" whereby FTD uses certain information that it acquires from Teleflora customers to convince them to breach their contracts with Teleflora. As mentioned previously, Teleflora and FTD both sell shop management systems. Teleflora's shop management system has the ability to integrate the sending and receiving of orders over FTD's Mercury Network. Complaint, ¶ 53. In order to enable Teleflora shop management systems to effectively communicate with FTD's Mercury Network, individual shops need specialized hardware from FTD, in the form of a "Mercury Interface Module" ("MIM") and an FTD-supplied modem (collectively, "MIM/Modem"). Complaint, ¶ 54. FTD requires that, prior to installation of a Teleflora shop management system, the Teleflora member must contact an FTD representative to request that a MIM/Modem be provided. Complaint, ¶ 55.

Teleflora alleges that when florists installing Teleflora software contact FTD to obtain the MIM/Modem required to interface the two systems, FTD convinces the Teleflora customers to use FTD Advantage rather than Teleflora's RTI systems that florists have already agreed to purchase. Complaint, ¶ 56-57. In addition, Teleflora claims that FTD has used "unfair, misleading and illegal"

5

means to convince florists not to install Teleflora shop management systems, including telling them that "Teleflora's shop management systems cannot interface with FTD's Mercury Network and in the alternative, refusing to provide the equipment necessary for such an interface." Complaint, ¶ 60.

### III.  STANDARDS

A claim may be dismissed as a matter of law for failure to state a claim on which relief can be granted for one of two reasons: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." Robertson v. Dean Witter Reynolds, Co., 749 F.2d 530, 534 (9th Cir. 1984). "A complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989). "[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory." Haddock v. Board of Dental Examiners, 777 F.2d 462, 464 (9th Cir. 1985).

"All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973). However, the Court will not accept allegations that are merely conclusive. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. 1031 (1981); Kennedy v. H & M Landing, Inc., 529 F.2d 987, 989 (9th Cir. 1976).

"The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence & Coordination, 507 U.S. 163, 168 (1993); Fed. R. Civ. P. 8. A heightened standard of pleading is required for allegations of fraud. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

6

stated with particularity." Fed. R. Civ. P. 9(b).

## IV. DISCUSSION

FTD has moved to dismiss claims 3 and 4 for failure to state a claim under a cognizable legal theory and claims 5-8 for failure to plead facts with sufficient particularity to constitute a claim for relief under federal pleading standards. Plaintiff contends that as a matter of law it is entitled to allege the computer fraud violations in claims 3 and 4, and that it has pled facts sufficient to state a claim upon which relief can be granted in the intentional interference and unfair competition claims (5-8).

**A.     Claim 3: Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.***

Teleflora alleges violations of the federal Computer Fraud and Abuse Act ("CFAA"), which provides a claim against one who, *inter alia*, "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). A "protected computer" is defined as one used in interstate commerce. 18 U.S.C. § 1030(e)(2)(B). Plaintiff also alleges claims under § 1030(a)(5)(A), or alternatively § 1030(a)(5)(c).[1] Section 1030(g) provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief." 18 U.S.C. § 1030(g). For the reasons discussed below, the Court denies Defendant's motion to dismiss the CFAA claim.

FTD argues that § 1030 *et seq.* cannot apply to its conduct as a matter of law, and therefore

---

[1] Title 18 U.S.C. § 1030(a)(5)(A) recites:
"[w]hoever knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."

Title 18 U.S.C. § 1030(a)(5)(c) recites:

"[w]hoever intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage."

7

the claims should be dismissed under Fed. R. Civ. P. 12(b)(6). Furthermore, FTD posits that it cannot be held liable under a criminal statute for an alleged breach of contract by Teleflora's customers. The Court will address each of these arguments sequentially.

### 1. Information and Protected Computers Under § 1030 et seq.

First, FTD asserts that the conduct Teleflora alleges, *i.e.* modification and interference of Teleflora's proprietary RTI Software and Dove Network Software on the customers' computers do not meet the requirement of the statute because unauthorized access under § 1030 *et seq.* is limited to "protected computers," not to software. FTD states that the unauthorized access must be "to data processing device or *hardware,* not merely to *software programs* stored on that computer." Motion pg. 8, ll 23-25 (emphasis added). Also, FTD argues that the intended application of § 1030(a)(2)(c) is to address unauthorized access to "information" in a protected computer, which refers to data, not software. Teleflora on the other hand argues that the term "information" as used in § 1030(a)(2)(c) clearly extends to software programs stored on the computer hardware.

