# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; <br> CAMBIUM NETWORKS, LTD.; <br> BLIP NETWORKS, LLC; <br> WINNCOM TECHNOLOGIES, INC.; <br> SAKID AHMED; and DMITRY MOISEEV, <br><br> *Defendants*. | Civil Action No.: 1:18-cv-05369 <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 12(b)(1)**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 4

    A. Ubiquiti Does Not Contest Dispositive Elements of Cambium's Opening Brief ... 4

    B. Ubiquiti's Copyright Claims Must be Dismissed – Count 4 ................................. 5

        1. Cambium is Licensed to Ubiquiti's Copyrighted Code Under the GPL ................ 5

        2. The GPL Infects Any Copyrighted Portions of the Ubiquiti Firmware................. 6

        3. Ubiquiti Fails to Address Cambium's Authorization Argument ........................... 7

        4. The Public Code Renders Ubiquiti's Copyright Registrations Invalid.................. 7

    C. The Remaining Related Claims Must be Dismissed in View of the GPL – Counts 1-3, 6-9, and 13 ................................................................................................... 8

    D. Ubiquiti's State Law Claims are Preempted by Copyright Claims ....................... 9

    E. Ubiquiti Cannot Prohibit Replacement of its Firmware – Counts 4 and 6 ........... 11

    F. Ubiquiti Fails to State a Claim Under the ICTA and CFAA – Counts 1 and 3 .... 12

    G. Ubiquiti Fails to Address its own License and Cambium's Cited Authority on Anti-Circumvention Claims – Count 2 ................................................................. 12

    H. Ubiquiti's RICO Claims Fail Because it Fails to Allege an Enterprise – Counts 14 and 15 .................................................................................................................. 14

    I. Customers Are Not Confused – Counts 5, 10-12 ................................................. 15

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*188 LLC v. Trinity Industries, Inc.*,
　300 F.3d 730 (7th Cir. 2002) ..................................................................................15

*Bachman v. Bear, Stearns & Co.*,
　178 F.3d 930 (7th Cir. 1999) ..................................................................................14

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
　No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016), modified
　on reconsideration, No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar.
　29, 2017) .................................................................................................................12

*Bible v. United Student Aid Funds, Inc.*,
　799 F.3d 633 (7th Cir. 2015) ..................................................................................14

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
　381 F.3d 1178 (Fed. Cir. 2004) ...............................................................................13

*Chicago Police Sergeants Ass'n v. City of Chicago*,
　2011 WL 2637203 (N.D. Ill. July 6, 2011) ...........................................................3, 6

*Computer Assocs. Int'l v. Quest Software, Inc.*,
　333 F. Supp. 2d 688 (N.D. Ill. 2004) ...............................................................6, 7, 8

*Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*,
　2018 WL 1514456 (W.D. Wis. Mar. 27, 2018) ........................................................3

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*,
　707 F.3d 869 (7th Cir. 2013) ..................................................................................15

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
　763 F.3d 696 (7th Cir. 2014) ..................................................................................15

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*,
　223 F. Supp. 2d 953 (N.D. Ill. 2002) .........................................................9, 10, 11

*Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*,
　No. 12 C 10275, 2013 WL 4011052 (N.D. Ill. Aug. 6, 2013) ..................................7

*Kennedy v. Nat'l Juvenile Det. Ass'n*,
　187 F.3d 690 (7th Cir. 1999) ................................................................................2, 5

*Lamparello v. Falwell*,
　420 F.3d 309 (4th Cir. 2005) ..................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522, 547 (6th Cir. 2004) ..................................................................................13

*Menzies v. Seyfarth Shaw LLP*,
    197 F. Supp. 3d 1076 (N.D. Ill. 2016) ............................................................................14

*Morningware, Inc. v. Hearthware Home Prod., Inc.*,
    No. 09 C 4348, 2012 WL 3835825 (N.D. Ill. Sept. 4, 2012) .........................................10

*Nielsen v. United Servs. Auto. Ass'n*,
    244 Ill. App. 3d 658 (1993) ..............................................................................................8

*Orioles, Inc. v. Major League Baseball Players Ass'n.*,
    805 F.2d 663 (7th Cir.1986) .............................................................................................9

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ............................................................................................9

*Qad. Inc., v. ALN Assocs., Inc*.
    770 F. Supp. 1261 (N.D. Ill. 1991), aff'd, 974 F.2d 834 (7th Cir. 1992) .........................7

*SecureInfo Corp. v. Telos Corp.*,
    387 F. Supp. 2d 593 (E.D. Va. 2005) .............................................................................12

