UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UBIQUITI NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 5369 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CAMBIUM NETWORKS, INC., CAMBIUM NETWORKS, LTD., BLIP NETWORKS, LLC, WINNCOM TECHNOLOGIES, INC., SAKID AHMED, and DMITRY MOISEEV, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Ubiquiti Networks, Inc. brings this suit against Cambium Networks, Inc., its parent Cambium Networks, Ltd., its employees Sakid Ahmed and Dmitry Moiseev, and its customers Blip Networks, LLC and Winncom Technologies, Inc., alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and other laws. Doc. 1. Defendants move to dismiss under Civil Rules 12(b)(1) and 12(b)(6). Doc. 37. The Rule 12(b)(1) motion is denied, the Rule 12(b)(6) motion is granted, and Ubiquiti will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and

1

information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Ubiquiti as those materials allow. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

In 2009, Ubiquiti introduced its M-series products, which are broadband devices that enhance wireless connectivity and are sold primarily to wireless internet service providers. Doc. 1 at ¶¶ 21-22, 35. The M-series devices run on Ubiquiti's firmware, which includes radio control software, file system software, a calibration protocol, the airOS® operating system, the AirMAX® technology platform, and various access control and verification measures. *Id*. at ¶¶ 23, 74-75, 77-78, 84; Doc. 1-2 at 2 (defining "Ubiquiti Firmware" as "the firmware in object code form made available by Ubiquiti for Ubiquiti devices"). Each user of an M-series device must accept Ubiquiti's Terms of Use and Firmware User License Agreement ("FULA") before configuring the device, Doc. 1 at ¶¶ 24, 37; Doc. 1-2, and must agree to Ubiquiti's End User License Agreement ("EULA") before downloading firmware updates from Ubiquiti's website, Doc. 1 at ¶ 41; Doc. 1-3.

The FULA prohibits an M-series device user from "using the Ubiquiti Firmware on any device other than a Ubiquiti Device" and "copying, us[ing], or modif[ying] … ANY PART of [Ubiquiti's] firmware." Doc. 1 at ¶ 38 (quoting Doc. 1-2 at 2); *id*. at ¶ 39 (similar, quoting Doc. 1-2 at 3). The FULA further provides that "[u]nauthorized copying of the Ubiquiti Firmware or failure to comply with the [FULA's] restrictions will result in automatic termination of th[e

2

FULA] and will make available to Ubiquiti other legal remedies." *Id*. at ¶ 40 (quoting Doc. 1-2 at 4). The EULA similarly prohibits an M-series device user from "reverse engineer[ing]" or "otherwise attempt[ing] to … derive the source code or the underlying ideas, algorithms, structure or organization" of Ubiquiti's firmware, as well as from "circumvent[ing] any software protection mechanisms," including "such mechanism[s] used to restrict or control the" Ubiquiti firmware's "functionality." Doc. 1-3 at 4; Doc. 1 at ¶ 42. The EULA also prohibits M-series device users from "publicly perform[ing] or display[ing]" Ubiquiti firmware without Ubiquiti's consent. Doc. 1-3 at 4.

The FULA states that "Ubiquiti Firmware may contain Open Source Software." Doc. 1-2 at 3. The FULA defines "Open Source Software" as "any software or software component, module or package that contains, or is derived in any manner (in whole or in part) from, any software that is distributed as free software, open source software or similar licensing or distribution models, including … GNU's General Public License," known as the "GPL." *Id*. at 2. Ubiquiti's website confirms that "[s]ome of the software in the firmware is licensed under the" GPL and similar open source software licenses. Doc. 33-1 at 2-3. The FULA provides that open source software licenses take "precedence over [any inconsistent] rights and restrictions granted in" the FULA. Doc. 1-2 at 4. Likewise, the EULA advises that Ubiquiti's firmware may include "software products that are subject to separate license terms"—such as "software or software components that are derived, in whole or in part, from software that is distributed as free software, open source software or under similar licensing or distribution models"—and that those separate license terms "shall take precedence over the rights and restrictions granted in this EULA solely with respect to" the open source software. Doc. 1-3 at 4-5.

3

As an open source software license, the GPL provides that a licensee (here, Ubiquiti) that "convey[s] a covered work … waive[s] any legal power to forbid circumvention of technological measures to the extent such circumvention is effected by exercising rights under" the GPL. Doc. 33-4 at 4 (GPL version 3, effective June 29, 2007). The GPL also requires the licensee to "disclaim any intention to limit operation or modification of the [covered] work as a means of enforcing, against the work's users, [the licensee's] … legal rights to forbid circumvention of technological measures." *Ibid*. A "covered work" under the GPL includes "a work based" in whole or in part on open source software, but does not include "separate and independent works, which are not by their nature extensions of the covered work, and which are not combined with it such as to form a larger program." Doc. 33-4 at 2, 5. As a result, the GPL propagates the rights associated with open source software to derivative programs, affording users of derivative programs the same "freedom to change the software" that the GPL guarantees. *Id*. at 2; *see Wallace v. IBM Corp.*, 467 F.3d 1104, 1105 (7th Cir. 2006) ("[T]he GPL propagates from user to user and revision to revision: neither the original author, nor any creator of a revised or improved version, may charge for the software or allow any successor to charge."). (Contrary to Ubiquiti's submission, Doc. 39 at 16, the GPL may be considered on a Rule 12(b)(6) motion. Where "a plaintiff attaches to the complaint a document" like the FULA or EULA "that qualifies as a written instrument, and [the] complaint references and relies upon that document in asserting [the] claim[s], the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("[A] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.") (quoting Fed. R. Civ. P. 10(c)). And

