**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UBIQUITI NETWORKS, INC.,<br><br>           *Plaintiff*,<br><br>    v.<br><br>CAMBIUM NETWORKS, INC.;<br>CAMBIUM NETWORKS, LTD.;<br>BLIP NETWORKS, LLC;<br>WINNCOM TECHNOLOGIES, INC.;<br>SAKID AHMED; and DMITRY<br>MOISEEV,<br><br>           *Defendants*. | Civil Action No.: 1:18-cv-05369<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

I.      Introduction ............................................................................................................. 1

II.     Background ............................................................................................................. 4

    A.      Background and Posture of the Motion ....................................................... 4

        1.      The Initial Complaint and Defendants' First Motion to Dismiss ........................ 4

        2.      Ubiquiti Limited its Claims During Oral Argument ................................. 5

        3.      The Court Dismissed the Original Complaint .......................................... 6

    B.      The FAC Contains New Allegations Based on Four New Definitions ....................... 8

    C.      Ubiquiti's Admitted Use of GPL Code ........................................................ 9

        1.      The Ubiquiti Open Source Archives are Part of the Pleadings ........................ 10

III.    Argument ............................................................................................................. 12

    A.      Standard of Review ................................................................................... 12

        1.      Rule 8 Standard ....................................................................................... 12

        2.      Dismissal with Prejudice is Appropriate ................................................. 13

    B.      Merely "Excluding" Licensed-In Materials Fails Under Rule 8(a) ........................... 14

        1.      The Original Complaint was Dismissed on Allegations of "Exclusion" of Licensed-in GPL Material ................................................. 14

        2.      The FAC Continues to Assert Claims under Modifications and Derivative Works "Based On" GPL Code ......................................... 15

        3.      Identifying Specific Components Fails to Satisfy Rule 8(a) ............................. 18

        4.      Ubiquiti Failed to "Clearly Define" the "Four Matters" Identified at Hearing .... 20

        5.      Ubiquiti "Muddles" its Claims by Failing to Separate Protectable from Unprotectable Portions of its Firmware ............................. 21

        6.      Having Admitted that its Firmware Includes GPL Code, Ubiquiti Must Allege Circumstances Where Protectable Firmware Could Survive a Filtration Analysis ............................................. 22

        7.      The FAC Fails to Address the GPL as Required by the Court ........................... 24

    C.      Ubiquiti's Expansive Claims in the FAC Are Barred by Its Judicial Admissions ..... 25

    D.      The GPL Grants Users Permission to Engage in All of the Allegedly Breaching Activity ...................................................................... 26

    E.      Ubiquiti's Remaining Claims Must be Dismissed in View of the GPL ..................... 27

    F.      Alternatively, the Court Should Conduct Limited Discovery on the Scope of the GPL License and Convert this Motion Under Rule 12(d) to a Motion for Summary Judgment Under Rule 56 ............................. 27

IV.     Conclusion ........................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
  499 F.3d 663 (7th Cir. 2007) ........................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................12

*Automated Sols. Corp. v. Paragon Data Sys., Inc.*,
  No. 1:05 CV 1519, 2012 WL 6026137 (N.D. Ohio July 19, 2012), *report
  and recommendation adopted as modified*, No. 1:05 CV 01519, 2012
  WL 6042408 (N.D. Ohio Dec. 4, 2012), *aff'd*, 756 F.3d 504 (6th Cir.
  2014) ..........................................................................................................................22

*Bigsby v. Davol Inc.*,
  No. 1:16-cv-00288-TWP-MPB, 2017 WL 2472274 (S.D. Ind. June 8,
  2017) ..........................................................................................................................13

*Burke v. 401 N. Wabash Venture, LLC*,
  714 F.3d 501 (7th. Cir 2013) ............................................................................7, 12

*Chapman v. AFSCME Council 31, Local 3477*,
  No. 17 C 8125, 2019 WL 214478 (N.D. Ill. Jan. 16, 2019) ...................................13

*Chicago Police Sergeants Ass'n v. City of Chicago*,
  No. 08-cv-4214, 2011 WL 2637203 (N.D. Ill. July 6, 2011) ..................................12

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)..................................................................................................24

*Davis v. Anderson*,
  718 F. App'x 420 (7th. Cir. 2017) ..........................................................................12

*Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*,
  284 F.3d 693 (7th Cir. 2002) ..................................................................................26

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*,
  624 F.3d 834 (7th Cir. 2010) ..................................................................................12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..................................................................................................22

*Ford Motor Co. v. Versata Software, Inc.*,
  Case No. 15-cv-10628, 2019 WL 355638 (E.D. Mich. Jan. 29, 2019) ...................23

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) .................................................................................................9

*Keller v. United States*,
  58 F.3d 1194 (7th Cir. 1995) .....................................................................................25

*Kohus v. Mariol*,
  328 F.3d 848 (6th Cir. 2003) .....................................................................................22

*Nielsen v. United Servs. Auto. Ass'n*,
  244 Ill. App. 3d 658 (1993) .......................................................................................26

*Santana v. Cook Cnty. Bd. of Review*,
  679 F.3d 614 (7th Cir. 2012) ...............................................................................28, 29

*Stanard v. Nygren*,
  658 F.3d 792 (7th. Cir. 2011) ..........................................................................6, 12, 13, 14

*Synopsys, Inc., v. Atoptech, Inc.*,
  2013 WL 6387038 (N.D.Cal.) ..............................................................................21, 22

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .................17, 20, 21

*United States v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) .............................................................................3, 13, 21

*Wallace v. IBM Corp.*,
  467 F.3d 1104 (7th Cir. 2006) ....................................................................................7

*Zahn v. N. Am. Power & Gas, LLC*,
  815 F.3d 1082 (7th Cir. 2016) ...................................................................................12

**STATUTES**

17 U.S.C. § 109(a) ............................................................................................................26

18 U.S.C. § 1962(c) ..........................................................................................................27

Defendants Cambium Networks, Inc. ("Cambium") and Cambium Networks, Ltd. ("Cambium UK"), Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev (collectively the "Defendants"), move to dismiss Ubiquiti Networks, Inc.'s ("Ubiquiti") First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

The Court dismissed Ubiquiti's initial complaint (Dkt. No. 1, the "Original Complaint") because it was unintelligible and failed to comply with Rule 8(a)(2). Ubiquiti's FAC is worse. Ubiquiti adds additional obfuscation to its claims—failing Rule 8 again—and now explicitly bases its claims on open source GPL-licensed software. The FAC fails for four primary reasons:

*First*, Ubiquiti fails to allege in its FAC "how Defendants allegedly ***violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations.***" Dkt. No. 59 ("Order") at 8. The Court's Order went to great lengths to describe the extent of the exclusion under the open source GNU General Public Licenses ("GPL") and quoted much of the definition of "covered works" used in them. The FAC now removes the term "Hacked Firmware,"[1] which clearly included "covered works" under the GPL, and replaces it with four different definitions that are confusing, overlapping and contradictory ("Ubiquiti Firmware," "Registered Firmware," "Proprietary Firmware," and "licensed-in materials").[2] None of these terms mention or exclude "covered works" as used in the GPL or the Court's Order. To the contrary, these contrived terms continue to claim "covered works" by continuing to claim modifications authored by Ubiquiti of open source software. For example, while the asserted Registered Firmware may exclude open source "licensed-in materials," any modifications to those materials are also "covered works" under the GPL. FAC, ¶ 35; Order at 4

---

[1] Hacked Firmware is an invented term coined in Ubiquiti's Original Complaint and repeated 273 times.
[2] These terms refer to the same terms defined in the FAC.

