## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC.,<br>    *Plaintiff*,<br><br>v.<br><br>CAMBIUM NETWORKS, INC.;<br>CAMBIUM NETWORKS, LTD.;<br>BLIP NETWORKS, LLC;<br>WINNCOM TECHNOLOGIES, INC.;<br>SAKID AHMED; and<br>DMITRY MOISEEV<br>    *Defendants*. | Civil Action No.: 1:18-cv-05369<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF UBIQUITI NETWORKS, INC.'S
## MOTION TO LIFT STAY OF DISCOVERY

Plaintiff Ubiquiti Networks, Inc. ("Ubiquiti") respectfully requests the Court to grant the enclosed Motion to Lift Stay of Discovery in this action filed against Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed and Dmitry Moiseev ("Defendants"), and states as follows in support thereof:

### INTRODUCTION

Ubiquiti should be allowed to recommence discovery in this case. While Defendants have filed a motion to dismiss Ubiquiti's First Amended Complaint ("FAC"), that motion provides no valid basis for denying Ubiquiti its right to proceed with discovery and gather evidence in support of its claims. As a general rule, the mere filing of a motion to dismiss does not automatically stay discovery. This holds particularly true here, as Defendants' motion does not even address all of the claims in the FAC and is premised entirely on the erroneous assumption that Ubiquiti has no proprietary rights to any of its source code as a matter of law.

In an attempt to "prove" this dubious contention, Defendants attach the declaration of Jeff Fischer to their motion to dismiss. In addition to being procedurally improper, the Fischer

1

declaration is facially devoid of merit for multiple reasons detailed herein and in the expert declaration of Michael Fenn attached hereto as Exhibit A (the "Fenn Declaration"), including: (i) Fischer did not have access to the information an expert would need to determine whether and to what extent Ubiquiti's source code is protectable; (ii) Fischer does not appear to understand, or has conveniently chosen to ignore, the difference between the name of a computer file and the actual code within that file; and (iii) Fischer misrepresents the meaning and effect of Ubiquiti's licensing of its software development kit ("SDK").

In seeking to avoid discovery while their motion is pending, Defendants argue that discovery should be stayed (or bifurcated) in a software case any time a portion of the source code at issue is potentially subject to an open source license. This position has no support in the case law and would unfairly limit discovery in numerous cases because it is common for firmware to contain both open source and non-open source code. It would be plain error to assume that merely because Ubiquiti's firmware contains some open source code that the entirety of that firmware is subject to an open source license. The mere presence of open source code in firmware simply offers no insight into whether it is likely, or even possible, that other portions of the firmware are "infected" by this code.

Defendants' mere filing of a motion to dismiss the FAC does not justify denying Ubiquiti its right to timely pursue discovery in this case, and the error-riddled Fischer declaration does nothing to alter that fact. Accordingly, the discovery stay should be lifted and the Court should enter a scheduling order resetting the initial discovery deadlines.

## FACTUAL BACKGROUND

Ubiquiti filed its original Complaint on August 7, 2018. *See* Dkt. No. 1. The parties completed their Rule 26(f) conference and submitted the Report for Mandatory Initial Discovery

Pilot (MIDP) on October 12, 2018.  *See* Dkt. No. 32.  On October 15, 2018, Defendants filed a Motion to Dismiss the original Complaint.  *See* Dkt. Nos. 33, 37.[1]

While the original Motion to Dismiss was pending, the parties commenced discovery. The parties served MIDP Initial Disclosures (Dkt. Nos. 41-42), and worked on the collection of documents and electronically-stored information (ESI) for production on or before January 14, 2019.  The parties also exchanged correspondence and conferred regarding: the sufficiency of the parties' MIDP Initial Disclosures and a proposed protective order for discovery.  On December 17, 2018, Ubiquiti served requests for production on Defendants.

On December 17, 2018, Defendants filed a motion to extend the deadline to produce documents and ESI.  *See* Dkt. No. 44.  On December 18, 2018, the Court ordered that "[b]ecause the court is likely to grant in substantial part the motion to dismiss, the deadline for producing MIDP ESI is continued generally and will be re-set at the appropriate juncture."  Dkt. No. 47. On May 22, 2019, the Court granted in part, and denied in part, Defendants' motion to dismiss and granted Plaintiffs leave to file an amended complaint.  *See* Dkt. Nos. 58-59.

