IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CAMBIUM NETWORKS, INC.;<br>CAMBIUM NETWORKS, LTD.;<br>BLIP NETWORKS, LLC;<br>WINNCOM TECHNOLOGIES, INC.;<br>SAKID AHMED; and DMITRY MOISEEV,<br><br>*Defendants*. | Civil Action No.: 1:18-cv-05369<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO LIFT STAY OF DISCOVERY**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1
II. LEGAL STANDARD ............................................................................................. 4
III. ARGUMENT ......................................................................................................... 5
    A. "The Most Prudent Approach" Is to Continue the Discovery Stay ...................... 5
        1. Ubiquiti Fails to Address the Law on *Lifting* a Discovery Stay ................... 6
        2. "Likelihood of Success" Should Not be Considered ................................... 7
        3. Lifting the Stay Would Lead to "Wastefully Broad" Discovery ................... 8
        4. Ubiquiti Will Not Be Prejudiced By Continuing the Stay ........................... 11
        5. Continuing the Stay Furthers the MIDP Goals ........................................... 11
    B. Defendants' Motion to Dismiss is Sound and Dispositive of All Claims.......... 12
        1. All Asserted Packages Were Distributed in Source or Object Form Under the GPL in Ubiquiti's Open Source Archives .............................................. 12
        2. The Motion to Dismiss the FAC Is Case Dispositive ................................. 14
IV. CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbott Labs. v. Matrix Labs., Inc.*,
  No. 09-CV-1586, 2009 WL 3719214 (N.D. Ill. Nov. 5, 2009) ........................................4

*Burnett v. Ocwen Loan Servicing*,
  LLC, No. 17 C 3474, 2017 WL 5171226 (N.D. Ill. Nov. 8, 2017) ...............................11

*City of Chicago v. Janssen Pharm. Inc.*,
  No. 1:14-CV-04361, 2015 WL 13448016 (N.D. Ill. Sept. 30, 2015) ..................... passim

*Madbak v. Anthem Ins. Cos.*,
  No. 116CV03197SEBMPB, 2017 WL 5075262 (S.D. Ind. May 23,
  2017) .................................................................................................................................4

*New England Carpenters Health & Welfare Fund v. Abbott Labs.*,
  No. 12 C 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013) .............................................7

*Peregrine Options, Inc. v. Farley Inc.*,
  No. 90 C 0285, 1993 WL 78646 (N.D. Ill. Mar. 18, 1993) ......................................2, 5, 7

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
  757 F. Supp. 1499 (N.D. Ill. 1990) ...................................................................................5

*Sprague v. Brook*,
  149 F.R.D. 575 (N.D. Ill. 1993)........................................................................................4

*Stokes v. Aging & In-Home Servs. of Ne. Ind., Inc.*,
  2009 WL 5177149 (N.D. Ind. 2009).................................................................................4

*Syngenta Seeds, Inc. v. BTA Branded, Inc.*,
  No. 05 C 6673, 2007 WL 3256848 (N.D. Ill. Nov. 1, 2007)............................................4

*Triad Assocs., Inc. v. Chi. Hous. Auth.*,
  No. 87 C 5096, 1991 WL 140141 (N.D. Ill. July 24, 1991) ......................................4, 5, 8

*United States v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) ............................................................................................9

**OTHER AUTHORITIES**

FRCP 65...................................................................................................................................11

Defendants Cambium Networks, Inc. ("Cambium") and Cambium Networks, Ltd. ("Cambium UK"), Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev (collectively the "Defendants") respectfully request the Court deny Plaintiff Ubiquiti Networks, Inc.'s ("Ubiquiti") motion to lift the existing discovery stay.

