# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UBIQUITI NETWORKS, INC.,

        *Plaintiff*,

       v.

CAMBIUM NETWORKS, INC.;
CAMBIUM NETWORKS, LTD.;
BLIP NETWORKS, LLC;
WINNCOM TECHNOLOGIES, INC.;
SAKID AHMED; and
DMITRY MOISEEV

        *Defendants*.

Civil Action No.: 1:18-cv-05369

**JURY TRIAL DEMANDED**

## PLAINTIFF UBIQUITI NETWORKS, INC.'S OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

PROCEDURAL POSTURE............................................................................................ 3

LEGAL STANDARDS ................................................................................................. 6

ARGUMENT .............................................................................................................. 7

I.     Ubiquiti's Copyright Claims Are Not Barred By The GPL Or Other Open Soure
       Software Licenses. ........................................................................................... 7

   A.  Ubiquiti Has Provided Adequate Notice Of Which Portions Of Its Software Are
       Copyrighted………………………………………………………………………..8

   B.  Ubiquiti Is Not Asserting Copyright Infringement For Any Modifications Ubiquiti
       Made To Code Received By Ubiquiti Under The GPL. ...................................... 9

   C.  Ubiquiti Is Not Bound By Its Original Complaint Or Exemplary Statements Made
       During The December 11, 2018 Hearing......................................................... 10

   D.  The Registered Firmware Is Not Covered By The GPL…………………… ..... ………..12

   E.  A Filtration Analysis Is Not Required To Plead A Valid Cause Of Action… ..... ……….20

   F.  Ubiquiti's Breach Of Contract Claim Need Not Be Limited To Copyrighted
       Software…………………………………………………………………………21

   G.  The Addition Of A New Copyright Claim In The FAC Is Proper………… ..... ………...22

II.    Defendants' Motion Fails To Identify A Basis For Dismissal OF Ubiquiti's Non-GPL
       Based Claims. ................................................................................................ 24

III.   The Court Should Reject Defendants' Request To Bifurcate Discovery And Convert
       Defendants' Motion To A Motion For Summary Judgment. ........................... 27

IV.    Dismissal Of The FAC With Prejudice Is Not Proper................................. 30

CONCLUSION ......................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*188 LLC v. Trinity Industries, Inc.*,
   300 F.3d 730 (7th Cir. 2002)……………………………………………….………11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)……………………………………………………………….6

*Baker v. Lakin*,
   No. 3:15-cv-600, 2016 WL 1696804 (S.D. Ill. Apr. 5, 2016)…………………………...28

*Bank of America, N.A. v. Shelbourne Development Group, Inc.*,
   732 F.Supp.3d 809 (N.D. Ill. 2010)………………………………………………….6

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
   377 F.3d 682 (7th Cir. 2004)………………………………………………………30

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)……………………………………………………………….6

*Covington v. Illinois Sec. Serv., Inc.*,
   269 F.3d 863 (7th Cir. 2001)………………………………………………………28

*DeMarco v. DepoTech Corp.*,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001)………………………………………………15

*Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*,
    284 F.3d 693 (7th Cir. 2002)………………………………………………………26

*Elward v. Electrolux Home Prod., Inc.*,
   264 F. Supp. 3d 877 (N.D. Ill. 2017)…………...…………………………………13, 14

*Erickson v. Pardus*,
   551 U.S. 89 (2007)……………………………………...…………………………6

*Facebook, Inc. v. Teachbook.com LLC*,
   819 F.Supp.2d 764 (N.D. Ill. Sept. 25, 2011)…………………………………………14

*Flentye v. Kathrein*,
   485 F. Supp. 2d 903 (N.D. Ill. 2007)…………………………………………...14, 15

*Foman v. Davis*,
   371 U.S. 178 (1962)……………………………………………...…………………10

*Ford Motor Co. v. Versata Software, Inc.*,
   15-CV-10628, 2019 WL 355638 (E.D. Mich. Jan. 29, 2019)………………………20, 21

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S.Ct. 881 (2019)……………………………………………………………22, 23, 24

*Hartford Underwriters Ins. Co. v. Guarantee Tr. Life Ins. Co.*,
    No. 16 C 10478, 2017 WL 4535969 (N.D. Ill. Oct. 10, 2017)…………………………28

*Hillinan v. Fraternal Order of Police of Chicago Lodge No. 7*,
    570 F.3d 811 (7th Cir. 2009)…..………………………………………………………6

*Imzo v. Roadster, Inc.*,
    18-cv-06092-NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019)………………………..23

*Kelley v. Crosfield Catalysts*,
    135 F.3d 1202 (7th Cir.1998)…………………………………………………………...11

*Levenstein v. Salafsky*,
    163 F.3d 345 (7th Cir. 1998)…………………………………………………………12

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*,
    76 F.Supp.2d 919 (N.D. Ill. 1999)……………………………………………………28

*Malibu Media, LLC v. Doe*,
    18-CV-19056 (JMF), 2019 WWL 1454317 (S.D.N.Y., April 2, 2019)…………………23

*McCaskill v. SCI Management Corp.*,
    298 F.3d 677 (7th Cir. 2002)…………………………………………………………11

*McNeal v. Cook County Sheriff's Dept.*,
    282 F. Supp. 2d 865 (N.D. Ill. 2003)…………………………………………………11

*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972)………………………………………………………………11, 12

*New England Carpenters Health & Welfare v. Abbott Labs*,
    No. 12C1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013)…………………………...29

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013)……………………………....…………………………7

*Phillips v. United Parcel Serv., Inc.*,
    No. 08-13978, 2009 WL 3247856 (E.D. Mich. Oct. 2, 2009)..……………………...29, 30

*React Presents, Inc. v. Sillerman*,
    No. 16 C 3790, 2016 WL 4479569 (N.D. Ill. Aug. 25, 2016)…………..………………12

*Reese v. Hammer Fin. Corp.*,
    No. 99 C 0716, 1999 WL 1101677 (N.D. Ill. Nov. 30, 1999)…………………………..14

*Reynolds v. CB Sports Bar, Inc.*,
    623 F.3d 1143 (7th Cir. 2010)……………………………………………………………6

*Robinson v. McNeil Consumer Healthcare*,
    615 F.3d 861 (7th Cir. 2010)……………………………………………………………11

*Rosenblum v. Travelbyus.com Ltd.*,
    299 F.3d 657 (7th Cir. 2002)……………………………………………………………12

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
    No. C-05-395 PJH, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007)………………………..15

*Solis v. Caro, N.C.*,
    No. 11 C 6884, 2012 WL 1409558 (N.D. Ill. Apr. 23, 2012)……………………………28

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,
    No. 97 C 5696, 1999 WL 300231 (N.D. Ill. May 3, 1999)…………………………28, 29

*Stiletto Television, Inv.*, v. *Hastings, Clayton & Trucker, Incorporated*,
    CV 18-3911 DSF (PLAX), 2019 WL 2619642 (C.D. Cal. April 15, 2019)…………….23

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010)……………………………………………...……………6

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)………………..10

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002)…………………………………...………………..13

*Wright v. Associated Ins. Companies Inc.*,
    29 F.3d 1244 (7th Cir. 1994)……………………………………………………...12, 13

**RULES & STATUTES**

Fed. R. Civ. P. 8………………………………………………………………………6, 10

Fed. R. Civ. P. 12(b)(6)…..……………………………………………………….passim

Fed. R. Civ. P. 12(d)…..………………………………………………………...27, 28

Fed. R. Civ. P. 15(a)…………………………………………………………....10, 30

Fed. R. Civ. P. 26………………………………………………………………28, 29

Plaintiff Ubiquiti Networks, Inc. ("Ubiquiti" or "Plaintiff") respectfully requests that this Court deny the Motion to Dismiss (the "Motion") filed by Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed and Dmitry Moiseev ("Defendants"),[1] and states as follows in support thereof.

