IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC., *Plaintiff*, v. CAMBIUM NETWORKS, INC.; CAMBIUM NETWORKS, LTD.; BLIP NETWORKS, LLC; WINNCOM TECHNOLOGIES, INC.; SAKID AHMED; and DMITRY MOISEEV, *Defendants*. | Civil Action No.: 1:18-cv-05369 **JURY TRIAL DEMANDED** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STAY DISCOVERY**

**I.      INTRODUCTION**

Defendants seek to stay further discovery against them until three weeks after Ubiquiti finally produces the 18 Files that are at issue in this case.[1] The Court has clearly limited this case to the 18 Files, but Ubiquiti has refused to provide access to them citing the current COVID-19 crisis and refused to make any accommodations. Without such access, Defendants are unable to determine the nature of the claims against them and further discovery should be stayed. Proceeding with Ubiquiti's overbroad discovery prior to production of the 18 Files is not proportional to the needs of the case and is overbroad.

As the Court recognized, Defendants' inspection of the 18 Files is critical and has potential to further reduce if not eliminate the issues in this case at an early stage before requiring the further expense of broader discovery. Tellingly, Ubiquiti now admits that the 18 Files ***actually do contain GPL and open source code*** (contrary to its representations to the Court) and that its investigation into ***additional*** GPL code in the 18 files is ***still continuing*** nearly two years after filing its case. Ubiquiti's admissions, coupled with its refusal to produce the 18 Files or substantively respond to discovery requests and simultaneous service of nearly 700 total overbroad discovery requests (which admittedly have nothing to do with the 18 Files) constitutes abusive and sanctionable discovery conduct.[2]  A stay is necessary to protect Defendants from Ubiquiti's one-sided and harassing conduct until Defendants can inspect the 18 Files, and until Ubiquiti's own investigation—which should have been finished before it filed its

---

[1]     Specifically, Defendants request that the Court extend the deadlines for (1) Defendants to respond to Ubiquiti's complaints to Defendants document production and responses to Ubiquiti's First Set of Requests for Production and (2) Defendants' responses to Ubiquiti's First Set of Interrogatories, until three weeks after Ubiquiti produces the 18 Files.

[2]     The parties met and conferred telephonically on Tuesday April 7, 2020 and corresponded by numerous letters discussing Defendants' inspection of Ubiquiti's source code and the status of discovery in general.  Ubiquiti stated that it would only entertain discussions of inspection if Defendants provide even more discovery.

1

first complaint—is complete.

## II. DISCUSSION

### A. A Stay of Discovery is Appropriate Until Ubiquiti Identifies and Provides the 18 Files

#### 1. Ubiquiti's Continued Pursuit of Broad Discovery Should be Stayed Until Ubiquiti Produces the 18 Files

A stay of further discovery is necessary here because, as the Court recognized in prioritizing discovery on "just the 18, and . . . only the 18 [files]" in conjunction with the court-ordered deadline to produce that code, Defendants' access to and review of the 18 Files is critical because it will enable Defendants to "figure out what – which of the 18 are in the case or not" before engaging in broader and more costly discovery on other issues. *See* Ex. B (Dec. 9, 2019 Hearing Tx.) at 10:14-18, 15:21-16:1.[3] This is a threshold review that has the potential to dramatically narrow if not eliminate issues in the case. But Ubiquiti has prevented Defendants from conducting this critical exercise—initially Ubiquiti's source code was not available for inspection the week of the Court-ordered deadline for production[4] when Defendants' properly

---

[3] After issuing instructions prioritizing discovery of the 18 files, the Court further instructed Defendants to file a motion with the Court if Ubiquiti sought information beyond those bounds:
>**THE COURT**: How do you know that they're going to go beyond the 18?
>. . .
>**MR. GUY**: Well, your Honor, suppose they send us 100 [discovery requests].
>**THE COURT**: Then do you have to answer them, or can you say, *"No, this is just the 18, and you can only do the 18 and the judge said only the 18. Please withdraw those other ones." And if they say, "No," you can bring it to me, and you can say, "See, I told you so."*

See Ex. B (Dec. 18, 2019 Hearing Tx.) at 10:6-18.

