IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; <br> CAMBIUM NETWORKS, LTD.; <br> BLIP NETWORKS, LLC; <br> WINNCOM TECHNOLOGIES, INC.; <br> SAKID AHMED; and <br> DMITRY MOISEEV <br><br> *Defendants*. | Civil Action No.: 1:18-cv-05369 <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF UBIQUITI NETWORKS, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY**

## **INTRODUCTION**

Defendants' motion essentially asks this Court to reconsider its prior ruling denying Defendants' request to bifurcate discovery, without citing any relevant new facts or authority. Defendants' motion should be denied because: (1) Ubiquiti made its source code available for review for two weeks days prior to Governor Pritzker's Covid-19 shelter-in-place order, and has since attempted to work with Defendants to identify alternative review procedures (only to be met with unreasonably one-sided and ill-defined demands); (2) there is no valid basis for this Court to reconsider its prior ruling permitting both parties to take discovery; and (3) counsel for Defendants did not satisfy their meet-and-confer obligations before filing their motion.

To be clear, in conformity with this Court's Protective Order, Ubiquiti configured a single-use computer to prevent internet access, unauthorized downloading, printing, etc.; installed specialized software requested by Defendants; prepared and reserved a clean room at the office of its attorneys; and made its source code available for review from March 9, 2020, through March 20, 2020, the day before Governor Pritzker's first shelter-in-place order went into effect. While Defendants scheduled a review to begin on March 16, 2020, in conformity with the requirements of this Court's Protective Order, they subsequently cancelled.

Since that time, Ubiquiti has attempted to reach agreement with Defendants on ways each party's source code could be made available, either under the existing Protective Order, or as reasonably modified to account for the challenges provided by the COIVD-19 pandemic, while still providing adequate security protection. Under the best of circumstances, this would be a difficult task, but Defendants' counsel has made it virtually impossible by refusing to acknowledge or meaningfully address such difficulties.

Ubiquiti is eager to move discovery along in this case, and has no objection to once again providing its source code for review as long as adequate steps are taken to ensure its security. What Ubiquiti does object to is Defendants' demand that its source code be produced without adequate security measures, and that all other discovery be stayed in the interim. Defendants' recalcitrance has ground this case to a halt. It has wasted valuable time that could have been used to accomplish numerous tasks critical to Ubiquiti's pursuit of its affirmative claims, and to Ubiquiti's ability to participate meaningfully in the upcoming magistrate settlement conference.

In sum, Defendants' motion to compel Ubiquiti to make its source code available for review should be denied as moot. Ubiquiti has already done so for two full weeks. And, Ubiquiti has made it clear that it is willing to do so again once the parties reach agreement on how that can be reasonably accomplished during the shutdown. In addition, Defendants' motion to stay all discovery until their review and analysis of Ubiquiti's source code is complete should be denied because Defendants have already raised and lost this issue previously, and because, as before, there simply is no basis in law or fact to deny Ubiquiti the right to take discovery on its affirmative claims.

Rather than granting Defendants' motion, this Court should order Defendants to cooperate with Ubiquiti in formulating a reasonable plan to move both parties' discovery efforts forward, source-code-related and otherwise, in a manner that reasonably meets each party's security and confidentiality concerns, and complies with any existing, or future, COVID-19 directives.

## **BACKGROUND FACTS**[1]

Both parties served interrogatories and document requests on each other. Ubiquiti responded in full, and Defendants have not taken issue with those responses. By contrast, Defendants have yet to provide any responses to Ubiquiti's interrogatories,[2] have refused to respond several routine meet/confer requests regarding their deficient responses and improper objections to Ubiquiti's document requests, and have limited their production of documents to those documents they initially identified in connection with their MIDP disclosures—virtually none of which relate to the time period or business decisions of Cambium, Blip, or Winncom to begin developing and promoting software to take control of Ubiquiti devices, or their strategies and technical approaches for doing so.[3]

As for source code, Defendants recitation of "facts" is simply untrue. Under this Court's Protective Order, the party seeking to review the opposing party's source code is required, among other things, to (1) provide full and complete background information on its proposed source code experts, verified by the experts themselves, prior to any review so that the producing party can determine whether a valid basis to object exists; (2) specify any review-related software that should be purchased and installed on the computer hosting the source code; and (3) provide the producing party five days-notice of when a review will be commenced. Dkt. 102, at ¶ 12. Conversely, the party producing source code is entitled to, among other things (1) make the

---

[1] Capitalized terms shall bear the same meaning as used in Dkt. No. 119 (the "Motion").

