# EXHIBIT J

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com

direct   312.224.1249

April 8, 2020

**VIA EMAIL**

G. Hopkins Guy, III (hop.guy@bakerbotts.com)
Jon V. Swenson (jon.swenson@bakerbotts.com)
Karina Smith (karina.smith@bakerbotts.com)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007

James P. Fieweger (jpfieweger@michaelbest.com)
Michael Best & Friedrich, LLP
444 W. Lake Street. Suite 3200
Chicago, IL  60606

Arthur Gollwitzer, III (agollwitzer@michaelbest.com)
Michael Best & Friedrich, LLP
2801 Via Fortuna, Suite 300
Austin, Texas 78746

Re:   *Ubiquiti Inc. v. Cambium Networks, Inc. et al.*, Case No. 18-cv-05369 (N.D. Ill.)

Dear Jon:

Thank you for your March 27, 2020 Letter ("Letter") clarifying Defendants' positions as to the issues raised in Mr. Koropp's March 20, 2020 letter. Thank you also for you and your team's time on yesterday's meet-and-confer call ("M/C Call") to discuss certain threshold issues concerning the Court's COVID-19 General Orders and related circumstances brought on by the pandemic. This letter addresses (I) those threshold issues, which are subject to the parties agreeing to waive certain rights under the COVID-19 General Orders and to revise to the current Protective Order ("COVID-19 Issues") and (II) issues that remain notwithstanding the foregoing.

## I.    COVID-19 Issues

### A.  Defendants Seek One-Way Discovery

During our M/C Call, counsel for both parties acknowledged that the circumstances brought on by the COVID-19 pandemic (including the Court's General Orders) present a unique situation where much of the discovery in this case cannot proceed absent the parties' agreement to waive certain rights under the general orders and the Agreed Confidentiality Order

1

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com                                              direct   312.224.1249

("Protective Order"). In light of Defendants' continuing demand for immediate production of Ubiquiti's source code (in a manner that would require modification and waiver of material terms of the Protective Order, as well as waiver of the extensions granted in the Court's COVID-19 General Orders), we raised the threshold question of whether Defendants would be willing to negotiate a solution to both parties' discovery requests—given that the goal is to obtain the information and discovery needed for a productive settlement conference once regular court operations resume.

In response, you stated that Defendants are only willing to discuss the production of source code for expert review—an issue Defendants prioritize. You explained that Defendants will not agree to answer Ubiquiti's interrogatories or provide any supplemental written discovery/production during this period—issues Ubiquiti prioritizes. The grounds you presented were (1) that the Court's orders have extended the deadlines for such discovery responses, (2) that Defendants should be entitled to explore the merits of their GPL defense (via source code review) and raise such matters with the Court prior to the parties continuing with written discovery, and (3) that as a logistic/technological matter, resulting from shelter-in-place orders, Defendants may not be able to access certain information that is necessary to respond to written discovery—or even serve interrogatory responses that were due (and thus likely substantially complete) two days after the Court's First Amended COVID-19 General Order.

This is an all-too-familiar posture in which Defendants seek to obtain one-sided discovery in support of their GPL defense, while depriving Ubiquiti of any ability to obtain necessary discovery as to its affirmative claims. Defendants previously requested that the Court bifurcate (or stay) discovery while Defendants raise their legal defense via summary judgment motion. The Court declined that request (*see, e.g.,* Dec. 9, 2019 Tr. p. 15-16). And yet that is exactly what Defendants are seeking to accomplish by using the COVID-19 circumstances to demand source code production while refusing to even discuss proceeding with other forms of written discovery during this period.

## B.  Defendants' Proposal to Review Source Code at Experts' Homes

In your Letter, you propose that each party agree to ship their source code computers to the home of the opposing party's expert. Ltr. at 5. You state that "This can be done under the same level of confidentiality protections otherwise afforded under the protective order . . . ." *Id.* p. 2. That is not true; you conceded as much on the M/C Call and by acknowledging, in your Letter, that certain "restrictions will have to be enforced by the expert <u>alone</u> (i.e., reliance on the expert's sworn statement to abide by the protective order)." *Id.* (emphasis added).

