In tIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; <br> CAMBIUM NETWORKS, LTD.; <br> BLIP NETWORKS, LLC; <br> WINNCOM TECHNOLOGIES, INC.; <br> SAKID AHMED; and DMITRY MOISEEV, <br><br> *Defendants*. | Civil Action No.: 1:18-cv-05369 <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF SOURCE CODE AND FOR
PROTECTIVE ORDER ALLOWING DEFENDANTS TO WITHHOLD WRITTEN
DISCOVERY RESPONSES UNTIL PLAINTIFF PRODUCES SOURCE CODE[1]**

---

[1] The Court construed the instant motion—which was originally styled as a "motion to stay discovery"—as a "motion to compel Plaintiff to produce the 18 Files and as a motion for a protective order allowing Defendants to withhold written discovery responses until Plaintiff produces the 18 Files." Dkt. 122.

**I.     INTRODUCTION**

Simply put, Defendants merely request a full and clear disclosure of the portions of the 18 Files that Ubiquiti accuses them of infringing so that they can determine if any of them are protectible. Until Defendants are afforded the opportunity to examine the 18 Files, additional discovery responses beyond the extensive (and one-sided) discovery provided by Defendants should be put on hold. Defendants still do not know the specifics of the case against them.

Defendants have already produced roughly **62,000** documents responsive to Ubiquiti's overbroad requests—including financial information and other materials to facilitate productive settlement negotiations—and responded to all 597 of Ubiquiti's written requests due to date. Defendants believe that they have, consistent with their obligations under the MIDP, produced all discoverable information as the case now stands. On the other hand, Ubiquiti's production of just 84 non-source code documents and incessant pursuit of ***additional***, burdensome discovery into its overbroad claims to "Ubiquiti Firmware" demonstrate the abusive nature of Ubiquiti's discovery. The details of this abuse are contained in the ***103 single-spaced pages*** of discovery correspondence attached to Ubiquiti's opposition brief which run counter to the Court's clear instructions that discovery should be limited to "just the 18 [Files], and you can only do the 18 and the judge said only the 18." Mot.[2] Ex. B (Dec. 9, 2019 Hearing Tx.) at 10:14-18. Additional offensive discovery by Ubiquiti is disproportionate to Ubiquiti's own discovery effort and the needs of the case.

Ubiquiti does not dispute these facts and instead makes two misplaced arguments. ***First***, Ubiquiti argues that Defendants' motion—a motion to compel production of the 18 Files—is somehow "moot" when Ubiquiti has not yet produced those 18 Files. *See* Opp. at 1. This is non-

---

[2]     Citations to "Mot." refer to Defendants' opening brief, Dkt. 119. Citations to "Opp." refer to Plaintiff's opposition brief, Dkt. 125.

1

sensical. It is undisputed that Ubiquiti violated the Court's Order by failing to produce its source code by the Court-ordered deadline of March 3rd—Defendants gave Ubiquiti clear notice *twice* (on February 6th and 27th) that their expert would inspect Ubiquiti's source code "on the same day it is provided" (*see* Ex. B) and Defendants' properly noticed expert was awaiting in-person access on the deadline. Ubiquiti's late production of code weeks later while Defendants' expert was legally prohibited from travelling does not excuse Ubiquiti's violation of this Court-ordered deadline.

*Second*, Ubiquiti argues that Defendants' motion is merely a renewed motion to bifurcate discovery. *See* Opp. at 1. But the Court's reluctant decision not to bifurcate discovery as to the 18 Files does not entitle Ubiquiti to *withhold* the 18 Files that lie at the heart of this case while simultaneously demanding mountains of additional, collateral discovery. Cynically, Ubiquiti demands more discovery at Defendants' expense, while not even reviewing or inspecting Cambium's source code—presumably because it poses the same difficulties and expense that Cambium is being forced to endure. Rather than seek bifurcation, Defendants merely seek to enforce the Court's guidelines that prioritize discovery of the 18 Files.

## II. UNDISPUTED FACTS

In its Opposition, Ubiquiti does not deny or even address many of the issues raised in Defendants' Opening Brief. The following facts were established by Defendants and should be taken as admitted for purposes of the instant motion:

### A. Discovery Status

- **Document Production Comparison** – Defendants have produced **61,957 documents** totaling **178,279 pages** in discovery. Ubiquiti has produced merely **84 documents** totaling **811 pages** and only summarily responded to Defendants' interrogatory responses by pointing to its inaccessible source code. Defendants' responses to Ubiquiti's

interrogatories are not due yet.

- **Ubiquiti's Discovery Requests** – Ubiquiti propounded 597 requests for production, and 88 interrogatories on Defendants. Not one of Ubiquiti's 685 discovery requests mention the 18 Files nor were any requests limited in scope to the 18 Files.

