# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UBIQUITI INC. (f/k/a UBIQUITI NETWORKS, INC.), <br><br> *Plaintiff,* <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; CAMBIUM NETWORKS, LTD.; BLIP NETWORKS, LLC; WINNCOM TECHNOLOGIES, INC.; SAKID AHMED; and DMITRY MOISEEV. <br><br> *Defendants.* | Civil Action No.: 1:18-cv-05369 <br><br> The Honorable Judge Feinerman <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS CAMBIUM NETWORKS, INC., CAMBIUM NETWORKS, LTD., SAKID AHMED, AND DMITRY MOISEEV

Plaintiff Ubiquiti Inc. ("Ubiquiti" or "Plaintiff"), through its undersigned counsel, pursuant to Fed. R. Civ. P. 34, hereby propounds the following First Set of Requests for Production upon Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Sakid Ahmed, and Dmitry Moiseev, to be answered separately by each party in writing within thirty (30) days of service.

## DEFINITIONS AND INSTRUCTIONS

1.     These requests should be answered separately in writing by each of the responding parties, Cambium Networks, Inc., Cambium Networks, Ltd., Sakid Ahmed, and Dmitry Moiseev.

2.     The terms "Plaintiff" or "Ubiquiti" shall mean Ubiquiti Inc., f/k/a Ubiquiti Networks, Inc.

3.     The terms "You" or "Your" shall refer to the party that is responding to these requests, including any of its/his respective employees, attorneys, agents or any other persons or entities subject to its/his control, as well as any of its/his successors or predecessors and any of their respective employees, attorneys, agents or any other persons or entities subject to their control.

4.     The term "Cambium" shall mean Defendants Cambium Networks, Inc. and Cambium Networks, Ltd. (collectively), including any of their respective officers, directors, directors, principals, employees, attorneys, agents, or any other persons or entities subject to their control, as well as any of their successors, predecessors, subsidiaries and affiliates and any of their respective officers, directors, directors, principals, employees, attorneys, agents or any other persons or entities subject to their control.  To the extent that any Request seeks to differentiate between Cambium Networks, Inc. and Cambium Networks, Ltd., the Request shall do so by reference to the specific entity name.

5.     The terms "Blip" or "Blip Networks" shall refer to Defendant Blip Networks, LLC, including any of its respective officers, directors, directors, principals, employees, attorneys, agents, or any other persons or entities subject to their control, as well as any of its successors, predecessors, subsidiaries and affiliates and any of their respective officers, directors, directors, principals, employees, attorneys, agents, or any other persons or entities subject to their control.

6.     The term "Winncom" shall refer to Defendant Winncom Technologies, Inc., including any of its respective officers, directors, directors, principals, employees, attorneys,

agents, or any other persons or entities subject to their control, as well as any of its successors, predecessors, subsidiaries and affiliates and any of their respective officers, directors, directors, principals, employees, attorneys, agents, or any other persons or entities subject to their control.

7.     The term "Ahmed" shall refer to Defendant Sakid Ahmed, an individual, including any of his employees, attorneys, agents or any other persons or entities subject to his control.

8.     The term "Moiseev" shall refer to Defendant Dmitry Moiseev, an individual, including any of his employees, attorneys, agents or any other persons or entities subject to his control.

9.     The term "Defendants" shall collectively refer to Cambium, Blip, Winncom, Ahmed and Moiseev (as each are defined herein).

10.     The terms "Litigation" or "Lawsuit" shall mean the above-captioned litigation.

11.     The term "Complaint" shall mean Plaintiff's Amended Complaint filed on June 19, 2019 in the Litigation (Dkt. No. 65).

12.     The term "Answer" shall mean Defendants' First Amended Answer and Affirmative Defenses to Ubiquiti Networks, Inc.'s First Amended Complaint filed by Defendants on December 26, 2019 in the Litigation (Dkt. No. 95).

13.     The term "Affirmative Defenses" shall mean Defendants' Affirmative Defenses to Ubiquiti Networks, Inc.'s First Amended Complaint filed by Defendants on December 26, 2019 in the Litigation (Dkt. No. 95).

14.     The term "M-Series Devices" shall mean any and all versions of Ubiquiti's NanoStation M, NanoStation Loco M, NanoBridge M-series, NanoBeam M-series, PowerBeam M-Series, AirGrid MSeries, and Rocket M-Series products.