The plain meaning of the statute controls unless the statutory language can lead to more than one reasonable interpretation. AZ Int'l v. Phillips, 179 F.3d 1187, 1192 (9th Cir. 1999). If there is more than one reasonable interpretation, the legislative history and entire statutory scheme may shed light on the meaning of a term. United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999); see also M-S-R Pub. Power v. Bonneville Power Admin., 297 F.3d 833, 844 (9th Cir. 2002) ("bedrock principle of statutory interpretation is that statutes should be interpreted so as to give effect to all of its provisions.").

The Court finds that the term "information" as used in 18 U.S.C. § 1030(a)(2)(c) is broad enough to encompass software applications stored on a protected computer. See § 1030(e)(6) (defining "exceeds authorized access" to altering information that the accesser is not entitled to obtain or alter); 18 U.S.C. § 1030(e)(8) (defining "damage" as used in § 1030(a)(5)(A)-(c) as any "impairment to the integrity or availability of data, a program, a system, or information); see also U.S.A v. Middleton, 231 F.3d 1207 (9th Cir. 2000) (affirming defendant's conviction under §

1030(a)(5)(A) for deleting software applications on his employer's computer, an act that exceeded the scope of his authorization); <u>Your NetDating Inc. v. Mitchell</u>, 88 F. Supp. 2d (N.D. Ill. 2000) (granting a temporary restraining order under § 1030 *et seq.* to prohibit a former programmer from "hacking" the dating service's website and diverting its clients and users to a porn site).

Teleflora alleges that FTD carried out the alleged "hacks," by (1) installing software modules that enable the diversion of credit card processing fees to FTD and (2) offering Teleflora customers the "Mercury Foreign Interface" which enables Dove Network Software to talk to FTD's Advantage shop management system. In order to carry out the type of changes on the desktops of the customer computers, as alleged in Teleflora's complaint, a party must make the alleged alterations to the computer owner's software. Therefore, the Court finds that the alleged conduct may constitute "alter[ing] information," as that term is used in § 1030(e)(6).

### 2. Exceeding Authorized Access

FTD's second attack on the applicability of § 1030 *et seq.* centers on the issue of whether "without authorization" or "exceeds authorized access" as used in § 1030(a)(2)(c) can apply to conduct where FTD has sought and received permission from the computer owners to access and make changes to the software on their computers. FTD argues that the statute cannot apply in a situation where the defendant has acted with a customer's permission. Teleflora responds, "[e]ven if the florists authorized FTD to access their physical computers, FTD's use of that access to alter Teleflora's proprietary RTI or Dove Network software . . . is a classic example of 'exceed[ing] authorized access' under the CFAA, because FTD unquestionably was not entitled to make such alterations." Teleflora's Opp. pg.11.

The Court denies FTD's motion to dismiss Teleflora's CFAA claim. A factual question exists as to whether FTD had actual permission from Teleflora customers, florists, to make changes on their computers, and if FTD had permission whether FTD exceeded the permission granted by the florists.

**B.      Claim 4: Cal. Penal Code § 502 *et seq.***

FTD objects to Teleflora's state law claims under California Penal Code §§ 502(c)(1)(B), 502(c)(2) and 502(c)(4) (collectively, California Computer Fraud statute, or "CCF").[2] FTD contends that these claims should be dismissed as a matter of law, or in the alternative, for failure to plead with particularity. Substantively, these state law provisions are analogous to the federal claim arising under CFAA.

Section 502 *et seq.*, permits both criminal and civil actions for unauthorized access to computers, computer systems and computer data. See Cal. Pen. Code § 502(e)(1). Section 502(e)(1) states that "the owner or lessee of the computer, computer system, computer network, computer program or data may bring a civil action against any person *convicted* under this section for compensatory damages . . ." Id. (emphasis added). The legislative intent of the statute is to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

---

[2] Cal. Pen. Code § 502 (c) recites:

> . . . [A]ny person who commits any of the following acts is guilty of a public offense:
>
> > (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer system, or computer network in order to . . . (B) wrongfully control or obtain money, property or data
>
> > (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
> > . . .
>
> > (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

10

United States District Court
For the Northern District of California

1  The crucial difference between a federal and a California state law claim for computer fraud
is that civil action for compensatory damages cannot be maintained under the state law until a
defendant has been convicted under the state statute for a criminal violation. Teleflora has cited no
case law that would suggest an independent civil remedy exists for violation of § 502 absent a
related criminal conviction. Therefore, as a matter of law the statute is inapplicable, and FTD's
motion to dismiss this claim is granted with prejudice.