*Theofel v. Farey–Jones*,
    341 F.3d 978 (9th Cir.2003), *amended by* 359 F.3d 1066 (9th Cir.2004) ....................12

*Versata Software, Inc. v. Ameriprise Fin., Inc*.,
    No. A-14-CA-12-SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014) ...............................6

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ............................................................................................4

*Wilson v. Electro Marine Sys., Inc.*,
    915 F.2d 1110 (7th Cir. 1990) ........................................................................................10

**STATUTES**

17 U.S.C. § 106 ...........................................................................................................................9

17 U.S.C. § 109(a) ....................................................................................................................11

18 U.S.C. § 1962(c) ..................................................................................................................14

**OTHER REFERENCES**

*Compendium of U.S. Copyright Office Practices* § 721.8 ..........................................................4

**I.     INTRODUCTION**

Despite Ubiquiti's allegations of copyright registration and ownership, Defendants are ***authorized*** to perform the allegedly infringing activity based on the contracts attached to the complaint. Ubiquiti's contract claims fail as well since no ***unauthorized*** conduct has been specifically identified. Defendants have an unfettered right to use any GPL code and any other Ubiquiti firmware which "contains or is derived from" the GPL code ("Public Code") which Ubiquiti has failed to challenge. Ex. 5 at 2. Ubiquiti must either amend its complaint or Defendants' motion to dismiss must be granted with prejudice.

The complaint, its exhibits and pleadings admit the following dispositive facts: (i) Ubiquiti licenses "in" over 1.4 million lines of Public Code under the GPL licenses into its "Ubiquiti firmware"; (ii) Ubiquiti's modification, use, and distribution of that same code (or any code that "contains or is derived from" it) must also be freely licensed "out" pursuant to the GPL terms; (iii) Defendants and their customers are licensed to use any portion of the Ubiquiti firmware pursuant to the GPL terms; and (iv) the terms of the GPL supersede Ubiquiti's commercial license terms. Simply based on the complaint, because the Ubiquiti firmware admittedly "contains or is derived from" the GPL code, Defendants are ***authorized*** to use it pursuant to the terms of the GPL licenses. Ubiquiti's claim of infringement of its "Ubiquiti firmware" (a phrase which it repeats 194 times in its complaint without clear definition) is overbroad and fatal to its complaint because it admittedly covers Public Code that Defendants are authorized to use. Ubiquiti's claims must be dismissed or narrowed by amendment to allegations that Defendants have made ***unauthorized*** use of ***protectable*** code owned exclusively by Ubiquiti (assuming Plaintiff is able to make such allegations).

Ubiquiti's opposition fails to address this simple, dispositive argument regarding Defendants' ***authorization*** to use the Ubiquiti firmware. Opening at 17-18, 8-10. Instead,

1

Ubiquiti simply states that it has a valid copyright registration and must be allowed to proceed without more. Opp. at 4-8. However, the documents admittedly incorporated into Ubiquiti's complaint prove otherwise. Ubiquiti cannot state a claim for relief without alleging an unauthorized use under the GPL of some protectable copyrighted portion of its firmware. Ubiquiti failed to do so. Based on the pleadings as they stand, the entire copyright in Ubiquiti firmware is authorized. Ubiquiti does not challenge that its own complaint admits the asserted firmware contains Public Code based on the attached Exhibits and that the GPL license not only covers the Public Code itself but any other Ubiquiti code that "contains or is derived from" the Public Code. Nowhere in the complaint does Ubiquiti point to an assertion that some portion of the firmware does not "contain[] or is derived from" the GPL code. And while attempts at "artful pleading" could provide motive for Ubiquiti's failure to mention the GPL in its complaint, Ubiquiti's failure to address this argument in its opposition when directly confronted with it belies the futility of its claims. To address this straight-forward argument, Ubiquiti need only amend its complaint to specifically allege an unauthorized use of a protectable copyright not covered by the GPL. Ubiquiti refused to identify any such instance and did not amend. Instead, Ubiquiti argues it can merely assert copyright ownership and can ignore authorization altogether.

To be clear, this is an entirely different exercise from what Ubiquiti contends is a "heightened pleading" standard that requires Ubiquiti to "distinguish the protectable from the unprotectable portions" of its firmware. Opp. at 8-9. It is instead fundamental in pleading a copyright violation that such a claim must be dismissed if the allegedly infringing uses are authorized or licensed. See Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir. 1999). And while Ubiquiti claims that its commercial license restrictions (the terms of Ubiquiti's licenses that run counter to the GPL) have been breached, the evidence attached to the

2

complaint directly contradicts those claims by showing that Ubiquiti's copyrights are actually licensed under the GPL—"[a] Plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Chicago Police Sergeants Ass'n v. City of Chicago*, 2011 WL 2637203, at *7 (N.D. Ill. July 6, 2011); *see* Exs. 1, 2.