4

where, as here, the defendants "attac[h] to a motion to dismiss" documents that "are referred to in the plaintiff's complaint and are central to [its] claim"—here, the GPL, which the FULA and the EULA expressly incorporate—those documents "are considered part of the pleadings" as well. *Burke*, 714 F.3d at 505 (internal quotation marks omitted); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (same).)

At some point before November 30, 2016, Cambium created a modified version of the M-series firmware by: modifying, copying, and deleting portions of Ubiquiti's firmware, user interfaces, and copyright notices; replacing the radio operating software; circumventing access control mechanisms on the M-series devices; and using without authorization Ubiquiti's trademarks and original firmware that remained on the devices following the modifications. Doc. 1 at ¶¶ 43-51, 57. On November 30, 2016, Cambium began promoting its modified firmware under the product name ePMP Elevate for installation on Ubiquiti's M-series devices. *Id*. at ¶¶ 54, 63-64, 70. Cambium's promotional materials for ePMP Elevate included a webinar in which Ahmed, Cambium's Vice President of Engineering, and Moiseev, a Cambium employee, demonstrated how to navigate Ubiquiti's web user interface to replace Ubiquiti's firmware with ePMP Elevate. *Id*. at ¶¶ 93-100; Doc. 1-6. Cambium's promotional materials stated that "Ubiquiti® XW/XM" devices supported ePMP Elevate, Doc. 1-9 at 8; Doc. 1 at ¶¶ 109, 118, and Cambium repeatedly referenced Ubiquiti in online forums discussing ePMP Elevate, Doc. 1 at ¶¶ 120, 122-126. With support from its parent company, Cambium offered customers like Winncom and Blip a special discount for promoting ePMP Elevate through positive reviews. *Id*. at ¶¶ 142, 145-146, 148-152, 155-157.

Cambium's promotional materials further represented that downloading ePMP Elevate onto Ubiquiti's M-series devices allows users "to increase [broadband] performance without

5

replacing" their existing hardware. *Id*. at ¶ 63 (emphasis omitted) (quoting Doc. 1-7 at 2); *see also* Doc. 1-8 at 3 ("ePMP Elevate is a software solution that is hardware agnostic … ."). When installed on M-series devices, ePMP Elevate deletes various portions of Ubiquiti's firmware while preserving others; alters the user interface and copyright notices; and changes the radio software to operate in violation of Federal Communications Commission ("FCC") rules. Doc. 1 at ¶¶ 73-82, 84-87. In promoting ePMP Elevate, Cambium misrepresented that ePMP Elevate would entirely replace Ubiquiti's firmware; that Ubiquiti's warranty would cover devices running ePMP Elevate; and that Ubiquiti devices running ePMP Elevate would remain compliant with FCC rules. *Id*. at ¶¶ 110-117; Doc. 1-4 at 3-5. Despite Ubiquiti's enhancing its firmware's access control mechanisms by introducing "signed" versions of airOS® in early 2017, Cambium has instructed users how they can bypass those mechanisms to install ePMP Elevate on Ubiquiti devices. Doc. 1 at ¶¶ 88, 92; Doc. 1-11 at 3-4, 8-9.

## Discussion

Ubiquiti alleges that Cambium violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Illinois Computer Crime Prevention Law, 720 ILCS 5/17-51, the Copyright Act, 17 U.S.C. § 101 *et seq*., the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-02, the Lanham Act, 15 U.S.C. §§ 1114, 1125, and state common law in connection with Cambium's misuse of Ubiquiti's M-series broadband products. Doc. 1 at ¶¶ 168-356. Ubiquiti also alleges that Defendants have formed an enterprise led by Cambium in violation of RICO to promote the unlawfully altered M-series devices. *Id*. at ¶¶ 357-398.

Defendants seek dismissal under Rule 12(b)(1) on the ground that the GPL and other open source software licenses deprive Ubiquiti of "standing" to enforce its copyright and contract rights. Doc. 33 at 36-37. Although Defendants assert this "standing" argument as a

jurisdictional ground for dismissal under Rule 12(b)(1), the Seventh Circuit has held that whether a party has sufficiently alleged its right to enforce a contract or copyright is properly addressed as a merits issue under Rule 12(b)(6), not as a jurisdictional issue under Rule 12(b)(1). *See JPMorgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650 (7th Cir. 2014) ("The [defendants' conduct] appears to have violated the clause of their contract with the [plaintiff], and the [plaintiff's] claim of the violation is enough to give the [plaintiff] standing to bring this action to enforce the clause."); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (explaining that "the Copyright Act spells out who has enforceable rights under the statute," and that "someone who does not" have an enforceable copyright "has failed to state a claim upon which relief may be granted," which results in dismissal under Rule 12(b)(6)); *see also Sierra Club v. EPA*, 774 F.3d 383, 389 (7th Cir. 2014) ("In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the [plaintiff] would be successful in [its] claims.") (alteration and internal quotation marks omitted); *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010) ("Whether a given action is within the scope of [a statute] is a question on the merits rather than one of justiciability.").