(covered works "include[] 'a ***work based' in whole or in part on open source software"***). Ubiquiti continues to claim modifications to GPL open source software as its own. In one example, the FAC blatantly claims proprietary rights in "modifications" to GPL licensed-in U-Boot bootloader code that exhibits to Ubiquiti's complaint admit elsewhere are "covered works" under the GPL. FAC, ¶ 37; Declaration of Jeff Fischer ("Fischer Dec."), Ex. G.[3]

The core flaw in Ubiquiti's Original Complaint remains—Ubiquiti refuses to identify materials that are *not subject to* the GPL or other open source licenses sufficient to put Cambium on notice of what the violation is.

*Second*, Ubiquiti failed to better define the "proprietary user interface," "configuration code" or "calibration code" allegations addressed in the prior motion. The Original Complaint failed to define these terms (Order at 8), and they remain undefined in the FAC. Rather, Ubiquiti has further obfuscated these terms by renaming them as "*proprietary compilations of data* in the configuration files or calibration files." FAC, ¶ 122. As the Court noted, data and information are not protectable—adding the word "proprietary" does not state a claim. Ex. 1 at 36:3-15.

*Third*, in the few instances where Ubiquiti actually attempts to name specific files or items (e.g., FAC, ¶¶ 36 and 37), the materials referenced in the FAC through the attached EULA and FULA demonstrate that the identical or very similar file was published as open source subject to the GPL on Ubiquiti's own website prior to the lawsuit. Thus, based on the allegations contained in the FAC, all of the items identified in the FAC are expressly subject to the GPL. Fischer Dec., Ex. D (mapping every item from the FAC to GPL component published by Ubiquiti), ¶¶ 23-43; *infra* §III.B.3. Ubiquiti's conclusory claims are demonstrably false in light of its own attached exhibits and referenced materials on its own website.

---

[3] Ubiquiti's EULA, attached to its FAC, incorporates by reference an open source file list from its own website that contains over 14,500 files and directories related to licensed-in and modified "uboot" bootloader code. Fischer Dec., Ex. G.

*Fourth*, in an apparent attempt to remove critical materials from the public, Ubiquiti now releases new versions of its firmware without any corresponding open source or GPL archive and requires users to accept a commercial license agreement to access older versions from the Ubiquiti GPL Archive incorporated into its EULA and FULA. Fischer Dec., at ¶ 19. Specifically, immediately after the Court notified the parties that it was "likely to grant in substantial part the motion to dismiss" (Dkt. No. 47), Ubiquiti released new versions of the asserted AirOS 6 firmware without a GPL archive link that was available for previous versions. Ex. 10 (showing Ubiquiti downloads page for "airOS6" released January 11, 2019 without any GPL Archive download link). As for older versions of the firmware, Ubiquiti requires users to accept its commercial EULA before accessing the open source archives.[4] Ex. 3. Prior to filing the original Motion to Dismiss, Defendants' counsel accessed, downloaded, and archived the contents of Ubiquiti's GPL archive without any requirement to agree to the EULA beforehand. Wilson Declaration at ¶ 2. Ubiquiti's attempt to hide what is an open source "covered work" supports dismissal with prejudice.

At a minimum, Rule 8 "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin in a bucket of mud." *United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Ubiquiti continues to ask this Court and Defendants to dig blindly in that bucket despite the Court's clear direction that Ubiquiti identify the gold coin. Ubiquiti had its chance—twice—to provide clarity to its allegations but has failed to do so. Its FAC should be dismissed with prejudice under Rule 8 on this basis alone.

Finally, to the extent that the Court intends to proceed beyond the pleading stage for any reason, the Court should limit discovery to further identification of any claims to ensure they are

---

[4] Despite Ubiquiti's apparent attempt to hide open source archives from consideration, factual references for this motion are made as of the *original* filing date, not the filing date of the FAC. Ubiquiti's EULA and FULA that are the subject of the FAC still contain references to the archive on its website.

not "covered works" under the GPL or other open source licenses. Given Ubiquiti's attempt to prevent further public access to its open source archive, this is only reasonable. A schedule for early summary judgement should follow to resolve any alleged violations precluded by open source licenses.

## II.  BACKGROUND

### A.  Background and Posture of the Motion

#### 1.  The Initial Complaint and Defendants' First Motion to Dismiss

Ubiquiti filed its Original Complaint on August 7, 2019 containing 15 claims and totaling 22 sub-counts principally asserting breach of contract and copyright infringement claims based on Ubiquiti copyrighted software. Original Complaint, ¶¶ 168-398. The claims in the Original Complaint stem from allegations that Cambium created a modified version of the AirOS firmware (what Ubiquiti calls the "Ubiquiti Firmware") installed on Ubiquiti's M-series devices by modifying, copying, and deleting portions of the firmware, circumventing access control mechanisms in the firmware, and using parts of the firmware that remain on the devices after those modifications. *Id.*, ¶¶ 43-51, 57. The Original Complaint also alleged that Cambium violated Ubiquiti's registered copyrights in the Ubiquiti Firmware in developing and promoting a competing operating system, called ePMP Elevate, by reverse engineering the Ubiquiti Firmware and copying and modifying parts of it. *Id.*, ¶¶ 43-71.

Defendants moved to dismiss the Original Complaint on October 19, 2018 under FRCP 12(b)(1) and 12(b)(6) on grounds that the GPL and other open source software licenses incorporated into Ubiquiti's Firmware User License Agreement ("FULA") and End User License Agreement ("EULA") (collectively, "Ubiquiti Licenses") restrict all rights Ubiquiti may assert

against downstream users, including Defendants. Dkt. No. 33 at 16-19, 36-37; Dkt. No. 37.[5]

Specifically, Defendants argued that Ubiquiti's Licenses expressly require review of Ubiquiti's

website to "determine which portions of the Ubiquiti Firmware are Open Source Software and

are licensed under an Open Source Software license" and that Ubiquiti's website readily evinces

that over 16,000 files and 1.4 million lines of code in Ubiquiti's Firmware is subject to the GPL.

Dkt. No 33 at 11. Defendants therefore argued that the Original Complaint failed to state a claim

because it failed to address the effect of this GPL code on any original code that Ubiquiti did

write. *Id.* at 17-18. The Court granted Defendants' motion. Order at 10.

### 2.    Ubiquiti Limited its Claims During Oral Argument

At the hearing on Defendants' Motion to Dismiss, Ubiquiti admitted that its Firmware

contains—and is a derivative of—GPL code that it cannot assert.

> THE COURT: I'm talking about stuff that you did that is ***derivative of*** GPL code.
> MR. BERTIN: ***Yeah, we're not asserting it.***
> THE COURT: You made it better --
> THE COURT: Right.
> MR. BERTIN: So you created a new thing.
> MR. BERTIN: Right.
> THE COURT: ***But you're not saying this new thing has been infringed in any way?***
> ***MR. BERTIN: Yes, I agree with that characterization as to that category***.

Ex. 1 (Hearing Transcript) at 19:6-22; *see also id.* at 13:13-16. In light of this admission, the

Court pressed Ubiquiti to identify the code at issue that is not subject to the GPL, including any

modification of it. Ubiquiti stated that its claims were limited to *four matters*:

> THE COURT: Okay. So, what are ***the non-public-source-derivative programs*** in
> Cambium's suite of software that's at issue in this case? You've told me one,
> which is the proprietary user interface. What's another one? . . .
> MR. BERTIN: So, ***the user interface is one***. There's two things that are

---

[5] Pursuant to the Mandatory Initial Discovery Pilot Project Standing Order in effect at the time, Defendants also answered the Original Complaint principally stating that Ubiquiti has asserted no patent claim based on the Ubiquiti hardware and that Defendants had the right to delete Ubiquiti firmware on those devices and install Cambium firmware. Cambium denied ever using any proprietary Ubiquiti software but maintained that it had a right to use any GPL protected or open source software.

specifically pled in our complaint, ***the configuration and the calibration code***. Those are two things that we allege are not part of the - - are not part of the GPL, and we've alleged that Cambium has copied those and made unauthorized use and access to those things. . . .

THE COURT: Are there any other examples?