On June 18, 2019, Ubiquiti filed its First Amended Complaint ("FAC").  *See* Dkt. No. 65. On June 19, 2019, the parties appeared before the Court for a status hearing, during which Ubiquiti orally requested that the Court set a schedule for the parties to proceed with discovery. Defendants objected to Ubiquiti's request, and the Court continued the matter for further hearing on July 16, 2019 following the filing of Defendants' motion to dismiss the FAC.

On July 10, 2019, Defendants filed a Motion to Dismiss the FAC.  *See* Dkt. No. 70.  As an alternative to dismissal, Defendants requested "that the Court convert Defendants' motion to a

---

[1] In accordance with the MIDP Standing Order, Defendants also filed an Answer to the original Complaint on October 15, 2018, and an Amended Answer on November 5, 2018.  *See* Dkt. Nos. 34, 38.

summary judgment motion pursuant to Rule 12(d) and limit discovery" to only the GNU General

Public License (GPL) issues raised therein "until ruling on this motion." *Id.* at 27-29.

## LEGAL STANDARDS

"In accordance with the Federal Rules, a court may, 'for good cause,' limit the scope of

discovery or control its sequence to 'protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense.'" *New England Carpenters Health & Welfare v. Abbott

Labs*, No. 12C1662, 2013 WL 690613, *1 (N.D. Ill. Feb. 20, 2013) (quoting Fed. R. Civ. P.

26(c)(1)). But, "[t]he mere filing of a motion to dismiss does not automatically stay discovery."

*New England Carpenters*, 2013 WL 690613, at *1 ("one argument that is usually deemed

insufficient to support a stay of discovery is that a party intends to file, or has already filed, a

motion to dismiss for failure to state a claim under Rule 12(b)(6)") (citing, inter alia, *SK Hand

Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 945 (7th Cir. 1988)). "Instead, a stay of discovery is

generally appropriate only when a party raises a potentially dispositive threshold issue such as a

challenge to a plaintiff's standing, or pending resolution of qualified immunity claims." *New

England Carpenters*, 2013 WL 690613 at *1 (internal citations omitted). In articulating this

general rule, this district has adopted the reasoning of other courts in finding that:

> The intention of a party to move for judgment on the pleadings is not
> ordinarily sufficient to justify a stay of discovery. Had the Federal Rules
> contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6)
> would stay discovery, the Rules would contain a provision to that effect.
> In fact, such a notion is directly at odds with the need for expeditious
> resolution of litigation. ... Since motions to dismiss are a frequent part of
> federal practice, this provision only makes sense if discovery is not to be
> stayed pending resolution of such motions.

*Id.* at *2 (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)).

"Thus, although Rule 26 gives the Court authority to stay discovery, this authority must

be exercised so as to secure the just, speedy and inexpensive determination of every action," and

where "a stay of discovery is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere." *New England Carpenters*, 2013 WL 690613, at *2 (quotations omitted); *see also Coss v. Playtex Prods., LLC,* No. 08 C 50222, 2009 WL 1455358, *1 (N.D. Ill. May 21, 2009) ("Although stays on discovery are sometimes appropriate, ***this court disfavors them*** because they bring resolution of the dispute to a standstill.") (emphasis added).

## ARGUMENT

### I. Ubiquiti's Request to Recommence Discovery Should Be Granted.

Ubiquiti should be allowed to recommence discovery in this case. As this district has recognized, the mere filing of a Rule 12(b)(6) motion to dismiss is generally insufficient to support a stay of discovery. *See supra* at pgs. 4-5. This is particularly true here given that (i) Defendants' motion lacks merit on its face in failing to accept Ubiquiti's well-pled allegations as true and relying instead on facts well beyond the FAC, including a fundamentally flawed declaration as a witness hired by Defendants, and (ii) the motion does not even address, let alone attempt to dispose of, all of the claims in Ubiquiti's FAC.[2] Rather than promote the efficient resolution of this action, a continued stay of discovery in this case would only serve to unnecessarily delay the proceedings, and in so doing, prejudice Ubiquiti. Among other forms of prejudice, a discovery stay during the pendency of Defendants' motion will likely result in:

---

[2] *See, e.g., New England Carpenters*, 2013 WL 690613, at *1-2 (denying motion to stay discovery where Rule 12(b)(6) motion did "not rais[e] a threshold issue such as standing or immunity from suit" and plaintiff's claims were not "utterly frivolous or without merit") (quoting *Gray*, 133 F.R.D. at 40 ("Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. Although it is conceivable that a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a 'fishing expedition' or for settlement value, this is not such a case.")); *O'Conner v. Eden Mgmt. LLC*, No. 13 C 7391, 2014 WL 5761138, *2 (N.D. Ill. Nov. 4, 2014) (denying motion to stay discovery where "Defendants' motion to stay is predicated on the assumption that their motion to dismiss [plaintiff's amended complaint] will be granted. But that is pure speculation at this juncture."); *Ball v. Field*, No. 90 C 4383, 1991 WL 24513, *2 (N.D. Ill. Feb. 11, 1991) (denying motion to stay discovery where, among other reasons, defendants' motion to dismiss would not be dispositive of all claims).

- Increased harm to Ubiquiti resulting from Defendants' continued wrongful marketing, licensing and distribution of Elevate and the delayed adjudication of Ubiquiti's claims for injunctive relief seeking to stop this misconduct; and

- Discovery becoming harder, more expensive and less productive given passage of time.[3]

For these reasons and those detailed further below, Defendants' motion does not provide a legitimate basis to stay discovery in this action.

### A.  Defendants' Motion to Dismiss Lacks Merit.

Defendants' motion is premised on the argument that the source code identified in Ubiquiti's complaint is covered by the GPL.  Instead of basing their motion to dismiss on the allegations of the FAC, or anything this Court could validly take judicial notice of, Defendants improperly attempt to rely on the "opinions and findings" set forth in the expert declaration of Jeff Fischer attached to their motion ("Fischer Declaration").  But, Defendants may not rely on an expert declaration to sustain a Rule 12(b)(6) motion.[4]  Defendants' refusal to accept Ubiquiti's well-pled allegations as true dooms their motion from the very outset.

In addition to being procedurally improper, the arguments set forth in Defendants' motion and the Fischer Declaration are demonstrably wrong for the following reasons.

First, the Court dismissed Ubiquiti's original Complaint due to its failure to provide adequate notice of the specific portions of the Firmware that Ubiquiti was alleging were

---

[3] *See, e.g., Arocho v. Nafzinger*, No. 07-cv-02603, 2008 WL 5101701, *1 (D. Colo. Dec. 1, 2008) (denying motion to stay during pendency of Rule 12(b)(6) motion based in part on finding that such "delay may diminish plaintiff's ability to proceed" as "with passage of time, the memories of parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed").

[4] "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quotations omitted).  Accordingly, the opinions and findings set forth in an expert declaration cannot be considered in connection with a Rule 12(b)(6) motion. *See, e.g., DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001) ("[T]he contents of an expert affidavit are susceptible to a panoply of evidentiary and procedural challenges not generally applicable to allegations in a complaint, including objections based on countless federal evidentiary rules governing admissibility and compliance with the expert disclosure and report requirements of Rule 26(a).  In sum, considering an expert affidavit would so complicate the procedural posture of a motion to dismiss that it would become virtually indistinguishable from a motion for summary judgment.").

protectable and infringed by Defendants. Ubiquiti has now fully addressed this issue by specifically identifying nine different portions of the Firmware by source code package name and function. *See* FAC ¶ 37. Moreover, Ubiquiti expressly alleges that none of this source code is subject to the GPL, which necessarily would include both code originally licensed under the GPL and any code derived therefrom under the express terms of the GPL. *See* FAC ¶ 33 (defining "Registered Firmware" as only "the portions of Ubiquiti's Firmware that constitute original authorship by Ubiquiti"); FAC ¶¶ 34-35 (explaining that Ubiquiti's Firmware includes licensed-in materials such as code covered by the GPL, which is expressly not part of the Registered Firmware); FAC ¶ 35 (explaining that the only derivative copyrights claimed by Ubiquiti are those "licensed-in materials from third parties that are not subject to the GPL"); FAC ¶136 ("The source code covered by the Registered Firmware does not include open source software licensed to Ubiquiti pursuant to the GNU General Public License….").