**I.      INTRODUCTION**

The Court stayed discovery on December 18, 2019, pending its order on Defendants' first motion to dismiss. Dkt. No. 47. The Court then dismissed the Original Complaint for violating Rule 8 because the pleading alleged violations based on public, open source software protected as "covered works" under the GPL. Dkt. No. 59 at 10. As demonstrated in Defendants' pending motion to dismiss, the FAC contains these exact same flaws, asserts the same claims and refuses to follow the Court's clear instructions. Although Ubiquiti identified 18 specific file names or packages in the FAC, it failed to allege that those packages are not "covered works" under the GPL in violation of the Court's Order. Dkt. No. 59 at 4. ("Until Ubiquiti spells out at least the general nature of its allegedly misused firmware that is not covered by the GPL . . . Defendants will not have adequate notice of Ubiquiti's claims."). Worse, the same attached exhibits to the FAC continue to prove that ***Ubiquiti publicly distributed open source code files under the GPL corresponding to each of the 18 identified packages*** and that they were included in the Ubiquiti Open Source Archives at one time. Thus, even if Ubiquiti had properly alleged protectible rights in any of the 18 packages, its admitted distribution of those same or derivative packages under the GPL remains fatal to the claims just as it was with the Original Complaint.

As to this motion, Ubiquiti contends that the discovery stay should be lifted ***without addressing the relevant legal standard or factors for lifting a discovery stay***. Contrary to Ubiquiti's cited authority, where—as here—a plaintiff moves to lift an existing stay after filing an amended complaint that "include[s] many of the same counts and allegations dismissed from

1

[the previous] complaint . . . [t]he *most prudent approach is to wait and to see what claims and allegations survive the second round of motions to dismiss" before lifting the stay*. *City of Chicago v. Janssen Pharm. Inc.*, No. 1:14-CV-04361, 2015 WL 13448016, at *1 (N.D. Ill. Sept. 30, 2015) (denying motion to lift the discovery stay pending second motion to dismiss that was not case-dispositive).

The Court should deny Ubiquiti's motion and continue the discovery stay for three primary reasons:

First, Ubiquiti ignores the proper legal standard on *lifting* a discovery stay and has therefore failed to meet its burden. The Court must balance the equities between Ubiquiti's need for immediate discovery against the burden of requiring Defendants to meet unnecessary discovery demands for claims or issues that are likely to be dismissed (or in this case, are no longer even asserted). Here, Ubiquiti fails to address the wasteful discovery that is *guaranteed* to result from the 510 overly-broad discovery requests it seeks to "reissue" (Mot. at 15), which include requests relating to claims that have already been dismissed and *are not reasserted* in the FAC. The resulting burden is just one of the legal factors that Ubiquiti fails to address. Because Ubiquiti attempts to re-assert the same previously dismissed claims, the most "prudent" approach is to maintain the stay and allow discovery to proceed only as to those claims that survive the second motion to dismiss.

Second, Ubiquiti's primary argument to lift the stay suggests that Defendants' motion to dismiss is meritless and not case dispositive. But this argument implicitly seeks a preliminary review of the pending motion and its likely success. This is legally improper. It is "inappropriate for [a] court to comment on and consider the parties' likelihood of success on [such] motion as a basis for its decision" on whether to lift a stay of discovery. *Peregrine Options, Inc. v. Farley*

*Inc.*, No. 90 C 0285, 1993 WL 78646, at *1 (N.D. Ill. Mar. 18, 1993). Moreover, as the Court recognized in its Order, the GPL issue is dispositive of ***all asserted claims and is case dispositive***. *See* Dkt. No. 59 at 10. Thus, Ubiquiti's primary arguments for lifting the stay are not properly considered here and are inconsistent with the Court's Order.

Third, contrary to Ubiquiti's assertions, Defendants' motion to dismiss is sound and demonstrates the frivolous nature of the FAC. Although Ubiquiti contends that the FAC "expressly alleges" that the asserted portions of the firmware are not "subject to the GPL," Ubiquiti is unable to cite to any such "express" allegations in the FAC. Mot. at 7. Ubiquiti's misrepresentation of its allegations highlights both the fatal deficiency in its FAC and that there has been no change of circumstances to support lifting the stay. Ubiquiti also now admits that it only claimed proprietary rights in some unspecified subset of just *nine* of the *18 packages* identified in the FAC. Mot. at 7. It is unclear why Ubiquiti now shifts to assert just some unidentified subset of the identified packages while its discovery requests, and its FAC, remain extremely broad. Nevertheless, the end result is increased ambiguity in the already fatally unclear FAC.