## INTRODUCTION

Ubiquiti's First Amended Complaint ("FAC") states valid causes of action. Previously, this Court held that Ubiquiti's original complaint was deficient in one aspect, it failed to provide Defendants adequate notice of what portions of Ubiquiti's firmware were owned by Ubiquiti, and not subject to the GPL, that were allegedly infringed by Defendants. Ubiquiti's FAC addresses this concern by specifically identifying, both by function and name, the specific portions of Ubiquiti's firmware owned by Ubiquiti, not subject to the GPL, and infringed by Defendants. Nothing more is required to state a valid claim for relief. Notwithstanding Ubiquiti's full compliance with the Court's order and controlling pleading standards, Defendants filed a renewed motion to dismiss Ubiquiti's FAC. As detailed herein, Defendants' Motion is flawed in multiple respects and should be denied by this Court.

Defendants argue that they are still unable to determine which portions of Ubiquiti's software are at issue. But, this argument is plainly refuted by the specific allegations set forth in the FAC. Indeed, Defendants' claim rings particularly hollow given that their own retained expert apparently had no trouble identifying the files in question and drafting a twenty page report opining on them. Defendants next argue that the FAC should be dismissed because it purportedly fails to identify allegedly misused firmware that is not covered by the GPL. Once again, this claim is plainly refuted by express allegations in the FAC. While Defendants

---

[1] Unless otherwise stated, capitalized terms shall have the same meaning as defined in the Motion (Dkt. No. 69) and Defendants' Memorandum in Support of Their Motion (Dkt. No. 70, the "Memorandum").

repeatedly accuse Ubiquiti of basing its claims on modified GPL software, the FAC makes clear (and Ubiquiti confirms herein) that its copyright claims are not premised on Defendants' infringement of software otherwise subject to the GPL but modified by Ubiquiti. And each of Defendants' remaining arguments seeking to otherwise attack and/or limit the scope of Ubiquiti's claims likewise lack merit. In sum, Defendants' efforts to have this Court impose an unprecedented pleading burden on Ubiquiti must be rejected.

Finally, as detailed herein and in Ubiquiti's recent Motion to Lift Discovery Stay, the Court should deny Defendants' procedurally improper and one-sided request to bifurcate the case and covert this Motion to one for summary judgment (which request itself implicitly concedes the sufficiency of Ubiquiti's allegations and the need for discovery in this action).

For each and all of these reasons, Defendants' Motion should be denied in full.

## FACTUAL BACKGROUND

Ubiquiti and Cambium are direct competitors in the wireless networking industry. *See* FAC ¶ 1. Since 2009, Ubiquiti's M-series devices have been used by customers primarily to provide wireless internet access to consumers. *Id.* Ubiquiti sells its M-series devices with pre-installed firmware that operates the devices and ensures they perform as intended by Ubiquiti, as expected by Ubiquiti's customers, and as required by federal regulators. *Id.* This firmware includes portions that are protectable by Ubiquiti's copyrights, portions that are protectable by Ubiquiti's license agreements, and other portions that are unprotectable due to being used by Ubiquiti under an open source license, such as the GPL, or are modifications of such GPL code. *Id.* at ¶¶ 1, 37, 39.

Seeking to unlawfully capitalize on Ubiquiti's development work and to unfairly take advantage of Ubiquiti's substantial customer base, Cambium created its own firmware under the

tradename "Elevate," which was specifically designed to replace the Ubiquiti's firmware on Ubiquiti's devices. *Id.* at ¶ 2. Installing Elevate on an Ubiquiti device allows Cambium to reap illicit license fees while also providing Cambium with a means of inserting its own devices into Ubiquiti-exclusive wireless networks. *Id.* However, in creating, installing, testing and marketing Elevate, Cambium made unauthorized use of Ubiquiti's firmware, thereby infringing Ubiquiti's copyrights and violating Ubiquiti's license agreements. *Id.* at ¶¶ 50-69.

Independent of Cambium's unauthorized use of portions of Ubiquiti's firmware covered by Ubiquiti's copyrights and license agreements, Defendants also intentionally made numerous material misrepresentations and fraudulent omissions in marketing Elevate, including but not limited to falsely telling customers that (1) installing Elevate removes all existing Ubiquiti firmware from the Ubiquiti device, (2) installing Elevate does not void the Ubiquiti warranty on the equipment, and (3) any FCC violations resulting from installing and using Elevate may be cured by requesting that Ubiquiti provide a new FCC label. *Id.* at ¶¶ 70-78.

On the basis of the allegations and claims set forth in the FAC, Ubiquiti has brought this action to enjoin Defendants from further harming Ubiquiti and to obtain compensation for the damages that Ubiquiti has suffered and will continue to suffer as a result of Defendants' wrongful conduct. *Id.* at ¶ 6; *see also id.* at ¶¶ 120-299 (Counts I-XI).

## **PROCEDURAL POSTURE**

Defendants moved to dismiss Ubiquiti's initial Complaint primarily on the ground that it supposedly failed to provide Defendants with sufficient fair notice of which portions of Ubiquiti's firmware were owned by Ubiquiti and not subject to an open source license. *See* Dkt.

No. 33 at 15-18. In addition, Defendants moved to dismiss the other 14 causes of action asserted by Ubiquiti on the basis of certain additional arguments. *Id.* at 21-36.[2]

The Court denied in part and granted in part Defendants' motion to dismiss. *See* Dkt. No. 59 ("5/22/19 Order"). Specifically, the Court denied Defendants' standing arguments under Rule 12(b)(1), but granted Defendants' motion to dismiss under Rule 12(b)(6) without prejudice. *Id.* at 10. In its ruling, the Court focused solely on Defendants' fair notice argument related to Ubiquiti's copyright infringement claim, and directed Ubiquiti to file an amended complaint that "spells out at least the general nature of its allegedly misused firmware that is not covered by the GPL and other open source software licenses" so that Defendants would have "adequate notice of Ubiquiti's claims." *Id.* at 9.

Ubiquiti then filed a FAC that expressly defines three main terms used to identify which portions of Ubiquiti's Firmware are at issue for each individual claim being pled, as follows:

- *Firmware* – The FAC defines "Firmware" as the entirety of Ubiquiti's airOS operating system embodied in Ubiquiti's AirMAX products. *See* FAC ¶ 25.

- *Registered Firmware* – The FAC defines "Registered Firmware" as the portion of the Firmware that constitutes original authorship by Ubiquiti and covered by Ubiquiti's copyright registrations. *Id.* at ¶ 33. It does not include any code Ubiquiti licenses from third parties, including code licensed to Ubiquiti under the GPL. *Id.* at ¶¶ 34-35. With respect to third party code that Ubiquiti modifies, the Registered Firmware only includes modifications Ubiquiti makes to third party code "that are not subject to the GPL". *Id.* at ¶ 35. Thus, Registered Firmware ***does not*** include code Ubiquiti received under the GPL and modified. The Registered Firmware is the basis for Ubiquiti's copyright claims. *Id.* at ¶ 33.

- *Proprietary Firmware* – The FAC defines "Proprietary Firmware" as (1) the entirety of the Registered Firmware; (2) Ubiquiti's proprietary compilations of data contained in its calibration and configuration files in the Firmware; and (3) code Ubiquiti licenses from third parties (other than the GPL or other open source licenses). *Id.* at ¶ 39. Thus, Proprietary Firmware includes not only the code that Ubiquiti has copyright protection for but also other code and information that

---

[2] Defendants have omitted these additional arguments from their motion to dismiss the FAC. Thus, as detailed *infra* at Part II, the Motion is not dispositive of these non-copyright claims.

Ubiquiti can protect through contract. The Proprietary Firmware is the basis for Ubiquiti's breach of contract, CFAA, and DMCA claims. *Id*.