[4] The Court ordered Ubiquiti to produce the 18 Files by March 3, 2020. *See* Dkt. No. 105. Having received no indication that Ubiquiti intended to comply with this order, Defendants inquired about the status of Ubiquiti's source code production late in the day on March 3rd. *See* Ex. D at 3. The next day (the day after Ubiquiti was required to produce its source code), Ubiquiti responded that it had its source code ready to inspect, but that it would only "make the source code available . . . once [Defendants] fulfill [their] obligations to complete the [expert]

noticed expert was available, and now Ubiquiti refuses[5] to accommodate inspection procedures that comply with stay-at-home orders (claiming the *status quo* protections under the protective order, which require in-person inspection at offices of the producing party, must be maintained while the COVID-19 Orders are in place). Defendants must finally be given access to the materials that they are alleged to infringe before additional discovery can proceed.

Defendants have already answered and produced documents in response to hundreds of Ubiquiti's requests that admittedly "seek information related to entirely different topics" than the 18 files—***exactly zero of Ubiquiti's discovery requests relate to—or even mention—the 18 Files***.[6] See Ex. C (Feb. 18, 2020 Ltr. Koropp to Swenson) at 4. Ubiquiti now seeks even further discovery on issues well-beyond those 18 Files, even at present when all deadlines are extended under the COVID-19 Orders. Ubiquiti's demands are not "proportional" under Fed. R. Civ. P.

---

disclosures" without addressing Defendants' expert disclosure Mr. Bob Zeidman, who had been disclosed nearly a month ago without objection from Ubiquiti. *See id.* at 2. Defendants reminded Ubiquiti of their disclosure of Mr. Zeidman by email that same date. *See id.* at 1. Defendants' expert, Mr. Zeidman, was in Chicago awaiting access to Ubiquiti's source code when Ubiquiti responded on March 5th, stating that "[t]he source code computer will not be ready" until Monday March 9th—almost a week after Ubiquiti's court-ordered deadline for production. *See* Ex. E at 2. Mr. Zeidman had a conflict the week of March 9th and Defendants were unable to schedule an expert for review until March 16th. But by that time, travel advisories and restrictions halted most non-essential business travel, which prohibited review of source code under the protective order that requires in-person review at the offices of the producing party.

[5] Defendants repeatedly solicited Ubiquiti's agreement to relax procedures under the existing protective order that would allow confidential source code could to be reviewed at the home of the receiving party's expert. Ubiquiti initially indicated a desire to "come up with something" that would facilitate remote source code review as early as March 13th, but held off on giving final approval, indicating on March 16th that such a decision would require "client input." *See* Ex. F at 2. However, during the party's telephonic meet and confer several weeks later on April 7th, Ubiquiti was only prepared to discuss a quid-pro-quo that would exchange remote source code review procedures for additional discovery from Defendants. To date, it is still not clear whether counsel for Ubiquiti ever solicited client agreement with the remote review procedures proposed by Defendants.

[6] In addition to the 597 Requests, Ubiquiti also served nearly 100 interrogatories bringing the total number of discovery requests served by Ubiquiti to nearly 700. Not one of those 700 requests mention the 18 files. The parties do not dispute that Defendants' deadline to respond to those interrogatories has been extended under the COVID-19 Orders.

26(b)(1) because, as the Court articulated, discovery of the 18 Files is necessary to determine exactly what is at issue in the case. Further offensive discovery by Ubiquiti does not advance this goal and therefore is not proportionate to the needs of the case. Discovery must therefore be stayed to shield Defendants' from Ubiquiti's one-sided discovery tactics and refusal to produce critical materials.

### 2. A Stay of Discovery is Appropriate Given Ubiquiti's Admission that the 18 Files Actually Do "Contain" GPL Code

Ubiquiti's interrogatory responses contain key admissions that render its claims and any attempts for additional discovery entirely meritless. It is now apparent that Ubiquiti's entire case, and permission to conduct even the initial discovery allowed by the Court, is premised on misrepresentations—***Ubiquiti now admits that the 18 Files "contain" GPL and open source code after misrepresenting that very fact to the Court numerous times to survive Ubiquiti's second dismissal***.

Specifically, Ubiquiti told the Court that its "registered firmware" components defined in paragraph 37 of Ubiquiti's First Amended Complaint—including the u-boot components constituting five of the "18 Files" at issue—do not contain any GPL code:

> MR. KEENER: Your Honor, we believe 35 through 37 did pull the trigger. I understand how you're reading it, but the way we intended it to be read is that ***none of the GPL code that's licensed in is part of the registered firmware*** . . . . We intended to and think we did comply with this Court's order to say, 'This code is not subject to GPL. ***It's not licensed in by the GPL***, and it's not modified by the GPL' . . . .