[2] Pursuant to an agreed extension, Defendants' answers were due on March 18. However, on March 16th (two days prior), the Court issued its first Covid-19 General Order automatically extending that deadline. In response to Ubiquiti's meet/confer inquiries, Defendants have confirmed that they are unwilling to answer the interrogatories until the extended deadline set by the Court's amended general orders – which is currently June 3rd.

[3] Defendants' Motion omits nearly all of the meet/confer correspondence on these issues, a complete set of which is attached hereto as Ex. A-L; Dkt. 119-3.

3

code available during regular business hours for review at the office of its attorneys in a room that is not accessible electronically and that can be monitored at all times, (2) supply a computer to host the code that is stripped of all pre-installed programs other than those necessary to view the source code, and (3) configure that computer to prevent internet access, downloading to mobile storage devices, or printing. Dkt. 102, p. 9-14.

On March 4, at 10:00 p.m., Defendants for the first time informed Ubiquiti of eight software programs they wanted installed on the special-purpose source code review computer. Ex. A, p. 2. Ubiquiti immediately undertook efforts to obtain the programs and have them installed. After business hours on the next day (Thursday, March 5), Defendants for the first time—and in violation of the Protective Order's five-day notice rule—informed Ubiquiti that one of its source code experts had already traveled from California to Chicago and would be at counsel's office at 9:00 a.m. the next morning (a Friday) to begin reviewing Ubiquiti's source code. *Id.*, p. 4.

Ubiquiti immediately responded that its source code review computer, which was being configured offsite, would not be available to be shipped to counsel's office until the next day (Saturday), and would be inspected by counsel and made available for Defendants' use that following Monday, March 9. *Id.* p. 2-3. From that day (March 9) until March 20 (the last business day before Governor Pritzker's shelter-in-place order went into effect), Defendants were free to review Ubiquiti's source code. Defendants did not do so.

Since that time, the parties have discussed how to produce source code for review in a manner that does not materially compromise the security measures imposed by this Court's Protective Order. Defendants' demands on this point have constantly shifted, but at present they propose to simply have the parties send their source code to the home of one of Defendants'

4

source code reviewer(s) so that he may undertake an unmonitored, private review at his residence. Ex. I, p. 1-2, 5. Ubiquiti objects to proceeding in this manner without sufficient protocols being put into place, which, not surprisingly, is difficult to envision given the need to, among other things, ensure (1) the reviewer has no access to the internet, cell phones or any other means of communicating electronically during the review; (2) no one else is present during the review; (3) no unauthorized downloading or printing occurs during the review; and (4) the review is monitored by a representative of Ubiquiti. Defendants have not even attempted to offer a solution that accounts for any of these requirements or the security concerns they are meant to protect—either during the meet/confer process or in their Motion.

To make matters worse, Defendants' demands have been entirely one-sided. Ubiquiti expressly requested that the parties to work together to develop a mutual schedule and set of modified procedures to move forward with discovery in the face of Covid-19 pandemic—with the stated goal of allowing each party the ability to "obtain the information and discovery needed for a productive settlement conference once regular court operations resume." Ex. J, p. 1-2[4] Defendants steadfastly refused these requests; responding instead that they would only be willing to discuss procedures for source code review (an issue Defendants prioritize), and not any other issues relating to deficiencies in their non-source code-related discovery responses. *Id*. Following an April 7 meet/confer call, Defendants informed Ubiquiti that they intended to file a motion to stay all discovery. *See* Ex. K, p. 3. Ubiquiti asked Defendants to clarify their new position and articulate the relief they would seek so that it could considered. *See* Ex. L, p. 2. Instead of

---

[4] In making this proposal, Ubiquiti sought to follow the Court's March 13 minute order, in which it denied Defendants' motion to reschedule the next status hearing (which request was premised on many of the same source code review arguments raised in this Motion) and ordered that "[c]ounsel shall be prepared to address how they will ensure that they have <u>all the information and discovery needed for a productive settlement conference</u>." Dkt. 113 (emphasis added).

responding, Defendants filed the present Motion (which shifted again, from requesting a blanket stay to requesting bifurcated discovery).