Your proposal undermines substantial protections that the Protective Order provides for source code—protections that go above and beyond those for other Highly Confidential information, which is largely self-governed (e.g., by the requirement that experts sign onto the Protective Order). *See* PO, Attachment B. The source code protections are designed to allow the

# Fox Swibel

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com

direct   312.224.1249

Producing Party to actively protect its source code by personally overseeing the production, review, and printing of its own code upfront. One of the rationales underlying these protections is the reality that if source code were to be disclosed to improper parties (or in an improper way), the damage to the Producing Party would be almost impossible to remedy. Further, source code tends to have outsized business value, as it serves as the operational core of products that compete in sophisticated markets. Your proposal seeks to upend this framework, and place all such protections outside the hands of the Producing Party or its counsel. Even against the backdrop of COVID-19 restrictions we are now facing, your proposal to have source code reviewed at your expert's home does not come close to guaranteeing the level of protection required by the Protective Order.

## II.    Non-COVID-19 Issues

Setting aside the discovery obligations that have been affected by the COVID-19 circumstances, Defendants' uncompromising refusal to even "entertain discussions" regarding discovery that was due before the COVID-19 General Orders issued is legally improper. Further, the assertions Defendants make about the number of documents produced and availability of source code are incorrect. I address these matters in sections II.A-C, before proceeding to the itemized issues raised in our March 20 letter in section II.D.

### A.  Defendants' Improper Blanket Refusal to Comply with Discovery Obligations

Your Letter makes clear that Defendants refuse to even respond to discovery obligations that are not subject to the extensions provided by the COVID-19 General Orders:[1]

- There is nothing illegal about using open source code or deleting allegedly proprietary code. . . . Defendants ***therefore*** will continue to refuse to respond to [Ubiquiti's discovery] requests, which are improper under the Court's instructions. Ltr. p. 3 (emphasis added).

It is improper for Defendants to unilaterally refuse discovery based upon their position that Ubiquiti's claims have no merit. Fed. R. Civ. P. 26(b)(1)-(2); *Thayer v. Chiczewski*, 07 C 1290, 2009 WL 2192581, at *2 n.2 (N.D. Ill. July 20, 2009); *Alli v. Steward-Bowden*, No. 11 CIV. 4952 PKC KNF, 2013 WL 6053481, at *3 (S.D.N.Y. Nov. 7, 2013) ("there is no support for a proposition that a defendant can refuse a discovery request because it believes a plaintiff's claims are meritless.").

---

[1]  The parties do not dispute that Defendants' responses to requests for the production of documents ("RFPs") were due before the Court issued its first general extension in the COVID-19 General Orders. Defendants' responses to interrogatories were not technically due solely because Ubiquiti agreed to a 7-day extension at Defendants' request.

3

# Fox Swibel

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com                                                      direct   312.224.1249

In your Letter and on the M/C Call, you also made clear that Defendants will refuse to comply with their own discovery obligations (including not even identifying categories of documents Defendants refuse to produce) as a means of forcing Ubiquiti to capitulate to Defendants' extraordinary demands for Ubiquiti to produce its source code:

- ▪ "Defendants will not entertain your requests for any additional discovery until Ubiquiti produces its source code as ordered by the Court." [2] *Id.* p. 1(emphasis added).

- ▪ "For Ubiquiti's RFPs related to the 'Ubiquiti Firmware' as a whole, Ubiquiti requests that Defendants identify 'on a Defendant-by-Defendant and request-by-request basis . . . what if any documents Defendants are withholding based upon their objections.' Defendants will not do so as Ubiquiti's requests are broader than those allowed by the Court." *Id.* p. 2 (emphasis added).

- ▪ "Defendants therefore will not entertain discussions regarding production of any additional documents until Ubiquiti produces the 18 files that are central to this case." *Id.* p. 4 (emphasis added).

- ▪ "Accordingly, Defendants will produce these documents [regarding its affirmative defenses] only after Ubiquiti makes its code available for inspection." *Id.*

This is another entirely improper posture. Defendants cannot withhold discovery that is due now in hopes of forcing Ubiquiti to waive its rights to produce source code under the Protective Order. *Cf. Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 WL 3408813, at *5 (N.D. Ill. July 26, 2019) (Citing *Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014)).

Please advise us immediately whether Defendants intend to continue with their outright refusal to even "entertain discussions" about their discovery obligations.

## B. Defendants Declined to Review Ubiquiti Source Code When It Was Available

You have repeatedly alleged (in e-mails, letters, and court filings) that Ubiquiti withheld its source code, when the opposite is true. We remind you that your office gave us 15 hours' notice (instead of 5 days) that your source code reviewer would show up for one day (Friday, March 6). We could not accommodate that short notice but nevertheless made the source code computer available beginning the very next business day and at any time during the next two weeks. You unilaterally refused, even after agreeing to a date-and-time-certain and accepting our

---

[2] Defendants are actually demanding that Ubiquiti produce its source code outside many protections provided by the Protective Order, not "as ordered by the Court."