- **Definitions of "Ubiquiti Firmware"** – Ubiquiti's requests for production once again re-define the term "Ubiquiti Firmware" to broadly and vaguely seek discovery well beyond the 18 Files identified in paragraphs 37, 39, and 137 of Ubiquiti's First Amended Complaint. *See* Ex. A at 4. In the latest incarnation, Ubiquiti defines "Ubiquiti Firmware" as "any and all versions of Ubiquiti's air OS operating system" without limitation to the 18 Files or proprietary protections. Ubiquiti now admits this was deliberate and that these requests seek documents that "do[] not make reference to a specific name of the 18 modules." Opp. at 9. This is the third time Ubiquiti has redefined its firmware in vague terms that do not limit the case or discovery solely to protectable, non-GPL source code.

- **The Court's Instructions Regarding Discovery** – Ubiquiti's Opposition did not address how its discovery conduct complies with the following statement by the Court: "Then do you have to answer them, or can you say, 'No, this is just the 18, and you can only do the 18 and the judge said only the 18. Please withdraw those other ones.' And if they say, 'No,' you can bring it to me, and you can say, 'See, I told you so.'" Mot. Ex. B at 10:6-18; *see generally* Opp.

    **B.    Source Code Review**

- **Ubiquiti's Production of Source Code** – Ubiquiti has not produced the 18 Files (in source or object code form or via paper or electronic means) to Defendants. Ubiquiti will

3

only allow in-person inspection in the Chicago offices of its counsel and refuses to discuss alternative review procedures with Defendants. *See* Opp. Ex. J at 2-3 (demonstrating Ubiquiti's objection to Defendants' proposal and failure to offer a counter proposal or otherwise advance discussions).

- **Defendant Cambium's Production of Source Code** – Defendants offered to make *Cambium's* source code available for inspection under the mutual procedures outlined in their March 13th proposal. *See* Opp. Ex. A at 6. Ubiquiti does not challenge the sufficiency of Cambium's source code production. Cambium's source code has been available for Ubiquiti's inspection since March 3, 2020.

    C.   **GPL and Open Source "Contained" and "Used" in the 18 Files**

- **Ubiquiti's Statements to the Court** – In order to survive the second motion to dismiss, Ubiquiti told the Court that the 18 Files do not contain any GPL code. Mot. Ex. A at 7:6-8:9. Ubiquiti also alleged in its First Amended Complaint that the 18 Files "generally exclude licensed-in materials" except for "materials from third parties that are not subject to the GPL." Dkt. 65 at ¶35.

- **Ubiquiti's Most Recent Admissions** – Ubiquiti now admits that the 18 Files actually do contain *numerous* open source, GPL files,[3] though Ubiquiti has failed to identify which portions they are or what portions it alleges to be protected and claims that its investigation into these topics is still continuing. Opp. at 12; Dkt.121 at 10.

    D.   **Timeline of Defendants' Efforts to Review Ubiquiti's Source Code**

The following timeline of events chronicles Defendants' diligent pursuit of Ubiquiti's

---

[3]   Ubiquiti now also admits that it used GPL files "in concert to implement digital signature security measures." Opp. at 12. But users of GPL-licensed code (such as Ubiquiti) expressly disclaim any right to assert laws that restrict users' ability to circumvent protection mechanisms implemented using GPL code or derivatives thereof. *See* Dkt. 70-8 at 4. (section on "Protecting users from anti-circumvention law").

source code, and Ubiquiti's improper attempts to block that access:

| Date | Event |
| --- | --- |
| Thursday February 6, 2020 | In anticipation of the upcoming deadline for Ubiquiti to produce its source code, Defendants presented their first notice of intent to inspect Ubiquiti's source code through their retained expert, Mr. Bob Zeidman. Ex. B at 1. Ubiquiti did not object to Defendants' disclosure of Mr. Zeidman and do not contend that Defendants' notice fully complied with the terms of the protective order. |
| Thursday February 27, 2020 | Defendants renewed their notice of intent to inspect Ubiquiti's source code and reiterated that they intended to inspect the source code "***on the same day it is provided***." Ex. B. |
| Tuesday March 3, 2020 | Ubiquiti failed to make its code available for inspection by this date—the court-ordered deadline for production—and also failed to respond to Defendants' inquiry (of the same day) regarding the status of the availability of Ubiquiti's source code. See Mot. Ex. D at 3; Dkt. 105 (regarding the March 3rd deadline for source code production). |
| Wednesday March 4, 2020 | Ubiquiti stated it would "make [Ubiquiti's] source code available . . . once [Defendants] fulfill [their] obligations to complete the [expert] disclosures." See Mot. Ex. D at 3. Defendants quickly pointed out that this statement completely overlooked Defendants' initial and renewed disclosures of Mr. Zeidman and notices of intent to inspect source code from ***February 6th*** and ***February 27th***. See Mot. Ex. D at 2. |
| Thursday March 5, 2020 | Pursuant to Defendants' compliant and un-objected to disclosures and notices of intent to inspect source code, Defendants' expert, Mr. Zeidman, was in Chicago awaiting access to Ubiquiti's source code when Ubiquiti notified Defendants by email that "[t]he source code computer will not be ready" until Monday March 9th—almost a week after Ubiquiti's court-ordered deadline for production. See Mot. Ex. E at 2. |
| Monday March 9, 2020 | Mr. Zeidman had a conflict this week. Defendants were making arrangements with Ubiquiti and Mr. Zeidman's associate, Mr. Evan Kovanis, to begin inspection on Monday March 16th. |
| Friday March 13, 2020 | Defendants and Ubiquiti agreed that Mr. Kovanis would inspect Ubiquiti's code beginning Monday March 16th at 2:00 pm. Mot. Ex. F at 2. Later that day, Mr. Kovanis canceled his travel arrangements due to escalating government advisories discouraging business travel amid the pandemic. Mot. Ex. F at 2. |
| Friday March 13, 2020 | Defendants issue their first concrete proposal to Ubiquiti for alternative inspection arrangements that would not require travel. Mot. Ex. F at 2 ("We suggest that you could send the computer with the code to a location in the Bay Area where he can access it.") |

5

| Monday March 16, 2020 | Counsel for Ubiquiti indicates a willingness to provide for remote source code inspection and that he "will discuss the matter with Ubiquiti as soon as we can and get back to you." Mot. Ex. F at 1.  On that same day, San Francisco issued shelter-in-place order, ordering "cessation" of all non-essential businesses and travel.  *See* Ex. C. |
|---|---|
| Tuesday April 7, 2020 | Counsel for Ubiquiti admitted during a meet-and-confer conference that he never actually sought approval for Defendants' proposed inspection procedures despite telling Defendants he was doing so. |
| Today, Friday May 8, 2020 | Defendants still have not received access to Ubiquiti's code or received any proposal or counter-proposal from Ubiquiti on interim access procedures. |

### III. ARGUMENT

#### A. Standard of Review

A party may seek an order compelling disclosure[4] when someone on which discovery has properly been served has failed to respond or has provided evasive responses. Fed. R. Civ. P. 37(a)(2); (a)(3). Similar to ruling on a request for a protective order under Rule 26(c), "the district court may fashion a ruling appropriate for the circumstances of the case," and the Court enjoys broad discretion when reviewing a discovery dispute to "independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines Inc.*, 95 F.3d 492, 496 (7th Cir.1996).

Here, the Court already established a clearly defined boundary for initial discovery—the 18 Files:

> **THE COURT**: Then do you have to answer them, or can you say, *"No, this is just the 18, and you can only do the 18 and the judge said only the 18. Please withdraw those other ones." And if they say, "No," you can bring it to me, and you can say, "See, I told you so."*
> **MR. GUY**: But what –
> **THE COURT**: And then I get mad at them, and that's a good day for you. Or they can just do what they said they were going to do and just limit it to

---

[4] The Court construed the instant motion—which was originally styled as a "motion to stay discovery"—as a "motion to compel Plaintiff to produce the 18 Files and as a motion for a protective order allowing Defendants to withhold written discovery responses until Plaintiff produces the 18 Files." Dkt. 122.  Accordingly, those standards are addressed here.

the 18.

Mot. Ex. B at 10:14-22. Thus, the Court prescribed the precise remedy it would issue if Ubiquiti pursued broad discovery at this early stage.

### B. The Court Should Order Ubiquiti to Produce the 18 Files (Again)

As the Court recognized, Defendants' inspection of the 18 Files is critical and has potential to further reduce if not eliminate the issues in this case at an early stage before requiring the further expense of broader discovery. *See* Mot. Ex. B (Dec. 9, 2019 Hearing Tx.) at 15:21-16:1. But the undisputed facts set forth above demonstrate that Ubiquiti has ignored these instructions for prioritizing discovery of the 18 Files by violating the Court-ordered production deadline and refusing to engage in meaningful discussions on accommodating access to source code under shelter-in-place orders. Ubiquiti's proposal that the parties should "work together" (Opp. at 5) on interim inspection procedures is meaningless—Ubiquiti's continued refusal to offer a single counter to Defendants' numerous concrete proposals for nearly two months demonstrates that Ubiquiti has no good-faith intention to "work together" on any such procedures. *See* Opp. Ex. B at 6 (email thread showing concrete review procedures proposed by Defendants beginning March 13th). Ubiquiti's refusal to even seek client approval for Defendants' proposals despite delaying discussions for two weeks under the guise of doing so (*see* Opp. Ex. B at 4) further supports that Ubiquiti will not allow any access to source code unless the Court requires them to.