15. The terms "Firmware" and "Ubiquiti's Firmware" shall mean any and all versions of Ubiquiti's airOS operating system licensed or provided by Ubiquiti for use with Ubiquiti's M-Series Devices.

16. The term "Elevate" shall mean the ePMP Elevate software product at issue in the instant action.

17. The term "FCC" shall mean the Federal Communications Commission.

18. The term "Ubiquiti Firmware User License Agreement" or "FULA" shall mean the document attached as Exhibit B to the Complaint.

19. The term "End User License Agreement" or "EULA" shall mean the document attached as Exhibit C to the Complaint.

20. The term "Firmware License Agreements" shall mean collectively or individually, the Ubiquiti Firmware User License Agreement or FULA and the End User License Agreement or EULA.

21. The term "Quick Start Guide" shall mean the ePMP Elevate Quick Start Guide attached as Exhibit D to the Complaint.

22. The term "Webinar" shall mean the webinar that took place on or about November 30, 2016 related to and announcing the availability of Elevate.

23. The term "Access Control Measures" shall mean any technological measures existing or within Ubiquiti's Firmware or hardware, including M-Series Devices, to limit or control the access, use, copying, reverse engineering, decompiling or disassembling of Ubiquiti firmware, technology, programs, or code.

24. The term "Corporate Governance Documents" means documents governing a company's affairs, including by way of example articles of incorporation, certificates of

incorporation, by-laws, resolutions, documents designating the board of directors and board committees, codes of conduct, corporate governance guidelines, committee charters, regularly created reports used by executives, directors, or managers in the course of managing the company, director independence guidelines, business conduct policies, director nomination procedures, stock ownership guidelines, business conduct policies, director nomination procedures, stock ownership guidelines, insider trading policies, shareholder communications policies, ethics and anti-corruption guidelines, and minutes of regularly conducted meetings of the company's directors, managers, executives or committees of such individuals.

25.     The term "Operational Policies" means documents governing the operations of a company, including without limitation employee onboarding and exit documents, employee handbooks, employee mobile device policies, company property policies, internet usage policies, privacy policies, contract negotiation and management guidelines, intellectual property policies, confidential information policies, invention assignment documents, ethical guidelines, standards of conduct, IT policies, IT planning documents, document retention policies, back up policies and procedures, and security policies.

26.     As used herein, the terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Fed. R. Civ. P. 34(a).

27.     As used herein, the term "communications" means all discussions, conversations, statements, meetings, conferences, telephone conversations, interviews, negotiations, agreements, understandings, cards, letters, correspondence, electronic files, telegrams, telexes, facsimile transmissions, telecopies and all other forms of written or oral exchange or statements,

however transmitted.  The term "communications" shall further include all internal and external communications, without limitation.

28.     As used herein, the term "person" means the plural as well as the singular and includes any natural person, governmental unit or entity, partnership, firm, private or nonprofit or public corporation, association, joint venture, or other legal entity.

29.     In construing these requests, both "relating to" and "concerning" should be broadly interpreted to mean "constituting, relating to, referring to, evidencing, reflecting, or in any way logically connected to."

30.     In construing these requests:

    a.     the singular form of a word includes the plural and the plural form includes the singular;

    b.     the use of masculine gender terms shall be deemed to also include the feminine gender;

    c.     "and" and "or" are to be construed either disjunctively or conjunctively as is necessary to bring within the scope of each interrogatory any matter, information, or document that might otherwise be construed as outside its scope; and

    d.     "you" and "your" refer to the responding party and any of its employees, attorneys, agents or any other persons or entities subject to its control.

31.     If you cannot answer any document request in full, specify the reasons for the incompleteness of your answer.

32.     For all documents produced, specify which document request(s) each document produced is intended to respond to.

33.     If the respondent claims that any document or item requested herein is protected from discovery on the grounds of privilege, work-product doctrine or on some other basis, the respondent shall provide a written list of such documents or items that are withheld from

6

production, describing each document or item as follows, subject to the parties' meet and confer agreement with respect to claims of privilege:

      a.     Date of preparation;

      b.     Author's name, title and address;

      c.     Name and address of each addressee, copy or recipient of the document;

      d.     General characteristics of the document (*e.g.*, number of pages, subject matter, format); and

      e.     The factual and legal basis for the claim of privilege, and facts sufficient to enable counsel and the Court to determine the validity of the assertion of privilege.