### C. Claims 5, 6 and 7: Intentional Interference With Contracts

FTD asks the Court to dismiss claims five through seven that address claims for intentional interference with Plaintiff's RTI Software Licenses, Dove Network Software Licenses and Teleflora's Shop Management System Contracts, respectively. FTD claims that Teleflora has not pled specific acts or provided evidence to state a claim upon which the Court can grant relief. Specifically, FTD argues that Teleflora has not provided any evidence as to what florists and which contracts were involved.

Plaintiff responds that the Complaint contains substantial descriptions of the conduct involved and that Plaintiff's descriptions of the alleged contractual interference meet and exceed the pleading standard of Fed R. Civ. P. 8(a)(2), which require nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."

To state a claim for intentional interference with contractual relations, plaintiff must allege:

> 1) the existence of a valid contract between plaintiff and a third party;
> 2) the defendant's knowledge of the contract;
> 3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;
> 4) actual breach or disruption of the contractual relationship; and
> 5) resulting damage.

Quelimane Co. v. Stewart Title, 19 Cal. 4th 26, 55 (1998). When a plaintiff has stated sufficient facts to give rise to a cognizable legal claim, it is not the province of the district court to assess the merit of such claims at the pleading stage. Westways World Travel v. AMR Corp., 182 F. Supp. 2d 952, 955 (C.D. Cal. 2001); see also Bernheim v. Litt, 79 F.3d 318, 326 (2d Cir. 1996) ("It would be

11

burdensome to have the district court 'prune' a complaint at the pleading stage by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality."). Such an analysis is better done in the context of a motion for summary judgment where the true facts, as opposed to the presumed facts, are established. See Id.

Teleflora has quoted sufficient language from its contracts to put FTD on notice that its customer contracts prohibit third parties from accessing and modifying Teleflora proprietary software. See Complaint, ¶¶ 24, 25; see also Complaint, ¶¶ 80, 89, 97. Furthermore, Teleflora has stated in detail the type of conduct allegedly involved in by FTD in carrying out the alleged "Credit Card Hack," alleged "Dove Hack," and the alleged "Contract Interference Scheme."

Rule 8(a)(2) does not require that the complaint set forth a "defendant's precise role in the injurious conduct," but that a defendant be "put on notice as to the nature of the allegations against them" and "their relationship to the actions at issue in the case." Messina v. Mazzeo, 854 F. Supp. 116, 126 (E.D.N.Y. 1994). Teleflora has stated sufficient facts to constitute a cause of action for Intentional Interference with Contractual Relations in claims 5, 6 and 7. FTD's argument that Teleflora has not stated with particularity what customers and which contracts were interfered with are issues that can be addressed during discovery, or alternatively, on a motion for summary judgment. Accordingly, the Court denies Defendant's Motion to Dismiss claims 5, 6 and 7 pursuant to Rule 8(a)(2).

### D. Claim 8: Teleflora's Unfair Competition Claims

Teleflora's eighth claim for relief is based on violations of California's Unfair Competition Act ("UCA"). Cal. Bus. & Prof. Code § 17200, *et seq*. FTD contends that Teleflora's UCA claim should be dismissed because Teleflora has failed to state facts with reasonable particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. In addition, FTD contends that Teleflora is not entitled to restitution or disgorgement under the UCA.

### 1. Teleflora Has Plead Its UCA Claims With Reasonable Particularity

Teleflora has plead its UCA claims with reasonable particularity. Cal. Bus. & Prof. Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice ..." and establishes three types of unfair competition– unlawful, unfair, or fraudulent acts or practices. Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1153 (2000). "Unlawful" practices are those practices that are prohibited by law, whether "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (citing People v. McKale, 25 Cal. 3d 626, 632 (1979)). "Unfair" practices are those practices "whose harm to the victim outweighs its benefits." Id. (citing Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980)). "Fraudulent" practices are those practices that are likely to deceive the public and do not refer to the tort of fraud. Id.; Heighley v. J.C.Penney Life Ins. Co., 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003) (citing Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 211 (1983).