This contradiction is symptomatic of the larger problem with Ubiquiti's allegations: Cambium is not put on notice of any protectable copyrighted portions of Ubiquiti firmware that are actually covered by Ubiquiti's commercial license restrictions and not freely licensed under the GPL. Indeed, the ***only*** code (a mere 21 pages) Ubiquiti submitted[1] to the Copyright Office to obtain the registered copyrights it asserts here shows that Ubiquiti expressly licenses out the basis of its registered copyright under the GPL. *Compare* Ex. 11 at 2-12; Ex. 12 at 2-12 (deposit material submitted to the Copyright Office including files "fwsplit.c" and "ubnt-mkfwimage.c") *with* Ex. 3 at 10 (listing 19,000 Ubiquiti firmware files that Ubiquiti expressly licenses under the GPL including "fwsplit.c" and "mkfwimage.c"); Ex. 2 (licensing the same to Cambium under the GPL). **Bluntly, Ubiquiti has yet to allege any unauthorized use of a protectable copyright not otherwise licensed under the GPL terms.**

The only allegations of any copying and reuse of portions of the Ubiquiti firmware (as opposed to the legally permitted deletion of such firmware) relate to calibration and configuration "information." But there is no allegation that Defendants' use of this information is unauthorized. Moreover, this "information" is not even copyright eligible. Such information is not alleged to be authored by Ubiquiti but rather by the user and it is purely functional information that fails to meet the low eligibility criteria for copyrightable expression. *See Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, 2018 WL 1514456, at *7 (W.D. Wis. Mar. 27,

---

[1] Defendants received the "Deposit Material" for Ubiquiti's copyright registrations marked as Exhibits 11 and 12 after submitting its Opening brief. Ubiquiti submitted these materials as "a true representation of the work entitled AIROS" in applying to obtain its copyright registrations. Exs. 11, 12.

2018); *Compendium of U.S. Copyright Office Practices* § 721.8 ("revisions . . . that are predetermined by the functional considerations of the hardware," such as calibration information "does not satisfy this requirement [for copyrightability]"). Indeed, it is implausible that a user's configuration information, such as an IP address generated by the user, is a part of Ubiquiti's registered copyright at all since it was created after the copyright registrations were filed.

The pleadings demonstrate that Ubiquiti licenses "in" over a million lines of Public Code, that Ubiquiti's modification, use, and distribution of that code is pursuant to the GPL, and that the terms of the GPL supersede Ubiquiti's commercial license terms. Ubiquiti's firmware-related claims therefore must be dismissed and limited to allegations of infringement of **protectable** code that Defendants are **unauthorized** to use (if Plaintiff is able to make such allegations).

## II. ARGUMENT

### A. Ubiquiti Does Not Contest Dispositive Elements of Cambium's Opening Brief

Ubiquiti fails to refute key facts and arguments asserted in Cambium's opening brief that require dismissal. In recognition of controlling case law, Ubiquiti does not move to strike or substantively refute that the exhibits attached to Cambium's opening brief are properly included in the complaint, and therefore are properly considered in deciding this motion. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Ubiquiti only argues that the Exhibits are not within "the four corners" of the complaint, a point that carries no legal significance. Opp. at 2.

Regarding the composition of its firmware, Ubiquiti does not refute (1) that its firmware contains at the very least over 1.4 million lines of Public Code (Ex. 8), (2) that Ubiquiti's allegedly "proprietary . . . operating system" (Compl. at 23) is actually "GPL related sources and modifications" (Ex. 2), and (3) that the kernel, file system, applications, and boot loader of Ubiquiti's firmware comprise substantial amounts of Public Code. *See generally,* Opp.

4

Regarding the license that applies to its firmware, Ubiquiti does not refute any of the following: (1) that the GPL applies to code that "contains or is derived from" the Public Code, (2) that the Ubiquiti firmware "contains or is derived from" Public Code, (3) that the GPL requires Ubiquiti to license its firmware under the terms of the GPL, and (4) that Ubiquiti's license agreements grant users a free GPL license to the Public Code and copyrighted modifications thereof. Instead, Ubiquiti posits that it may be possible to avoid GPL infection by mere "aggregation." Opp. at 7 fn. 1. But the complaint makes no allegation of an "aggregation."