As to their Rule 12(b)(6) motion, Defendants submit that the GPL and other open source software licenses incorporated into the FULA and EULA narrow the rights Ubiquiti may assert against downstream users like Cambium and thereby undermine Ubiquiti's claims on the merits. Doc. 33 at 16-19. Ubiquiti concedes the point, at least in part: While the complaint generally and broadly alleges that Cambium acted unlawfully in deleting, modifying, and copying largely unspecified portions of Ubiquiti's firmware, Doc. 1 at ¶¶ 44-45, 48, 67, 73-78, 171, 186, 193, 196, 203, 207, 214-215, 217, 227, 235, 248, 278, 280, 285, 307-311, Ubiquiti clarified at the

motion hearing that its firmware-related claims are limited to adjustments Cambium made to the "proprietary user interface," "configuration code," and "calibration code," and the AirMAX® platform—terms that the complaint does not clearly define.

This disconnect presents a problem under governing pleading rules. Rule 8(a)(2) requires "straightforward" pleadings, *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (internal quotation marks omitted), and the Rule's "primary purpose … is to give defendants fair notice of the claims against them and the grounds supporting the claims," *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (internal quotation marks omitted). The complaint violates Rule 8(a)(2) because it does not provide adequate notice of how Defendants allegedly violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations. The fact that Ubiquiti at the motion hearing had to go to great lengths to explain the rough contours of its claims, even after full briefing on the motion to dismiss, confirms the point. *See Stanard*, 658 F.3d at 800 (noting that a complaint may violate Rule 8 where "discerning the basic legal and factual basis of the claims is not impossible but merely unnecessarily difficult"); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (holding that a complaint must provide notice of "the principal contested matters").

Ubiquiti responds that Rule 8(a)(2) does not require its complaint "to identify particular source code within its firmware that is protected by copyright." Doc. 39 at 16. True enough, a complaint "need not plead detailed factual allegations." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted). But the disconnect between the broad claims articulated in the complaint, on the one hand, and Ubiquiti's acknowledgement that the GPL and other open source software licenses limit its rights and therefore the scope of its claims,

8

on the other, makes the scope of Defendants' allegedly unlawful conduct "unintelligible," thereby violating Rule 8(a)(2). *Beyrer*, 722 F.3d at 946 ("If neither the adverse party nor the court can make out the essence of the claims[,] dismissal of a complaint on the ground that it is unintelligible is unexceptionable.") (internal quotation marks omitted); *see Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) ("Plaintiff muddles [its copyright] claim by also asserting that parts of its software and documentation are open-source, which makes its contention that essentially all of its materials are under Plaintiff's copyright protection less plausible. … Plaintiff need not reach any heightened level of particularity for its copyright claims, but those claims must be plausible under Rule 8, *Twombly*, and *Iqbal*."). Until Ubiquiti spells out at least the general nature of its allegedly misused firmware that is not covered by the GPL and other open source software licenses, Defendants will not have adequate notice of Ubiquiti's claims. *See Stanard*, 658 F.3d at 799 ("To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him."); *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) ("[P]lausibility in the context of determining the sufficiency of a complaint refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (alteration and internal quotation marks omitted).

Because the complaint violates Rule 8(a)(2), it is dismissed under Rule 12(b)(6). *See Davis v. Anderson*, 718 F. App'x 420, 424 (7th Cir. 2017) ("[I]t's usually preferable to require repleading rather than ordering a more definite statement so that a plaintiff's allegations are not split between the complaint and the more definite statement.") (citing *Davis v. Ruby Foods, Inc.*,

269 F.3d 818, 820 (7th Cir. 2001)); *Griffin v. Milwaukee Cnty.*, 369 F. App'x 741, 743 (7th Cir. 2010) (same). The dismissal is without prejudice, and Ubiquiti will be given a chance to replead. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("We repeatedly have said that a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed.") (internal quotation marks omitted). Once Ubiquiti repleads, the court and Defendants will be in a better position to ascertain whether (and to what extent) the GPL and other open source software licenses cover Cambium's alleged firmware modifications, and therefore to determine the legal sufficiency of Ubiquiti's claims.

## Conclusion

Defendants' motion to dismiss is denied in part (as to Rule 12(b)(1)) and granted in part (as to Rule 12(b)(6)). The complaint is dismissed without prejudice. Ubiquiti has until June 5, 2019 to file an amended complaint. If it does not do so, the dismissal will convert automatically to a dismissal with prejudice. If Ubiquiti files an amended complaint, Defendants will have until June 19, 2019 to file their response.

May 22, 2019

_____
United States District Judge