MR. BERTIN: Yeah. Another example is in ***the proprietary AirMAX protocol*** that's mentioned in the complaint, and then there's everything else. But those are specifically called out as proprietary portions. . . .

THE COURT: Okay.

MR. BERTIN: ***But those are <u>the four</u> matters.***

*Id.* at 16:7-18:13 (emphasis added[6]). Ubiquiti later doubled-down on the narrow scope of its claims, stating that ". . . while they're painting this out to be something much broader than it is, I think ***I've laid out three or four things, user interface and these two other pieces of code, and a radio***. And this is not a wide-open thing." *Id.* at 41:17-20. Ubiquiti also clarified that the "user interface" is "not in [Cambium's] code" and only infringes Ubiquiti's public performance rights. *Id.* at 17:1-2, 12-20.

Thus, at the hearing, Ubiquiti limited its claims to infringement of "four matters": (1) public performance of its "user interface", (2) configuration code, (3) calibration code, and (4) the "AirMAX protocol"—and admitted it could not identify any allegations that those components or modifications of them were not covered by the GPL. This is Ubiquti's admitted scope of the case as of the December 12, 2018 hearing.

### 3. The Court Dismissed the Original Complaint

The Court dismissed the Original Complaint for violating Rule 8's "straightforward" pleading requirement because it "[did] not provide adequate notice of how Defendants allegedly violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations." Order at 8 (quoting *Stanard v. Nygren*, 658 F.3d 792, 800 (7th. Cir. 2011)). Specifically, the Court found that ***the four infringing components*** Ubiquiti

---

[6] Emphasis has been added unless otherwise noted.

identified at the hearing were not "clearly define[d]" in light of these open source licenses and noted Ubiquiti's struggles to "explain the rough contours of its claims." *Id.* at 7-8. The Court concluded that the "disconnect between the broad claims articulated in the complaint, on the one hand, and Ubiquiti's acknowledgment that the GPL and other open source software licenses limit its rights and therefore the scope of its claims, on the other, makes the scope of Defendants' allegedly unlawful conduct 'unintelligible,' thereby violating Rule 8(a)(2)." *Id.* at 8-9. The Court required Ubiquiti to "spell[] out at least the general nature of its allegedly misused firmware that is not covered by the GPL and other open source software licenses" and stated that "[o]nce Ubiquiti repleads, the court and Defendants will be in a better position to ascertain whether (and to what extent) the GPL and other open source software licenses cover Cambium's alleged firmware modifications and therefore to determine the legal sufficiency of Ubiquiti's claims." *Id.* at 9-10.

In so holding, the Court found that the GPL is part of the pleadings because it is expressly incorporated into Ubiquiti's Licenses and central to its claims. Order at 5 (citing *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th. Cir 2013)). Critically, the Court recognized that the GPL covers modified or derivative works based in whole or in part on GPL code:

> A "covered work" under the GPL includes "a work based" in whole or in part on open source software, but does not include "separate and independent works, which are not by their nature extensions of the covered work, and which are not combined with it such as to form a larger program." . . . ***As a result, the GPL propagates the rights associated with open source software to derivative programs, affording users of derivative programs the same "freedom to change the software" that the GPL guarantees.*** . . . ; *see Wallace v. IBM Corp.,* 467 F.3d 1104, 1105 (7th Cir. 2006) ("[T]he GPL propagates from user to user and revision to revision: neither the original author, nor any creator of a revised or improved version, may charge for the software or allow any successor to charge.").

Order at 4 (citations omitted).

**B.     The FAC Contains New Allegations Based on Four New Definitions**

The FAC expands on the broad and ambiguous scope of the Original Complaint's allegations. Ubiquiti takes the term "Ubiquiti firmware" from the Original Complaint, admits that it contains licensed-in GPL code, and then divides it into four new defined terms—Ubiquiti Firmware, Registered Firmware, Proprietary Firmware, and licensed-in materials—that are contradictory and inconsistently used throughout the FAC. FAC, ¶¶ 25, 34-39.

However, even with these newly defined categories, the FAC is still no better than the Original Complaint. The FAC states *only* that the Registered and Proprietary Firmware "*generally excludes*" licensed-in GPL material themselves and still fails to exclude modifications and derivatives of open source, GPL-licensed code. *Compare* FAC, ¶¶ 33, 35, *with* Original Compl., Ex. A. Critically, the four new definitions fail to use the term "covered work" as set forth in the Order.

Registered Firmware is defined as "[t]he *portions* of Ubiquiti's Firmware that constitute original authorship by Ubiquiti" and includes computer programs (source and object code) and related comments and compilations of data that are *associated with* various components. *Id.*, ¶ 33, 37. While Registered Firmware also "*generally excludes*" all licensed-in materials, it explicitly does not exclude derivatives and modifications of the licensed-in materials. *Id.*, ¶ 35. Elsewhere, the components alleged in the complaint that include the Registered Firmware directly contradict this definition and include "licensed-in materials." For example, Ubiquiti alleges that the Registered Firmware includes the licensed-in AirMax component (*id.*, ¶ 37, 39), even though Registered Firmware is defined to "generally exclude" such licensed-in materials (*id.*, ¶ 35). Thus, in at least the case of the AirMax component, Ubiquiti clearly claims both the open source licensed-in materials from third parties as well as derivatives and modifications of them.

8

Proprietary Firmware is defined to include all Registered Firmware, compilations of data in calibration and configuration files, ***and*** licensed-in materials. *Id.*, ¶ 39. But "compilations of data" in calibration and configuration files is a category that is also ***separately*** and specifically included in Registered Firmware, which is included in the Proprietary Firmware by definition. *Id.*, ¶¶ 37, 39. Some components are alleged to be Ubiquiti's Proprietary Firmware, yet Ubiquiti admits they are licensed-in from third-party Atheros and thus not owned by Ubiquiti. *Id.*

Factually, "licensed-in materials" are not the same as "covered works" under the GPL because, as the Court recognized, "a 'covered work' under the GPL includes a work based in whole or in part on open source software . . . [and ***a]s a result, the GPL propagates the rights associated with open source software to derivative programs.***" Order at 4 (quotations omitted). Because the term "licensed-in materials" never excludes these GPL derivative programs, the FAC still does not address the "the disconnect between [Ubiquiti's] broad claims . . . and the GPL" beyond admitting that its firmware includes GPL material and repeating the Original Complaint's allegation that the asserted firmware *excludes* licensed-in GPL material. *Id.* at 8.

Finally, Ubiquiti adds a new copyright registration to airOS 6.0 to its claims of infringement in the FAC. FAC, ¶ 35. All claims arising from this new registration must be dismissed because the registration was granted after Ubiquiti filed this lawsuit.[7]

### C.    Ubiquiti's Admitted Use of GPL Code

Ubiquiti admits, and the Court recognized, that Ubiquiti's Firmware includes and is based

---

[7] In *Fourth Estate*, the U.S. Supreme Court clarified that "[u]nder § 411(a) . . . **a copyright owner may sue for infringement, when the Copyright Office registers a copyright**." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019). The FAC alleges copyright infringement of "U.S. Copyright No. TX 8-654-155 for airOS version 6.0," which was registered on December 18, 2018—over four months after Ubiquiti filed the Original Complaint on August 7, 2018. FAC, Ex. A at 3. The FAC relates back to the Original Complaint under Rule 15(c)(1)(B) because all of the allegations in the FAC arise out of the same conduct, transaction, or occurrence set out in the Original Complaint. Thus, Ubiquiti's claims involving airOS version 6.0 must be dismissed because the Copyright Office did not register Ubiquiti's copyright until after Ubiquiti filed this suit. *Fourth Estate*, 139 S. Ct. at 892.

upon open source software licensed under the GPL. Ubiquiti's Licenses **require** that all users review documentation and the Ubiquiti website (www.ubnt.com) to determine which portions of Ubiquiti's software are subject to open source licenses:

> **OPEN SOURCE SOFTWARE**
> You hereby acknowledge that ***the Ubiquiti Firmware may contain Open Source Software***. You agree to ***review any documentation*** that accompanies the Ubiquiti Firmware or is identified in the documentation for the Ubiquiti Firmware ***in order to determine which portions of the Ubiquiti Firmware are Open Source Software and are licensed under an Open Source Software license***. . . . ***[S]uch rights in the applicable Open Source Software license shall take precedence over the rights and restrictions granted in this Agreement . . . . Copyrights to the Open Source Software are held by the copyright holders indicated in the copyright notices in the corresponding source files or as disclosed at http://www.ubnt.com***.