Second, the Fischer Declaration is filled with false assumptions and outright errors. Fischer was tasked with opining on whether the source code Ubiquiti identified in the FAC was subject to the GPL. In order to perform this analysis, at a minimum an expert would need access to, the source code identified in the FAC, as well as the source code released under the GPL by a third party (not Ubiquiti). Fischer, however, claims he can conduct this analysis simply by comparing the file name and descriptions given in the FAC to code released by Ubiquiti in a SDK containing files with somewhat similar names. Such a process is inherently flawed for numerous reasons, including: (i) Fischer did not have the data necessary to perform an actual analysis of the code; (ii) the mere name of a file sheds no light on the content of the code within that particular file; (iii) in many cases Fischer can only point to object code, not source code, released in the SDK; (iv) the mere release of code in the SDK does not allow one to conclude it

is subject to the GPL; and (v) the SDK contains identifications that certain files identified in the FAC are proprietary to Ubiquiti and not covered by the GPL.

      i.  *No Analysis of Necessary Data*:  As an initial matter, Fischer simply does not have the information necessary to opine on whether the source code forming the basis of Ubiquiti's claims (which he has never seen) is identical or a derivative of any source code available under an open source license. (Fenn Decl. at ¶12.) At a minimum, a reasonably competent expert would have to review the source code for the items the expert is attempting to compare to other sources. (Id.)

      ii.  *Erroneous Assumptions as to Name Comparisons*: Fischer's opinions are erroneously premised on his comparison of the source code packages identified by Ubiquiti in the FAC against file names included in Ubiquiti's SDK release that happen to contain a portion of the same identifier. (Fenn Decl. ¶13.) In undertaking this comparison, Fischer simply assumes that any portion of Ubiquiti's SDK release that contain code packages with names similar to source code packages identified by Ubiquiti in the FAC must somehow be are covered by GPL. There is no valid basis for making this assumption. (Id.) For example:

- The FAC identifies the package "ubnt-3g." In his analysis, Fischer merely searched the SDK for any file with the letters "3g", and in his declaration Fischer incorrectly concludes that the "match" is a different and unrelated file named 30-3g. (Id.)

- The FAC identifies the file "ubntconf_cl.sh." Fischer identifies a different file "ubntconf" as a supposed "match." However, this is not a match and the file identified by Fischer is simply one of the files called by the file named in the FAC. (Id.)

- The FAC identifies the package "ubnt-poe-control." Fischer assumes "poe" means "power over internet" and identifies the "likely match" as a file called "advanced.cgi" because it contains part of the user interface for turning on power of internet. However, this is not a match and the file identified by Fischer is not the code for implementing the power over internet functionality. (Id.)

Fischer's overly simplistic analysis is rife with error and provides no valid basis for calling any of Ubiquiti's complaint allegations into question.

   iii. _Object Code vs. Source Code_:  Fischer incorrectly opines that human readable _source_ code identified in the FAC (which he does not have access to) "matches" unreadable _object_ code in the SDK (as the SDK does not include source code).  Fischer takes the names of various source code packages identified in the FAC (such as ubnt-spectral, ubnt-spectral-2, ubnt-poll, and ubnt-regd), and identifies object code files in the SDK with similar names.  However, Fischer does not point to any source code in the SDK that is similar to, or a "match" to, the actual source code identified by Ubiquiti.  (Fenn Decl. ¶¶17-18.)

   iv. _Ubiquiti Did Not License All Of Its SDK Code Under The GPL_:  Fischer also incorrectly opines that Ubiquiti released all of the code in the SDK subject to the GPL.  As the download page for the SDK that was included as Exhibit A to Fischer's own declaration makes clear however, only "***some*** of the software in the firmware is licensed under the GNU General Public License and other Open Source and Free Software licenses."  (Fischer Decl., Ex. A (emphasis added)).  Fischer fails to offer any explanation for why he ignores this fact, and it undermines his analysis entirely.  The fact that Ubiquiti only released some of its SDK code under the GPL (with specific source code files identifying the GPL) means that it is simply incorrect to opine that Ubiquiti released all of the code in the SDK under the GPL.