Ubiquiti also unfairly criticizes the Fischer Declaration for directly matching package names from the FAC to package names in the Ubiquiti Open Source Archives. Critically, Ubiquiti can identify only *one single reference to the word "proprietary"* in one binary object code file—a file type that Ubiquiti itself admits is "*unreadable*"—among the nearly 50,000 files and over a million lines of GPL code in the Ubiquiti Open Source Archives. Mot. at 10; *see* Dkt. Nos. 70-2, 70-12-F and G. This admission destroys Ubiquiti's claims to any proprietary interest in any of the files identified in the FAC. Far from demonstrating that Defendants' motion to dismiss lacks merit, Ubiquiti's motion actually demonstrates the frivolity of the FAC.

3

Accordingly, the Court should deny Ubiquiti's motion because Ubiquiti has failed to meet its burden under the relevant case law and the FAC contains fatal deficiencies.

## II. LEGAL STANDARD

It is well settled that "[c]ourts may limit discovery in myriad situations, such as when a defendant files a motion to dismiss pursuant to Rule 12(b)(6)." *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007). When deciding whether to *issue* a stay of discovery, courts in the Seventh Circuit consider whether a stay will:

(i) . . . prejudice or tactically disadvantage the non-moving party,
(ii) . . . simplify the issues in question and streamline the trial, and
(iii) . . . reduce the burden of litigation on the parties and on the court.

*Stokes v. Aging & In-Home Servs. of Ne. Ind., Inc.*, 2009 WL 5177149, at *1 (N.D. Ind. 2009); *see also Abbott Labs. v. Matrix Labs., Inc.*, No. 09-CV-1586, 2009 WL 3719214, at *2 (N.D. Ill. Nov. 5, 2009) (stay of proceedings). "A stay of discovery is often appropriate where a pending dispositive motion can resolve the case and where requested discovery is unlikely to produce facts necessary to defeat the motion." *Madbak v. Anthem Ins. Cos.*, No. 116CV03197SEBMPB, 2017 WL 5075262, at *1 (S.D. Ind. May 23, 2017) (citing *Sprague v. Brook*, 149 F.R.D. 575, 577 (N.D. Ill. 1993)). This "avoids the costs of discovery related to legally deficient claims" and thereby avoids engaging in "wastefully broad" discovery. *Triad Assocs., Inc. v. Chi. Hous. Auth.*, No. 87 C 5096, 1991 WL 140141, at *1 (N.D. Ill. July 24, 1991).

Courts consider different factors when determining whether to *lift* an existing stay of discovery pending a motion to dismiss as opposed to those considered in *issuing* a stay in the first place. Specifically, courts "balance the parties' interest in not being burdened with wasteful discovery against the plaintiff's right to prompt disposition of their claims should the defendants' motion to dismiss be denied." *Id.*, at *1. Where—as here—a plaintiff moves to lift a stay after filing an amended complaint that "include[s] many of the same counts and allegations dismissed

4

from [the previous] complaint . . . [t]he *most prudent approach is to wait and to see what claims and allegations survive the second round of motions to dismiss" before lifting the stay*. *Janssen Pharm.*, 2015 WL 13448016, at *1 (denying motion to lift discovery stay pending second, non-dispositive motion to dismiss). Thus, where discovery is already stayed after a first successful motion to dismiss, courts in this district routinely deny motions to lift the stay until assessing the sufficiency of the amended pleadings. *See, e.g., Triad Assocs.*, 1991 WL 140141, at *1 (denying motion to lift discovery stay and continuing stay pending motion to dismiss amended complaint); *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1504–05 n. 1 (N.D. Ill. 1990) (granting motion to dismiss and continuing discovery stay until defendants file answer to any amended complaint); *Peregrine Options*, 1993 WL 78646, at *1 (denying motion to lift discovery stay pending motion to dismiss).

Courts are particularly disposed to continue a stay where the "the viable legal issues have yet to be clearly identified" in the complaint because conducting discovery on claims that may be dismissed is "wastefully broad" and should be avoided. *Triad Assocs.*, 1991 WL 140141, at *1. "[D]iscovery should not begin until there is certainty as to the issues to be litigated in this case." *Janssen Pharm.*, 2015 WL 13448016, at *1. Thus, courts in this district are reluctant to lift a discovery stay while a motion to dismiss is pending unless plaintiff would be "significantly disadvantaged." *See R.E. Davis Chemical*, 757 F. Supp. at 1504–05 n. 1.