In accordance with the Court's instructions, the FAC "spells out" the nature of the misused firmware that is not covered by the GPL and other open source software licenses. As detailed in the FAC, Ubiquiti's copyright claim is based on Ubiquiti's Registered Firmware, which is comprised of nine specific software modules identified based on their function and names:

(i)   AirMAX®[3] radio protocol and wireless drivers (ubnthal and ubnt-regd);

(ii)   web user interface (ubnt-web and ubnt-cgi)

(iii)   polling (ubnt-poll);

(iv)   spectral analysis module (ubnt-spectral and ubnt- spectral-2);

(v)   configuration (ubnt-regd, ubntbox, and ubntconf_cl.sh);

(vi)   various utilities (ubntbox and ubnt-3g) related to, among other things, configuration, calibration, discovery tools, and boot code;

(vii)   base files (ubnt-base-files) related to, among other things, support utilities and scripts and configuration parameters;

(viii)   power over Ethernet (ubnt-poe-control); and

(ix)   modifications to the bootloader for AirOS provided by Atheros (ar7240-u-boot.rom; ubntxm-u-boot.rom; ubntxn-400-u-boot.rom; ubntwasp-u-boot.rom; ubnttitanium-u-boot.rom).[4]

---

[3] Defendants make reference to a licensed-in AirMAX component being both a "licensed-in" material and also asserted to be part of the Registered Firmware. *See* Mem. at 8. As this component is not alleged by Defendants to be covered by the GPL, it is irrelevant to the Motion. However, as the FAC makes clear, the "AirMAX radio protocol and wireless drivers specific to Atheros (Atheros-11n and related packages)" are part of the Proprietary Firmware, but other "AirMAX radio protocols and wireless drivers (ubnthal and ubnt-reg)" were created by Ubiquiti and are part of Ubiquiti's Registered Firmware. FAC ¶¶ 37, 39.

[4] In Defendants' opposition to Ubiquiti's motion to lift the stay, Defendants repeatedly argue that there is confusion on whether the Registered Firmware includes 9 or 18 packages/modules. *See, e.g.*, Dkt. No. 75 at 9. There is no such confusion. The Registered Firmware consists of the nine functional areas identified, which includes a total of 18 code packages or modules. This is because some of the functional areas (such as the web user interface) include more than one package or module (ubnt-web and ubnt-cgi).

FAC ¶ 37. Ubiquiti has expressly alleged that each of these modules are "original authorship by Ubiquiti" (*id.* at ¶ 33), "exclude code authored by third-parties" (*id.* at ¶ 34), and only include "modified licensed-in materials from third parties that are not subject to the GPL" (*id.* at ¶ 35).

Defendants filed a motion to dismiss the FAC, again claiming lack of notice of the specific software at issue. For the reasons set forth herein, the Motion should be denied.

## LEGAL STANDARDS

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint to state a claim upon which relief may be granted. *See Hillinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To avoid dismissal, a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) requires the plaintiff "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy this requirement, a plaintiff need not plead "detailed factual allegations," *Twombly*, 550 U.S. at 570, as this rule reflects a "liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Bank of America, N.A. v. Shelbourne Development Group, Inc.*, 732 F.Supp.3d 809, 814 (N.D. Ill. 2010) (internal citations omitted); *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences").

Factual allegations will survive dismissal where they "raise a right to relief above the speculative level" that is "facially plausible." *Twombly*, 550 U.S. at 555. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating this standard, a district court is required to construe the allegations "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citations omitted). In deciding the sufficiency of the pleading under Rule 12(b)(6), the Court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the opposition that "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Significantly, however, as detailed *infra* at Part I.D.1, this rule allowing a district court to consider materials outside the pleadings is not without limits. Furthermore, these sources must also be construed in favor of Ubiquiti as the non-movant under Rule 12(b)(6). *See Phillips*, 714 F.3d at 1020.

## **ARGUMENT**

### I. **Ubiquiti's Copyright Claims Are Not Barred By The GPL Or Other Open Source Software Licenses.**

Ubiquiti's copyright claims provide Defendants with adequate notice of the claims being asserted, and contrary to Defendants' characterizations, are not based on modified GPL code. The FAC specifically identifies by name and function each portion of Ubiquiti's Firmware that Defendants have infringed, and alleges that it is not subject to the GPL. Nothing more is required to state a valid claim for relief. Put simply, the allegations in the FAC establish that (1) Ubiquiti has provided adequate notice of its copyright infringement claim, (2) Ubiquiti is not asserting copyright infringement for any modifications Ubiquiti made to code received by Ubiquiti under the GPL, (3) Ubiquiti's claims are not bound by the exemplary statements made at the prior hearing, and (4) Ubiquiti's Registered Firmware forming the basis of its copyright

claims is not covered by the GPL. Defendants other collateral attacks are equally unavailing, as a filtration analysis is not required at the pleading stage, Ubiquiti's breach of contract claim is not deficient merely because it is based on both copyrighted and non-copyrighted material, and nothing bars Ubiquiti from adding an additional copyright claim in the FAC, never before pled, based on a copyright registration Ubiquiti obtained after it filed its original Complaint. Accordingly, Defendants' motion to dismiss Ubiquiti's copyright claims should be denied.

### A. Ubiquiti Has Provided Adequate Notice Of Which Portions Of Its Software Are Copyrighted.

The FAC identifies the portions of Ubiquiti's Firmware that are owned by Ubiquiti, not subject to the GPL, and are infringed by Defendants. Nevertheless, Defendants claim that Ubiquiti has failed to state a valid cause of action because the FAC purportedly does not define the terms "propriety user interface," "configuration code," "calibration code," or "AirMAX platform." *See* Mem. at 2, 20. In fact, the FAC expressly identifies the specific source code modules as follows:

| Original Complaint | FAC ¶ 37 |
|---|---|
| "proprietary user interface" | "web user interface (ubnt-web and ubnt-cgi)" |
| "configuration code" | "configuration (ubnt-regd, ubntbox, and ubntconf_cl.sh)"<br><br>"base files (ubnt-base-files) related to, among other things, support utilities and scripts and configuration parameters"<br><br>"various utilities (ubntbox and ubnt-3g) related to, among other things, configuration, calibration, discovery tools, and boot code" |
| "calibration code" | "various utilities (ubntbox and ubnt-3g) related to, among other things, configuration, calibration, discovery tools, and boot code" |
| "AirMAX platform" | "AirMAX radio protocol and wireless drivers (ubnthal and ubnt-regd)" |

While Defendants assert they were forced to "go on a scavenger hunt" to "identify the gold coin, if any, from the bucket of mud" (Mem. at 20-21), all of this information is contained in one succinct paragraph of the FAC. *See* FAC ¶ 37. Not surprisingly, Defendants' retained expert apparently had no difficulty zeroing in on the specific software modules at issue and, if he was to be believed, could actually render expert opinions on them. Regardless of their merit, these purported opinions amply illustrate the frivolity of Defendants' position on this point.

### B. Ubiquiti Is Not Asserting Copyright Infringement For Any Modifications Ubiquiti Made To Code Received By Ubiquiti Under The GPL.

Defendants devote a substantial portion of their brief to setting up, and then knocking down, the strawman argument that Ubiquiti's copyright claims are barred because they may be based on modifications to software licensed under the GPL, modifications which themselves also would be subject to the terms of the GPL. As Ubiquiti's FAC makes clear, however, Ubiquiti does not claim copyright in any modifications to software licensed under the GPL. And, given the extremely factual nature of the issue, it would be plain error for this Court to attempt to resolve on a motion to dismiss whether and to what extent any software alleged to serve as the basis of Ubiquiti's FAC actually is nothing more than a mere modification of GPL code. Rather, Ubiquiti's well-pled factual allegations must be accepted as true at this stage. Accordingly, Defendants' motion to dismiss Ubiquiti's copyright claims on this basis should be denied.

Contrary to Defendants' assertions, the FAC specifically identifies nine software code modules (by both name and functionality), which Ubiquiti owns valid copyrights to, that Defendants have infringed. *See* FAC ¶ 37. The FAC makes clear that Ubiquiti is excluding from these nine modules any code Ubiquiti licensed under the GPL or other open source licenses. *Id.* at ¶¶ 34-35. Further, the FAC expressly alleges that the only modifications to third party code that Ubiquiti is asserting as part of its copyright claim are modifications to code "from

third parties that are not subject to the GPL." *Id.* at ¶ 35. Finally, Ubiquiti has alleged that the nine asserted modules are original works of authorship of Ubiquiti, not covered by a GPL license, and not modifications to code Ubiquiti received under a GPL license. Nothing more is required under applicable pleading standards.