Ex. A (Sept. 4, 2019 Hearing Tx.) at 7:6-9. Thus, in a desperate effort to survive dismissal, Ubiquiti repeatedly argued to the Court that no GPL code is contained in or "part of the registered firmware," including the u-boot files. But Ubiquiti's very first discovery responses

4

admit this is not true—Ubiquiti admits that the five u-boot modules may contain GPL code.[7] Ubiquiti stated the exact opposite to the Court. Any further discovery by Ubiquiti (much less further discovery beyond the 597 written responses and 62,000 documents produced by Defendants to date) should be stayed because Ubiquiti's entire basis for surviving dismissal was premised on misrepresentations.

Moreover, Ubiquiti's discovery responses also admit that Ubiquiti's "[i]nvestigation continues" into *additional* GPL and open source code embedded in the 18 Files. *See* Ex. G (Ubiquiti's Responses to Defendants' First Set of Interrogatories) at 10. This admission confirms that Ubiquiti failed to sufficiently investigate Ubiquiti's claims *before* Ubiquiti brought its Fist Amended Complaint, which was specifically drafted after its initial complaint had been dismissed based on a challenge that it was asserting GPL protected code. Ubiquiti had no basis for bringing the First Amended Complaint in the first place and it is not entitled to any additional discovery until it completes its own investigation or until Defendants have an opportunity to inspect the 18 Files for additional instances of embedded GPL code.

### B. Ubiquiti's Discovery Conduct is Sanctionable

Ubiquiti's conduct in ignoring the Court's clear instructions, burying Defendants in *hundreds* of overbroad requests, failing to provide Defendants with case-dispositive information through production of the 18 Files, and misrepresenting to the Court that the 18 Files do not contain GPL code amounts to misconduct that is sanctionable pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 37, which "authorize[] a range of sanctions, including the dismissal of a suit, for a party's failure to comply with the court's discovery orders." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 (7th Cir. 2016). Defendants intend to

---

[7] *See* Ex. G (Ubiquiti's Responses to Defendants' First Set of Interrogatories (March 3, 2020)) at 10-11. Ubiquiti marked its interrogatory responses as Highly Confidential – Attorneys' Eyes Only, and those responses are therefore being filed under seal as Exhibit G.

move the Court at a later date to exercise its discretion to sanction Ubiquiti, particularly in light of Ubiquiti's recent reversal (once again) and admission that the only one of the 18 Files remaining after Elevate is installed *contains* GPL-licensed code.

### III. CONCLUSION

Defendants' requested relief—that the Court issue an order staying all discovery until three weeks after Ubiquiti identifies the 18 Files and produces its source code—is proportionate to the remaining claims in the FAC and is necessary to avoid incurring the enormous expenses associated with responding to Ubiquiti's further broad requests for additional discovery. Defendants therefore respectfully request the Court to grant its motion.

Dated: April 25, 2020

Respectfully submitted,

BAKER BOTTS, L.L.P.

*/s/ G. Hopkins Guy III*
   One of their attorneys

G. Hopkins Guy III (CA Bar No. 124811)
hop.guy@bakerbotts.com
Jon V. Swenson (CA Bar No. 233054)
jon.swenson@bakerbotts.com
Karina Smith (CA Bar No. 286680)
karina.smith@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Phone)
650.739.7699 (Facsimile)

Andrew D. Wilson (DC Bar No. 1030144)
1299 Pennsylvania Ave. NW
Washington, DC 20004-2400
202.639.1312 (Phone)
202.508.9336 (Fax)
andrew.wilson@bakerbotts.com

Arthur J. Gollwitzer (06225038)
agollwitzer@michaelbest.com

6

        James P. Fieweger (6206915)
        jpfieweger@michaelbest.com
        MICHAEL BEST & FRIEDRICH, LLP
        444 West Lake Street, Suite 3200
        Chicago, Illinois 60606
        312.222.0800 (Phone)

*Attorneys for Defendants Cambium Networks, Inc. et. al*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2020, I electronically filed the foregoing **Defendants' Motion to Stay Discovery** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

                                                  */s/ G. Hopkins Guy III*
                                                    G. Hopkins Guy III