## ARGUMENT

### I. Defendants' Motion to Compel Production of Ubiquiti's Source Code Should Be Denied as Moot

A motion to compel is moot if the non-moving party has already produced the information at issue. *See Simon v. Nw. Univ.*, 1:15-CV-1433, 2017 WL 467677, at *10 (N.D. Ill. Feb. 3, 2017). Ubiquiti has done so in compliance with all existing court orders. Moreover, as explained above, Ubiquiti does not object to once again providing Defendants access to its source code under the existing terms of the Protective Order, or as reasonably modified. By contrast, Defendants are unwilling to respond to any of Ubiquiti's interrogatories until the last day of the General Order's extension of deadlines. Despite that inequitable posture, Ubiquiti remains willing to consider any reasonable proposal made by Defendants and will agree to any procedure that would allow Ubiquiti to actively monitor and protect its source code.[5]

Ubiquiti made this point clear to Defendants. Ex. J, p. 2-3. Yet, despite their professed desire to move this case along, Defendants have failed to offer any workable solution other than to have Ubiquiti simply ship its source code to Defendants' expert(s) to review privately in their home. Ex. I, p. 1-2, 5. When Ubiquiti asked Defendants to explain how proceeding in this manner could possibly be accomplished while still maintaining sufficient security protocols as envisioned by this Court's Protective Order, Defendants simply sat silent and then shifted

---

[5] Source code—often referred to as the crown jewels of a company's IP—is different than other proprietary information. It is far more expensive to develop than any other piece of proprietary information; it is far more comprehensive, organized, and operational than any other piece of proprietary information; and if a competitor gets its hand on it, that competitor can immediately close the technology gap in the market without the burden of substantial R&D costs. In view of these considerations, simply relying on the ability to sue a party for breaching the protective order after an unauthorized disclosure is not sufficient.

instead to demanding a complete stay of discovery. Ex. B, p. 1; Ex. J, p. 2-3, 10; Exs. K-L. Such silence falls far short of what is required by this Court's meet and confer requirements. *See* Judge Feinerman Standing Order on Discovery and Motions (citing LR 37.2).

In the alternative, once the applicable shelter-in-place orders permit, Ubiquiti is willing to make its source code available in San Francisco to avoid the necessity of Defendants' source code reviewer traveling to Chicago. Of course, Ubiquiti expects that Defendants would be required to make similar accommodations for Ubiquiti's source code expert. Thus, there is simply no need for the Court to order Ubiquiti to produce its source code. Accordingly, Defendants' motion to compel should be denied.

## II. Defendants' Motion to Stay All Discovery until Defendants Have Completed Their Review and Analysis of Ubiquiti's Source Code Should Be Denied

Defendants' Motion also seeks again to have Ubiquiti's discovery stayed while Defendants engage in entirely one-sided discovery regarding Ubiquiti's source code. Defendants made this same request in their motion to dismiss Ubiquiti's First Amended Complaint, which was denied by this Court at a December 19, 2019 hearing in this case. Dkt. 119-2, 16:20-24 (in refusing Defendants' bifurcation of discovery request, Court explains: "But there are -- nearly all cases that I have, we're able to figure things out without bifurcation. In other words, discovery -- proceeds without bifurcation in a manner that is sensitive to the overriding imperatives that are in Rule 26(b)(1)."). Defendants' Motion provides no additional bases or valid reasons for this Court to reconsider that prior ruling.

### A. Defendants Have Failed to Specifically Identify Any Improper Discovery Requests

"Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before

7

the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). The party seeking the protective order must show good cause by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Rejdak v. Worthington Cylinders Wisconsin, LLC,* No. 15 CV 9373, 2016 WL 6248183, at *1 (N.D. Ill. Oct. 26, 2016) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Defendants' fail to meaningfully address any of the foregoing requirements as applied to any specific discovery requests at issue in this case.

Defendants do not identify a single specific request for production or interrogatory that is overly broad or unduly burdensome. Instead, Defendants rely solely on conclusory claims of general burden and proportionality that are wholly insufficient in this context. *See Rejdak*, 2016 WL 6248183, at *2. Defendants simply cannot stay discovery on the basis of such unsubstantiated claims.

Defendants also blithely claim that "exactly zero of Ubiquiti's discovery requests relate to—or even mention—the 18 Files." Mot., p. 3. That assertion is demonstrably false. Each of Ubiquiti's requests for production is expressly directed to "Ubiquiti['s] Firmware," which Ubiquiti has repeatedly and expressly clarified to be limited to 18 Files (i.e. modules) at issue. Specifically, Ubiquiti expressly agreed that:

- Firmware shall be defined to include only instances in which Firmware is referenced in a manner that either (i) makes specific reference to the firmware files identified in Paragraph 37 of the First Amended Complaint (referred to by Defendants as the 18 files), or (ii) includes reference to the firmware files generally or in their entirety, such that it necessarily includes reference to the firmware files identified in Paragraph 37 of the First Amended Complaint (referred to by Defendants as the 18 files) because of these files' inclusion in the entirety of Ubiquiti's Firmware.