4

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com                                                   direct   312.224.1249

Outlook meeting invitation for that date and time. At the conclusion of those two weeks, on March 20, Governor Pritzker issued COVID-19 Executive Order No. 8, which required individuals to stay at home.

### C. Defendants' Incomplete Production

You continue to compare the number of pages of documents produced by each party. As I explained in my March 26 e-mail, a relative page count of produced documents is a false comparison. For instance, Defendants elected to issue discovery requests specifically targeting Ubiquiti's source code, while Ubiquiti issued comprehensive discovery directed at Ubiquiti's eleven (11) claims and Defendants' thirty-one (31) affirmative defenses.

Further, the number of documents Defendants produced constitutes an active hindrance, for at least two reasons.

*First*, Defendants' production is the proverbial document dump, largely unorganized and comprised of many illegible file types and duplicative information. *See* Koropp Mar. 20, 2020 Ltr. The large amount of unorganized files will be exceptionally costly to review, and may further be subject to meet-and-confer obligations (and motion practice) to the extent that Defendants have failed to produce such files in accordance with the federal rules.

*Second*, Defendants have acknowledged that they are withholding other documents, but have to date refused to even identify the categories of documents that are being withheld in violation of the federal rules (by, for example, refusing to respond in any manner to a number of RFPs). *See* FN 3 below. As just some examples, we have yet to see the following in the production:

- Documents regarding the decision to proceed with the Elevate project in view of Ubiquiti's licenses or proprietary information or code residing on Ubiquiti devices (e.g., code not expressly labeled as GPL)

- Documents exchanged with software developers (e.g., Global Logic engineers) regarding the design of Elevate and/or use of Ubiquiti source or object code (e.g., other than post-development troubleshooting in Jira)

- Other documents created during the early software development lifecycle of Elevate (e.g., software architecture drawings, product roadmaps, design specifications, or other similar documents before late 2015.)

- Documents related to the decision to use open-source and/or proprietary code in Elevate

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com

direct   312.224.1249

- ▪ Records of relevant slack conversations (*see, e.g.,* CMBM-00027550), podcasts (CMBM-00046047), or information from other such repositories.

We request again that Defendants advise us whether they are withholding such documents or whether none exist.

Your continued refusal to even discuss withheld documents will force Ubiquiti to review those you have produced at significant cost without even advising Ubiquiti of what might be missing. To the extent the documents Defendants are withholding provide context for those it did produce, Ubiquiti's expenses will be unfairly multiplied, as it will eventually be forced re-review Defendants' already-voluminous production in the context of belatedly produced documents.

### D.  Issues Raised in Our March 20 Letter

#### 1.  Interrogatories

Defendants have now clarified that they did not serve interrogatory responses as a result of the extension granted by the Court's COVID-19 General Orders. We note, however, that your letter misleadingly claims that Ubiquiti "demand[ed] that Defendants respond to discovery before the Court-ordered extension requires . . ." Ltr. p. 2. Ubiquiti did not make such a demand. We sought only to clarify the issue given Defendants' failure to reasonably notify Ubiquiti of the same, and we confirmed on the M/C Call that Defendants' interrogatory response deadline was extended by the COVID-19 General Orders. However, we again stress that the continuation of discovery during the pendency of the COVID-19 General Order extensions must be a two-way street that avoids an unfair double-standard. As discussed above, it strikes us as inequitable that Defendants might decline to answer interrogatories pursuant to the Court's general order at the same time they demand that Ubiquiti provide access to its source code absent significant protections provided by the Protective Order (and without regard to the application of the same COVID-19 General Order extensions that likewise apply to all deadlines set forth in the Protective Order). The technical and logistic impediments in producing source code are much more severe than those involved in serving interrogatory responses that were likely nearly complete prior to the implementation of shelter-in-place restrictions.

#### 2.  18-Files RFPs

Based upon the contents of your Letter, it is our understanding that Defendants have withdrawn their argument that Defendants are not obligated to produce any documents in this case on the grounds that the Court limited discovery to 18 Ubiquiti files. In light of this fact (and the lack of merit to this argument in the first instance), Defendants cannot avoid their obligation to identify "on a Defendant-by-Defendant and request-by-request basis (Fed. R. Civ. P. 34(b)(2)(B)), what if any documents they are withholding based upon their objections." Koropp Mar. 20 Ltr. p. 2.