Implementing secure inspection procedures need not be overly-complex. For example, the 18 Files could easily be copied onto a protected thumb drive and shipped to Defendants' expert. He alone would view them and comply with the terms of the protective order that he has already subscribed to under penalty of law. But Ubiquiti has rejected every attempt to accommodate such common-sense requests.

7

All this suggests that Ubiquiti is merely using the COVID-19 pandemic as an excuse not to produce the most vital evidence in the case while zealously pursuing its own discovery agenda. This motion is clearly not "moot" and has not already been ruled on through the Court's decision not to bifurcate discovery as Ubiquiti contends. Defendants suffer additional prejudice as each day passes without access to Ubiquiti's code because they simply have no idea of what they are accused of infringing and therefore cannot defend themselves against Ubiquiti's claims. Defendants therefore request the Court to compel Ubiquiti to produce the 18 Files.

### C. The Court Should Issue Protection from Ubiquiti's Harassing Discovery Conduct

Defendants have already answered and produced documents in response to hundreds of Ubiquiti's requests that admittedly "seek information related to entirely different topics" than the 18 files (*see* Mot. Ex. C at 4), including financial information and documents necessary for a productive settlement conference and discussions. Defendants have gone above and beyond the limited scope of discovery that the Court clearly established. Yet Ubiquiti still seeks even further discovery on issues well-beyond those 18 Files, while simultaneously refusing to produce its source code. The sheer volume of Ubiquiti's discovery correspondence further demonstrates the abusive nature of Ubiquiti's efforts, including nearly 700 discovery requests and the ***103 single-spaced pages of discovery correspondence*** that Ubiquiti attached to its brief.

Further offensive discovery by Ubiquiti is simply not "proportionate" under Fed. R. Civ. P. 26(b)(1). Indeed, Ubiquiti failed to articulate any tangible prejudice it has suffered from Defendants' timely discovery responses to date. *See generally* Opp. Ubiquiti's complaint that Defendants' production does not contain documents from the proper time period or covering business decisions regarding the Elevate program (*see* Opp. at 3) is simply false—Defendants' production includes literally hundreds (if not thousands) of documents pertaining to that exact

8

topic (far more than Ubiquiti's *cumulative* production on all topics). Ubiquiti is in possession of everything it needs to participate in the parties' settlement conference.

The prejudice to Defendants of Ubiquiti's harassing pursuit of additional discovery is high, and the comparative prejudice to Ubiquiti is virtually non-existent. Defendants therefore request the Court to issue a protective order to withhold written discovery responses until Ubiquiti produces the 18 Files.

## IV. CONCLUSION

Defendants therefore request that the Court issue an order to (1) compel Ubiquiti to identify the 18 Files and produce its source code and (2) protect Defendants from Ubiquiti's harassing pursuit of additional and disproportionate discovery. This remedy is proportionate to the remaining claims in the First Amended Complaint and is necessary to avoid incurring the enormous expenses associated with responding to Ubiquiti's requests for additional discovery.

Dated: May 8, 2020

Respectfully submitted,

BAKER BOTTS, L.L.P.

*/s/ G. Hopkins Guy III*
    One of their attorneys

G. Hopkins Guy III (CA Bar No. 124811)
hop.guy@bakerbotts.com
Jon V. Swenson (CA Bar No. 233054)
jon.swenson@bakerbotts.com
Karina Smith (CA Bar No. 286680)
karina.smith@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Phone)
650.739.7699 (Facsimile)

        Andrew D. Wilson (DC Bar No. 1030144)
        1299 Pennsylvania Ave. NW
        Washington, DC 20004-2400
        202.639.1312 (Phone)
        202.508.9336 (Fax)
        andrew.wilson@bakerbotts.com

        Arthur J. Gollwitzer (06225038)
        agollwitzer@michaelbest.com
        James P. Fieweger (6206915)
        jpfieweger@michaelbest.com
        MICHAEL BEST & FRIEDRICH, LLP
        444 West Lake Street, Suite 3200
        Chicago, Illinois 60606
        312.222.0800 (Phone)

        *Attorneys for Defendants Cambium Networks, Inc. et. al*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, I electronically filed the foregoing **Defendants' Reply In Support of Their Motion to Compel Plaintiff's Production of Source Code and for Protective Order Allowing Defendants to Withhold Written Discovery Responses Until Plaintiff Produces Source Code** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

                                                */s/ G. Hopkins Guy III*
                                                G. Hopkins Guy III