34.     Unless otherwise specified, the relevant time period for these requests is January 1, 2009 through the present.

## REQUESTS FOR PRODUCTION

1.     All documents and communications referenced in Defendants' Initial Disclosures served January 10, 2020.

2.     All documents and communications referenced in Your responses to Plaintiff's First Set of Common Interrogatories and First Set of Interrogatories directed specifically to You dated February 10, 2020.

3.     All documents and communications referring or relating to the decision to create Elevate, or any other firmware to install on M-Series Devices, including but not limited to any technical, financial, sales or marketing analysis, internal memoranda, spreadsheets, PowerPoints, tests and testing results, programs, proposals, projections, plans, designs, reports, marketing materials, circulars and business records.

4.     All documents and communications referring or relating to the use of Ubiquiti's Firmware in any way in connection with designing, developing, testing, installing or using

Elevate, including but not limited to technical analysis, internal memoranda, spreadsheets, PowerPoints, tests and testing results, programs, proposals, projections, plans, designs, reports, marketing materials, circulars and business records.

5.     All documents and communications referring or relating to any reverse engineering, decompiling, or disassembling of Ubiquiti's Firmware.

6.     All documents and communications referring or relating to how Elevate runs on, interacts with, operates, or otherwise is utilized in connection with M-Series Devices.

7.     All documents and communications referring or relating to the installation of Elevate on M-Series Devices, including but not limited to any technical analysis, internal memoranda, spreadsheets, PowerPoints, tests and testing results, programs, proposals, projections, plans, designs, reports, marketing materials, circulars and business records.

8.     All documents and communications referring or relating to whether installing Elevate on an M-Series Device renders, or potentially may render, that device inoperable or incompatible with other Ubiquiti hardware or equipment.

9.     All documents and communications referring or relating to whether or to what extent installing Elevate on an M-Series Device renders that device operable or compatible with Cambium hardware or equipment, including but not limited to any technical analysis, internal memoranda, spreadsheets, PowerPoints, tests and testing results, programs, proposals, projections, plans, designs, reports, marketing materials, circulars and business records.

10.     All documents and communications referring or relating to the use of code licensed to Ubiquiti from Atheros, Qualcomm, or Qualcomm Atheros in regard to the creation of Elevate.

11.     All documents and communications referring or relating to whether Ubiquiti's Firmware does or does not include code subject to open source licenses, including but not limited to the GNU General Public License ("GPL").

12.     All documents and communications referring or relating to Ubiquiti's Firmware.

13.     All documents and communications referring or relating to any copyrights Ubiquiti may or may not have in all or any portion of Ubiquiti's Firmware.

14.     All documents and communications referring or relating to any copyright notices pertaining to Ubiquiti's Firmware.

15.     All documents and communications referring or relating to whether the design, development, testing, use, or demonstration, installation or performance of Elevate may or may not infringe any copyrights held by Ubiquiti.

16.     All documents and communications referring or relating to whether the design, development, testing, use, or demonstration, installation or performance of Elevate may or may not breach any Firmware License Agreements.

17.     All documents and communications referring or relating to the removal or modification of any Ubiquiti copyright notices.

18.     All documents and communications referring or relating to the removal or modification of Ubiquiti's interface from any M-Series Device.

19.     All documents and communications referring or relating to any modifying, translating, reverse engineering, decompiling, dissembling, or otherwise attempting to defeat, avoid, bypass, remove, deactivate or circumvent any Access Control Measure in the Ubiquiti Firmware or M-Series Devices.

20.     All documents and communications referring or relating to any work or other activity Ahmed or Moiseev engaged in related to the creation, marketing, licensing, or distribution of Elevate.

21.     All documents and communications referring or relating to any copying, reproducing, transferring, broadcasting, transmitting, republishing, distributing, modifying, preparing a derivative work of, performing publicly or displaying Ubiquiti Firmware.

22.     All documents and communications referring or relating to whether the installation of Elevate in an M-Series Device does or does not cause the device to comply with any laws or regulations governing legal frequency channels, frequency ranges, radio functionality, output power, or dynamic frequency selection (DFS) requirements.