Fraud is not an essential element of Cal. Bus. & Prof. Code § 17200. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003). In cases where fraud is not an essential element of a claim but the defendant chooses to allege fraudulent practices by the plaintiff, the court's determination of whether the claim must meet the particularity requirement of Rule 9(b) depends on whether the claim is said to be "grounded in fraud." Id. at 1103-04. A claim is said to be "grounded in fraud" if the defendant "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." Id. at 1103. By contrast, if the defendant chooses to allege some fraudulent and some non-fraudulent conduct, rather than a unified course of fraudulent conduct, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." Id. at 1104.

The alleged "[u]nlawful practices in the nature of conduct contrary to the computer fraud and abuse statutes" recited in ¶ 119(a) of the complaint satisfy the requirements of Rule 9(b) because the alleged computer fraud is explained in the complaint, which Teleflora incorporates into the claim.

Teleflora's fraudulent and deceptive practices claims under the UCA, ¶¶ 119(g) and 119(h), are claims grounded in fraud, requiring Teleflora to met the heightened pleading requirements of Rule 9(b). Teleflora has met the requirement Rule 9(b) stating in extensive factual detail how FTD has allegedly undertaken fraudulent and deceptive practices in violation of the UCA.

Teleflora's other claims directed at "unfair practices" under the UCA recited in ¶ 119(b), ¶ 119(c), ¶ 119(d), ¶ 119(e) and ¶ 119(f) are not required to met the particularity requirement of Rule 9(b) because they are neither grounded in fraud nor allege fraudulent conduct. Even though not required, the "unfair practices" claims expressed in ¶ 119(b) and ¶ 119(c) of the complaint satisfy the reasonable particularity requirement of Rule 9(b) because Teleflora incorporates by reference paragraphs 7 through 117. The remaining UCA claims, recited in ¶ 119(d), ¶ 119(e) and ¶ 119(f) of the complaint, are directed at alleged "unfair practices" that Teleflora explains in detail to place FTD on sufficient notice and meet the pleading requirements.

The Court denies FTD's motion to dismiss Teleflora's unfair competition claims stated in claim 8 of the complaint.

### 2. Teleflora's Requested Remedies Are Appropriate Under the UCA

Citing to <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1145 (2003), FTD argues that restitution and disgorgement remedies are unavailable to Teleflora under the UCA because a competitor cannot claim restitution on the basis of profits it would have made but for defendant's alleged conduct. The UCA states: "[t]he court may make such orders or judgments . . . as may be necessary to restore any person in interest any money or property . . . which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has recently held that while restitution is an available remedy under the UCA, disgorgement of money obtained through an unfair business practice is an available remedy only to the extent that it constitutes restitution. <u>Korea Supply Co.</u>, 29 Cal. 4th at 1147-48. In <u>Korea</u> the court defined restitution as one "compelling a UCA defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to

14

persons who had an *ownership interest in the property* or those claiming through that person." Id. (emphasis added).

The Court finds that Teleflora's claims for restitution under the UCA are adequately pled. Teleflora has alleged that it had an ownership interest in payments due to Teleflora by virtue of existing contracts with its customers before FTD allegedly engaged in unfair business practices. Therefore, Teleflora's claim for restitution, or in the alternative, disgorgement of restitutionary profits, is warranted based upon the facts alleged. The Court denies FTD's motion to dismiss Teleflora Unfair Competition Claims on the grounds that Teleflora is not entitled to the requested relief.

### V. CONCLUSION

FTD's Motion to Dismiss is GRANTED in part and DENIED in part. The Court grants FTD's motion to dismiss claim 4 with prejudice. FTD's motion to dismiss claims 3, 5, 6, 7 and 8 is denied.

Dated: June 14, 2004      /s/ James Ware
JAMES WARE
United States District Judge

03cv5858md

15

**United States District Court**
For the Northern District of California

1  THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:
2  Karen P. Anderson kanderson@fenwick.com
3  Laurence F. Pulgram lpulgram@fenwick.com
4  Michael A. Sands msands@fenwick.com
5  Michael H. Rubin mrubin@fenwick.com
6  Neil D. Greenstein ndg@techmark.com
7  Robert M. Vantress rmv@svlg.com

**Dated:   June 14, 2004**                              **Richard W. Wieking, Clerk**

                                                        **By:____/JW Chambers/_____**
                                                        **Ronald L. Davis**
                                                        **Courtroom Deputy**