### B. Ubiquiti's Copyright Claims Must be Dismissed – Count 4

Because the pleadings establish that Cambium is ***authorized*** or ***licensed*** to perform all the allegedly infringing activity, Ubiquiti's copyright claims (Count 4) must be dismissed. *Kennedy*, 187 F.3d at 694.

#### 1. Cambium is Licensed to Ubiquiti's Copyrighted Code Under the GPL

In contravention of Ubiquiti's allegations of commercial license violations against Cambium (Compl. at 283, 306), the pleadings show that Ubiquiti licenses all of the Public Code and at least part of its copyrighted code to Defendants under the GPL. Ex. 2. Specifically, Ubiquiti expressly licenses "modifications made by Ubiquiti Networks on original OpenWRT-r18801 sources" included in the Ubiquiti firmware "under the terms of the GNU General Public License." *Id*. Modifications to Public Code are covered by Ubiquiti's copyright registrations, which only exclude "licensed in materials." Ex. A. But Ubiquiti's allegations that "[a]s the owner of the copyrights, Ubiquiti maintains exclusive rights to, *inter alia*, distribute and reproduce the Ubiquiti firmware [and that] Ubiquiti licenses the Ubiquiti firmware on a non-exclusive basis to its customers" directly contradict the plain terms of its GPL "outbound" license to customers, including Defendants, which grants users the right to freely distribute and reproduce Ubiquiti's code. *Compare* Compl. 283 *with* Ex. 2. No additional copyrighted portions

5

of the firmware are alleged. These allegations are contradictory and the corresponding claims they support must be dismissed. *Chicago Police Sergeants Ass'n*, 2011 WL 2637203 at *7.

### 2. The GPL Infects Any Copyrighted Portions of the Ubiquiti Firmware

The pleadings clearly establish that Ubiquiti's firmware "contains or is derived from" GPL code such that the GPL "infects" (i.e., authorizes the use of) other portions of Ubiquiti's firmware. Ex. 2 (Ubiquiti licensing "modifications" to a Public Code operating system incorporated in the Ubiquiti firmware under the GPL); *see Versata Software, Inc. v. Ameriprise Fin., Inc.*, No. A-14-CA-12-SS, 2014 WL 950065 *1 (W.D. Tex. Mar. 11, 2014); *see also Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 697-698 (N.D. Ill. 2004). Nothing in Ubiquiti's complaint suggests that its firmware is separately licensed or licensable from the 1.4 million lines of Public Code that Ubiquiti copies, modifies, and passes off as its firmware. Ubiquiti's own licenses therefore authorize all of Ubiquiti's firmware-related allegations because the GPL expressly permits licensees to use, copy, modify, and create derivative works without restriction and those rights "take precedence" over Ubiquiti's license restrictions. *See* Exs. B, C, Exs. 4, 5. In addition, those rights form the basis of each allegedly unlawful activity. For example, beyond the allegations of "copying" and "modifying" (Compl. at 43) which are expressly afforded under the GPL (Ex. 5 at 2), "reverse engineering" and "circumvention" (Compl. at 43, 48) are merely restrictions on use that are also not restricted by the GPL (*see* Ex. 5 at 2 ("the act of running the Program is not restricted"), Ex. 4 at 3 ("waive any legal power to forbid circumvention"). Cambium is therefore authorized to perform all of the allegedly breaching or infringing activity.

Given that the Ubiquiti firmware contains (1) 1.4 million lines of licensed in Public Code, (2) modifications to that Public Code, and (3) any unidentified additional code, Ubiquiti is required under the terms of both its "outbound" GPL license to Cambium and its "inbound" GPL

6

license from third parties to distribute all of the Ubiquiti firmware under the terms of the GPL.

### 3. Ubiquiti Fails to Address Cambium's Authorization Argument

Ubiquiti's opposition completely fails to address Cambium's dispositive argument that it is licensed or authorized to perform all of the allegedly infringing and breaching activity under the GPL as granted by Ubiquiti's licenses. Opening at 8-10, 17-18. Instead, Ubiquiti only addresses the GPL in the context of the *validity* of its copyrights. Opp. Pages 7-11. But the *validity* of a copyright and *authorization* to make, use, copy, or modify that work are separate elements of a copyright allegation. *See Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, No. 12 C 10275, 2013 WL 4011052, at *3 (N.D. Ill. Aug. 6, 2013). The only portions of its opposition that discuss authorization of the allegedly breaching or infringing activity entirely fail to account for the GPL. *Contra* Opp. at 5-6, 9-11.