FAC Ex. B at 3-4; *see also* FAC Ex. C at 5 (requiring the same).

### 1.    The Ubiquiti Open Source Archives are Part of the Pleadings

Ubiquiti has provided extensive documentation and source code on its website (the "Ubiquiti Open Source Archives") to inform users of firmware components that are subject to open source licenses as required by the Ubiquiti Licenses. FAC, Ex. B at 3-4.[8]

### a)    Ubiquiti Published its Software Development Kits that Contain the Same Code Asserted in this Case

In February 2011, Ubiquiti published on its website the source code for airOS software development kits (the "Ubiquiti SDKs") corresponding to two of the versions of airOS it accuses Defendants of infringing—airOS 5.2.1 and 5.3. Ex. 4 (archive of ubnt.com/support/downloads showing downloads for versions 5.2.1 and 5.3 of the Ubiquiti SDKs); FAC, ¶ 132 (asserting infringement of those versions). Each Ubiquiti SDK contains a "LICENSE" file indicating that

---

[8] Since the sheer size of the Ubiquiti Open Source Archives are so large (spanning hundreds of megabytes of computer code), Defendants submit digests of information (Fischer Dec. Exs. F, G) and the Declaration of Jeff Fischer describing the Ubiquiti Open Source Archives. The Ubiquiti Open Source Archives include two publications of code for the Ubiquiti Firmware that Ubiquiti published under the GPL—the Ubiquiti SDKs and the Ubiquiti GPL Archive. Fischer Dec. at ¶¶ 13-19.

the code is licensed under the GPL version 2, and Ubiquiti's website indicates that source code in the Ubiquiti SDKs is licensed under the GPL version 3. Ex. 4 (showing hyperlink to GPL version 3); Fischer Dec. at ¶¶ 20-21.  The Ubiquiti SDK for airOS 5.3 contains about 24,000 files and directories, including over 40 "tar" compressed files that contain thousands of additional source code files. Fischer Dec., Ex. F.

### b) Ubiquiti Published its GPL Archive

Beginning in 2013 Ubiquiti removed its SDKs from its website and instead published what it refers to as a "GPL Archive." Exhibit 5 is a September 2018 screenshot of Ubiquiti's website that contains a download link to the Ubiquiti GPL Archive, which is published on its website under the terms of the GPL. Ex. 5 (stating that some of the software in Ubiquiti's Firmware is licensed under the GPL with a link to the GPL v3 and stating that "[y]ou can find the complete and corresponding source in the GPL archive").  The "uboot" folder of the Ubiquiti GPL Archive also includes a "COPYING" file that again restates all the terms of the GPL v2 to U-Boot. Ex. 7. As of September 2018, the Ubiquiti GPL Archive contains over 19,000 files and directories, including over 14,500 files and directories related to u-boot and the bootloader firmware. Fischer Dec., Ex. G. Recently, Ubiquiti stopped allowing for public access to its GPL Archives for new versions after Defendants filed their motion to dismiss the Original Complaint. Wilson Declaration at ¶ 2; Ex. 3. Ubiquiti now requires users to accept the Ubiquiti EULA—a commercial license agreement—before accessing the GPL Archive source code even for previous versions. Ex. 3. Arguably, Ubiquiti's GPL Archive is no longer freely accessible or fully public. Nevertheless, Ubiquiti is still subject to the GPL license. While this is a clear violation of the GPL, which prohibits users from "impos[ing] any further restrictions on the recipients' exercise of the rights granted herein," the point here is that Ubiquiti is attempting to block public access heightening the need to clearly define the asserted claims. Ex. 9 at 3.

Despite this change, the Ubiquiti Open Source Archives, including the GPL Archive and SDKs, are properly part of the pleadings because the Ubiquiti Licenses—which are central to all of Ubiquiti's claims—require licensees to identify open source components by reviewing them as published on Ubiquiti's website.[9]

## III.    ARGUMENT

### A.    Standard of Review

#### 1.    Rule 8 Standard

In resolving a motion under Rule 12(b)(6), the court assumes all well-pleaded factual allegations as true. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). This requires a *plausible*—not merely *possible*—allegation of a claim. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Conclusory statements of law are not given deference, nor are conclusory statements of fact that contradict more specific statements of fact. *Chicago Police Sergeants Ass'n v. City of Chicago*, No. 08-cv-4214, 2011 WL 2637203, at *7 (N.D. Ill. July 6, 2011) ("A Plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.")

A court should grant a Rule 12(b)(6) motion when the complaint violates Rule 8(a)'s pleading standard. *See Davis v. Anderson*, 718 F. App'x 420, 424 (7th Cir. 2017). Rule 8(a)(2) requires "straightforward pleadings." *Stanard*, 658 F.3d at 800. "Though length alone is

---

[9] Where a plaintiff attaches documents to its complaint, such as the Ubiquiti Licenses, they are considered part thereof. *Burke*, 714 F.3d at 504. Documents referred to in the complaint and that are central to its claims are considered part of the pleadings as well. *Id.* at 505. The Ubiquiti Licenses require users to determine which portions of its firmware are subject to open source licenses using documentation and its website. FAC, Exs. B and C. Such portions of the Ubiquiti website are therefore considered part of the pleadings because they are referred to in the pleadings and central to allegations of breach and infringement because they identify "which portions of the Ubiquiti Firmware are Open Source Software and are licensed under an Open Source Software license" and are therefore critical to discerning Ubiquiti's claims. FAC, Ex. B at 3-4.

generally insufficient to justify rejecting a complaint, unintelligibility is certainly a legitimate reason for doing so" because "lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct." *Id.* at 797–98. In *United States v. Lockheed-Martin Corp.*, the Seventh Circuit analyzed an amended complaint that was 155 pages long and had more than 400 numbered paragraphs, and noted that the plaintiff's use of acronyms forced the reader to scour the complaint to understand paragraphs using those acronyms. 328 F.3d at 377. In affirming the district court's dismissal with prejudice, the Seventh Circuit stated:

> Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties ***need not try to fish a gold coin from a bucket of mud***. Federal judges have better things to do, and the substantial subsidy of litigation . . . should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim. [The plaintiff's] lawyer filed documents so long, so disorganized, so laden with *cross-references and baffling acronyms*, that they could not alert either the district judge or the defendants to the principal contested matters.

*Id.* at 378 (emphasis added).

## 2. Dismissal with Prejudice is Appropriate

Failure to comply with a court's instructions when amending a complaint is also grounds for dismissal with prejudice. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 668 (7th Cir. 2007) (affirming dismissal with prejudice for failing to fix defects chronicled in concrete instructions by the district court); *Stanard*, 658 F.3d at 801 (affirming dismissal with prejudice for "flagrantly disobey[ing] the court's patient instructions"). Dismissal with prejudice is warranted where the plaintiff has been given a full and fair opportunity to amend and continues to assert claims which fail to meet the standards of Rule 8. *See Stanard*, 658 F.3d at 801; *Lockheed-Martin*, 328 F.3d at 378 (both affirming dismissal *with prejudice* for failing to comply with Rule 8). District courts within the Seventh Circuit routinely dismiss cases

with prejudice after giving only one opportunity to comply. *See Chapman v. AFSCME Council 31, Local 3477*, No. 17 C 8125, 2019 WL 214478 (N.D. Ill. Jan. 16, 2019); *Bigsby v. Davol Inc.*, No. 1:16-cv-00288-TWP-MPB, 2017 WL 2472274 (S.D. Ind. June 8, 2017).