   More fundamentally, in determining whether the object code identified by Fischer "matches" the source code referenced in the FAC, a reasonably competent expert would have run a string analysis to determine whether the object code found in the SDK identifies the applicable license under which it is being released.  While object code is generally unreadable, a string analysis allows the identification of human readable portions.  (Fenn

Decl. ¶¶19-22.)  This string analysis would have been especially prudent in light of Ubiquiti's express representation that only some items in the S were being licensed under the GPL, and would have revealed that the files Fischer identified expressly state that they are proprietary to Ubiquiti and not covered by the GPL.  (Id.)  For example, the object code in the SDK for the "ubnt-spectral" package identified in the FAC states:

> license: Proprietary
> description: Ubiquiti Spectral Analysis Module
> author: Ubiquiti Networks, Inc.

In contrast, a non-asserted GPL licensed file in the SDK states:

> license: GPL
> description: Signal display (printk) module for madwifi
> author: UBNT, kaleda

(Id.)  Fischer nevertheless ignores this material distinction.

v.  *False Assumptions as to GPL Coverage*:  Fischer also incorrectly assumes that if Ubiquiti initially licenses code to third parties under the GPL, it also must license any later derivatives or modifications of that code it may make under the GPL.  While licensing code under the GPL means that someone *else* who uses that file agrees to release any derivatives of that code they may create under the GPL, neither Defendants nor Fischer point to any section of the GPL that obligates the Licensor (here Ubiquiti) to release all future derivatives of its own work under the GPL.  Fischer makes no attempt to opine that any of the files identified in the FAC were written by Ubiquiti based on code Ubiquiti received from a third party under the GPL.  (Fenn Decl. ¶¶15-16.)  Thus, it is incorrect for Fischer to conclude that the presence of a similar file in the SDK, even if covered by the GPL, means that all derivatives of those files are also covered by the GPL.

10

In sum, there is nothing on the face of Defendants' motion (either alone or when combined with the deficient Fischer Declaration) that would allow a reasonable fact-finder to conclude that the source code identified in the FAC is covered by the GPL license.

**B. Defendants' Motion to Dismiss Does Not Address All Of Ubiquiti's Claims.**

Defendants' motion to dismiss is, at best, a motion seeking partial dismissal. In the motion, Defendants argue that Ubiquiti's copyright infringement and breach of contract claims fail to state a valid cause of action because all of the source code at issue is covered by the GPL. Defendants then cursorily assert that this GPL defense is fully dispositive of all of the claims in the FAC. Defendants are mistaken.

Even if Defendants' GPL arguments were correct (which they are not), numerous counts in the FAC would remain. For example, the following claims cannot be resolved by the GPL arguments in Defendants' motion:

- Count I: Breach of Contract claims based upon allegations of (i) unauthorized use of portions of the Firmware that Ubiquiti licenses from third parties (such as Atheros) (FAC ¶¶ 124-125), (ii) unauthorized use of the proprietary data contained in Ubiquiti's configuration and calibration files (FAC ¶¶ 124), and (iii) use of the Firmware to violate FCC regulations (FAC ¶¶ 125).

- Counts V, VI, VII & VIII: False Advertising, Tortious Interference with Contract, Unfair Competition, and Intentional Interference with Prospective Economic Advantage claims based upon allegations of (i) false statements about use of Elevate being supported by warranty coverage from Ubiquiti (FAC ¶¶ 226, 233, 243, 252), and (ii) false statements about use of Elevate yielding Ubiquiti M-series devices that are FCC complaint (FAC ¶¶ 226, 233, 243, 252).