### III. ARGUMENT

#### A. "The Most Prudent Approach" Is to Continue the Discovery Stay

The authority supports continuing the stay pending resolution of Defendants' motion to dismiss the FAC. In *Janssen*, this Court faced a similar request—the plaintiff sought to lift a discovery stay after a motion to dismiss was granted and after filing an amended complaint that contained "many of the same counts and allegations dismissed from the first amended

5

complaint." *Janssen Pharm.*, 2015 WL 13448016, at *1. The Court agreed that "discovery should not begin until there is certainty as to the issues to be litigated in this case." *Id.* Thus, the Court continued the discovery stay as to claims that were previously dismissed yet asserted again in the new complaint. *See id.* Moreover, in analyzing whether to allow limited discovery as to claims that survived defendants' prior motion to dismiss the Court held:

> Although there can be some benefit from collecting necessary discovery during the motion to dismiss phase, ***here any such benefit does not outweigh the complication and added burden that necessarily would be imposed*** on the court and [the defendants] . . . . For these reasons, ***the most prudent approach is to wait to see what claims and allegations survive the second round of motions to dismiss***.

*Id.* (emphasis added). Thus, the Court continued the discovery stay even as to claims that survived the initial motion to dismiss.

Here, the Court "continued generally" all pending discovery deadlines and then granted Defendant's motion to dismiss ***all*** claims. Dkt. Nos. 47, 59. The FAC contains most (11 of 15) of the same claims dismissed from the Original Complaint with no new claims. Indeed, Ubiquiti admits its claims and theories remain largely unchanged in stating that it "has now fully addressed" the issues in its Original Complaint by "identifying [] portions of the Firmware." Mot. at 7. Accordingly, it is "most prudent" to "wait and see" what claims will survive before lifting the discovery stay because "[s]tarting any discovery now, before the [court] has a chance to rule on the anticipated motions to dismiss . . . would not promote efficiency in managing discovery in this case." *Janssen Pharm.*, 2015 WL 13448016, at *1. Moreover, because ***none*** of Ubiquiti's claims survived the first motion to dismiss, there would be no "benefit from collecting necessary discovery during the motion to dismiss phase." *Id.*

### 1. Ubiquiti Fails to Address the Law on *Lifting* a Discovery Stay

Ubiquiti's motion fails because it applies the wrong standard. Ubiquiti only partially

6

addresses the standard for *issuing* a discovery stay—not *lifting* an existing one—and fails to meet its burden on both. The Court already found it appropriate to *issue* a stay of discovery when it "continued generally" the deadlines for ESI production. Dkt. No. 47. It is therefore Ubiquiti's burden to show that the Court should lift the existing stay. However, Ubiquiti failed to address how doing so before deciding Defendants' current motion to dismiss the same claims contained in the Original Complaint would not lead to wasteful or burdensome discovery. Moreover, Ubiquiti fails to address what, if anything, has changed from the Court's decision to continue the discovery deadlines—in other words, why the Court's dismissal of the Original Complaint, Ubiquiti's filing of the FAC, and Defendants' motion to dismiss the FAC should lead the Court to a different outcome now. Ubiquiti also failed to balance the competing interests.

Ubiquiti's legally insufficient analysis and deliberate dodging of the relevant legal standards makes sense only in view of its apparent larger motivation—Ubiquiti intended this motion to serve as a vehicle to introduce expert testimony while at the same time arguing in its opposition to Defendants' motion to dismiss that reliance on such testimony is not properly considered. But proffering a motion without addressing the relevant legal standards merely to introduce evidence is improper. Ubiquiti's motion must therefore be denied.

### 2. "Likelihood of Success" Should Not be Considered

Ubiquiti argues that Defendants' motion to dismiss "lacks merit." Mot. at 5-12. But it is often "inappropriate for [a] court to comment on and consider the parties' likelihood of success on [such] motion as a basis for its decision [on whether to lift a stay of discovery]." *Peregrine Options*, 1993 WL 78646, at *1. Even Ubiquiti's cited case law admits that "a preliminary finding of the likelihood of success on the motion to dismiss . . . would circumvent the procedures for resolution of such a motion." Mot. at 5 n.2 (citing *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *2 (N.D. Ill. Feb.