The only case Defendants cite in support of their dubious argument, *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013), is not to the contrary. Unlike the instant action, in *Synopsys*, the plaintiff's complaint acknowledged that portions of its software were subject to the GPL, but failed to identify any specific portions of the software that were not open source. Nonetheless, because the complaint did identify "input and output formats" generally, the court held the description sufficient at the pleading stage to satisfy Rule 8, and granted plaintiff leave to identify any other infringed portions of the software code that were not open source. *Id.* at *4.[5] Ubiquiti's identification of nine specific software modules is far more specific than the allegations in *Synopsis*. Accordingly, rather than support Defendants' argument for dismissal, *Synopsis* undermines it entirely. For this reason, Defendants' Motion should be denied.[6]

### C. Ubiquiti Is Not Bound By Its Original Complaint Or Exemplary Statements Made During The December 11, 2018 Hearing.

Citing no authority, Defendants next argue that the scope of Ubiquiti's copyright claim should somehow be limited by certain statements made to the Court by Ubiquiti's prior counsel regarding Ubiquiti's original complaint. *See* Mem. at 25. Defendants are wrong.

---

[5] Notably, the *Synopsis* court also denied defendant's motion to dismiss based on the alleged uncopyrightability of "input and output formats" finding that the resolution of such an issue needs to be decided after the record has been fully developed and not at the pleading stage. *Id.* at *5.

[6] In the event the Court finds that Ubiquiti's FAC is unclear on this point, the appropriate remedy would be to allow Ubiquiti an opportunity to amend the complaint to clarify its position, rather than dismiss the FAC with prejudice. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also infra* at Part IV.

As a preliminary matter, "[i]t is well-established that an amended complaint supersedes an original complaint, and facts or admissions from the original complaint not incorporated into the amended complaint cannot be considered on a motion to dismiss." *McNeal v. Cook County Sheriff's Dept.,* 282 F. Supp. 2d 865, 867 (N.D. Ill. 2003) (citing *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998)). For this reason alone, the scope of Ubiquiti's copyright claims as set forth in its original Complaint cannot constitute a binding judicial admission limiting the scope of its FAC. *See, e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (holding that withdrawn pleadings are not judicial admissions).

Moreover, the statements made by Ubiquiti's prior counsel were exemplary in nature, and in no way constitute judicial admissions limiting the scope of its claims. "A judicial admission is a statement, normally in a pleading, that negates a factual claim that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). In the Motion, Defendants cherry-pick portions of the prior hearing transcript in arguing that Ubiquiti's counsel made certain alleged judicial admissions. *See* Mem. at 25. A complete review of the transcript finds Ubiquiti's counsel was, in response to this Honorable Court's questioning, supplying "examples" of the protected software undergirding Ubiquiti's copyright infringement claims that had been identified in the original Complaint, which statements were not made at the exclusion of other claims based on Firmware not subject to the GPL. *See generally* Mem. Ex. 1, at pgs. 13-18. Such exemplary oral statements made in response to a court's questions cannot constitute judicial admissions.[7]

---

[7] *See*, *e.g.*, *McCaskill v. SCI Management Corp.*, 298 F.3d 677, 682 (7th Cir. 2002) (counsel's response to hypothetical posed by court during oral argument was not the sort of deliberate, clear, and unambiguous statement evincing an intentional waiver that has been held sufficient to constitute a judicial admission) (*citing Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 170 (1972) ("we are loath to attach conclusive weight to the relatively spontaneous responses of counsel to equally spontaneous questioning from the Court

Accordingly, the scope of Ubiquiti's copyright claims must be determined based on the allegations set forth in the FAC, and not via the superseded allegations of the original Complaint.

**D.      The Registered Firmware Is Not Covered By The GPL.**

The FAC identifies specific components of the Registered Firmware that are not covered by the GPL.  *See* FAC ¶¶ 33-37.  Defendants nevertheless contend that these components are covered by the GPL based on material referenced on Ubiquiti's website (the SDK and GPL Archive) and the purported findings set forth in a declaration of Defendants' retained expert, Jeff Fischer (the "Fischer Declaration").  *See* Mem. at 2, 15-20.  These materials should not be considered at the pleading stage.  However, even if they were, the conclusory opinions offered by Fischer are fundamentally flawed and should be rejected.

**1.   The SDK, GPL Archive, And Fischer Declaration Do Not Provide A Valid Basis For Dismissing The FAC.**

Defendants' Motion includes extensive discussion of Ubiquiti's software development kit ("SDK") and GPL archive, as well as the Fischer Declaration.  None of these external sources of information are part of the FAC, incorporated by reference in the FAC, or appropriate to consider in determining whether Ubiquiti has stated a valid cause of action.

The rule allowing a district court to consider materials outside the pleadings is not without limits.[8]  Where, as here, a defendant attaches documents to its motion to dismiss, they may only be considered "if they are referred to in the plaintiff's complaint and are central to his

---

during oral argument")); *React Presents, Inc. v. Sillerman*, No. 16 C 3790, 2016 WL 4479569, at *3 (N.D. Ill. Aug. 25, 2016) ("Seventh Circuit authority plainly precludes twisting … impromptu statements into a binding judicial admission").

[8] *See*, *e.g.*, *Levenstein v. Salafsky*, 163 F.3d 345, 347 (7th Cir. 1998) (the rule reflects a "narrow exception aimed at cases interpreting, for example, a contract," and is not a "license to ignore distinctions between motions to dismiss and motions for summary judgment"); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("This court's precedent makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions").

claim." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Elward v. Electrolux Home Prod., Inc.,* 264 F. Supp. 3d 877, 886 (N.D. Ill. 2017) (holding that both elements must be present). And even then, where documents introduced by the defendant raise a factual dispute on which discovery is required, dismissal under Rule 12 is improper. *See id.* As a result, the Seventh Circuit discourages a defendant from attaching a "document in support of his Rule 12(b)(6) motion that require[s] discovery to authenticate or disambiguate; in such a case the judge would be required to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document in deciding whether to grant the motion." *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

Prior to analyzing the impropriety of Defendants' attempts to rely upon external materials in violation of this standard, it is first necessary to clarify certain matters related to the information at issue. The SDK and GPL Archive are not synonymous. The SDK, which Defendants contend was made available by Ubiquiti from 2011-2013, is a set of software tools made available to the developer community. As shown in the screenshot submitted by Defendants, only portions of the SDK (just like the Firmware) are covered by the GPL or other open source license. *See* Mem. Ex. 4. In contrast, the GPL Archive is a repository for those portions of Ubiquiti's Firmware that are covered by the GPL, and therefore, must be made publicly available under the terms of that license. *See* Mem. Ex. 5 (Ubiquiti website providing link to GPL Archive); Ex. 7 § 3 (GPL version 2); Mem. Ex. 8 § 6 (GPL version 3).[9] The GPL

---

[9] Defendants are wrong to claim that Ubiquiti "stopped allowing for public access to its GPL Archives" by hiding it behind its EULA. To download the various versions of the Firmware, users are asked to accept Ubiquiti's EULA. *See* Mem. Ex. 3. However, as Defendants themselves point out, that EULA specifically says its terms do not apply to any code covered by the GPL. *See* Mem. Ex. B at 3-4, Ex. C at 5. Thus, a user accepting the EULA simply to access and use the GPL code is not bound by any of its terms with respect to that GPL code. Moreover, Defendants lack standing to assert any alleged breaches of the GPL license by Ubiquiti.