- Firmware shall be defined to exclude reference to documents, communications or information that relate solely to a portion of the Firmware that is subject to the GPL (or other open source license).

8

Dkt. 119-3, at 5 (emphasis added); *see also* Ex. B, p. 13; Ex. H, p. 2; Ex. J, p. 7 n.4. It cannot be reasonably disputed that this narrow definition of "Firmware" is tailored to information relevant to this action. Indeed, it would be inconceivable that an otherwise responsive document could be withheld simply because it does not make reference to a specific name of the 18 modules.

Defendants also claim that Ubiquiti's discovery supposedly includes "nearly 700 total overbroad discovery requests," with 597 document requests and nearly 100 interrogatories. Mot., p. 1, 3 n.6; Exs. M-O. In reality, Ubiquiti has issued a total of 139 unique requests for production (not 597) and interrogatories well within the limits set by the Court. These are imminently reasonable given the complexity, scope, and nature of the claims and defenses at issue in this case—including eleven separate affirmative claims alleged by Ubiquiti and thirty-one separate affirmative defenses alleged by Defendants. *See* Ex. E, p. 2.[6] The mere fact that many of these requests must be served on multiple, separately named defendants does not, in and of itself, lead to the conclusion that the requests are overly broad, burdensome, and/or abusive.

Finally, Defendants have not actually undertaken any additional burden due to Ubiquiti's document requests. To the contrary, Defendants relied entirely on their prior MIDP production in responding to Ubiquiti's document requests, and have since refused to meet and confer on the deficiencies that resulted from proceeding in that manner. *See*, *e.g.*, Ex. I, p. 3 ("There is nothing illegal about using open source code or deleting allegedly proprietary code. . . . Defendants therefore will continue to refuse to respond to [Ubiquiti's discovery] requests, which are improper under the Court's instructions." (emphasis added)). Among other examples, Defendants refuse to (i) produce any documents related to the 18 modules, or even identify the

---

[6] By way of example: If Ubiquiti limited itself to merely four requests per affirmative defense, the total would be 124 requests.

9

specific objections and categories of documents being withheld in response to those requests, (ii) update their ESI production to cure technical deficiencies, including to provide a replacement DAT file with information they acknowledge is missing and readily available, and (iii) confirm whether any continuing document collection and production efforts are ongoing, including as applied to non-Cambium parties, Blip and Winncom, who have produced just 29 pages of documents to date. Ex. C, p. 4. Thus, if there has been any prejudice, it has been to Ubiquiti (having been mired in futile attempts to even discuss discovery with Defendants), not Defendants (who have undertaken no discovery efforts during the COVID-19 pandemic).

### B. Defendants' Unsubstantiated Speculation That Ubiquiti's Source Code Is Subject to the GPL Does Not Justify Staying Discovery

Defendants once again claim that Ubiquiti should not be permitted to take discovery in this case because they assert that the 18 modules identified as the protectable portion of its firmware are subject to the GPL. Such broad-sweeping, fact-intensive issues cannot be resolved by relying on mere argument of counsel. Indeed, this Court rejected that same contention at the December 9, 2019 hearing.[7]

Nonetheless, attorney posturing is the basis Defendants have relied on since December in refusing to fully and fairly respond to Ubiquiti's discovery requests.[8] It is simply improper for Defendants to unilaterally refuse to respond to discovery requests based entirely on their own belief that the claims asserted against them have no merit. *See* Fed. R. Civ. P. 26(b)(1)-(2);

---

[7] Dkt. 119-2, 14:1-14 (in rejecting Defendants' request that the Court take "judicial notice" of its expert's unsubstantiated conclusion that Ubiquiti's source code, which he had never even seen, is covered entirely by the GPL, the Court states: "Wrong. I can't take judicial notice of a contested expert report. Judicial notice under Federal Rule of Evidence 201 are things that are not contestable, and I think your expert report is contestable.").

[8] *See, e.g.*, Ex. B, p. 13 (confirming Defendants' position that <u>Defendants</u> had no obligation to produce any documents in this case on the grounds that this Court limited discovery to <u>Ubiquiti's</u> 18 Files); *see also* Ex. J, p. 6-7.