6

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com

direct   312.224.1249

    If Defendants believe Ubiquiti's requests to be overbroad, they can so state, but they must identify what documents they are withholding as required by the federal rules and applicable law—in particular as any meaningful meet-and-confer on the nature of such objections must necessarily start with an understanding of the categories of documents at issue. Simply refusing to respond to multiple RFPs[3] is improper, for at least three reasons.

    *First*, you assert that Ubiquiti's requests are "not limited to the 18 files as required by the Court." In mid-February, we narrowed and clarified that the requests are limited to those 18 files.[4] However, they are not limited to Defendants' documents that just so happen to refer to source code using the exact same filenames or terminology Ubiquiti uses, as it necessarily is the case that any general reference that encompasses these 18 files shall be responsive to the requests and relevant to the claims at issue in this case. Defendants simply cannot seek to avoid their discovery obligations by refusing to produce documents that do not identify the 18 files specifically by name. We need to know whether that is the case or not, but Defendants' outright refusal to provide any information about what they are withholding makes that impossible.

    *Second*, Defendants' refusal to provide discovery by presuming they will succeed on their affirmative defenses (Ltr. p. 3) is wholly improper. *See supra* (citing authority).

    *Third*, the Court's statement about discovery being limited to the 18 Ubiquiti files was directed to Ubiquiti's assertions not going beyond those 18 files, not Defendants' discovery obligations related to those 18 files. Any claim to the contrary is wholly unsupported, and indeed would be nonsensical. (As just one example, such an interpretation of the Court's comments would mean that Ubiquiti is not entitled to receive any information on marketing and sales of the Elevate product, since those efforts related to the product as a whole, not the specific 18 files, despite the fact that such information is directly relevant to Ubiquiti's claims in this case).

---

[3]   Cambium, et al.: RFP Nos. 4-5, 11-15, 19, 21, 23-25
    Winncom: RFP Nos. 18-19, 23-24, 26
    Blip: RFP Nos. 18-19, 23-24, 26

[4] Feb. 18, 2020 Koropp Ltr.:
    Firmware shall be defined to include only instances in which Firmware is referenced in a manner that either (i) makes **specific reference** to the firmware files identified in Paragraph 37 of the First Amended Complaint (*referred to by Defendants as the 18 files*), or (ii) includes **reference to the firmware files generally** or in their entirety, such that it necessarily includes reference to the firmware files identified in Paragraph 37 of the First Amended Complaint (*referred to by Defendants as the 18 files*) because of these files' inclusion in the entirety of Ubiquiti's Firmware.

(emphasis added).

# Fox Swibel

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com

direct 312.224.1249

### 3. Winncom and Blip Productions

Thank you for confirming that "No additional responsive documents [of Winncom or Blip] have been identified at this time." Ltr. p. 3.

It seems highly unlikely that Blip has only 29 pages of relevant documents and Winncom has none. Both Blip and Winncom no doubt engaged in internal discussions regarding a potential business partnership with each other and/or Cambium involving Elevate. Such documents would include, as just two examples, (1) communications regarding how to accomplish the reverse-engineering, testing, or redeployment of Ubiquiti devices for conversion to Elevate and/or (2) the strategic decision of whether and how to proceed in view of the fact that Ubiquiti's legal rights, customers, or licenses may be impacted if Blip or Winncom were to reverse-engineer Ubiquiti products or otherwise help develop, promote, or distribute Elevate.

Please confirm that Defendants did undertake a diligent search for all responsive documents of Winncom and Blip (e.g., beyond merely searching the Cambium Defendants' files and assuming that to be sufficient) prior to the date of your Letter.

Ubiquiti reserves all rights with respect to these matters, including for example, to the extent Winncom or Blip either (1) belatedly produces a large volume of documents in this case or (2) have refused to produce relevant documents that are later identified by Ubiquiti in discovery (e.g., via depositions).

### 4. Individual Defendants' Productions

Per the information provided in your recent letter, Defendants have confirmed that "all documents responsive to Ubiquiti's requests are in Cambium's production and Ahmed and Moiseev will not make a separate production." Ltr. p. 3.

Ubiquiti nevertheless reserves all rights with respect to this matter in the event that subsequent discovery identifies responsive documents and information in the personal files of the individual Defendants that has not been produced.