23.     All documents and communications referring or relating to how to install Elevate on M-Series Devices, including but not limited to all documents relating to installing older versions of Firmware on the M-Series Device prior to installing Elevate.

24.     All documents and communications referring or relating to any firmware verification system or process present in M-Series Devices.

25.     All documents and communications referring or relating to whether or to what extent any portion of Ubiquiti's Firmware remains on M-Series Devices following the installation of Elevate, including but not limited to any technical analysis, internal memoranda, marketing materials, circulars and business records.

26.     All statements, and all documents and communications referring or relating to any statements, made by any Defendant relating to downloading prior versions of Ubiquiti's Firmware in connection with the installation of Elevate on an M-Series Device.

27.     All documents and communications referring or relating to whether installation of Elevate on an M-Series Device may or may not void the Ubiquiti warranty, or may or may not render the M-Series Device non-compliant with FCC regulations.

28.     All documents and communications referring or relating to re-labeling any M-Series Device in which Elevate has been installed to comply with FCC or any other governmental regulations.

29.     All documents and communications referring or relating to the Quick Start Guide, including but not limited to all draft versions thereof, all documents pertinent to the development of the Quick Start Guide, and all criticism, comment, or suggested revisions to the Quick Start Guide.

30.     All documents and communications referring or relating to the decision to have Ahmed and Moiseev lead the effort to develop, design, promote, or market Elevate.

31.     All documents and communications referring or relating to the decision to work with Blip to promote, market, distribute, license or sell Elevate.

32.     All documents and communications referring or relating to the decision to work with Winncom to promote, market, distribute, license, or sell Elevate.

33.     All documents and communications exchanged between the Defendants, or any two or more of the Defendants, referring or relating to Elevate.

34.     All documents and communications containing, referring or relating to statements made on the internet by You, your employees, independent contractors, agents, users or customers, including but not limited to posts in forums, chatrooms, blogs and on social media platforms, that relate to Elevate, M-Series Devices or this Lawsuit.

35. All documents and communications containing, referring or relating to statements made on the internet by any of the other Defendants, their employees, independent contractors, agents, users or customers, including but not limited to posts in forums, chatrooms, blogs and on social media platforms, that relate to Elevate, M-Series Devices or this Lawsuit.

36. All communications between You and any third-party that refers or relates to the Litigation.

37. All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Blip that refer or relate to this Lawsuit.

38. All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Blip that refer or relate to the design, development, testing, use or demonstration, installation or performance of Elevate, including but not limited to documents and communications relating to whether any such activities may or may not infringe copyrights held by Ubiquiti or violate the Firmware License Agreements.

39. All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Blip that refer or relate to the marketing, promotion, distribution, licensing or sale of Elevate, including but not limited to documents and communications relating to whether any such activities may or may not involve making false or misleading statements or omissions about Elevate or M-Series Devices, infringe copyrights held by Ubiquiti, or violate the Firmware License Agreements.

40. All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Blip that refer or relate to any

agreements, partnerships or deals with Blip to promote, market, license, distribute or sell Elevate and any financial benefits received by Blip, or which Blip continues to receive, as a result of these activities.

41.     All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Winncom that refer or relate to this Lawsuit.

42.     All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Winncom that refer or relate to the design, development, testing, use or demonstration, installation or performance of Elevate, including but not limited to documents and communications relating to whether any such activities may or may not infringe copyrights held by Ubiquiti or violate the Firmware License Agreements.

43.     All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Winncom that refer or relate to the marketing, promotion, distribution, licensing or sale of Elevate, including but not limited to documents and communications relating to whether any such activities may or may not involve making false or misleading statements or omissions about Elevate or M-Series Devices, infringe copyrights held by Ubiquiti, or violate the Firmware License Agreements.

44.     All documents and communications exchanged between Cambium's in-house legal department, including its General Counsel Sally Rau, and Winncom that refer or relate to any agreements, partnerships or deals with Winncom to promote, market, license, distribute or sell Elevate and any financial benefits received by Winncom, or which Winncom continues to receive, as a result of these activities.

45.     All released versions of the Elevate computer code in its native format(s), including its source code and compiled or built object code forms, as well as any instructions, comments, notices, notations, data, schemas, and other information contained therein.