On "egregious" facts strikingly similar to those at issue here, this Court found "a misuse of both the judicial process and the copyright laws." *See Qad. Inc., v. ALN Assocs., Inc*. 770 F. Supp. 1261, 1267 (N.D. Ill. 1991), aff'd, 974 F.2d 834 (7th Cir. 1992). Specifically, *Qad's* assertions of "mostly . . . copied material that formed the focus of qad's case . . . for copyright infringement" are indistinguishable from Ubiquiti's copyright claim on "Ubiquiti's proprietary airOS operating system" that indisputably contains 1.4 million lines and 16,000 files of copied code. *Compare id. with* Compl. ¶ 23. Making Ubiquiti's conduct even more "egregious," the open source license in *Qad* actually permitted qad to distribute that code under commercial license restrictions, unlike the GPL, which expressly prohibits Ubiquiti from doing the same. *Id.*

### 4. The Public Code Renders Ubiquiti's Copyright Registrations Invalid

The extraordinary amount of third party code in Ubiquiti's firmware also renders Ubiquiti's copyrights invalid. Ubiquiti curiously cites to *Computer Assocs. Int'l v. Quest Software, Inc.*, twice in support of the sufficiency of its copyright claims, when that case instead

7

supports a finding of "copyright fraud, and/or misuse" in these circumstances. 333 F. Supp. 2d at 698; Opp. at 4-5, 7. In *Computer Assocs.*, this Court found that "the GPL would prevent plaintiff from attempting to claim a copyright in that modified version [of a GPL component]" and that a "disclosure" to the Copyright Office of third party software is "necessary when a party uses a substantial amount of a preexisting work." *Id.* at 697-98. While Ubiquiti provided a general notice that "licensed in" content was included in the software it was registering, this notice is insufficient to disclose its substatial use of third party works to the Copyright Office. *See* Ex. A (failing to disclose copying of OpenWRT or UBoot). And while this Court found in favor of the copyright holder where "hundreds or thousands of lines" amounting to "4 or 4.5% of the source code" were created by third parties, the 1.4 ***million*** lines of Public Code at issue here require the opposite finding under this Court's logic. *Id*.

### C. The Remaining Related Claims Must be Dismissed in View of the GPL – Counts 1-3, 6-9, and 13

The remaining firmware-related claims must also fall. Ubiquiti has simply failed to allege a breach of the GPL, which is fatal to its contract claims (Count 6). *See Nielsen v. United Servs. Auto. Ass'n*, 244 Ill. App. 3d 658, 662 (1993). Moreover, none of the alleged conduct could possibly constitute a breach of the GPL. Allegations of copying and modification are expressly permitted under the GPL. Ex. 5 at 2; Compl at 43. In addition, the GPL prohibits licensors from adding additional terms that might restrict those rights. Ex. 5 at 2-3. Prohibitions on "reverse engineering" and "circumvent[ion] of access control measures" are merely examples of restrictions on use that the GPL prohibits licensors from applying. Compl. at 1, 43, 48; *see* Ex. 5 at 2, Ex. 4 at 3. Similarly, there is no prohibition against "hacking" under the GPL. Ex. 5. In addition, Ubiquiti's tortious interference (Count 7) unfair competition (Count 8), intentional interference with prospective economic advantage (Count 9), misappropriation (Count 13),

8

CFAA (Count 1), DMCA (Count 2), and ICTA (Count 3) claims each require an underlying unauthorized use of the Ubiquiti firmware or breach of contract that also must be dismissed because Cambium's use was authorized under the GPL.

### D. Ubiquiti's State Law Claims are Preempted by Copyright Claims

**Contract (Count 6) -** Ubiquiti's opposition claims that it is "well-established that state law breach of contract claims are not preempted" while citing to *ProCD*. Opp. at 12. Instead, *ProCD* merely stands for the proposition that shrinkwrap licenses are not ***necessarily*** unenforceable as preempted and that some provisions "may be enforced." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996). Indeed, this Court distinguishes *ProCD* in *Higher Gear* by preempting certain contract claims on a software license related to unauthorized copying and creating derivative works—claims that arise from copyright rights—while leaving other contract claims for "using the software for non-business purposes or for the benefit of third parties." *Higher Gear* at 958. As this court articulated: "a state right is [also] 'equivalent' if it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement." *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002) (citing *Orioles, Inc. v. Major League Baseball Players Ass'n.*, 805 F.2d 663, 674 (7th Cir.1986)).