Here, Ubiquiti has failed to comply with the Court's detailed instructions to meaningfully address the GPL issues. Ubiquiti has demonstrated it knows how to plead that code is not "subject to the GPL licenses and is not a "covered work"—but it simply refuses to do so for code that it asserts. No additional amendments can change this. Accordingly, the FAC should be dismissed with prejudice because it fails to fix the defects in the Original Complaint that were chronicled by the Court's Order and Ubiquiti has already been given a full and fair opportunity to amend. *Stanard*, 658 F.3d at 801; *Airborne Beepers,* 499 F.3d at 668.

## B.      Merely "Excluding" Licensed-In Materials Fails Under Rule 8(a)

At the outset of this analysis, it should be noted that use of the term "covered work" appears nowhere in the FAC. The term "excludes licensed-in materials" is not contained anywhere in the Court's Order either, yet it is the only phrase used in the FAC to limit allegedly proprietary code from the reach of the GPL. They are not the same.

### 1.      The Original Complaint was Dismissed on Allegations of "Exclusion" of Licensed-in GPL Material

In the Original Complaint, Ubiquiti alleged that all licensed-in materials, including licensed-in GPL code, were *excluded* from the firmware covered under Ubiquiti's copyrights. Original Complaint, Ex. A; *see* Dkt. No. 39 at 2 (arguing the same). Nevertheless, the Court dismissed the Original Complaint as failing to meet the Rule 8 standard because it did not explain "how Defendants allegedly violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations." Order at 8. Specifically, the Court acknowledged the broad scope of the GPL extended to modifications and

derivative works in addition to the GPL "licensed-in materials" themselves:

> *A "covered work" under the GPL includes "a work based" in whole or in part on open source software, but does not include "separate and independent works, which are not by their nature extensions of the covered work, and which are not combined with it such as to form a larger program." As a result, the GPL propagates the rights associated with open source software to derivative programs, affording users of derivative programs the same "freedom to change the software" that the GPL guarantees.*

*Id.* at 4 (citations omitted). Thus, the Court acknowledged that the GPL "propagates" beyond the licensed-in GPL code itself to modifications and derivative works based on GPL code. *Id.* at 9. As evidenced by counsel's admissions, Ubiquiti understood it could not assert a claim based on derivative works. Ex. 1 at 19:6-22.

### 2. The FAC Continues to Assert Claims under Modifications and Derivative Works "Based On" GPL Code

The FAC contains this exact same problem as the Original Complaint—it alleges only that Ubiquiti's Registered and Proprietary Firmware "*generally exclude*" licensed-in GPL materials[10] while refusing to address the broader effect of the GPL by failing to exclude modifications or derivatives based on GPL code as well.

First, in alleging copyright infringement, the FAC states that "[t]he source code covered by the Registered Firmware ***does not include*** open source software ***licensed to Ubiquiti*** pursuant to the terms of the GNU General Public License (GPL), other open source license, or other 'licensed-in' materials." FAC, ¶ 136. However, this does not exclude all "covered works" under the GPL license and still includes modifications and derivative works based on GPL software. At best, Ubiquiti alleges that Registered Firmware—which the FAC defines as all "portions of Ubiquiti's Firmware that constitute original authorship by Ubiquiti"—does not *include* GPL code itself that it did not author. This is not the same thing as stating that the Registered

---

[10] Ubiquiti alleges that the "Proprietary Firmware" actually contains some licensed-in materials but that those licensed-in materials are not subject to the GPL.

Firmware is not *covered* by the GPL license or is not a "covered work" as required by the Court. *See* Order at 4. The GPL license covers any new derivative code <u>and</u> code originally authored by Ubiquiti that is "based on" GPL code. Simply put, Ubiquiti's Four Definitions cleverly exclude licensed-in GPL code but not the modifications or derivatives based on the GPL code.

For example, Ubiquiti may take a GPL-licensed file, add to it, and obtain a copyright registration on its additions to the file. Ubiquiti's Registered Firmware definition would include this work and nothing in the GPL license prohibits merely ***registering*** a copyright in this material. In this example, the registered copyright would *exclude* the licensed-in GPL material in the file, and only apply to the derivative or modified material authored by Ubiquiti. But the GPL ***license*** expressly covers this situation by including Ubiquiti's modifications and derivatives within the "covered works" exclusion as works that "in whole or part contain[] or [are] derived from" open source software. Ex. 9 at 2. Ubiquiti simply has no right to assert a claim based on modifications to materials subject to the GPL yet continues to do so under its Registered Firmware definition.

By Ubiquiti's own admission, GPL material and additions and modifications to it constitute the vast majority (if not the entirety) of its firmware. *See* Ex. 2 (showing 1.5 million lines of code and comments in Ubiquiti GPL Archive), 11-F, 11-G. Ubiquiti's claims based on Registered Firmware therefore remain unintelligible because they fail to clearly define if any Registered Firmware components are not covered by the GPL as referenced and incorporated in its FAC.

Similarly, the FAC alleges that Proprietary Firmware includes certain modified licensed-in materials from third-party Atheros that are not subject to the GPL. FAC, ¶ 39. However, each of the identified Atheros file names identify the well-known, open source GPL U-Boot

bootloader software and Ubiquiti published the code for this bootloader on its website as licensed under the GPL. Fischer Dec., Ex. G (list of files in Ubiquiti's GPL Archive with over 14,500 files and directories related to "uboot"). Ubiquiti's Amended Technology License Agreement with Atheros, which was filed publicly with the SEC, specifically passes Atheros' open source license obligations, such as the GPL, to Ubiquiti in the same manner the Ubiquiti Licenses do. Ex. 6 at 1-2 (passing on the terms of the GPL to licensees and excluding such software from Atheros's proprietary terms).[11]

Finally, like the plaintiff in *Synopsys*, if Ubiquiti had a clearly protectable copyright not subject to any open source license, a simple allegation that Defendants infringe a copyright in a specific file ***which is not a "covered work" under the GPL and which Ubiquiti owns all right, title and interest*** would survive a motion to dismiss. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (denying motion to dismiss as to proprietary code alleged to be "distinct" from open source portion under the relevant permissive open source license). Ubiquiti's failure to make such a claim in light of the Court's Order is a clear indication no claim exists.

While a clever attempt, the FAC merely repeats the problematic allegations from the Original Complaint that the Registered and Proprietary Firmware definitions continue to include "covered works." The FAC is therefore "unintelligible" for the same reason as the Original Complaint and fails to provide Defendants with adequate notice of Ubiquiti's claims.

---

[11] Documents referenced in the FAC and central to its claims are considered part of the pleadings and properly considered on a motion to dismiss. *See supra* n.9. The Amended Technology License Agreement (Ex. 6) is referenced in the FAC because Ubiquiti claims that certain Registered and Proprietary Firmware is "licensed-in" from Atheros. FAC, ¶¶ 37, 39. It is central to Ubiquiti's claims because it is alleged to form the basis of Ubiquiti's proprietary rights in that software. It should therefore be considered part of the pleadings.

### 3.     Identifying Specific Components Fails to Satisfy Rule 8(a)

Ubiquiti's identification by name of files or components included in its Registered Firmware fails to satisfy Rule 8(a) because it also does not explain "how Defendants allegedly violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations." Order at 8. Ubiquiti sets forth a list of 17 *items* that appear to be source code files[12], compiled code packages, or internal component names that it alleges comprise its Registered Firmware. FAC, ¶ 37. Together with its claim that the copyright registrations *exclude* licensed-in code, the identified software components fail to plausibly support claims that any Registered or Proprietary Firmware are not covered by the GPL. There is no allegation that they are entirely Ubiquiti's "original authorship" and not "covered works." Thus, the FAC fails to clearly allege that any of the software components are not "covered works" under the GPL.