- Counts X & XI: RICO 18 USC §§ 1962(c) & 1962(d) claims based upon mail and wire fraud due to Cambium's false and misleading statements (FAC ¶¶ 270, 274), and Defendants' conspiracy to promote Elevate through the same false and misleading statements (FAC ¶¶ 281, 291, 296).

Unlike the prior motion to dismiss, Defendants' current motion no longer raises the threshold issue of standing (which the Court has previously rejected). Thus, not only should Defendants have filed an answer for the claims that are not fully resolved by Defendants'

motion, the Court should properly allow discovery to proceed while this partial motion to dismiss is pending. *See Ball*, 1991 WL 24513, at *2 ("The crucial point is that defendants' motion would not be dispositive of all of plaintiff's claims. Thus, the efficiency justification behind a stay of discovery is not satisfied in these circumstances.").

## II. Defendants' Request for Bifurcation of Discovery Should Be Rejected.

In apparent recognition of the merit of Ubiquiti's request to recommence discovery, Defendants have requested that discovery be bifurcated to focus solely on their GPL defense while excluding any discovery regarding the Defendants' alleged misconduct. *See* Dkt. No. 70 at pgs. 27-29. Specifically, Defendants' motion to dismiss requests that if the Court "finds any part of the FAC sufficient," it should convert the pending motion into a motion for summary judgment under Rule 12(d) and then limit discovery to whether Ubiquiti's Firmware is encompassed by the GPL license and "whether anything survives." *Id.* at pg. 28. This request for bifurcated, one-sided, discovery should be denied for multiple reasons.

First, Defendants' request is procedurally improper. Rule 12(d) is not a vehicle to limit discovery. Instead, it allows the Court to convert Defendants' partial motion to dismiss into a partial motion for summary judgment due to Defendants' reliance on materials outside the pleadings (such as the Fischer Declaration).[5] But, even if Defendants' request were to be granted under this rule, Defendants would be deemed to have submitted their partial motion for summary judgment and it is Ubiquiti that would be the party allowed discovery in order to respond to the motion. *See*, *e.g.*, *Covington v. Illinois Sec. Serv., Inc.*, 269 F.3d 863, 865 (7th Cir. 2001) ("the district court should permit the parties to engage in discovery before converting (for all intents and purposes) a motion to dismiss into one for summary judgment"); *Hartford*

---

[5] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

*Underwriters Ins. Co. v. Guarantee Tr. Life Ins. Co.*, No. 16 C 10478, 2017 WL 4535969, *4 (N.D. Ill. Oct. 10, 2017) ("when the Court utilizes materials outside of the pleading to decide a motion to dismiss, it must first convert the motion into a motion for summary judgment and permit applicable discovery"). Defendants' proposal that Ubiquiti should be denied all discovery, while granting Defendants' one-sided request for discovery of data and documents from Ubiquiti is simply backwards.[6]

To the extent that Defendants seek to limit discovery (either generally or in connection with conversion of a motion under Rule 12(d)), Defendants must first satisfy their burden of proof under Federal Rule of Civil Procedure 26, which affords a district court the discretion to limit discovery upon a showing of good cause in order to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A request for a protective order limiting discovery should be evaluated "against the backdrop of Rule 26(b)(1), which generally permits broad ranging discovery of any non-privileged information that appears reasonably calculated to lead to the discovery of admissible evidence." *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 1999 WL 300231, *1 (N.D. Ill. May 3, 1999) (quotations omitted). Thus, a party seeking a protective order that would limit the wide berth generally given to discovery bears the burden of showing good cause by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.*

---

[6] While not relevant to the present motion, it should be noted that courts in this district have consistently declined to convert motions to dismiss into motions for summary judgment at the early stages of litigation and prior to discovery. *See*, *e.g.*, *Solis v. Caro, N.C.*, No. 11 C 6884, 2012 WL 1409558, *3 (N.D. Ill. Apr. 23, 2012) ("although the Court has discretion to consider the materials and convert Caro's motion into a motion for summary judgment, the Court declines to do so here, where the parties are in the early stages of litigation and have not yet engaged in discovery") (*citing Magellan Int'l Corp. v. Salzgitter Handel GmbH,* 76 F.Supp.2d 919, 922 (N.D. Ill. 1999) ("converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment 'seldom makes sense at the threshold stage of any litigation'"); *see also Baker v. Lakin*, No. 3:15-cv-600, 2016 WL 1696804, *3 (S.D. Ill. Apr. 5, 2016) ("allowing Defendants to proceed on a motion for summary judgment at this juncture is premature, as Plaintiff has not had the opportunity to fully engage in discovery to provide support for his allegations").