7

20, 2013)). Thus, a substantial part of Ubiquiti's motion (pages 6-11) attempts to prove an irrelevant point. Nevertheless, as discussed in more detail below, the strong merits of Defendants' motion to dismiss the frivolous FAC counsels toward continuing the stay.

### 3. Lifting the Stay Would Lead to "Wastefully Broad" Discovery

Where "the viable legal issues have yet to be clearly identified" and generally "lack [] clarity . . . any depositions taken or interrogatories sent are likely to be wastefully broad." *Triad Assocs.*, 1991 WL 140141 at *1. Here, Defendants need not speculate about potentially overbroad future discovery—Ubiquiti served ***over 500*** requests for production just before the Court continued the discovery deadlines that Ubiquiti now seeks to "re-issue" to Defendants.[1] If the stay is lifted, Defendants would have the added burden of responding to this plethora of discovery requests. All of the requests are related to claims that the Court has ***already dismissed***. And many are directed to the four causes of action that are ***not even asserted*** in the FAC. Wastefully broad discovery is not merely speculative here—it ***will occur*** if the stay is lifted.

Moreover, despite the Court's clear guidance in dismissing the Original Complaint, the FAC still muddles Ubiquiti's claim to protectable proprietary code by continuing to name files and packages that are open source, GPL protected code. This not only subjects the claims to a motion to dismiss but also renders the claims so unclear that any discovery based on these pleadings would be wastefully broad as well. While Defendants articulated the deficiencies in the FAC in its motion to dismiss, Ubiquiti's motion also highlights a lack of clarity in the pleadings that would lead to burdensome discovery. First, Ubiquiti claims that it "has now fully addressed [the issues in its Original Complaint identified in the Court's Order] by specifically identifying

---

[1] Ubiquiti has not withdrawn the 510 overbroad and unduly burdensome discovery requests it served on December 17, 2018, though it did agree to "delay defendants' response to the RFPs until 30 days after the Order." Ex. A (correspondence showing Ubiquiti's refusal to withdraw these requests); *see also* Mot. at 15 (describing Ubiquiti's intention to "re-issue" those same discovery requests when/if stay is lifted).

*nine* different portions of the Firmware by source code *package name*." Mot. at 7. But the FAC actually identifies *18 packages and, therefore, any discovery would be necessarily over broad*:

| 1. ubnthal | 2. ubnt-regd | 3. ubnt-web | 4. ubnt-cgi |
| --- | --- | --- | --- |
| 5. ubnt-poll | 6. ubnt-spectral | 7. ubnt-spectral-2 | 8. ubntbox |
| 9. ubntconf_cl.sh | 10. ubnt-3g | 11. bunt-base-files | 12. ubnt-poe-control |
| 13. ar7240-u-boot.rom | 14. ubntxn-u-boot.rom | 15. ubnt-400-u-boot.rom | 16. ubnt-wasp-u-boot.rom |
| 17. ubnttitanium-u-boot.rom | 18. compilations of data contained in calibration and configuration files | | |

*See* FAC, ¶¶37, 39. Ubiquiti cannot even describe its own pleadings without demonstrating or creating a lack of clarity, the scope of discovery will clearly include all 18 packages.

Equally unclear is how Ubiquiti can claim a protectible interest in any packages when it has released the source or object code[2] for each asserted package under the GPL as open source. Dkt. No. 70 at 19-20 (charting each identified component to a file in the Ubiquiti Open Source Archive). No matter whether nine or 18 packages are at issue, Ubiquiti can only identify *one single reference to the word "proprietary"* in one binary object code file—a type of file that Ubiquiti itself admits is "*unreadable*" (*see* Mot. at 9)—among the nearly 50,000 files and over a million lines of GPL code in the Ubiquiti Open Source Archives. Mot. at 10; *see* Dkt. Nos. 70-2, 70-12-F and G. It should be a simple task for Ubiquiti and its expert to allege that all of the 18 packages at issue are protected and not subject to GPL. Tellingly, Ubiquiti fails to do so in its motion or the FAC. Requiring Defendants to read "unreadable" files represents the epitome of a quest to "fish a gold coin from a bucket of mud" that further demonstrates the lack of clarity in Ubiquiti's claims. *See United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir.