Archive includes third party code Ubiquiti received under the GPL as well as modifications Ubiquiti made to that code. Because none of the code identified in FAC ¶ 37 is subject to the GPL, none of that code is included in the GPL Archive submitted as part of Cambium's motion. *See* Fischer Decl. Ex. F.[10]

It would be plain error to consider statements made on Ubiquiti's website (as part of the SDK or GPL Archive) or any of the analysis of Defendants' expert in determining whether Ubiquiti stated a valid claim for copyright infringement. Ubiquiti's attachment of the FULA and EULA to the Amended Complaint does not justify consideration of material appended to Defendants' motion that is not (1) specifically referenced in the FAC, and (2) central to Ubiquiti's claim. *See Elward*, 264 F. Supp. 3d at 886; *see also Reese v. Hammer Fin. Corp.*, No. 99 C 0716, 1999 WL 1101677, *3 (N.D. Ill. Nov. 30, 1999) (where document attached to a motion to dismiss "may be 'central' to defendant's defense of the [plaintiff's] allegations, it does not meet the narrow exception of documents considered part of the pleadings"). For example, Defendants' attachment of screenshots from Ubiquiti's website should be disregarded as they are neither specifically referenced in the FAC nor central to Ubiquiti's claims. *See*, *e.g.*, *Facebook, Inc. v. Teachbook.com LLC*, 819 F.Supp.2d 764, 773 (N.D. Ill. Sept. 25, 2011) ("website printouts are not the type of documents that may be properly considered as central to Facebook's claim…allowing [movant] to cherry pick portions of Facebook's website to introduce via a motion to dismiss simply because the complaint indicates the two websites would convert an examination of the complaint into a full-blown summary judgment analysis"); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917 (N.D. Ill. 2007) (declining to consider excerpted printouts

---

[10] Defendants try to make much of the fact that various "uboot" files are in the GPL Archive. *See* Mem. at 11. However, Cambium does not point to any of the thousands of files that comprise the "ar7240-u-boot.rom," "ubntxm-u-boot.rom," "ubntxn-400-u-boot.rom," "ubntwasp-u-boot.rom," or "ubnttitanium-u-boot.rom" modules identified by Ubiquiti as part of the Registered Firmware. *See* FAC ¶ 37.

from a website where they were not the entirety of challenged publications referred to in the complaint).

Likewise, it is well established that this Court should not consider the alleged expert opinions set forth in the Fisher Declaration, or its hundreds of pages of supporting exhibits (including a purported "digest of information" from Ubiquiti's Open Source Archive), at this early pleading stage. *See DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001) ("considering an expert affidavit on a motion to dismiss, whether attached to a motion to dismiss or as an exhibit [to] the plaintiff's complaint, forces a district court to confront a myriad of complex evidentiary issues not generally capable for resolution at the pleading state" and "would so complicate the procedural posture of a motion to dismiss that it would become virtually indistinguishable from a motion for summary judgment"); *In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C-05-395 PJH, 2007 WL 760535, at *30 (N.D. Cal. Mar. 9, 2007) ("well-established that courts should not consider an expert or other affidavit submitted in support of a Rule 12(b)(6) motion to dismiss, unless the parties have agreed that the motion will be treated as a motion for summary judgment").

Finally, while the Court previously concluded that it was proper to consider the GPL because it is expressly incorporated into Ubiquiti's licenses and central to its claims (*see* 5/22/19 Order at 5), this general consideration of the GPL does not justify abandoning Ubiquiti's right to have is well-pled factual allegations accepted as true for purposes of deciding Defendants' motion to dismiss.  It also does not provide carte blanche to consider all facts potentially related to the GPL (including, out-of-context statements made on Ubiquiti's website, the contents of Ubiquiti's SDK, the license applicable to any specific file in Ubiquiti's SDK, the contents of Ubiquiti's GPL Archive, what portions of the GPL Archive are subject to third party GPL

rights), or the disputed findings of Defendants' retained expert included in the Fischer Declaration, to determine whether the FAC states a valid claim for relief.

**2. The Fischer Declaration Is Fundamentally Flawed.**

As detailed herein and explained further in the declaration of Michael Fenn recently submitted in support of Ubiquiti's motion to lift the stay on discovery (Dkt. No. 72, Ex. A, herein the "Fenn Decl."),[11] the purported opinions in the Fischer Declaration are inherently flawed and disputed by Ubiquiti because: (i) Fischer did not have the data necessary to perform an actual analysis of the code; (ii) the name of a file does not allow comparison of the underlying source code; (iii) in many cases Fischer can only point to object code, not source code, released in the SDK; (iv) the presence of code in the SDK does not mean it is subject to the GPL; and (v) the SDK contains identifications that certain files are identified as proprietary to Ubiquiti, and the failure to identify third party GPL code used by Ubiquiti for these files means Ubiquiti never agreed to also release future derivatives of their own work under the GPL.

i. *No Analysis of Necessary Data*: As an initial matter, Fischer simply does not have the information necessary to opine on whether the source code forming the basis of Ubiquiti's claims (which he has never seen) is identical or a derivative of any source code available under an open source license. (Fenn Decl. ¶ 12.) At a minimum, a reasonably competent expert would have to review the source code for the items the expert is attempting to compare to other sources. (*Id.*)

ii. *Erroneous Assumptions as to Name Comparisons*: In reaching his conclusions, Fischer also relies on numerous assumptions that are false and unsupported by the underlying

---

[11] Ubiquiti submits the consideration of any expert declarations is improper at this stage for the reasons set forth *supra* at Part I.D.1. Nevertheless, to the extent that the Court does consider such material, Ubiquiti incorporates by reference the previously filed Fenn Declaration to highlight the errors and fundamentally flawed nature of Fischer's alleged expert findings.

data to which he does have access. For instance, Fischer's opinions are premised on his comparison of the source code packages identified by Ubiquiti in the FAC against code in Ubiquiti's SDK release that contains a part of that same name. (Fenn Decl. ¶ 13.) In undertaking this comparison, Fischer simply assumes that because portions of Ubiquiti's SDK release contain code with similar names to source code packages identified by Ubiquiti in the FAC, they must somehow be are covered by GPL. There is no valid basis for making this assumption. For example:

- The FAC identified a package "ubnt-3g". In his analysis, Fischer merely searched the SDK for any file with the letters "3g", and in his declaration Fischer incorrectly states that the "match" is different and unrelated file called 30-3g.

- The FAC identified a file "ubntconf_cl.sh". In his declaration, Fischer points to a different file "ubntconf" as the "match". However, this is not a match and the file identified by Fischer is simply one of the files called by the file named in the FAC.

- The FAC identified a package "ubnt-poe-control". Fischer assumes poe means "power over internet" and identifies the "likely match" as a file called "advanced.cgi" because it contains part of the user interface for turning on power of internet. However, this is not a match and the file identified by Fischer is not the code for implementing the power over internet functionality.

(*Id*.) Fischer's overly simplistic analysis is rife with error and provides no valid basis for calling any of Ubiquiti's complaint allegations into question. Yet, this is precisely the type of spurious "evidence" Defendants seek to convince this Court into accepting as true as a matter of law in either dismissing Ubiquiti's FAC, or barring Ubiquiti from taking discovery on its claims.

      iii.    *Object Code vs. Source Code*: Fischer incorrectly opines that human readable *source* code identified in the FAC (which he does not have access to) is a "match" for unreadable *object* code in the SDK (as the SDK does not include source code). Fischer takes the names of various source code packages identified in the FAC (such as ubnt-spectral, ubnt-spectral-2, ubnt-poll, and ubnt-regd), and identifies object code with similar names found in the SDK. However,

Fischer does not point to any source code in the SDK that is similar or a "match" to the actual source code identified by Ubiquiti. (Fenn Decl. ¶¶ 17-18.)

iv. *Ubiquiti Did Not License All Of Its SDK Code Under The GPL*: Fischer also incorrectly opines that all of the code released in the SDK is subject to the GPL. As clearly set forth in the download page for the SDK that was included as Exhibit A to Fischer's own declaration, only "***some*** of the software in the firmware is licensed under the GNU General Public License and other Open Source and Free Software licenses." (Fischer Decl., Ex. A (emphasis added)). Fischer fails to offer any explanation for why he ignores this fact, and it undermines his analysis entirely. The fact that Ubiquiti only released some of its SDK code under the GPL (with specific source code files identifying the GPL) means that it is simply incorrect to opine that all of the SDK has been released by Ubiquiti under the GPL.