10

*Thayer v. Chiczewski*, 07 C 1290, 2009 WL 2192581, at *2 n.2 (N.D. Ill. July 20, 2009); *Alli v. Steward-Bowden*, No. 11 CIV. 4952 PKC KNF, 2013 WL 6053481, at *3 (S.D.N.Y. Nov. 7, 2013) ("there is no support for a proposition that a defendant can refuse a discovery request because it believes a plaintiff's claims are meritless.").[9] It is especially improper in the instant action because Defendants bear the burden of proof on their GPL-related affirmative defenses.

To overcome this obvious deficiency, Defendants assert that "Ubiquiti's discovery responses also admit . . . additional GPL and open source code [is] embedded in the 18 Files." Mot., p. 5. There are three problems here.

*First*, the 18 "Files" Defendants are fond of referring to are far more than merely 18 individual files; each of these 18 modules comprises anywhere from several to <u>thousands</u> of individual constituent source code files. As an example, in one version of Ubiquiti's source code, these 18 modules comprise 5,391 individual source code files consisting of 1,580,267 lines of code and comments.

*Second*, there is no factual support for that contention. The extent to which any individual source code file is "embedded" in any code can only be determined by looking at the code itself, including "makefiles" that handle the compiling process.

*Third*, the quoted statement improperly implies that every folder constituting the 18 modules contains files that are subject to the GPL, which is far from the truth.

Not only are Defendants' overbroad assertions baseless, they are incorrect. For example, Ubiquiti's interrogatory answers identified four individual source code files that are subject to

---

[9] Defendants asserted this same baseless argument during the parties' meet-and-confer communications. *See* Ex. I, p. 3 ("There is nothing illegal about using open source code or deleting allegedly proprietary code. . . . Defendants <u>therefore</u> will continue to refuse to respond to [Ubiquiti's discovery] requests, which are improper under the Court's instructions." (emphasis added)).

the GPL—certain specific individual source code files, contained in certain specific file-folders, in certain versions of its source code—which were used in concert to implement digital signature security measures. Defendants' attempt to extrapolate the mere existence of these four individual files into a broad conclusion that Ubiquiti "had no basis for bringing the First Amended Complaint in the first place" demonstrates their desperation to posture a defense that ignores the actual nature and operation of source code (and compiled object code). Mot., p. 5.

Additionally, multiple versions of Ubiquiti's source code are at issue and not all versions implement digital signature protections (as Defendants well know, because when Ubiquiti added a digital signature requirement, Defendants were forced to revise their instructions provided to customers on how to replace Ubiquiti's firmware with Elevate by first downgrading to a prior version of the software) and thus do not even contain such files. Dkt. 65, ¶ 30. Moreover, the GPL-licensed files mentioned above are not even compiled into the module's compiled version. In fact, this code never ends up being stored in persistent storage on the device. Further, Defendants have not established—either legally, or as a factual matter based on how the source code actually operates—that using several files that are subject to the GPL in any way to create or enforce a digital signature to protect proprietary code subjects the underlying code to a GPL license as a matter of law.

In short, Ubiquiti put Defendants on notice as to where its proprietary code can be found (in the 18 modules). Defendants' affirmative defense—that these modules are covered by the GPL—is their burden to prove; and it is not reducible to oversimplified attorney posturing in the context of a discovery motion. Accordingly, Defendants' request for a stay of discovery should be denied.

### III. There Is No Basis for Defendants' Sanctions Request

Defendants conclude the Motion by asserting that Ubiquiti's discovery conduct is sanctionable, and stating their intention to file a future sanctions motion. Defendants characterize Ubiquiti's conduct as sanctionable based on: (1) the alleged failure to provide Defendants with the 18 Files; (2) the alleged disregard of this Court's instructions by issuing discovery requests on topics outside of the 18 files; and (3) alleged misrepresentations as to whether the 18 Files do not contain GPL code. Mot., p. 5-6. The Court should wholly disregard this undeveloped call for sanctions—not only because it is admittedly not at issue, but also because there exists no factual or legal basis to impose sanctions on any of these grounds for the reasons detailed herein.

### CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

Dated: May 4, 2020

Respectfully submitted by:

FOX SWIBEL LEVIN & CARROLL LLP

*/s/ Steven J. Reynolds*
David Koropp (ARDC #6201442)
dkoropp@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Steven J. Reynolds (ARDC #6293634)
sreynolds@foxswibel.com
Steven L. Vanderporten (ARDC # 6314184)
svanderporten@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

***Attorneys for Plaintiff Ubiquiti Networks, Inc.***