### 5. Production of Documents Beyond MIDP

Per the information provided in your Letter, we understand that it is Defendants' position that they will not produce any documents beyond (1) those it produced in connection with the MIDP disclosures and (2) that "mention these 18 files [of Ubiquiti]" by name. Ltr. p. 4. Ubiquiti expressly objects to this position for the reasons detailed above, as Defendants cannot unilaterally refuse to limit their production in this manner.

# FOX SWIBEL

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com                                                    direct   312.224.1249

### 6.  Cambium RFP Nos. 99-122

You stated that Defendants will refuse to provide documents responsive to RFP Nos. 99-122 until Ubiquiti finds a way to produce its source code, notwithstanding that the current COVID-19 conditions make production under the Protective Order impossible. Ubiquiti objects to this position for the reasons set forth above.

### 7.  Objections to Messrs. Baer and Hashmi

Thank you for confirming that you will allow us to provide Mr. Hashmi's resume to "2 in-house counsel or employees" of Ubiquiti. Ltr. p. 4. Please note, that Mr. Hashmi's supplemental resume was designated as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" under the Protective Order. Thus, prior to your allowance in your Letter, we were <u>not</u> able to disclose it to any in-house counsel or employees of Ubiquiti. PO § 14(b) ("for Confidential Information designated CONFIDENTIAL RESTRICTED - ATTORNEYS' EYES ONLY, persons identified in subparagraphs (2) and (7) are excluded.").

Out of an abundance of caution, please confirm that Defendants have not been disclosing Ubiquiti's CONFIDENTIAL RESTRICTED – ATTORNEYS' EYES ONLY material to any in-house counsel or employees of Defendants (e.g., based upon a misunderstanding of the Protective Order).

Ubiquiti hereby withdraws its objection to Mr. Baer on the condition that it reserves all its rights in connection with conflicts that become known to Ubiquiti in the future, given that Defendants refused to provide any additional information that would allow Ubiquiti to clear the potential conflicts it called to Defendants' attention. Ubiquiti also withdraws its objections to Mr. Hashmi with the same reservations.

### 8.  Metadata Required by ESI Order

Thank you for clarifying that "Documents extracted from Cambium's Jira database may require custom loading to show the parent/child relationship information." Ltr. p. 4. You identified two alternative means of accomplishing that (using the "FilePath" field or looking at sequential bates numbers). Since those relationships exist in the ordinary course of business, and Defendants are in the best position to include them in the DAT file, please confirm that you will do so and provide us an updated DAT file. This will also avoid evidentiary disputes that might arise based upon our processing/handling of Defendants' documents. Alternatively, we can attempt to have our discovery vendor update the DAT file, if Defendants will agree to reimburse us for the costs of doing so.

As to the documents at Bates numbers CMBM-00000041 and 524, you stated that the attachments were "either corrupt or errored out during the Jira extraction." Ltr. p. 5. We note that

9

# Fox Swibel

Fox, Swibel, Levin & Carroll, LLP
www.foxswibel.com ▪ 312.224.1200
200 W Madison St, Ste 3000
Chicago, IL 60606

Steven J. Reynolds
sreynolds@foxswibel.com                                                                    direct   312.224.1249

these documents were identified in a sampling review, and thus are not inclusive of all documents that may have been subject to such corruption or error. Ubiquiti therefore requests that Defendants confirm with their vendor whether any additional attachments were subject to this same form of corruption/error, and supplement the production accordingly. We are flexible on timing given the Court's COVID-19 orders. But please let us know when we can expect an updated production and DAT file. We are available to meet and confer as needed.

### 9. Files Missing from Production

Ubiquiti's review of Cambium's production remains ongoing. Ubiquiti therefore reserves all rights with respect to further discovery matters that may be identified on the basis of this review, including as to those categories of files identified in section II.C *supra*.

## III. Schedule for Meet-and-Confer

Please advise of your availability near the end of this week or early next week for a meet-and-confer, even if it is only to discuss discovery not affected by the COVID-19 General Order and Protective Order. Note that per Judge Feinerman's standing orders, each side must be joined by an IT specialist, if there is a continuing dispute over ESI.

We are also available to participate in a meet-and-confer to discuss the manner in which discovery in this case may be able to proceed on a mutual basis if Defendants will withdraw their uncompromising and one-sided position that written discovery remain halted while source code production proceeds.

Very truly yours,

/s/ Steven J. Reynolds

Steven J. Reynolds

cc:     David E. Koropp (dkoropp@foxswibel.com)
        Erik J. Ives (eives@foxswibel.com)
        Steven L. Vanderporten (svanderporten@foxswibel.com)