46.     All versions of Elevate source code files, scripts, configuration files, data files, project files, and build or packaging files and tools in their native formats, as stored in the version control system (such as git or svn) repositories in which they were developed, including but not limited to all structure and metadata, so as to enable examination of all such versions using the same version control system software used by Cambium's developers, employees or independent contractors.

47.     All versions of any scripts, files or documentation necessary to establish what versions of each source code file correspond to each released version of Elevate.

48.     A native copy of any collaboration systems or environments, such as "wikis" (*e.g.*, Atlassian Confluence) or similar systems, used in the design, development, or documentation of Elevate.  To the extent that a native copy of the system cannot be provided, this request seeks the production of a complete data export from the system.

49.     A native copy of any issue-, requirements-, defect-, or bug-tracking system (*e.g.*, Atlassian Jira) used in the design or development of Elevate.  To the extent that a native copy of the system cannot be provided, this request seeks the production of a complete data export of that system, including for all issues (*e.g.*, defects, requirements, or tasks), fields, comments, images, attachments, or other associated items.

50.     All interface documents, design documents, product feature documents, internal specification documents, diagrams, coding style guides, and requirements documents referring or relating to Elevate.

51.     All testing documents, test implementation files, testing suite data, and test definitions, processes, and results referring or relating to Elevate.

52.     All documents provided to end users of Elevate, including but not limited to manuals, technical references, spec sheets, and troubleshooting documents.

53.     All documents related to the development of Elevate, including but not limited to documents referring or relating to the architecture, design, engineering review, integration, and release of Elevate.

54.     All user logs for Elevate.

55.     All documents and communications referring or relating to inquiries or complaints from customers, suppliers, investors, or others relating to M-Series Devices or Elevate, including but not limited to inquiries or complaints relating to the download or installation of Elevate, the functionality of M-Series Devices which have had Elevate installed on them, the compatibility of M-Series Devices with Ubiquiti or Cambium hardware or equipment following the installation of Elevate, requests for maintenance or support on M-Series Devices, the legality of installing Elevate on M-Series Devices, the accuracy of statements made in the Quick Start Guide, at the Webinar, in the Cambium Community Forum page, or made at any other seminar, webinar, conference or forum in which Elevate was marketed or promoted.

56.     All documents and communications referring or relating to any public comments You have made regarding Elevate or M-Series Devices.

57.     All versions and draft versions of license agreements for the downloading, installation or use of Elevate.

58.     All documents and communications referring or relating to any request(s) received by You to make available open source software or modifications to open source

software included in Elevate, including but not limited to request(s) made under Section 1.4 of Cambium's ePMP Elevate End User License Agreement, and all documents and communications referring or relating to Your response(s) to any request(s) to make open source software or modified open source software available.

59.    All documents and communications sent by You to any third-party that states, claims or alleges a violation of any Elevate license agreement, including but not limited to cease and desist letters claiming a third-party has violated Section 1.2 of Cambium's ePMP Elevate End User License Agreement, and all documents and communications referring or relating to any response(s) You have received from third-parties to any document, communication, or cease and desist letter produced in response to this Request.

60.    All documents and communications referring or relating to investigations commenced or undertaken by You to determine whether a third-party has violated any Elevate license agreement, including but not limited to violations of Section 1.2 of Cambium's ePMP Elevate End User License Agreement.

61.    All documents and communications referring or relating to the marketing or promotion of Elevate, including but not limited to any internal analysis, internal memoranda, spreadsheets, PowerPoints, programs, proposals, projections, plans, reports, marketing materials, circulars, business records, promotional materials, advertisements, or statements made at webinars, seminars, or conferences relating to Elevate.

62.    All documents, communications, and videos containing instructions on how to download, install, or use Elevate on M-Series Devices, documents referring or relating to the development of such instructions, all drafts of the instructions, all criticism, comment, or suggested revisions to the instructions, and documents and communications that in any way

reference whether statements made in the instructions were factually incorrect, misleading, or omitted information.

63.     All documents and communications referring or relating to the Webinar, including but not limited to any internal analysis, internal memoranda, PowerPoints, programs, proposals, projections, plans, reports, marketing materials, circulars, business records, documents sufficient to identify any attendees, participants, or viewers of the Webinar, and all communications exchanged between any Defendant and any attendee, participant, or viewer of the Webinar.