Ubiquiti claims that its license terms, including "prohibiting alteration," are not equivalent to any copyright rights. Opp. at 13. But the right to "alter" a work is equivalent to the right to create derivative works under the Copyright Act. *See* 17 U.S.C. § 106. Ubiquiti also claims that "Cambium misleadingly characterizes these allegations [at Compl. 300-314] as limited to [copying, modification, and reproduction]." Opp. at 13, fn. 1. But each of these allegations are still dependent on a copyright right: "altering" (Compl. at 303), "copying" (Compl. at 307), "replaced" (Compl. at 308), "modified" (Compl. at 309), "copies"

9

(Compl. at 310), "modification" (Compl. at 311-12). Moreover, allegations of breach for "reverse engineering" involve rights equivalent to the reproduction right through loading copyrighted instructions into memory. *See Higher Gear Grp., Inc.* at 957.

**Misappropriation (Count 13)** - Ubiquiti's opposition attempts to re-write its allegations to exclusively claim a "misappropriation of Ubiquiti's goodwill and reputation" that might somehow escape preemption. Opp. at 14. No such corresponding allegation is found in the operative portion of the complaint, which is completely devoid of any mention of "goodwill" and merely references "reputational harm" in the context of resulting damages. Compl. at 351-356. Ubiquiti's misappropriation claim is firmly grounded in allegations that "Cambium misappropriated the Ubiquiti firmware," which meets the requirements for preemption under this Court's precedent. *See Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2012 WL 3835825, at *7-10 (N.D. Ill. Sept. 4, 2012); Compl. at 353.

**Unfair Competition (Count 8)** - Unfair competition claims for "'reverse passing off,' where a defendant sells a plaintiff's product as his own, are generally preempted." *Higher Gear Grp., Inc.* at 959. Such claims require that a defendant "obtained [unlawful] access to [an] idea" and that a "[mis]use of the idea deprived the plaintiff of the opportunity to reap its due profits on the idea." *Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1119 (7th Cir. 1990). Ubiquiti's unfair competition claims sound in reverse passing off because the allegations claim that Cambium reverse engineered Ubiquiti's firmware to gain access to Ubiquiti's "idea," used that "idea" to develop "a competing product," and that this misuse of that idea deprived Ubiquiti of an opportunity, essentially using Ubiquiti's idea (copyrighted information gleaned from reverse engineering) to compete. Compl. at 327. Ubiquiti attempts to distinguish its unfair competition claims from copyright rights, but the cited allegations only go to the development and promotion

10

of Cambium's "competing product" that "reap[s] the benefits of Ubiquiti's substantial investment" in the same manner as preempted reverse passing off claims. Opp. at 13-14; Compl. at 323-25; *see Higher Gear Grp., Inc.* at 959.

### E. Ubiquiti Cannot Prohibit Replacement of its Firmware – Counts 4 and 6

Both of Ubiquiti's licenses are software or "firmware" licenses. Ex. B (granting license to use the firmware); Ex. C (same). They do not govern use of any hardware. Accordingly, having lawfully purchased the Ubiquiti hardware—which itself is not the subject of any patent, trade secret or other technology license from Ubiquiti—users, including Defendants, are free to operate the hardware in any manner, which includes deleting the resident firmware and replacing it with a different firmware. This is no different than buying a PC and replacing the operating system with another. The law is clear: Cambium and its customers are "*entitled*, without the authority of the copyright owner, to . . . *dispose of the possession of*" Ubiquiti's firmware under the Copyright Act. 17 U.S.C. § 109(a).

Instead of addressing this argument, Ubiquiti attacks "[t]he first sale doctrine," arguing that it "does not apply to a licensee." Opp. at 9. But the rights in § 109(a) are extended to "owner[s] . . . or any person authorized [or licensed] by such an owner" and therefore also apply to licensees without regard to the first sale doctrine. § 109(a). Next, Ubiquiti strains the reading of its licenses for any reference restricting deletion or replacement, identifying only a single prohibition on "remov[al] . . . [of] any software protection mechanisms . . . used to restrict or control the functionality of the Ubiquiti Firmware." Ex. B at 1. But the complaint does not allege that Cambium selectively deletes this "software protection mechanism." Instead Ubiquiti attempts to rely on this single provision to prohibit licensees from lawfully deleting its firmware as Cambium is "entitled" to do "without authority of the copyright owner."