Specifically, each of the 17 asserted software files or components has a matching GPL-protected software component that was published on the Ubiquiti website and was part of the Ubiquiti Open Source Archive. The chart below matches each of these alleged components with an open source file previously published on the Ubiquiti website ("Ubiquiti Open Source Archives"). All GPL Archive files come directly from the ubnt.com website as of September 2018 and the SDK came indirectly from ubnt.com, reposted on http://stud.netgroup.uniroma2.it/~saverio/ as of July 31, 2012. Ubiquiti removed public access to the SDK files some time in 2013. *See* Exs. 4, 5.

---

[12] Only after mapping the listed things to specific code files and folders in the Ubiquiti Open Source Archive were Defendants able to identify what they referred to.

| Component (FAC, ¶¶ 37, 39) | Path to Matching Code in Ubiquiti SDK or GPL Archive[13] | Last Published on ubnt.com |
|---|---|---|
| **ubnt-web** | Ubiquiti SDK\openwrt\package\**ubnt-web** | 2013 |
| **ubnt-cgi** | Ubiquiti SDK\openwrt\package\ubnt-web\src\**ubnt.cgi** | 2013 |
| **ubnt-poll** | Ubiquiti SDK\openwrt\package\ubnt-base-files\files\etc\modules.d\50-**ubnt-poll** Ubiquiti SDK\openwrt\package\ubnt-base-files\files\lib\modules\2.6.15-5.2\**ubnt_poll**.ko | 2013 |
| **ubnt-spectral** | Ubiquiti SDK\openwrt\package\ubnt-base-files\files\lib\modules\2.6.15-5.2\**ubnt_spectral**.ko Ubiquiti SDK\openwrt\package\**ubnt**-base-files\files\bin\**spectral**tool. (*see also* /**spectral**box; /**spectral**player; \**spectral**server) | 2013 |
| **ubnt-spectral-2** | Ubiquiti SDK\openwrt\package\ubnt-base-files\files\lib\modules\2.6.15-5.2\**ubnt_spectral**.ko Ubiquiti SDK\openwrt\package\**ubnt**-base-files\files\bin\**spectral**tool. (*see also* /**spectral**box; /**spectral**player; \**spectral**server) | 2013 |
| **ubntbox** | Ubiquiti SDK\openwrt\package\ubnt-base-files\files\sbin\**ubntbox** | 2013 |
| **ubntconf_cl.sh** | Ubiquiti SDK \openwrt\package\ubnt-base-files\files\sbin\**ubntconf** | 2013 |
| **ubnt-3g** | Ubiquiti SDK\openwrt\package\**ubnt**-base-files\files\usr\etc\hotplug.d\usb\30-**3g** | 2013 |
| **bunt-base-files**[14] | Ubiquiti SDK\openwrt\package\**ubnt-base-files** | 2013 |
| **ar7240-u-boot.rom** | Ubiquiti GPL Archive\**uboot**\uboot-xm\board\**ar7240**\ubnt-xm | Current |
| **ubntxn-u-boot.rom**[15] | Ubiquiti GPL Archive\**uboot**\**uboot-xm**\board | Current |
| **ubntxn-400-u-boot.rom** | Ubiquiti GPL Archive\**uboot**\**uboot-xm**\board | Current |
| **ubntwasp-u-boot.rom** | Ubiquiti GPL Archive\**uboot**\uboot-ti\board\ar7240\**ubnt-wasp** | Current |
| **ubnttitanium-u-boot.rom** | Ubiquiti GPL Archive\**uboot**\**uboot-ti**\board | Current |
| **Atheros-11n** | Ubiquiti SDK\openwrt\package\ubnt-base-files\files\etc\modules.d\55-**ath-11n** | 2013 |
| **ubnthal** | Ubiquiti SDK\openwrt\package\**ubnt**-base-files\files\lib\modules\2.6.15-5.2\ath_**hal**.ko | 2013 |
| **ubnt-regd** | Ubiquiti SDK\openwrt\package\**ubnt**-base- | 2013 |

---

[13] The attached Declaration of Jeff Fischer contains expert analysis on the clear correspondence between the asserted components and the files listed below.

[14] It is assumed the "bunt-base-files" is a typo and is intended to refer to "ubnt-base-files."

[15] It is assumed that "ubntxn" is a typo meant to refer to the "x**m**" line of Ubiquiti devices, since it is not apparent that Ubiquiti makes an "xn" board and only the "**M**-Series" software is accused here. FAC, ¶ 1.

| Component (FAC, ¶¶ 37, 39) | Path to Matching Code in Ubiquiti SDK or GPL Archive[13] | Last Published on ubnt.com |
|---|---|---|
| | files\files\sbin\**regd**omain | |
| **ubnt-poe-control** | Ubiquiti SDK\openwrt\package\**ubnt**-web\src\advanced.tmpl and advanced.cgi (code for Power Over Ethernet (POE) settings) | 2013 |

Each of the 17 asserted software components in the FAC is a "covered work" within the meaning of the GPL license and the Court's Order because it matches to a Ubiquiti Open Source Archive file since it is either the same as a GPL file or derived from it.

Ubiquiti's admission that the bootloader and other asserted components are licensed under the GPL "muddles" its copyright claims in those components and perpetuates the "disconnect" the Court highlighted in the Original Complaint. *See Synopsys, Inc.*, 2013 WL 5770542, at *4; Order at 8-9. Ubiquiti should withdraw these allegations or at least support them with plausible factual allegations that are not demonstrably false on the face of the pleadings. Ubiquiti's decision to require users accessing its GPL Archive to accept the terms of its EULA is not only a breach of the GPL; it is an additional deliberate attempt to frustrate Defendants' identification of the claims asserted against it.

### 4.    Ubiquiti Failed to "Clearly Define" the "Four Matters" Identified at Hearing

Ubiquiti makes no attempt to more "clearly define" the "proprietary user interface," "configuration code," "calibration code," and the AirMAX platform, despite the Court's Order and its admissions at hearing. Order at 8. The terms "configuration code" and "calibration code" are no longer in the FAC. Instead Defendants are forced to go on a scavenger hunt to stitch together other definitions from numerous paragraphs to arrive at Ubiquiti's allegations of infringement as to "portions of Ubiquiti's Firmware that constitute original authorship by Ubiquiti" (FAC, ¶ 33) "includ[ing] computer programs (source and object code), and related

comments, and **compilations of data associated with** . . . **configuration** . . . [and] various utilities . . . related to, among other things, **configuration, [and] calibration** . . ." (*id.*, ¶ 37). A similar exercise is required for the "proprietary user interface," which is alleged to include things called "ubnt-web" and "ubnt-cgi", and the AirMAX platform, which, as discussed above, is paradoxically alleged to be both Ubiquiti's own original expression and licensed in from Atheros. *See id.*, ¶¶ 37, 39. If Ubiquiti intended this to correct what the Court called a failure to "clearly define" these terms, it has again failed.

Defendants should not be forced to identify the gold coin, if any, from the bucket of mud created by the FAC. *Lockheed-Martin*, 328 F.3d at 377.

### 5. Ubiquiti "Muddles" its Claims by Failing to Separate Protectable from Unprotectable Portions of its Firmware

Asserting a software copyright claim based on a copyright containing open source software "muddles" the claims to the proprietary nature of that software as a whole and requires additional distinction. *Synopsys, Inc.*, 2013 WL 5770542, at *4. In *Synopsys*, the complaint broadly alleged violations of "Copyrighted Software" that admittedly included open source code. The plaintiff alleged that its copyrighted software "support[ed] a set of open source commands . . . *distinct* from the compilation of Synopsys-proprietary input formats." *Synopsys, Inc., v. Atoptech, Inc.*, 2013 WL 6387038 at ¶ 19 (N.D.Cal.) (complaint). The court dismissed infringement claims to everything *except for the input formats* because "plaintiff muddle[d] this claim by also asserting that parts of its software and documentation are open-source, which makes its contention that essentially all of its materials are under Plaintiff's copyright protection less plausible." *Synopsys*, 2013 WL 5770542 at *4.