As applied here, Defendants have failed to establish good cause to limit discovery.  In their motion, Defendants state that discovery will be "crippingly expensive" without any factual support.  Dkt. No. 70 at pg. 28.  But, such "stereotyped and conclusory statements" are insufficient to warrant the entry of a protective order limiting discovery.  *See*, *e.g.*, *Steadfast*, 1999 WL 300231, at *1; *New England Carpenters*, 2013 WL 690613, at *3.  Moreover, in this particular case bifurcation of discovery would likely increase (not decrease) the costs of litigation by, *inter alia*, (i) leading to disputed motion practice regarding whether a specific discovery request is part of the limited scope of discovery, and (ii) requiring the parties to complete duplicative discovery, including the taking of multiple depositions of the same individuals at different stages of discovery).  *See*, *e.g.*, *Phillips v. United Parcel Serv., Inc.*, No. 08-13978, 2009 WL 3247856, *1 (E.D. Mich. Oct. 2, 2009) (adopting plaintiff's concerns that limiting discovery to a threshold issue will lead to "further litigation regarding the bounds of such a limitation" and will require the plaintiff to "conduct certain discovery, such as depositions, twice").  Furthermore, as detailed above (*supra* at Part I), the pending motion to dismiss does not provide a sufficient basis for staying or otherwise limiting discovery in this action. Finally, Defendants' bifurcation request would prejudice Ubiquiti in multiple respects, including by allowing Defendants full discovery on one of their defenses while prohibiting Ubiquiti from seeking discovery on the merits of its own claims – all while further delaying Ubiquiti's efforts to obtain injunctive relief to put a stop to Defendants' misconduct in the marketplace.  *See*, *e.g.*, *id.* (holding that defendants' requested bifurcation of discovery would be "prejudicial to Plaintiff, as he would essentially be precluded from conducting discovery in his favor while Defendants gather evidence in support of their defense").

In sum, any attempt to bifurcate discovery in the manner suggested by Defendants would result in inefficiencies, increased costs and use of judicial resources, and prejudice to Ubiquiti, and should therefore be rejected.

## CONCLUSION

For the foregoing reasons, Ubiquiti respectfully requests that the Court grant its Motion to Lift Stay of Discovery and enter a scheduling order setting the following discovery deadlines:

   i.  <u>21 Days from Entry of Order</u>:  Deadline for parties to meet and confer and submit a new joint (or competing) case management schedule for Court approval;

   ii. <u>21 Days from Entry of Order</u>:  Deadline for parties to meet and confer and submit draft (or competing) proposed Protective Order(s) for Court approval;

   iii. <u>28 Days from Entry of Order</u>:  Parties to serve amended or supplemental MIDP Initial Disclosures;

   iv. <u>40 Days from Deadline to Serve Amended/Supplemental MIDP Initial Disclosures</u>: Parties to complete production of MIDP documents and ESI; and

   v.  <u>Beginning after deadline to produce MIDP Documents and ESI</u>:  Parties may issue (or re-issue) written discovery requests.

Dated:  July 15, 2019                    Respectfully submitted by:

*/s/ Jason J. Keener*
David Koropp (ARDC #6201442)
dkoropp@foxswibel.com
Jason J. Keener (ARDC #6280337)
jkeener@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606
***Attorneys for Plaintiff Ubiquiti Networks, Inc.***

3594048 v10 - 07041 / 001

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that I caused a copy of the foregoing document to be served by electronic mail on all counsel of record on this 15th day of July, 2019.

/s/ Jason J. Keener
Jason J. Keener

16