---

[2] Ubiquiti asserts that the Fischer Declaration is flawed for opining that "human readable source code identified in the FAC . . . 'matches' unreadable object code in the SDK." Mot. at 9. But the FAC is not limited to "source code package name[s]," and instead identifies "source and object code." *Compare* Mot. at 7, *with* FAC, ¶37. Nevertheless, the GPL license expressly applies through *distributions of object code* to cover the "*corresponding source code*." Dkt. No. 70-7 at §3. Thus, Ubiquiti's distribution of object code under the GPL covers the corresponding source.

9

2003).

Perhaps most egregious, Ubiquiti falsely contends that it "*expressly* alleges that none of this source code [for the nine packages] is subject to the GPL." Mot. at 7. This is not true, and adds further uncertainty to the pleadings and would lead to wastefully broad and burdensome discovery. The portions of the FAC cited by Ubiquiti in support of this statement do not exclude code that is subject to the GPL from Ubiquiti's Registered or Proprietary Firmware.

| Cited Portion of FAC | Failure to Exclude GPL |
|---|---|
| "the portions of Ubiquiti's Firmware that constitute original authorship by Ubiquiti, and thus are protectable by the registered copyrights . . . , including the computer programs . . . and related comments and compilations of data" FAC, ¶33. | Works of original authorship created by modifying GPL packages are derivative works, such as editing existing files or adding new files, and are copyright eligible yet remain subject to the GPL. |
| "However, when Ubiquiti modifies licensed-in materials from third parties that are not subject to the GPL, Ubiquiti owns the copyright to such modifications." FAC, ¶35. | Does not exclude derivatives or modifications of GPL licensed-in materials. Ubiquiti's registrations apply to modifications of all in-licensed code (including GPL licensed code). Ubiquiti thus includes the alleged copyrighted materials in its claims that do not exclude the derivative materials subject to the GPL. |
| "The source code covered by the Registered Firmware does not include open source software licensed to Ubiquiti pursuant to the GNU General Public License" FAC, ¶136 | While this may exclude open source licensed to Ubiquiti, Ubiquiti still owns registered copyrights to GPL derivative works that exclude the underlying GPL software that Ubiquiti did not author but are still subject to the GPL. |
| All cited allegations | Fails to exclude versions licensed out by Ubiquiti under the GPL or Ubiquiti authored GPL derivatives. |

Ubiquiti's argument that it "expressly" alleged its code is not subject to the GPL is false: Ubiquiti continues to claim derivatives of GPL open source code authored by Ubiquiti. This statement *adds* further uncertainty to the FAC because it is unclear whether Ubiquiti is now making a *new* allegation about a subset of the identified packages, but thereby admitting that it cannot make such an allegation about all 18 packages identified in the FAC.

Unfortunately, this is familiar territory for Defendants. At the hearing on the first motion

10

to dismiss in December 2018, Ubiquiti limited the broad claims in its Original Complaint to just "four matters." Dkt. No. 70-1 at 18:13. That dramatic limitation is strikingly similar to the current limitation of "nine packages" that Ubiquiti now presumably seeks. But whether nine or 18 packages are at issue, the claims now pending are "immensely broader" than what survived the first motion to dismiss, such that discovery is likely to be wastefully broad. *Janssen Pharm.*, 2015 WL 13448016, at *1.

Finally, the only claim asserted against the non-Cambium Defendants (Cambium Networks, Ltd., Winncom, Blip, Ahmed, and Moiseev) is a single RICO claim (Claim 11). Resolution of that claim in Defendants' favor would remove them from this case, leaving only Cambium. It would be unduly burdensome for the five non-Cambium Defendants to respond to the reissued discovery requests and produce ESI related to 10 claims not asserted against them.