More fundamentally, in determining whether the object code found by Fischer is a "match" to the source code identified in the FAC, a reasonably competent expert in this field would have run a string analysis to determine whether the object code found in the SDK identified what license was applicable to it. While object code is generally unreadable, a string analysis allows the identification of human readable portions. (Fenn Decl. ¶¶ 19-22.) This string analysis would have been especially prudent in light of Ubiquiti's express representation that only some items in the SDK are covered by the GPL, and would have revealed that the files that Fischer identified expressly state that they are proprietary to Ubiquiti and not covered by the GPL. For example, the object code in the SDK for the "ubnt-spectral" package identified in the FAC states:

> license: Proprietary
> description: Ubiquiti Spectral Analysis Module
> author: Ubiquiti Networks, Inc.

In contrast, a non-asserted GPL licensed file in the SDK states:

> license: GPL
> description: Signal display (printk) module for madwifi
> author: UBNT, kaleda

(*Id*.)  Fischer nevertheless ignores this material distinction.

v.       *False Assumptions as to GPL Coverage*:  Fischer also incorrectly assumes that the release of a Ubiquiti written file under the GPL requires Ubiquiti to release all further derivatives under the GPL.  While releasing a file under the GPL means that someone *else* using that file agrees to also release derivatives they create under the GPL, neither Defendants nor Fischer point to any section of the GPL that obligates the Licensor (here Ubiquiti) to release all future derivatives of their own work under the GPL.  Thus, where Ubiquiti has released its own works under the GPL (not work Ubiquiti itself bases on code Ubiquiti received under the GPL), the mere fact that Fischer can point to a prior version being released by Ubiquiti under the GPL has no relevance to the rights Ubiquiti has in protecting a later version of that same file.  Fischer's Declaration makes no attempt to opine that any of the files identified in the FAC were written by Ubiquiti based on code Ubiquiti received from a third party under the GPL.  (Fenn Decl. ¶¶ 15-16.)  Thus, it is incorrect for Fischer to conclude that the presence of a similar file in the SDK, even if covered by the GPL, means that all derivatives of those files are also covered by the GPL.

In sum, Ubiquiti has specifically identified the Registered Firmware it asserts copyright ownership to, which is not subject to a GPL license, and which Defendants have infringed.  It is apparent that one of the defenses Defendants will be pursuing in this case is a defense that certain portions of Registered Firmware are covered by the GPL.  Not only is this issue going to be the subject of discovery, both fact and expert, but is an issue for the ultimate fact-finder to

decide.  It would be improper to require Ubiquiti to prove the ultimate merits of it case at this time.  Accordingly, Defendants' motion to dismiss should be denied.

### E.    A Filtration Analysis Is Not Required To Plead A Valid Cause Of Action.

Defendants maintain the FAC should be dismissed unless it can satisfy a "filtration analysis."  *See* Mem. at 22.  However, a filtration test is uncalled for when, as here, the allegation is not that Elevate infringes Ubiquiti's copyrights, but rather, that Defendants' development, testing, installation and marketing of Elevate runs the Ubiquiti Firmware itself, thereby infringing Ubiquiti's copyrights in the Registered Firmware.  A filtration test related to the fact-intensive affirmative defenses of efficiency or *scenes a faire* would be relevant only if Ubiquiti was asserting that Elevate itself was an unauthorized derivative of the Ubiquiti Firmware.  However, the FAC does not make any such allegation.[12]  Instead, Ubiquiti's infringement claim is based on Defendants' use of the Registered Firmware in developing, testing, installing and marketing Elevate.  As an analogy, while a filtration test might be useful in a case where one book is alleged to infringe the book of another author (comparing similar themes, character names, sequence of events, etc.), such an analysis is not required if a defendant is simply photocopying the plaintiff's book (or running Ubiquiti's Firmware).

None of the cases cited by Defendants suggest otherwise.  For instance, in *Ford Motor Company*, the court granted summary judgment to the defendant where the defendant's expert concluded that the copied portions of the software comprised open source software and thus were not "original" to plaintiff.  *See Ford Motor Co. v. Versata Software, Inc.*, 15-CV-10628, 2019 WL 355638, *5 (E.D. Mich. Jan. 29, 2019).  In that case, the plaintiff failed to identify which

---

[12] Ubiquiti does not yet have access to the Elevate source code.  Should discovery reveal that Elevate is itself derived from Ubiquiti's firmware, Ubiquiti reserves the right to seek leave to amend the complaint to make this assertion.

portions of the software, if any, were not covered by open source.  *Id*.  Here, not only are Defendants' expert opinions severely deficient (as explained *supra*), but Ubiquiti has conducted a filtration of open source materials in the FAC by excluding them, and modifications of them, from the Registered Firmware and specifically identified the nine portions of the Firmware that result after this filtration.

Moreover, all of the cases cited by Defendants are in the context of a summary judgment, after there has been extensive factual discovery and expert testimony about what elements are proper to abstract and filter out.  None of that work has yet been done in this case, and Defendants cannot point to a single authority suggesting that evaluating a complaint in light of a filtration test is appropriate on a Rule 12(b)(6) motion.  The FAC asserts that the Registered Firmware is original authorship of Ubiquiti and entitled to copyright protection.  *See* FAC ¶ 33. Nothing more is required at the pleading stage, especially a detailed type of expert report conducting a full filtration test that Defendants appear to suggest Ubiquiti should have included as part of the FAC.  Regardless, the FAC actually meets the filtration test because it expressly alleges that the Registered Firmware is original to Ubiquiti, and filters out code subject to the GPL or other open source licenses.  Accordingly, Defendants' Motion should be denied.

## F.    Ubiquiti's Breach Of Contract Claim Need Not Be Limited To Copyrighted Software.

Defendants next contend that Ubiquiti is improperly asserting copyright infringement over "proprietary compilations of data in the configuration and calibration files" because "data and information are not protectable."  Mem. at 2.  While Ubiquiti asserts a copyright infringement claim related to certain protectable code related to the configuration and calibration functions (as identified in the above chart), Ubiquiti is not alleging copyright infringement over mere "proprietary compilations of data in the configuration and calibration files."  This phrase

does not appear in the FAC in either the portion of the complaint identifying the Registered Firmware or in Ubiquiti's copyright infringement claim.  Instead, as the FAC makes clear, the "proprietary compilations of data in the configuration and calibration files" is part of the "Proprietary Firmware" which forms the basis of Ubiquiti's breach of contract, CFAA, and DMCA claims.  FAC ¶ 39.  Indeed, Defendants' citation is to the breach of contract claim, not the copyright infringement claim.  *See* Mem. at 2 (citing FAC ¶ 122).  While proprietary data alone may not be protectable under copyright, it is fully protectable under contract law.

In a similar vein, Defendants take issue with the fact that Ubiquiti includes material it has licensed from Atheros as part of the "Proprietary Firmware."  *See* Mem. at 9, 16.  As this Atheros material is not part of the defined Registered Firmware, it is not a part of Ubiquiti's copyright claim and Ubiquiti is not claiming ownership of it.  Instead, it is explicitly part of the Proprietary Firmware for which Ubiquiti has asserted a breach of contract claim.  *See* FAC ¶ 39. There is nothing improper about placing contractual limits on Defendants' use of code Ubiquiti has received under a license from Atheros.  Accordingly, Defendants' motion to dismiss on these grounds lacks merit and should be denied.

### G.  The Addition Of A New Copyright Claim In The FAC Is Proper.

In a brief aside in the Motion, Defendants take issue with the FAC having added a new copyright infringement claim based on Ubiquiti's airOS 6.0 Firmware, which was registered by the Copyright Office after the filing of the original Complaint and therefore included for the first time in Ubiquiti's FAC.  *See* Mem. at 9, n.7; FAC ¶ 35.  Specifically, Defendants argue Ubiquiti's airOS 6.0 claim must be dismissed pursuant to the recent opinion issued in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881 (2019).  However, this recent United States Supreme Court decision is not applicable here, as the *Fourth Estate* opinion did not

22

address circumstances where a plaintiff amends its complaint to add claims based on the registration of copyrights that were never alleged as a basis for relief in the plaintiff's initial complaint; instead, it focused solely on amendments to add copyright infringement claims that were improperly filed in the plaintiff's initial complaint. *Id.* at 888.[13] Significantly, Defendants cite no authority prohibiting the addition of a copyright registration where the prior complaint did not assert infringement of the copyright application.