64.     All documents and communications referring or relating to any webinar (other than the November 30, 2016 Webinar), industry conference, or seminar during which any Defendant marketed, promoted, or demonstrated the installation or use of Elevate, including but not limited to any internal analysis, internal memoranda, PowerPoints, programs, proposals, projections, plans, reports, marketing materials, circulars, business records, documents sufficient to identify any attendees, participants or viewers of any such webinar, industry conference, or seminar, and all communications exchanged between any Defendant and any attendee, participant or viewer of the webinar(s), industry conference(s), or seminar(s) disclosed in response to this request.

65.     A copy of any Cambium Community Forum page, post, comment, question, or private message that refers or relates to Elevate or the M-Series Devices.

66.     All documents and communications referring or relating to the targeting of Ubiquiti customers through the introduction of Elevate into the market, including but not limited to any internal analysis, internal memoranda, forecasts, budgets, spreadsheets, PowerPoints, tests

17

and testing results, market research, programs, projections, plans, reports, marketing materials, circulars and business records.

67.     All documents and communications referring or relating to whether Elevate did or did not, or may or may not, have any effect whatsoever on customers purchasing, renting or licensing any other products, hardware or software offered by Cambium, including but not limited to any internal analysis, internal memoranda, forecasts, budgets, spreadsheets, PowerPoints, tests and testing results, market research, programs, projections, plans, reports, marketing materials, circulars and business records.

68.     All documents and communications referring or relating to any benefits of any type that may accrue to Cambium from Elevate, or any detriment to Ubiquiti, including but not limited to loss of or increase in market share of any software or hardware product, business prospects, good will, long-term stability and placement in the market, and infrastructure.

69.     All documents and communications referring or relating to the funding or capitalization by Cambium Networks Ltd. to develop, design, market, promote or distribute Elevate, and the recipient(s) of any such funding or capitalization, including but not limited to account statements, transfers, checks, financial statements, accounting records, corporate minutes, and investor disclosures.

70.     All documents and communications referring or relating to any grants, investments, loans, or other financial support received by any of the Defendants to develop, design, market, promote, distribute or license Elevate, including but not limited to account statements, transfers, checks, financial statements, accounting records, corporate minutes, and investor disclosures.

71.     All documents and communications referring or relating to any compensation or other benefit received by Moiseev or Ahmed relating, directly or indirectly, to Elevate, or any benefits Cambium has derived, directly or indirectly, from Elevate.

72.     All indemnification agreements between You and any other Defendant or Defendants that refer or relate to this Lawsuit, Ubiquiti, Elevate, or M-Series Devices.

73.     All documents and communications referring or relating to any efforts or activities by Cambium, Wincomm, Ahmed and/or Moiseev, or any of the two Defendants, to promote, market, distribute, sell or license Elevate.

74.     All documents and communications referring or relating to Cambium's Connected Partner program, including how individuals or entities were selected to be Connected Partners, any agreements or terms and conditions with Connected Partners, and any documents and communications relating to financial incentives or compensation paid as a result of being a Connected Partner.

75.     All documents and communications referring or relating to Cambium's Flexible Licensing program, including but not limited to contracts, agreements, payment terms, or terms and conditions with users of the program, and any memoranda, spreadsheets, PowerPoints, tests and testing results, market research, projections, plans, reports, marketing materials, circulars and business records relating to the program.

76.     All documents and communications referring or relating to Cambium's partnership, relationship, or dealings with Blip or Winncom as it relates to Elevate, including but not limited to agreements, memoranda, spreadsheets, PowerPoints, tests and testing results, market research, programs, projections, plans, reports, marketing materials, circulars and business records.

77.     All documents and communications referring or relating to financial incentives received by Ahmed, Moiseev, Blip or Winncom for promoting Elevate, including but not limited to monetary transfers, commissions, royalties, bonuses, discounts, hardware, equipment, or items of monetary value.

78.     Documents sufficient to show Cambium's financial forecasts or budgets related to Elevate.

79.     All documents and communications referring or relating to any market studies or business plan associated with Elevate or the M-Series Devices.

80.     All documents and communications referring or relating to any revenue, profits or losses incurred by Cambium from licensing Elevate (including the price charged for licensing Elevate and providing any related support services), including but not limited to any financial analysis, budgets, programs, plans, projections, reports, spreadsheets, PowerPoints, financial statements, revenue statements, and account statements.