11

F. **Ubiquiti Fails to State a Claim Under the ICTA and CFAA – Counts 1 and 3**

Ubiquiti's opposition conflates Cambium's argument that there can be no "unauthorized access" under the CFAA when the owner or controller of the computer authorizes the access, with the concept of a "strict 'ownership' requirement to state a claim for violation of the CFAA" that Cambium does not advance. *Compare* Opp. at 25 *with* Opening at 23. Ubiquiti then cites to four cases that support the benign proposition that third party non-owners of a computer that suffer harm from an unauthorized access may bring a CFAA action. Opp. at 25-26. But these cases actually support Cambium's position because each involve an allegation that the party that owned or controlled the accessed computer did not authorize access. *See, e.g., Theofel v. Farey–Jones,* 341 F.3d 978 at 983 (9th Cir.2003), *amended by* 359 F.3d 1066 (9th Cir.2004) (owner of email server's authorization in response to subpoena was "vitiate[d]" by invalidity of that subpoena); *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *1 (S.D. Tex. Mar. 29, 2016), modified on reconsideration, No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) (plaintiff's USB "bitlock" devices deemed protected computers accessed in excess of authority of plaintiff-owner). In addition, Cambium's opening brief cited numerous cases that distinguish Ubiquiti's leading case on this very point, such as in dismissing claims where a party that controlled access "gave various defendants permission or authorization to use the . . . server." *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (distinguishing *Theofel v. Farey–Jones*).

G. **Ubiquiti Fails to Address its own License and Cambium's Cited Authority on Anti-Circumvention Claims – Count 2**

Ubiquiti first questions how providing a link to the GPL ver. 3 (Ex. 1, Ex. 4) with every single download for the Ubiquiti firmware along with a statement that "[s]ome of the software in the firmware is licensed under the GNU General Public License," might be interpreted as

12

"distribut[ing] its firmware with this license"—calling that accusation "unfounded and irrelevant." Ex. 1; Opp. at 17, fn. 4. But there can be no doubt that Ubiquiti expressly distributes at least part of its copyrighted work in the Ubiquiti firmware under at least some version of the GPL. *See* Ex. 2 (licensing modifications under GPL v. 2); Ex. 1 (linking to GPL v. 3). It is only plausible based on these pleadings that at least one version applies and both GPL versions 2 and 3 prohibit asserting circumvention laws. Ex. 5 at 2 ("the act of running the Program is not restricted"), Ex. 4 at 3 ("waive any legal power to forbid circumvention").

Next, Ubiquiti ignores the substantial and prevailing case law cited in Cambium's opening brief and instead seizes on the lack of Seventh Circuit precedent. Opp. at 18. Ubiquiti cites to no case law that suggests technological measures that control the "ability to access firmware update functionality" (erase and install different firmware) control access to a protected work. *Contra Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004). Ubiquiti's argument to the contrary is particularly unconvincing in light of Ubiquiti's instructions detailing how to circumvent controls to install "unsigned firmware." Ex. 10 at 4 (use "TFTP" to install unsigned firmware). Ubiquiti's attempt to rewrite its allegations to allege measures that "control the ability to . . . otherwise use its copyright protected firmware" are improper. Opp. at 18. Moreover, *Chamberlain* affirmed ***dismissal*** of DMCA claims for failing to establish a "nexus between access and protection"—that is, explaining "how the access provided by the [circumvention device] facilitates the infringement of any right that the Copyright Act protects." *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1204 (Fed. Cir. 2004)." Similarly, Ubiquiti's allegations fail to establish a nexus between measures that prevent erasing firmware facilitate infringement.

13

### H.  Ubiquiti's RICO Claims Fail Because it Fails to Allege an Enterprise – Counts 14 and 15

First, Ubiquiti fails to address the binding Seventh Circuit precedent dictating that the Cambium-related Defendants cannot together comprise an enterprise. *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999); *see* Opp. at 27. Ubiquiti has thus failed to state a claim that Cambium-related Defendants could comprise part of the alleged "Hacking Enterprise." On that basis alone, these claims must be dismissed at least as to the Cambium-related Defendants.