Ubiquiti has similarly muddled its claim by admitting that its Firmware includes open source GPL code, and it has not plausibly alleged that the Registered or Proprietary portions are

21

not "covered works" under the GPL. To make matters worse, Ubiquiti further "muddles" its claim by clearly removing previously accessible GPL Archives from its website and requiring everyone to accept the commercial terms of its EULA. The facts here are therefore far worse than *Synopsys*, because the plaintiff in that case did not admit to licensing-in any material under the GPL nor actually interfere or change any GPL archive. Instead, the plaintiff merely created and chose to license out part of its code under an open source license. *Synopsys* 2013 WL 6387038 at ¶ 19. Here, all asserted claims are subject to the open source GPL license that "propagates" to other works "based in whole or in part" on the covered work. Order at 4. Ubiquiti has not alleged that any allegedly protectable code is "distinct" from the open source code as was alleged in *Synopsys*. Thus, under *Synopsys*, Ubiquiti's claims should be dismissed.

### 6. Having Admitted that its Firmware Includes GPL Code, Ubiquiti Must Allege Circumstances Where Protectable Firmware Could Survive a Filtration Analysis

"[I]t is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original.*'" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (emphasis in original) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To establish protectable original expression, "a plaintiff alleging copyright infringement of computer software . . . must initially identify those elements of its software that are original" and thus entitled to protection, thereby filtering out those elements of the purportedly copied software "that would be expected to be common to any [industry] software [and] those dictated by the particular business practices [of that industry]." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, No. 1:05 CV 1519, 2012 WL 6026137, at *7 (N.D. Ohio July 19, 2012) (granting summary judgment), *adopted as modified*, No. 1:05 CV 01519, 2012 WL 6042408 (N.D. Ohio Dec. 4, 2012), *aff'd*, 756 F.3d 504 (6th Cir. 2014). A plaintiff's failure to provide sufficient evidence for the court to "determine precisely what elements of the

plaintiff's software were protected and what other elements would be expected to be common to any software for that industry will result in the granting of a motion for summary judgment." *Id.* at *7. Recently, a court dismissed a plaintiff's software copyright infringement claims as to a larger software program that contained at least some open source code because the plaintiff failed to "conduct a filtration analysis and present specific evidence that identified the portions of the plaintiff's software, if any, that do contain elements that are both original and not dictated by efficiency, function, and/or regular business practices and that are thus protectable." *Ford Motor Co. v. Versata Software, Inc.*, Case No. 15-cv-10628, 2019 WL 355638, at *5 (E.D. Mich. Jan. 29, 2019).

Although *Ford* and *Paragon* were decided at summary judgment, similar factual circumstances exist here at the pleading stage without discovery because Ubiquiti admits on the face of the FAC, through the incorporated Ubiquiti Licenses and the Ubiquiti Open Source Archives, that its Firmware contains *overwhelming* amounts of third-party code licensed-in and -out under the GPL—at least 24,000 files and folders and 1.5 million lines of GPL code. Exs. 2, 11-F, 11-G. Ubiquiti merely identifies the 17 software components without plausibly alleging how those components are not part of "[a] covered work under the GPL [which] includes a work based in whole or in part on open source software." Order at 4. Thus, Ubiquiti has failed to allege any factual basis that any of its code could possibly survive a filtration analysis, rendering its claim implausible.

One additional aggravating fact here that was not present in *Ford* and *Paragon* is that the GPL at issue prohibits asserting proprietary restrictions on *even the filtered original expression* obtained after the filtration analysis. Ex. 9 at 2 (applying GPL to any work that contains or is derived from GPL work). As the Court recognized, Ubiquiti's failure to address this is a

deficiency with respect to the basic pleading standards and is not a result of applying a heightened pleading requirement. Order at 8. Ubiquiti still must explain the *disconnect* between "the broad claims articulated in the complaint, on the one hand, and Ubiquiti's acknowledgement that the GPL and other open source software licenses limit its rights and therefore the scope of its claims, on the other." *Id.* at 8-9.

### 7. The FAC Fails to Address the GPL as Required by the Court

The Court has established that the GPL prevents all contract and copyright claims as to "covered works" under the GPL because "the GPL propagates the rights associated with open source software to derivative programs, affording users of derivative programs the same 'freedom to change the software' that the GPL guarantees." Order at 4.[16] The Court held that:

> "[T]he GPL provides that a licensee (here, Ubiquiti) that 'convey[s] a covered work ... waive[s] any legal power to forbid circumvention of technological measures to the extent such circumvention is effected by exercising rights under' the GPL. Doc. 33-4 at 4 (GPL version 3, effective June 29, 2007). The GPL also requires the licensee to 'disclaim any intention to limit operation or modification of the [covered] work as a means of enforcing, against the work's users, [the licensee's] ... legal rights to forbid circumvention of technological measures.'"

*Id.* Accordingly, the law of the case establishes that no works covered by the GPL can be used as a basis for any contract or copyright claims and cannot be the basis for any claims involving violating restrictions on reverse engineering and circumvention.

The Court also established that the EULA and FULA incorporate the GPL by reference and "are considered part of the pleadings." *Id.* at 5. Further, the Court held that the scope of the GPL covers the open source files themselves and works "based in whole or in part on open source software," including content authored by Ubiquiti employees and works for hire. *Id.* at 4.

---

[16] "[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule ... promotes the finality and efficiency ... by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (internal quotations omitted).

As detailed above, despite these findings which are law of the case, Ubiquiti's FAC fails to meet these requirements and should be dismissed with prejudice.

### C. Ubiquiti's Expansive Claims in the FAC Are Barred by Its Judicial Admissions

Ubiquiti made binding judicial admissions in its previous, successful attempt to save this case from dismissal with prejudice. "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). "Judicial admissions . . . 'have the effect of withdrawing a fact from contention' . . . [and are] conclusive, unless the court allows [them] to be withdrawn." *Id.*

At the hearing, Ubiquiti admitted that parts of its firmware incorporate GPL code (Ex. 1 at 13:13–16), that it has no claim to parts of its firmware that are the GPL code or modifications of the GPL code (*id.* at 14:1–7, 14:19–22), that it would not be making any claim to derivatives of GPL code and that Ubiquiti's claims are limited to "non-public-source-derivative programs" (*id.* at 15:19–16:6; *see also* 14:23–15:1). The Court relied upon these representations in issuing its order. Order at 7 ("Defendants submit that the GPL and other open source software licenses incorporated into the FULA and EULA narrow the rights Ubiquiti may assert downstream . . . and thereby undermine Ubiquiti's claims on the merits. ... Ubiquiti concedes the point, at least in part[.]). Ubiquiti then argued that its allegations were limited to four allegedly "non-public-source-derivative" programs (Ex. 1 at 18:13) including a "proprietary user interface" (*id.* at 17:17:12–20, 37:8–13); "configuration code and calibration code" (*id.* at 17:7–11, 17:21–18:2, 18:8–11); and Ubiquiti's allegedly proprietary AirMAX protocol (*id.* at 17:21–18:11). *See also* Order at 7–8. If the Court does not grant the present motion to dismiss outright, Defendants respectfully request that the Court limit this case based on Ubiquiti's admissions.