### 4. Ubiquiti Will Not Be Prejudiced By Continuing the Stay

Ubiquiti alleges in conclusory fashion that it will suffer harm from "delayed adjudication of [its] claims of injunctive relief." Mot. at 5. But Ubiquiti has not moved for a preliminary injunction—a remedy it can seek at any time. *See* FRCP 65. Ubiquiti's failure to seek a preliminary injunction mitigates the alleged prejudice it will suffer from delayed adjudication of its claims. Second, Ubiquiti alleges generalized prejudice due to "[d]iscovery becoming harder, more expensive and less productive given the passage of time" but "this type of prejudice is 'inherent in any stay' and does not justify denial of a motion to stay." *Burnett v. Ocwen Loan Servicing*, LLC, No. 17 C 3474, 2017 WL 5171226, at *3 (N.D. Ill. Nov. 8, 2017) (citation omitted). Ubiquiti's conclusory allegations of harm from continuing the stay do not establish prejudice and are of little weight. Ubiquiti has shown no specific loss or harm.

### 5. Continuing the Stay Furthers the MIDP Goals

Recognizing this undue burden, the revised Amended Standing Order Regarding

11

Mandatory Initial Discovery Pilot Project, December 1, 2018 automatically postpones ESI production until after Rule 12(b) motions are decided. The Court should maintain its continuance on MIDP production until ruling on Defendants' motion.

The purpose of the amendment is to allow parties to serve their initial disclosures after a motion to dismiss is decided because "the early-answer requirement of the MIDP *imposed unnecessary costs on parties who ultimately succeed on Rule 12 motions*." E-mail from U.S. Courts, "Important Amendment to the Mandatory Initial Discovery Pilot (MIDP) Effective Dec. 1, 2018" (November 28, 2018, 04:54 CST) (emphasis added). The current case is exactly the type of case that this amendment should benefit, since (1) Ubiquiti has again failed to adequately allege a protectable interest in any portions of its Firmware and (2) the viable legal issues in this case—if any—are unclear in light of Ubiquiti's previous admissions, its allegations in the FAC, and its statements in its motion (e.g., the "nine" packages). Moreover, only a single claim is asserted against the five non-Cambium Defendants—a claim subject to the motion to dismiss. If successful, it would eliminate these parties from the case and the burden of MIDP production.

**B.     Defendants' Motion to Dismiss is Sound and Dispositive of All Claims**

Ubiquiti argues that Defendants' motion to dismiss is not directed to "a potentially dispositive threshold issue" that would render the case eligible for a stay because it is based on a "fundamentally flawed" declaration and does not address all of Ubiquiti's claims. Mot. at 6-12. Defendants' motion is sound and, if granted, will dispose of all pending claims—the ultimate simplification of issues. Also, Ubiquiti's argument does not address *lifting* an existing stay.

**1.     All Asserted Packages Were Distributed in Source or Object Form Under the GPL in Ubiquiti's Open Source Archives**

The pleadings show that each package or file identified in the FAC was licensed by Ubiquiti under the GPL. This conclusion is supported by the Declaration of Jeff Fischer, which

12

maps the source or object code files contained in the Ubiquiti Open Source Archives back to each package or file identified in the FAC. *See generally* Dkt. No. 70-12.³ The declaration maps from the language of the EULA and FULA attached to the FAC and follows it to the UBNT.COM website and its prominent GPL notices and its Open Source Archives that together plainly state that the GPL applies to the code contained therein. Dkt. No. 70-12, ¶¶ 16-18, 20-21. The Fischer Declaration also acknowledges that the GPL's provisions apply through a ***distribution of object code*** to cover the ***corresponding source code***. *Id.*, ¶ 29. It identifies matching code files for each one of the "packages" identified in the FAC within the Ubiquiti Open Source Archives. *Id.*, ¶¶ 23-38.

The Fischer Declaration then analyzes the Ubiquiti Open Source Archive files for any proprietary notices that might serve as a disclaimer to exclude any file from the reach of the GPL, whether or not such an exclusion would be allowed under the GPL. *Id.*, ¶¶ 21, 43. It concludes that, based on the prominent GPL notices and lack of visible proprietary disclaimers, the files in the Ubiquiti Open Source Archives are licensed under the GPL. *Id.*, ¶ 39. In sum, his findings state the obvious—when you distribute code with notices indicating that code is licensed under the GPL and without any proprietary disclaimer, then the GPL applies to that distribution ***and this maps to all specific packages or files identified in the FAC***. *Id.*

Ubiquiti takes issue with Fischer's conclusions for a variety of reasons but fails to address the key point. Mot. at 9. Despite the clear admonition in the Court's Order not to assert claims based on "covered works" including derivatives under the GPL license, Ubiquiti continues to do so—blatantly so.