In this case, Ubiquiti's original Complaint did not allege infringement based on the airOS 6.0 Firmware and thus was never defective under *Fourth Estate* as to that copyright. Thus, the analogy drawn in *Fourth Estate* – that pursuit of copyright infringement claims without registration was tantamount to a failure to exhaust administrative remedies – does not hold up where Ubiquiti complied with all preconditions of filing suit for the copyrights at issue in the original complaint. In recognition of this distinction, courts have expressed a willingness to allow amendments to add materials subject to newly issued copyright registrations where the prior complaint did not assert infringement of that material. *See*, *e.g.*, *Stiletto Television, Inv. v. Hastings*, *Clayton & Trucker, Incorporated*, CV 18-3911 DSF (PLAX), 2019 WL 2619642, *2 (C.D. Cal. April 15, 2019) (denying leave to amend pleadings to add newly issued copyright registration solely because leave was sought following deadline to amend pleadings). Finally, acceptance of Defendants' argument on this point would only serve to result in judicial inefficiency, as dismissal of the airOS 6.0 claim due to a lack of registration at the time of the original filing would require Ubiquiti to file an entirely new action in this district. Such

---

[13] *See also*, *e.g.*, *Malibu Media, LLC v. Doe*, 18-CV-19056 (JMF), 2019 WL 1454317, *1 (S.D.N.Y., April 2, 2019) (a prematurely filed copyright infringement claim cannot be cured by a post-registration amendment and must be dismissed); *Imzo v. Roadster, Inc.*, 18-cv-06092-NC, 2019 WL 2359228, *1 (N.D. Cal. June 4, 2019) (where an amended complaint revealed that only 11 of the 80 copyrights at issue had been registered prior to the filing of the *original* complaint, the amendment cannot cure the defect of non-registrability as to the remaining 69 copyrights alleged in the original complaint).

inefficient procedural maneuvering is simply not required by the specific holding in *Fourth Estate*. Thus, the motion to dismiss Ubiquiti's claim based on airOS 6.0 should be denied.

## II. Defendants' Motion Fails to Identify a Basis for Dismissal of Ubiquiti's Non-GPL Based Claims.

Even if it were to be granted, Defendants' Motion would not be dispositive of all of the claims in the FAC.[14] In the Motion, Defendants argue that Ubiquiti's copyright infringement and breach of contract claims fail to state a valid cause of action because all of the source code at issue is covered by the GPL. Defendants then cursorily assert that this GPL defense applies to all of the claims in the FAC. *See* Mem. at 27. But, Defendants are mistaken, as their Motion (i) ignores the non-GPL based grounds for Ubiquiti's false advertising claims, and (ii) improperly asserts that the GPL terms cover all of Ubiquiti's Firmware.

***First***, even if Defendants' GPL arguments were correct (which they are not), this alleged defense is not dispositive of Ubiquiti's false advertising claims premised on Defendants' knowingly false statements and fraudulent marketing activities. In the Motion, Defendants argue that if Ubiquiti fails to establish a proprietary interest in *any* of the Firmware, it cannot demonstrate that statements Defendants made about how much of Ubiquiti's Firmware is present on a device after installing Elevate were false. *See* Mem. at 27. But this argument is simply illogical. Should the ultimate fact-finder determine that *all* of the Firmware is covered by the GPL, even Defendants admit that Ubiquiti would still be the author of any modifications. While Ubiquiti would be prohibited from asserting copyright infringement over that code in such circumstances, this prohibition would in no way somehow permit Defendants to continue to make false statements to consumers about the amount of Ubiquiti's Firmware that is present on

---

[14] Notably, this issue has also been addressed in Ubiquiti's pending Motion to Lift Stay of Discovery. *See* Dkt. No. 72 at 11-12.

Ubiquiti's devices after installing Elevate. Defendants point to no section of the GPL that would permit such false statements.

Moreover, the false advertising claims are fully supported by two additional categories of allegations regarding Defendants' false claims regarding (i) warranty coverage, and (ii) FCC compliance. With respect to warranty coverage, the Motion is completely silent. This alone precludes dismissal of those claims. With respect to FCC compliance, in a single conclusory sentence, Defendants argue that Ubiquiti fails to specify the particular FCC rules that are violated and thus, all allegations based on FCC compliance must be dismissed. Mem. at 27. However, Defendants ignore the FAC's detailed allegations on this point, in which Ubiquiti alleges that each Ubiquiti M-series devices includes packaging and labels containing a unique FCC identification number approved by the FCC, and that after installing Elevate, the devices violate FCC regulations. *See* FAC ¶¶ 61-62 ("Specifically, Elevate alters the radio functionality of Ubiquiti's M-series devices causing them to transmit signals with characteristics that are not allowed by the applicable equipment authorization."). Defendants cite to no authority suggesting anything more is required at the pleading stage. Moreover, the false statement about FCC compliance is not about an Elevated device being compliant with a specific FCC regulation, but instead is based on statements by Defendants that any "violation of applicable FCC regulations caused by the installation of Elevate can be rectified by requesting that Ubiquiti provide the user with a new FCC label." *Id.* at ¶ 70. This false statement is simply not addressed in the Motion and does not require any citation to a specific FCC regulation.

**Second**, Defendants incorrectly assert that the GPL grants Defendants permission to engage in all of the alleged breaching activity. *See* Mem. at 26. While the GPL code prohibits a license from enforcing additional restrictions on the use of GPL code (Mem. Ex. 9 at 3), there is

no prohibition in the GPL from Ubiquiti enforcing contractual restrictions, as contained in the FULA and EULA, on the Proprietary Firmware which is not subject to the GPL. Accordingly, Ubiquiti would be prohibited from asserting breach of contract with respect to any code covered by the GPL. However, Ubiquiti is not making any such assertion as the terms of both the FULA and EULA expressly do not apply to any code covered by the GPL. *See* FAC ¶¶ 42, 46. For example, despite all of the errors present in the Fischer Declaration, Defendants do not point to any third party GPL code used by Ubiquiti to create its user interface. Thus, the user interface is not covered by the terms of the GPL (or any other open source license) and can properly be subject to the restrictions set forth in the FULA and EULA. One of those restrictions prohibits the use of Ubiquiti's equipment after deletion of the user interface. *See* FAC ¶ 124. In short, if after full fact and expert discovery, the ultimate fact finder concludes that all of the Proprietary Firmware is covered by the GPL, then Defendants may have a defense against the breach of contract claim; however, at the pleading stage, where Ubiquiti has clearly identified the Proprietary Firmware, alleged it is covered by the terms of the FULA and EULA and not the GPL, dismissal of the breach of contract claims is not warranted.[15]

Accordingly, for the reasons set forth herein, Defendants' Motion fails to identify any basis for dismissal of the following claims in the FAC:

---

[15] In passing, Defendants argue that if Ubiquiti is found to have itself breached one term of the GPL, all alleged breaches of the FULA and EULA by Defendants are excused. *See* Mem. at 26. This novel theory has no basis in the law. First, Defendants have no standing to assert any breach by Ubiquiti of the terms of the GPL. Second, the mere fact that the FULA and EULA state that GPL code is covered by the GPL (and not the FULA and EULA) does not transform Ubiquiti's own compliance with the GPL it independently entered into with third parties into a blanket defense to all breaches of the FULA and EULA by defendants with respect to code not covered by the GPL. Finally, the *Elda Arnhold & Byzantio* case cited by Defendants does not support this position, in particular given that the court in that action stressed the importance analyzing the highly factual issue upon a review of all of the evidence presented at trial, and not at the motion to dismiss stage. *See Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (a party was entitled to terminate a contract for the sale of a specific land for material breach after the other party failed to meet a material bargained for drop dead payment date).