81.     All documents and communications referring or relating to the determination of the price to charge for an Elevate license, including but not limited to any financial analysis, budgets, programs, plans, projections, reports, spreadsheets or PowerPoints relating to determining such a price.

82.     All documents and communications referring or relating to whether a customer would or would not be charged a fee for licensing Elevate, including but not limited to all documents and communications relating to the decision to license Elevate to some customers for no fee.

83.     Documents sufficient to show any financial benefit of any type received by Cambium as a result of providing licenses to Elevate on a royalty-free basis, including but not limited to increased sales of Cambium hardware and hardware-related products.

84.     Documents sufficient to show revenues derived from any sales of Cambium equipment attributable, in whole or in part, to the licensing of Elevate, including but not limited to any financial analysis, budgets, programs, plans, projections, reports, spreadsheets, PowerPoints, financial statements, revenue statements, and account statements.

85.     All documents and communications referring or relating to the number of M-Series Devices on which Elevate has been installed.

86.     All documents and communications referring or relating to the number of licenses issued for Elevate.

87.     All documents and communications referring or relating to the number of times Elevate has been downloaded from Cambium's website.

88.     All documents and communications referring or relating to the number of orders placed for Elevate, including but not limited to invoices, receipts, confirmations, internal analysis, internal memoranda, spreadsheets, PowerPoints, programs, projections, plans, reports, and business records.

89.     Documents sufficient to identify the countries in which users, customers, or third-parties downloaded, accessed, or purchased Elevate.

90.     All documents and communications referring or relating to how many M-Series Devices in Blip's network have had Elevate installed.

91.     All documents and communications referring or relating to how many M-Series Devices in Winncom's network have had Elevate installed.

92.     Documents sufficient to identify all persons who served as directors, executives, managers, and in-house legal counsel for Cambium during the time period from January 1, 2012 through the present.

93.     Documents sufficient to identify all owners of Cambium from January 1, 2012 through the present.

94.     All Corporate Governance Documents applicable to Cambium from January 1, 2102 through the present.

95.     Documents sufficient to show Cambium's corporate and organizational structure from January 1, 2012 through the present, including but not limited to a copy of Cambium's organizational chart from 2012 through the present, as well as documents evidencing reporting relationships between employees of Cambium and any corporate affiliates, parents, siblings, subsidiaries or other affiliated entities.

96.     Documents reflecting the organizational structure of Cambium's corporate family from January 1, 2012 through the present, including but not limited to organizational charts and documents evincing reporting relationships between employees of Cambium and any corporate affiliates, parents, siblings, subsidiaries or other affiliated entities.

97.     All Cambium Operational Policies from January 1, 2012 through the present, including but not limited to document retention policies.

98.     All Cambium board meeting minutes, notes, or records discussing or referencing Elevate.

99.     All documents and communications referring or relating to the determination of the share price for Cambium's Initial Public Offering (IPO).

100. All documents and communications referring or relating to any effect Ubiquiti, or any Ubiquiti product, hardware, software, or service had, or may have had, on Cambium's Initial Public Offering (IPO) share price.

101. All documents and communications referring or relating to any change in Cambium's share price attributable to the Lawsuit.

102. All documents and communications evaluating the success (or lack of success) of Cambium's Initial Public Offering (IPO), including analysis, memoranda, spreadsheets, forecasts, budgets, PowerPoints, proposals, projections, reports, and all other financial, accounting, and business records relevant to the success of the IPO.

103. All documents and communications made or exchanged between Cambium and any of its lenders, institutional investors, or creditors concerning Cambium's Initial Public Offering (IPO), to the extent such documents and communications refer or relate to Ubiquiti or this Lawsuit.

104. All documents and communications referring or relating to Defendants' contention that it was "widely understood" to be "IPO-ready" for two years prior to commencing its Initial Public Offering (IPO), as alleged in the Fourth Affirmative Defense.

105. All documents and communications referring or relating to Defendants' contention that it was "IPO-ready" for two years prior to commencing its Initial Public Offering (IPO), as alleged in the Fourth Affirmative Defense.

106. All documents and communications referring or relating to the factual basis for Defendants' contention that Ubiquiti's Registered and Proprietary Firmware contains code subject to third-party open sources licenses, including the General Public License (GPL), as alleged in the First Affirmative Defenses.