Second, Ubiquiti has failed to allege facts sufficient to show that Cambium and Winncom comprised an association-in-fact enterprise. *See* 18 U.S.C. § 1962(c); Compl. ¶¶ 357-72.[2] Ubiquiti offers only conclusory assertions that Winncom and Cambium exceeded a normal business relationship (Opp. at 27-28; *e.g.* Compl. ¶¶ 359-60, 362-64). Most of the paragraphs Ubiquiti cites in support do not mention Winncom at all. *See, e.g.*, *id.* ¶¶ 93-105, 110-26, 361. Paragraph 160 alleges that Winncom advertised for and hosted an ePMP course with Cambium without disclosing the "true nature" of the "Hacked Firmware," but this is in line with both parties pursuing their individual self-interest. The cases Ubiquiti cites do not alter this conclusion. In *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015), the plaintiff alleged "an unusual degree of economic interdependence among the [defendants]" and that the defendants "do not operate as completely separate entities." In *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1095 (N.D. Ill. 2016), the plaintiff alleged that the defendants "refer[ed] business to one another *vital* to the fraud," and "issu[ed] opinion letters and conduct[ed] trust activities" in a single scheme to sustain profits for the enterprise. Ubiquiti does

---

[2] Ubiquiti's invocations of (i) "numerous acts of mail and wire fraud [allegedly committed by the enterprise]," and (ii) any conspiracy with Blip, are red herrings. Only Cambium's alleged acts of mail and wire fraud are relevant to whether Cambium engaged in a pattern of racketeering activity.

14

not allege such interconnectedness between Cambium and Winncom, and its RICO claims fail because it has not alleged the existence of an enterprise.

## I. Customers Are Not Confused – Counts 5 and 10-12

Contrary to Ubiquiti's assertion, courts have regularly dismissed Lanham Act and Trademark Infringement claims based on implausible allegations of consumer confusion. *See, e.g.*, *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 706 (7th Cir. 2014); *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 872 (7th Cir. 2013). It is simply not plausible that users that are seeking to replace their firmware with Cambium's firmware would think that Ubiquiti is the source of that firmware. Ubiquiti's opposition only cites to conclusory assertions of confusion and separate allegations of false statements and trademark use, but not that such use caused confusion as to the origin of Elevate. *Eastland*, 707 F.3d at 872 ("Only a confusion about origin supports a trademark claim, and 'origin' for this purpose means the 'producer of the tangible product sold in the marketplace.'"). At the same time, Ubiquiti ignores various paragraphs in its complaint that make clear that there could be no such confusion (*e.g.* Compl. at 93, 103, 107). The complaint also alleges that Cambium referred to Ubiquiti's trademarks as part of its effort to promote the benefits of Elevate over Ubiquiti's firmware (*e.g.* Compl. at 65, 68, 106, 107), which further makes any alleged customer confusion implausible. *Lamparello v. Falwell*, 420 F.3d 309, 317 (4th Cir. 2005).

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Ubiquiti's complaint fails to allege an unauthorized use of the copyrighted portions of its firmware that satisfy *Iqbal/Twombly* pleading. Ubiquiti's failure to address the GPL through "artful pleading" and ignoring Defendants' dispositive arguments does not resolve these deficiencies. *See 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The complaint should therefore be dismissed. To the extent it is not dismissed with prejudice, any amended complaint should allege the infringement of any protectable copyrighted portions of Ubiquiti's firmware that Defendants are unauthorized to use.

| | |
|---|---|
| Dated: December 5, 2018 | Respectfully submitted, |
| | BAKER BOTTS, LLP |
| | */s/ G. Hopkins Guy, III* |
| | One of their attorneys |
| | |
| | G. Hopkins Guy III (CA Bar No. 124811) |
| | hop.guy@bakerbotts.com |
| | Jon V. Swenson (CA Bar No. 233054) |
| | jon.swenson@bakerbotts.com |
| | Karina Smith (CA Bar No. 286680) |
| | karina.smith@bakerbotts.com |
| | BAKER BOTTS L.L.P. |
| | 1001 Page Mill Road Building One, Suite 200 |
| | Palo Alto, CA 94304-1007 |
| | 650.739.7500 (Phone) |
| | 650.739.7699 (Facsimile) |
| | |
| | Andrew D. Wilson (DC Bar No. 1030144) |
| | 1299 Pennsylvania Ave. NW |
| | Washington, DC 20004-2400 |
| | 202.639.1312 (Phone) |
| | 202.508.9336 (Fax) |
| | andrew.wilson@bakerbotts.com |
| | |
| | Arthur J. Gollwitzer (06225038) |
| | agollwitzer@michaelbest.com |
| | James P. Fieweger (6206915) |
| | jpfieweger@michaelbest.com |
| | MICHAEL BEST & FRIEDRICH, LLP |
| | 444 West Lake Street, Suite 3200 |
| | Chicago, Illinois 60606 |
| | 312.222.0800 (Phone) |
| | |
| | *Attorneys for Defendants Cambium Networks, Inc. et. al.* |