### D. The GPL Grants Users Permission to Engage in All of the Allegedly Breaching Activity

Ubiquiti's breach of contract claims must be dismissed because all of the activity alleged does not violate the GPL, and Ubiquiti has failed to allege a breach of the GPL. *See Nielsen v. United Servs. Auto. Ass'n*, 244 Ill. App. 3d 658, 662-63 (1993). The GPL prohibits Ubiquiti from enforcing the proprietary restrictions. Ex. 9 at 3. Ubiquiti alleges that Cambium breaches the FULA by removing the Ubiquiti user interface from Ubiquiti devices. FAC, ¶ 124. However, deletion is a protected right under 17 U.S.C. § 109(a). Ubiquiti also alleges that Cambium breaches the FULA and EULA by copying and using the firmware during development, testing, installation, demonstration, and use of Elevate, by reverse engineering the firmware, and by transferring or granting rights in the firmware. FAC, ¶¶ 124, 125. Under the GPL, each of these activities is explicitly allowed. The GPL allows for the copying and use of Covered Works. Ex. 8 at 3. The GPL prohibits asserting anti-circumvention laws and allows for reverse engineering GPL protected code. Ex. 8 at 3. The GPL also prohibits restrictions on use and allows all use of all input and output files created using a Covered Work. Ex. 8 at 3. Accordingly, all of Ubiquiti's claims are inconsistent with the GPL and should be dismissed.

Ubiquiti itself breaches the GPL by requiring users to accept the EULA before viewing the corresponding GPL source files (the Ubiquiti GPL Archive). Because the EULA incorporates the GPL, this results in a breach because a user has received a "distribution" of covered software but cannot access source code to the covered software without agreeing to commercial restrictions. Even if Ubiquiti's breach claims were consistent with the GPL, Ubiquiti's own breach would excuse all of the alleged activity. *See Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) ("[A] material breach of the terms of the contract will serve to excuse the other party from its duty of counterperformance.").

26

E.     **Ubiquiti's Remaining Claims Must be Dismissed in View of the GPL**

The Court should dismiss Ubiquiti's remaining claims because they depend on an unauthorized use of Ubiquiti's firmware or breach of contract, but Cambium and others were authorized to use Ubiquiti's firmware as alleged under the GPL.  Ubiquiti's Third (Computer Fraud and Abuse Act, *see* FAC, ¶¶ 168, 177–78, 188, 194), Fourth (Digital Millennium Copyright Act, *see id.*, ¶¶ 203, 213–214), Sixth (Tortious Interference with Contract, *see id.*, ¶ 233), Seventh (Unfair Competition, *see id.*, ¶ 240), and Eighth (Intentional Interference with Prospective Economic Advantage, *see id.*, ¶ 253) claims all depend on unauthorized use of Ubiquiti's firmware or breach of contract. Ubiquiti's RICO claims also fall with Ubiquiti's breach of contract and copyright claims because RICO claims require an underlying allegation of "racketeering activity" that is not present due to Ubiquiti's failure to allege a violation of any proprietary interest in any protectible portions of its firmware. 18 U.S.C. § 1962(c).

Ubiquiti's false advertising claims (Count 5) largely stem from allegedly false statements about the amount of Ubiquiti firmware remaining operative after Cambium's firmware is installed. FAC, ¶ 74. But having failed to establish a proprietary interest in *any* of the firmware, Ubiquiti cannot demonstrate that any of Defendants' alleged statements about that firmware are false or caused confusion.  As to allegations regarding FCC compliance, Ubiquiti fails to specify any particular FCC rule that is violated, and therefore similarly fails to plead facts that plausibly supports its allegation that such statement was "literally false." *See* FAC, ¶¶ 61, 77, 78.

Accordingly, for the reasons discussed above in Sections III.A-F, the Court should dismiss these claims because Defendants were authorized to use the firmware under the GPL.

F.     **Alternatively, the Court Should Conduct Limited Discovery on the Scope of the GPL License and Convert this Motion Under Rule 12(d) to a Motion for Summary Judgment Under Rule 56**

For at least the reasons set forth above, the FAC continues to violate Rule 8(a). To the

extent the Court finds any part of the FAC sufficient, however, Defendants respectfully request that the Court convert Defendants' motion to a summary judgment motion pursuant to Rule 12(d) and limit discovery accordingly until ruling on this motion. Specifically, the Court should limit discovery to determining the extent to which any of Ubiquiti's alleged firmware[17] is encompassed by the GPL license and whether anything survives. The case should proceed only if there is some protectable claim remaining. Given that only Ubiquiti knows what it is they are asserting at this point and the full extent that same code was previously published on its own website as GPL code, only Ubiquiti should be subject to fact discovery—not Cambium. Given that software is stored electronically, production of any asserted firmware together with any related open source or GPL published files would not be burdensome. Defendants can then compare the asserted firmware to the underlying Ubiquiti Open Source Archive and present a motion for summary judgment as to any of Ubiquiti's asserted firmware within the scope of the GPL. In contrast, open fact discovery into Cambium files under the breadth of the present FAC would be cripplingly expensive.

In *Santana*, the district court allowed the plaintiff to plead a claim based on an allegation that the plaintiff was "completely" banned from an office. *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 620 (7th Cir. 2012). Instead of setting a discovery schedule, the court wanted "to review evidence about the scope of [the] ban, as requested by the defendants." *Id.* The district court denied "extensive discovery requests" "for an excellent reason: [the defendant's] proposed discovery did not concern the scope of the ban . . . , [and] the scope of the ban [] was the simple threshold question that the district court wanted answered, was easily answerable by materials referred to in the complaint, and that, once answered, could (and did) dramatically narrow the

---

[17] As described above in Section III.C, if the Court does not dismiss the FAC outright, it should limit Ubiquiti's firmware-based allegations to Ubiquiti's user interface, calibration and configuration protocol, and AirMAX radio protocol based on Ubiquiti's judicial admissions and judicial estoppel.

issues." *Id.* at 619–20. The Seventh Circuit praised the court's decision to limit discovery and convert a Rule 12(b)(6) motion under Rule 12(d) as "good case management." *Id.* at 620.

Here, whether Ubiquiti's asserted firmware survives outside the scope of the GPL and other open source licenses is a threshold issue. If the GPL and other open source licenses cover Ubiquiti's asserted firmware as "covered works," Ubiquiti's causes of action will disappear, thus eliminating or at least dramatically narrowing the issues.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Ubiquiti's FAC fails to satisfy the *Iqbal/Twombly* pleading standards under Rule 8. The complaint should therefore be dismissed with prejudice. To the extent it is not dismissed with prejudice, the Court should convert this motion under Rule 12(d) and conduct only the limited discovery discussed above to dramatically narrow or eliminate issues.

Dated: July 10, 2019                                  Respectfully submitted,

                                                      BAKER BOTTS, L.L.P.

                                                      */s/ G. Hopkins Guy III*
                                                          One of their attorneys

                                                      G. Hopkins Guy III (CA Bar No. 124811)
                                                      hop.guy@bakerbotts.com
                                                      Jon V. Swenson (CA Bar No. 233054)
                                                      jon.swenson@bakerbotts.com
                                                      Karina Smith (CA Bar No. 286680)
                                                      karina.smith@bakerbotts.com
                                                      BAKER BOTTS L.L.P.
                                                      1001 Page Mill Road Building One, Suite 200
                                                      Palo Alto, CA 94304-1007
                                                      650.739.7500 (Phone)
                                                      650.739.7699 (Facsimile)

                                                      Andrew D. Wilson (DC Bar No. 1030144)
                                                      1299 Pennsylvania Ave. NW
                                                      Washington, DC 20004-2400

202.639.1312 (Phone)
202.508.9336 (Fax)
andrew.wilson@bakerbotts.com

Arthur J. Gollwitzer (06225038)
agollwitzer@michaelbest.com
James P. Fieweger (6206915)
jpfieweger@michaelbest.com
MICHAEL BEST & FRIEDRICH, LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
312.222.0800 (Phone)

*Attorneys for Defendants Cambium Networks,
Inc. et. al*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing **Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6)** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

/s/ G. Hopkins Guy III
G. Hopkins Guy III