---

³ Ubiquiti's expert, Fenn, admits that the identified SDK's indeed do correspond to the asserted versions of AirOS. Dkt. No. 72-1, ¶10.

## 2. The Motion to Dismiss the FAC Is Case Dispositive

Ubiquiti contends that the arguments in Defendants' motion to dismiss are not dispositive of all claims in the FAC. However, as the Court recognized in its Order, the GPL issue is dispositive of *all asserted claims*. *See* Dkt. No. 59 at 9. The FAC asserts a mere subset of the claims asserted in the Original complaint, and Defendants' motion to dismiss the FAC presents similar grounds for dismissal. Thus, Defendants' GPL arguments are again dispositive of the same claims in the FAC. Specifically, the Court found that Ubiquiti's admitted use of GPL code contradicted its broad claims in the Original complaint and limited its rights such that the scope of the allegedly unlawful conduct was unintelligible. *Id.* at 9. This "disconnect" required dismissal of all claims. The Could should again reach this same result.

Ubiquiti's argument that certain claims will not be addressed by Defendants' GPL arguments amount to a single sentence stating that each listed allegation "cannot be resolved by the GPL arguments in Defendants' motion." Mot. at 11. Merely calling a use "unauthorized" in the non-contract/non-copyright claims adds nothing. Ubiquiti must allege a specific violation outside of the "covered works" protected by the GPL passed through the Ubiquiti Licenses to state a claim. *See id.* at 11. Similarly, Defendants argued that other parts of Ubiquiti's pleadings admit that third-party bootloader code is licensed-in under the GPL and that it does not matter whether Ubiquiti received the code from Atheros or the original author of the open source bootloader because the terms of the GPL apply universally. Dkt. No. 70 at 16-17. Regarding the configuration and calibration data, Defendants argued that the Ubiquiti Open Source Archives shows that Ubiquiti configuration and calibration files were released by Ubiquiti under the GPL. *Id.* at 9.

Defendants' GPL arguments also apply to the remaining claims regarding false statements about voiding warranty coverage; Defendants argued that the GPL prohibits such

14

restrictions on use of "covered works." *Id.* at 27. Notwithstanding the fact that the FAC and Ubiquiti Licenses fail to identify a provision that would serve to void warranty coverage dependent on use, any such restriction would violate this provision of the GPL. Defendants similarly present arguments regarding the FCC compliance and RICO allegations that require dismissal. *Id.* Thus, Defendants' motion to dismiss is dispositive of all claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Ubiquiti's motion to lift stay of discovery until Defendants' motion to dismiss is decided to avoid costly discovery related to Ubiquiti's legally deficient FAC.

Dated: July 31, 2019

Respectfully submitted,

BAKER BOTTS, L.L.P.

*/s/ G. Hopkins Guy III*
   One of their attorneys

G. Hopkins Guy III (CA Bar No. 124811)
hop.guy@bakerbotts.com
Jon V. Swenson (CA Bar No. 233054)
jon.swenson@bakerbotts.com
Karina Smith (CA Bar No. 286680)
karina.smith@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Phone)
650.739.7699 (Facsimile)

Andrew D. Wilson (DC Bar No. 1030144)
1299 Pennsylvania Ave. NW
Washington, DC 20004-2400
202.639.1312 (Phone)
202.508.9336 (Fax)
andrew.wilson@bakerbotts.com

        Arthur J. Gollwitzer (06225038)
        agollwitzer@michaelbest.com
        James P. Fieweger (6206915)
        jpfieweger@michaelbest.com
        MICHAEL BEST & FRIEDRICH, LLP
        444 West Lake Street, Suite 3200
        Chicago, Illinois 60606
        312.222.0800 (Phone)

        *Attorneys for Defendants Cambium Networks, Inc. et. al*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2019 I electronically filed the foregoing **Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6)** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

                                                              */s/ G. Hopkins Guy III*
                                                                 G. Hopkins Guy III