- Count I: Breach of Contract claims based upon allegations of (i) use of the Firmware to violate FCC regulations (FAC ¶¶ 125) (ii) unauthorized use of portions of the Firmware that Ubiquiti licenses from third parties (such as Atheros) (FAC ¶¶ 124-125), and (iii) unauthorized use of the proprietary data contained in Ubiquiti's configuration and calibration files (FAC ¶¶ 124);

- Counts V, VI, VII & VIII: False Advertising, Tortious Interference with Contract, Unfair Competition, and Intentional Interference with Prospective Economic Advantage claims based upon allegations of (i) false statements about use of Elevate being supported by warranty coverage from Ubiquiti (FAC ¶¶ 226, 233, 243, 252), and (ii) false statements about use of Elevate yielding Ubiquiti M- series devices that are FCC complaint (FAC ¶¶ 226, 233, 243, 252); and

- Counts X & XI: RICO 18 USC §§ 1962(c) & 1962(d) claims based upon mail and wire fraud due to Cambium's false and misleading statements (FAC ¶¶ 270, 274), and Defendants' conspiracy to promote Elevate through the same false and misleading statements (FAC ¶¶ 281, 291, 296).

### III. The Court Should Reject Defendants' Request to Bifurcate Discovery and Convert Defendants' Motion To A Motion For Summary Judgment.

In apparent recognition of the inappropriateness of asking the Court to consider hundreds of pages of material outside of the pleadings, as well as the disputed opinions of a retained expert, Defendants have requested that the Court convert their Motion to a motion for summary judgment under Rule 12(d) and order that discovery be bifurcated to focus solely on Defendants' GPL defense while excluding any discovery regarding the alleged misconduct underlying Ubiquiti's affirmative claims.  *See* Mem. at 27-29.  This request for bifurcated, one-sided, discovery should be denied for multiple reasons.[16]

*First*, Defendants' request is procedurally improper.  Courts in this district have consistently declined to convert motions to dismiss into motions for summary judgment at the

---

[16] This issue has also been addressed in Ubiquiti's pending Motion to Lift Stay of Discovery.  *See* Dkt. No. 72 at 12-15.  Significantly, however, Defendants' response to that motion failed to mention (let alone substantively respond to) the arguments and authority cited by Ubiquiti in opposition to Defendants' request to bifurcate and limit discovery in this action.  *See generally* Dkt. No. 75.

early stages of litigation and prior to discovery.[17]  Moreover, Rule 12(d) is not a vehicle to limit discovery.  Instead, it allows the Court to convert Defendants' partial motion to dismiss into a partial motion for summary judgment due to Defendants' reliance on materials outside the pleadings (such as the Fischer Declaration).[18]  But, even if Defendants' request were to be granted under this rule, Defendants would be deemed to have submitted their partial motion for summary judgment and it is Ubiquiti that would be the party allowed discovery in order to respond to the motion.[19]  Defendants' proposal that Ubiquiti should be denied all discovery, while granting Defendants' one-sided request for discovery of data and documents from Ubiquiti is simply backwards.

**_Second_**, Defendants have failed to satisfy their burden of proof to bifurcate and limit discovery under Federal Rule of Civil Procedure 26, which affords a district court the discretion to limit discovery upon a showing of good cause in order to prevent "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  A request for a protective

---

[17] _See_, _e.g._, _Solis v. Caro, N.C._, No. 11 C 6884, 2012 WL 1409558, *3 (N.D. Ill. Apr. 23, 2012) ("although the Court has discretion to consider the materials and convert Caro's motion into a , the Court declines to do so here, where the parties are in the early stages of litigation and have not yet engaged in discovery") (citing _Magellan Int'l Corp. v. Salzgitter Handel GmbH_, 76 F.Supp.2d 919, 922 (N.D. Ill. 1999) ("converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment 'seldom makes sense at the threshold stage of any litigation'"); _see also Baker v. Lakin_, No. 3:15-cv-600, 2016 WL 1696804, *3 (S.D. Ill. Apr. 5, 2016) ("allowing Defendants to proceed on a motion for summary judgment at this juncture is premature, as Plaintiff has not had the opportunity to fully engage in discovery to provide support for his allegations").

[18] _See_ Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[19] _See_, _e.g._, _Covington v. Illinois Sec. Serv., Inc._, 269 F.3d 863, 865 (7th Cir. 2001) ("the district court should permit the parties to engage in discovery before converting (for all intents and purposes) a motion to dismiss into one for summary judgment"); _Hartford Underwriters Ins. Co. v. Guarantee Tr. Life Ins. Co._, No. 16 C 10478, 2017 WL 4535969, *4 (N.D. Ill. Oct. 10, 2017) ("when the Court utilizes materials outside of the pleading to decide a motion to dismiss, it must first convert the motion into a motion for summary judgment and permit applicable discovery").

order limiting discovery should be evaluated "against the backdrop of Rule 26(b)(1), which generally permits broad ranging discovery of any non-privileged information that appears reasonably calculated to lead to the discovery of admissible evidence." *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,* No. 97 C 5696, 1999 WL 300231, *1 (N.D. Ill. May 3, 1999) (quotations omitted). Thus, a party seeking a protective order that would limit the wide berth generally given to discovery bears the burden of showing good cause by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.*

As applied here, Defendants have failed to establish good cause to limit discovery. In the Motion, Defendants claim that discovery will be "cripplingly expensive" without any factual support. *See* Mem. at 28. But, it is well established that such "stereotyped and conclusory statements" are insufficient to warrant the entry of a protective order limiting discovery. *See*, *e.g.*, *Steadfast*, 1999 WL 300231 at *1; *New England Carpenters Health & Welfare v. Abbott Labs*, No. 12C1662, 2013 WL 690613, *3 (N.D. Ill. Feb. 20, 2013). Moreover, in this particular case bifurcation of discovery would likely increase (not decrease) the costs of litigation by, *inter alia*, (i) leading to disputed motion practice regarding whether a specific discovery request is part of the limited scope of discovery, and (ii) requiring the parties to complete duplicative discovery, including the taking of multiple depositions of the same individuals at different stages of discovery). *See*, *e.g.*, *Phillips v. United Parcel Serv., Inc.*, No. 08-13978, 2009 WL 3247856, *1 (E.D. Mich. Oct. 2, 2009) (adopting plaintiff's concerns that limiting discovery to a threshold issue will lead to "further litigation regarding the bounds of such a limitation" and will require the plaintiff to "conduct certain discovery, such as depositions, twice"). Finally, Defendants' bifurcation request would prejudice Ubiquiti in multiple respects, including by allowing Defendants full discovery on one of their defenses while prohibiting Ubiquiti from seeking

discovery on the merits of its own claims – all while further delaying Ubiquiti's efforts to obtain injunctive relief to put a stop to Defendants' misconduct in the marketplace.  *See*, *e.g.*, *id.* (holding that defendants' requested bifurcation of discovery would be "prejudicial to Plaintiff, as he would essentially be precluded from conducting discovery in his favor while Defendants gather evidence in support of their defense").  In sum, any attempt to bifurcate discovery in the manner suggested by Defendants would result in inefficiencies, increased costs and use of judicial resources, and prejudice to Ubiquiti, and should be rejected.

**IV.     Dismissal of the FAC with Prejudice Is Not Proper.**

In the Motion, Defendants ask the Court to dismiss the FAC with prejudice.  As detailed herein, this Motion should be denied as the FAC fully satisfies the Court's directives in the 5/22/19 Order and the controlling standards under applicable law.  Nevertheless, in the event that the Court finds certain pleading deficiencies remain, Ubiquiti should freely be given leave to further amend its complaint to remedy any such issues in accordance with under Rule 15(a).[20]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint in full.


Dated:  August 13, 2019                           Respectfully submitted by:


                                                  FOX SWIBEL LEVIN & CARROLL LLP

                                                  */s/ Jason J. Keener*
                                                  David Koropp (ARDC #6201442)
                                                  dkoropp@foxswibel.com

---

[20] *See*, *e.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("[The] federal rule policy of decided cases on the basis of the substantive rights involved rather than on technicalities requires the plaintiff be given every opportunity to cure a formal defect in his pleading. … Amendments should be refused only if it appears to a certainty that plaintiff cannot state a claim.").

Jason Keener (ARDC #6280337)
jkeener@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

*Attorneys for Plaintiff Ubiquiti Networks, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that I caused a copy of the foregoing document to be served by electronic mail on all counsel of record on this 13th day of August, 2019.


*/s/ Jason J. Keener*

Jason J. Keener