107.    All documents and communications referring or relating to the factual basis for Defendants' contention that Ubiquiti's Registered Firmware (as defined in the Complaint) and Proprietary Firmware contains modifications to public code made by Ubiquiti, as alleged in the First Affirmative Defenses.

108.    All documents and communications referring or relating to the factual basis for Defendants' contention that Cambium acted in good faith reliance on Ubiquiti's incorporation of public code into its Firmware and Ubiquiti's acknowledgments that the GPL license applies and takes precedence over the Firmware License Agreements, as alleged in the Fifth Affirmative Defense.

109.    All documents and communications referring or relating to the factual basis for Defendants' contention that the Firmware License Agreements are invalid, as alleged in the Fifth Affirmative Defense.

110.    All documents and communications referring or relating to the factual basis for Defendants' contention that Ubiquiti's Firmware includes revisions required by the functionality of Ubiquiti hardware, as alleged in the Fourteenth Affirmative Defense.

111.    All documents and communications referring or relating to the factual basis for Defendants' contention that the "18 allegedly proprietary firmware files" contain data and information related to functional aspects of the Firmware, as alleged in the Fifteenth Affirmative Defense.

112.    All documents and communications referring or relating to the factual basis for Defendants' contention that the "18 files" are in their entirety or contain elements protected by the merger doctrine, as alleged in the Seventeenth Affirmative Defense.

24

113.    All documents and communications referring or relating to the factual basis for Defendants' contention that the expression of Ubiquiti's Proprietary Firmware is synonymous with the function of Ubiquiti hardware, as alleged in the Seventeenth Affirmative Defense.

114.    All documents and communications referring or relating to the factual basis for Defendants' contention that Cambium's software was independently created and that Cambium did not reverse engineer, decompile or otherwise copy Ubiquiti's Firmware in creating Elevate, as alleged in in the Twenty-First Affirmative Defense.

115.    All documents and communications referring or relating to the factual basis for Defendants' acknowledgement that information is kept on M-Series Devices after the installation of Elevate on such devices, as alleged in the Twenty-Third Affirmative Defense.

116.    All documents and communications referring or relating to the factual basis for Defendants' contention that Elevate was developed, marketed and installed without breaching the Firmware License Agreements, as alleged in the Twenty-Fifth Affirmative Defense.

117.    All documents and communications referring or relating to the factual basis for Defendants' contention that Cambium did not access Ubiquiti's M-Series Devices without or in excess of authorization by those permitted to grant such access, as alleged in the Twenty-Sixth Affirmative Defense.

118.    All document and communications referring or relating to Cambium's circumvention of technological measures for the purpose of identifying and analyzing elements of the Ubiquiti Firmware that are necessary to achieve interoperability of an independently created computer program with other programs, as alleged in the Twenty-Seventh Affirmative Defense.

119.     All documents and communications specifically related to the allegations and claims set forth in the Complaint that are not otherwise addressed in Defendants' responses to the foregoing requests, including but not limited to any and all documents which support or do not support any of Ubiquiti's claims or allegations as set forth therein.

120.     All documents and communications specifically related to the allegations and Affirmative Defenses set forth in Defendants' Answer that are not otherwise addressed in Defendants' responses to the foregoing requests, including but not limited to any and all documents which support or do not support each alleged defense identified therein.

121.     All witness statements or witness affidavits taken and/or received by You in connection with this Litigation.

122.     All documents that You intend to use or rely on at trial or hearing of the action.


Dated:  February 10, 2020                    Respectfully submitted,


                                             By:  /s/ *David Koropp* _____

                                                  David Koropp (ARDC #6201442)
                                                  dkoropp@foxswibel.com
                                                  Erik J. Ives (ARDC #6289811)
                                                  eives@foxswibel.com
                                                  Steven L. Vanderporten (ARDC #6314184)
                                                  svanderporten@foxswibel.com
                                                  Fox Swibel Levin & Carroll LLP
                                                  200 W. Madison St., Suite 3000
                                                  Chicago, IL 60606

                                                  *Attorneys for Plaintiff Ubiquiti Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certify that I caused a copy of the foregoing document to be served by electronic mail on all counsel of record on February 10, 2020

*/s/ Steven L. Vanderporten*