# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UBIQUITI INC., f/k/a Ubiquiti Networks, Inc., <br><br> *Plaintiff*, <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; CAMBIUM NETWORKS, LTD.; BLIP NETWORKS, LLC; WINNCOM TECHNOLOGIES, INC.; SAKID AHMED; and DMITRY MOISEEV, <br><br> *Defendants*. | Civil Action No.: 1:18-cv-05369 <br><br> **JURY TRIAL DEMANDED** <br><br> Hon. J. Gary S. Feinerman |

**DEFENDANTS' OPPOSITION TO PLAINTIFF UBIQUITI INC.'S MOTION TO COMPEL DE-DESIGNATION OF DEFENDANTS' ATTORNEYS' EYES ONLY PRODUCTION AND FOR SANCTIONS**

Defendants Cambium Networks, Inc. and Cambium Networks, Ltd. (collectively, "Cambium"), Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev (collectively, the "Defendants") respectfully request that the Court deny Plaintiff Ubiquiti Networks, Inc.'s ("Ubiquiti") Motion to Compel De-designation of Defendants' Attorneys' Eyes Only Production and for Sanctions (Dkt. 132-1) (the "Motion").

## I. INTRODUCTION

The Agreed Confidentiality Order ("Protective Order") requires that a party challenging the designation of confidential information "must do so in ***good faith***." Dkt. 102 § 20(a). But Ubiquiti has not established any "good faith" basis on which to provide numerous unidentified Ubiquiti employees with access to the extremely confidential and sensitive information of its direct competitor, Cambium. Ubiquiti's purported basis for requesting such access to these materials—that disclosure is required for it to make a settlement demand—is not plausible. Ubiquiti was already provided with every piece of information it requested in order to make a settlement demand *last year*, yet Ubiquiti has still not made a demand.[1]

Ubiquiti's challenge to the **Exhibit A** documents is telling of its motive. Ubiquiti itself describes these documents as "non-substantive," yet Ubiquiti bypasses the Protective Order's meet and confer process (Dkt. 102 at § 20(a)) and instead directly seeks ***the Court's*** attention to de-designate materials that it admittedly has no intention of using. Ubiquiti's rush to the Court to file an error-ridden[2] motion to de-designate documents it calls "non-substantive" without any meet

---

[1] Defendants reiterated their offer to make additional and more current information available to in-house counsel of Ubiquiti. Ubiquiti has not taken Defendants up on this offer.

[2] Ubiquiti clarified by email dated May 29, 2020, that there were errors in the request for relief presented in its opening brief. Specifically, Ubiquiti stated that Exhibit A was "transposed" with Exhibit B for purposes of requesting relief. Ubiquiti now seeks de-designation of Exhibit B materials as "Confidential" and Exhibit A materials as "no confidentiality." Had Ubiquiti met and conferred with Defendants prior to racing off to file its motion many of these issues would have been resolved.

1

and confer should not be rewarded.[3]

The **Exhibit B** documents easily qualify as "Confidential Restricted – Attorneys' Eyes Only" ("Restricted-AEO") under the Protective Order, as these documents contain information that "is so sensitive that its dissemination to [Ubiquiti's in-house counsel] and [witnesses at depositions] would cause demonstrable harm to [Cambium]." Dkt. 102 at § 7. These documents contain sensitive business plans and projections for numerous products, including products beyond those at issue in this case. Disclosure of this information to Cambium's direct competitor would create the risk of improper use and is precisely what the Protective Order is designed to avoid. Defendants' proper designation of these materials is not an excuse for Ubiquiti to ignore its Court-ordered deadline to serve a settlement demand or to file a premature motion.

Finally, Ubiquiti's request to de-designate Defendant's *entire* production is premature and based on a false narrative that "Ubiquiti's counsel confirmed that *every single document* [produced by Defendants] had been designated by Defendants as 'CONFIDENTIAL RESTRICTED – ATTORNEYS' EYES ONLY'." Mot. at 3. Contrary to Ubiquiti's representations, Defendants' production included *thousands* of documents with different designations and many with no confidentiality designation at all—a set of documents many times greater than Ubiquiti's *entire production*.[4] And Ubiquiti ignores that the COVID-19 General Orders (*e.g.,* Dkt. 123) plainly

---

[3] Defendants have re-designated or otherwise addressed its designation of each of the Exhibit A documents with Ubiquiti during a meet and confer after Ubiquiti filed its Motion. Defendants agreed to re-designate CMBM-00012411, CMBM-00024835, and CMBM-00028777 as "Confidential - Subject to Protective Order." Defendants agreed to de-designate CMBM-00070089. Defendants clawed back CMBM-00166669 on privacy and relevance grounds.

[4] Defendants produced 84 documents with no confidentiality designation and 3,657 documents with the designation "Outside Attorneys' Eyes Only – Confidential Source Code." *See* Declaration of Jon V. Swenson in Support of Defendants' Opposition to Plaintiff Ubiquiti Inc.'s Motion to Compel De-Designation of Defendants' Attorneys' Eyes Only Production and for Sanctions ("Swenson Dec."), ¶1. Defendants have provided to Plaintiff a spreadsheet identifying those documents by bates number and designation. *See* Swenson Dec., ¶4.

extend the 5-day meet and confer period required to mount a challenge under the Protective Order. Dkt. 102 at § 20(a); *see also* L.R.37.2. Ubiquiti's indiscriminate challenge, which includes challenging documents produced ***without any confidentiality designation*** at all, is premised on a falsehood and fails to satisfy the basic requirements of the Protective Order.

Defendants undertook a good faith effort to properly designate the 61,957 documents, comprising over 178,000 pages, in its substantial and exhaustive production. By contrast, Ubiquiti's production consists of only 84 documents and it has refused to provide substantive answers to written discovery. Because this case is centered on technology that Cambium developed largely to compete with Ubiquiti, Restricted-AEO is the proper designation for most of the documents at issue in this case given the "demonstrable harm" Cambium would suffer if these documents were disclosed to Ubiquiti employees, who could not disregard the information they learn as they compete with Cambium. Dkt. 102 at § 7. Defendants repeatedly offered to discuss their designation of additional particular documents with Ubiquiti, but Ubiquiti has not identified any other issues. Defendants therefore request the Court to deny Ubiquiti's motion.

## II. BACKGROUND

1. In September 2019, Cambium provided Plaintiff's counsel with the number of Elevate licenses Cambium sold and gave away as Plaintiff requested for the express purpose of making a settlement demand. Cambium permitted Plaintiff's counsel to share this information with Ubiquiti's in-house counsel responsible for decision making regarding this lawsuit. To date, however, Plaintiff has not made a settlement demand. *See* Swenson Dec., ¶5.

2. The court entered the parties' stipulated Protective Order on Feb. 4, 2020 (Dkt. 102), which governs how confidential materials are to be handled. Parties may designate produced documents as:

   a. "Confidential - Subject to Protective Order," which is to be used for the following

3

    categories of information: "(a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case." Dkt. 102 § 2;

  b. "Confidential Restricted – Attorneys' Eyes Only" which applies to documents containing information that is "so sensitive that its dissemination to those individuals identified in 14(b)(2) [designated party representatives] and 14(b)(7) [witnesses at deposition] would cause demonstrable harm to the Producing Party." *Id.* at § 7; and

  c. "Outside Attorneys' Eyes Only – Confidential Source Code," which generally pertains to source code, the "disclosure of which is likely to cause harm to the competitive position of either party or a third-party." *Id.* at § 4.

3. On March 3, 2020, Defendants served their initial document production, which consisted of 61,957 documents. Defendants' production included documents designated under multiple confidentiality designations afforded under the Protective Order, and many without any designation at all: 84 were not designated as confidential; 3,657 were designated as "Outside Attorneys' Eyes Only – Confidential Source Code"; and 58,216 were designated as "Confidential Restricted – Attorneys' Eyes Only". *See* Swenson Dec., ¶1. Ubiquiti's production, in contrast, consisted of 84 documents. *See* Swenson Dec., ¶2.

4. On May 8, 2020, Ubiquiti demanded Defendants withdraw their designations of the entire 60,000-plus document production within five days pursuant to the Protective Order. *See* Swenson Dec., Ex. 3 at 3.

4

5. Defendants responded to Ubiquiti's demand on May 15, explaining that the Court's COVID-19 General Orders (*e.g.,* Dkt. 123, "COVID-19 Orders")—which applies to "all deadlines" set by the Court and therefore includes deadlines under the Court-ordered Protective Order—had extended Defendants' deadline to respond. *See* Swenson Dec., Ex. 1 at 12. Defendants further explained that they were unable to meaningfully confer about the designations because Ubiquiti's challenge was not specific enough to "allow Defendants to review the challenged material and reconsider the designation," as required by the Protective Order. *See* Swenson Dec., Ex. 1 at 12; *See* Dkt. 102 §20(a).

6. Ubiquiti's counsel responded on May 20 requesting client-access to fourteen specific documents from Defendants' production. Counsel for Ubiquiti also stated that Ubiquiti could still make a settlement demand even if those documents were not de-designated—but that the "financial component" of the demand would be based on "[Ubiquiti's] own market estimates." *See* Swenson Dec., Ex. 1 at 10-11.

7. On Saturday, May 23, Plaintiff sent a letter demanding a meet and confer before 10 a.m. Pacific Time the following business day—Tuesday, May 26—to discuss the 14 documents identified previously and presenting a new challenge to four additional documents. *See* Swenson Dec., Ex. 1 at 9-10. This demand provided Defendants with zero business days to respond.

8. Plaintiff filed its Motion on May 26 without meeting and conferring with Defendants. The Motion sought explicit relief related to five documents that Plaintiff had never brought to Defendants' attention.

9. On May 28, Defendants responded to Plaintiff's May 20th email and explained why the documents Plaintiff requested be de-designated could not be de-designated without causing substantial harm to Cambium. Defendants also offered to provide updated license and revenue

5

numbers for Cambium's Elevate product that could be shared with in-house counsel at Ubiquiti, but Ubiquiti never responded.

10. The parties met and conferred telephonically on June 2nd. Defendants agreed to re-designate three of the five documents in Plaintiff's Exhibit A (Exhibits A2, A4, and A5) as "Confidential-Subject to Protective Order" and to de-designate one other (Exhibit A1) to "not confidential." The fifth document (Exhibit A3), Defendants requested to claw back. Defendants also explained why disclosure of each of the documents in Exhibit B to two Ubiquiti employees would harm Defendants, but Ubiquiti did not agree to drop its motion to de-designate them.

11. Before the June 2nd meet and confer, Defendants provided Plaintiff with a spreadsheet identifying by bates number and applied designation the over 3,700 documents that were not designated as Restricted-AEO. Defendants also asked that Plaintiff identify the individuals it intended to share any de-designated documents with pursuant to the Protective Order. Plaintiff's counsel could not identify who those individuals at Ubiquiti would be.

12. The next day, Defendants notified Plaintiff that they would also de-designate 20 additional documents to "no confidentiality." *See* Swenson Dec., Ex. 4.

### III.  LEGAL STANDARD

The Restricted-AEO designation properly applies to documents containing information that is "so sensitive that its dissemination [to party representatives and deponents] would case demonstrable harm to the Producing Party." Dkt. No 102 § 7. Courts have utilized "'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, No. 07–2657, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008). *See also Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08–CV–548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009) ("To be sure, courts in many circumstances have found that a specific showing of competitive harm

6

justifies a restriction of confidential or trade secret information to 'attorney's eyes only.'"). A significant percentage of documents marked "Confidential Restricted – Attorneys' Eyes Only" is expected when the case "necessarily requires the exchange of proprietary and commercially sensitive information among competitors." *See Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. CIV.A. 08-4168 MLC, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (citations omitted).

A finding of "bad faith" by the producing party is typically required for a court to require a party to re-evaluate its document designations. *See Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *7–8 (S.D. Fla. Sept. 4, 2013).

## IV. ARGUMENT

### A. Plaintiff's Request for De-Designation of Defendants' Production is Not Needed for Making a Settlement Demand

Despite its arguments to the contrary, Plaintiff's actions show that use of Defendants' documents in determining its settlement position is not its true motivation. Rather, Plaintiff has undertaken the challenge merely to run up Defendants' costs with unnecessary briefing and an unwarranted de-designation demand.[5] Cambium provided Plaintiff the information it requested to provide a settlement demand more than a half a year ago. Swenson Dec., Ex. 2. But Plaintiff did not provide a settlement demand then, and instead waited until Cambium undertook a massive (and massively expensive) investigation that resulted in a collection of and production of all discoverable information in this case—a production containing more than 60,000 documents. *See* Swenson Dec., ¶1. Plaintiff—which, again, is Cambium's direct competitor—then demanded de-

---

[5] This is not the first time Plaintiff has run up its competitor's costs by challenging the competitor's confidentiality designations. Plaintiff used the same tactic in *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-CV-2582 CW JSC, 2013 WL 772664 (N.D. Cal. Feb. 28, 2013) (noting "[t]he Court has considered numerous challenges [by Ubiquiti] to Defendants' confidentiality designations under the Stipulated Protective Order" and denying Ubiquiti's motion for sanctions based on overuse of the AEO designation).

designation of Defendants' entire production of mostly highly-sensitive business information, which Defendants have already designated appropriately as best they could given the proportionate needs of the case (notwithstanding some mis-designated documents, which Defendants have shown to be willing to de-designate as appropriate). *See* Swenson Dec., Ex. 3. Plaintiff, in contrast, has produced only 84 documents—more than 40 times fewer than the number of documents Defendants did *not* designate as Restricted-AEO—and has not produced the "18 files" the Court recognized as critical to figuring out what is relevant to the case. *See* Swenson Dec., Ex. 6 (Dec. 9, 2019 Hearing Tx.) at 10:14-18, 15:21-16:1.

After running up Defendants' production costs, Plaintiff rushed to file its Motion without meaningfully meeting and conferring, in violation of Local Rule 37.2 and the Protective Order Section 20(a). Plaintiff's initial meet and confer "effort" consisted of notifying Defendants of its demand that all of Defendants' 60,000-plus documents be re-reviewed and re-designated, or entirely de-designated, within just five days. *See* Swenson Dec., Ex. 3. Plaintiff's next "effort," less than a week before filing the Motion, including a holiday weekend, again demanded that Defendants de-designate their entire production, specifically called out fourteen documents it deemed relevant to its settlement demand, and requested a meet and confer within two days. *See* Swenson Dec., Ex. 1 at 10-11. Plaintiff's final "effort" was a weekend email reiterating its demands, identifying four additional documents, and threatening to file the Motion on the next business day unless Defendants agreed to meet and confer within less than half a business day. *See* Swenson Dec., Ex. 1 at 9-10. Defendants responded to each of these communications, but not within the unreasonable timeframes Plaintiff demanded.

In Plaintiff's haste, Plaintiff failed to review Defendants' production carefully enough to notice that over 3,700 documents were not designated "Confidential Restricted – Attorneys' Eyes

8

Only"—which it erroneously asserts multiple times in its Motion (Motion at 1, 3)—***despite Defendants having informed them of this***. Plaintiff also made serious errors in the Motion regarding the relief they seek. *See supra* n.2. And Plaintiff's counsel did not know the two in-house counsel with whom they intended to share the Restricted-AEO documents Plaintiff seeks to de-designate. Plaintiff must identify these individuals prior to any disclosure. Dkt. 102 § 14(b)(2).

Had Ubiquiti given Defendants a meaningful opportunity to meet and confer, things could have been different. First, Defendants could have explained how each of the 19 documents in Exhibit B meet the designation requirements for Restricted-AEO, as they do in this brief. *See* Swenson Dec., Ex. 5. Second, Defendants would have resolved Plaintiff's issues with the five documents in Motion Exhibit A, as they have now. Plaintiff decided instead to involve the Court.

But Plaintiff's strategic decision to run to the Court seeking de-designation of ***all*** of Defendants' documents is baffling. In support of Plaintiff's argument that Defendants indiscriminately designated every document as Restricted-AEO (which is false), Plaintiff points to only five documents (out of the more than 60,000 produced) that were given a confidentiality designation when they arguably should not have been designated confidential. Plaintiff admits these documents have no substantive value and that they do not need them for settlement purposes, but has still challenged the confidentiality of them. Meanwhile, Defendants agreed to de-designate (in the case of Mot. Exs. A2, A4, A5), re-designate (in the case of Mot. Ex. A1), and claw back (in the case of Mot. Ex. A3) these documents when Plaintiff pointed out Defendants' designation error (despite the entire exercise being a waste of time, given Plaintiff's acknowledgement that the documents lack substantive value).

   **B.**  **Restricted – AEO is the Proper Designation for Most of Defendants' Documents, and Defendants Designated Them in Good Faith**

Even if Plaintiff had brought the Motion properly, its de-designation arguments would fail.

This is precisely the type of case warranting a high percentage of documents to be designated as Restricted-AEO. *See Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. CIV.A. 08-4168 MLC, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) ("The fact that Defendants have designated a significant percentage of their documents 'Highly Confidential—Outside/Limited Counsel Only' is, in and of itself, an insufficient basis to warrant modification of the Confidentiality Order as the nature of the allegations in this case necessarily requires the exchange of 'proprietary and commercially sensitive information among competitors'."). The parties in this case are direct competitors, and the case revolves around a product Cambium developed specifically to compete with Plaintiff.

Moreover, and most importantly, Defendants' documents designated Restricted-AEO— including the 19 in Exhibit B— contain information that is "so sensitive" that disclosure to Ubiquiti "would cause demonstrable harm" to Cambium. Dkt. 102 § 7. Contrary to Plaintiff's assertion that the Exhibit B documents "do not contain trade secrets or other highly confidential subject matter" (Mot. at 7) each document contains highly-sensitive subject matter, such as customer- and region-specific revenue and pricing information, marketing information, technical information, and partnership information.[6]

The confidentiality of the documents in Exhibit B is important to Cambium's competitive success, and Cambium would be harmed if these documents were disclosed to Ubiquiti. Designating these documents as merely "Confidential  - Subject to Protective Order" would allow not only "up to 2 in-house counsel or employees" at Ubiquiti (who Plaintiff has yet to identify as required by the Protective Order) to review the documents, but it would also permit witnesses to

---

[6] Attached to the Swenson Declaration as Exhibit 5 is a document that describes how each individual document in Exhibit B satisfies the requirement to be designated Restricted – AEO under the Protective Order. In this opposition, the documents in Plaintiff's Exhibit B are described categorically.

view these documents at depositions. The disclosure of these documents would "cause demonstrable harm" to Cambium by allowing Plaintiff to learn their highly-sensitive pricing, and technical and business strategy, and use it to compete against Cambium for Cambium's customers. Significantly, this harm would not result from any violation of the Protective Order; once granted access either as in-house counsel or at a deposition, an individual simply cannot un-see or un-learn Cambium's competitive information that is relevant to Ubiquiti's success and his or her success as a Ubiquiti employee. Protection of a party's extremely sensitive information that can be used to the receiving party's advantage against the producing party is why there exists a designation under which documents cannot be shared with the receiving party. The Exhibit B documents qualify for this Restricted-AEO confidentiality designation.

These documents contain long-term project roadmaps and information on Defendants' forward-looking business strategies. Because these documents reveal specific details about Cambium's long-term visions and generally how Cambium approaches their business in areas such as marketing and pricing, these documents are still highly sensitive despite being created a few years ago, and would cause Cambium harm if a competitor were granted access to them.

The Exhibit B documents fall into 3 main categories: presentations, spreadsheets, and emails. The presentations (CMBM-00037386, CMBM-00035671, CMBM-00028747 (CMBM-00028746[7]), CMBM-00039976, CMBM-00043239, CMBM-00031569 and CMBM-00010995) disclose not just confidential revenue and customer information, but also Cambium's confidential strategies. *See* Swenson Dec., Ex. 5 at 1-13. The revenue information goes far beyond what is publicly available in Cambium's filings with the Securities and Exchange Commission, including

---

[7] CMBM-00028747 is a presentation that was attached to an email. The email was produced as CMBM-00028746. These documents share the same confidentiality designation as they are part of the same document family.

11

still-sensitive information from prior to Cambium's 2019 IPO, before Cambium had public reporting obligations. *See id.* Some of the revenue information is on an individual country and customer basis. *E.g.,* Swenson Dec., Ex. 5 at 4. Further, these presentations detail Cambium's confidential competitive strategies, including discussions on the success of specific marketing campaigns, product launches, and partnerships, as well as discussions of the larger business strategy, including product roadmaps. *E.g.,* Swenson Dec., Ex. 5 at 1. These presentations are forward-facing, and given the specificity and depth of this information, even the documents that are a few years old contain extremely sensitive information. *See* Swenson Dec., Ex. 5 at 1, 10. Cambium would suffer demonstrable harm if Plaintiff had this information and could use it to inform its targeting of particular customers and regions, to modify its marketing strategy to undercut the messaging behind Cambium's marketing, or to begin developing products that would directly compete with Cambium's confidential future products. If these presentations were de-designated to "Confidential - Subject to Protective Order," and could be shown to Ubiquiti employees during a deposition and to two in-house counsel, this would cause harm to Cambium without any violation of the Protective Order.

The spreadsheets (CMBM-00039191 and CMBM-00026409) disclose confidential pricing information about Cambium's products. *See* Swenson Dec., Ex. 5 at 13-15. This information includes the prices and discounts that are available for different customers of Cambium. *E.g.,* Swenson Dec., Ex. 5 at 13-14. Such pricing information is highly-sensitive and the type of information that would harm Cambium if Plaintiff were granted access to it and could use it to undercut prices and target Cambium's high profit-margin products. Again, this harm would result without any violation of the Protective Order if the spreadsheets are de-designated to "Confidential - Subject to Protective Order."

The emails (CMBM-00066211, CMBM-00039329, CMBM-00029355, CMBM-00011985, CMBM-00039480, CMBM-00052016, CMBM-00031183, CMBM-00052049, and CMBM-00037126) likewise disclose specific revenue and strategy discussions, as well as technical product information. *See* Swenson Dec., Ex. 5 at 15-21. These emails include specific details on how Cambium intends to compete with Plaintiff and their strategy for doing so. *See id.* Thus, disclosure of such information to Plaintiff would harm Defendants by allowing Plaintiff to change its technical strategy to make it more difficult for Defendants to fairly compete—again, without violating the Protective Order.

Defendants' designation of the sensitive documents in Exhibit B as Restricted-AEO was proper. As for documents that were not in Exhibit A or Exhibit B and that Defendants designated as Restricted-AEO, Plaintiff has not properly challenged their designation pursuant to the Protective Order. *See* Dkt. 102 § 20(a) (requiring "the challenging party [to] explain the basis for its belief that the confidentiality designation was not proper"). Regardless, Defendants properly designated those additional documents as Restricted-AEO because, like the documents in Exhibit B, they are "so sensitive" that their disclosure to Ubiquiti's in-house counsel and deposition witnesses would "cause demonstrable harm" to Defendants.[8] *Id.*, § 7.

### C. Defendants Have Acted in Good Faith

As discussed above, Defendants designated their documents in good faith under the Protective Order, and most of the documents Defendants produced in this case are correctly designated. The large majority of Defendants' documents meet the standard for the Restricted-AEO designation given the harm Defendants would suffer if their competitor had access to them.

In an attempt to show Defendants' bad faith, Plaintiff located just five documents in

---

[8] With the possible exception of a minority of documents that Defendants inadvertently mis-designated.

13

Defendants' production to support its position that Defendants indiscriminately designated documents as Restricted-AEO. See Mot. Ex. A. Defendants have conceded that these select documents were mis-designated. Defendants have accordingly agreed to re-designate three of the documents to "Confidential - Subject to Protective Order," and to fully remove the designation of one of them, as was communicated during the June 2, 2020 meet and confer. *See* Swenson Dec., ¶7. Defendants have further identified 20 documents that were mistakenly designated as Restricted-AEO and notified Plaintiff that it would de-designate them, as well. *See* Swenson Dec., Ex. 4.

Moreover, Defendants have fulfilled their meet and confer obligations under the Court's Local Rules and orders. In response to Plaintiff's emails demanding that Defendants agree to de-designate all of their Restricted-AEO documents or confer, Defendants have provided reasonable positions, and support for them. Defendants responded to Plaintiff's first email within a week. *See* Swenson Dec., Ex. 1 at 11-12. Five days later, Plaintiff responded to Defendants' response, demanding a response within two days. *See* Swenson Dec., Ex. 1 at 10-11. Plaintiff then emailed again three days later (on a Saturday of a holiday weekend) when Defendants had failed to respond within two days to Plaintiff's prior email. *See* Swenson Dec., Ex. 1 at 9-10. Plaintiff then filed the Motion on the next business day, before Defendants responded to Plaintiff's prior two communications, both of which had been made within the prior three business days. In the week since Plaintiff filed the Motion, Defendants engaged with Plaintiff multiple times, including in a meet and confer teleconference. *See* Swenson Dec., ¶7. In contrast, Plaintiff has failed to fulfill its meet and confer obligations, most egregiously when it gave Defendants zero business days to respond to its meet and confer demand.

Defendants have acted in good faith by any standard, but especially when considered with

14

regard to the proportionate needs of this case. It is Plaintiff who has not acted in good faith by (i) trying to de-designate **all** of Defendants' production based on a purported need for **19** of the (highly-sensitive) documents to engage in settlement negotiations and (ii) identification of five documents that Defendants mis-designated.

### D. Sanctions and Blanket De-Designations are an Inappropriate Remedy

Even if the Court finds that some of the documents from Exhibit B are not properly designated, or that Defendants over-designated documents as Restricted-AEO, the proper recourse would be to allow the parties to work together to resolve these issues. *See Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *7–8 (S.D. Fla. Sept. 4, 2013). A blanket de-designation, which would only be appropriate in extreme situations involving bad faith by the designating party, (*see id.*) would disproportionally punish Defendants by allowing unidentified employees of Plaintiff to view Defendants' highly-sensitive documents and use the information contained therein for their advantage at Defendants' expense.

Similarly, sanctions are improper in this case. Even if the court deems Defendants' designations to be improper, they were the result of a good faith belief that the documents qualified as Restricted-AEO. *See id.*; *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-CV-2582 CW JSC, 2013 WL 772664, at *3 (N.D. Cal. Feb. 28, 2013) (declining to award sanctions despite finding an overuse of AEO designation because the case was "between competitors and Defendants had concerns regarding sharing its internal confidential documents with in-house counsel"). Accordingly, even if the court determines that some of Defendants' designations are improper, it should decline to impose sanctions.

### V. CONCLUSION

For the reasons stated above, Defendants have complied in good faith with the obligations of the Protective Order to designate its documents. The Court should deny Plaintiff's motion.

15

Dated: June 4, 2020                     Respectfully submitted,

                                                BAKER BOTTS, L.L.P.

                                                */s/ G. Hopkins Guy III*
                                                    One of their attorneys

G. Hopkins Guy III (CA Bar No. 124811)
hop.guy@bakerbotts.com
Jon V. Swenson (CA Bar No. 233054)
jon.swenson@bakerbotts.com
Karina Smith (CA Bar No. 286680)
karina.smith@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Phone)
650.739.7699 (Facsimile)

Andrew D. Wilson (DC Bar No. 1030144)
1299 Pennsylvania Ave. NW
Washington, DC 20004-2400
202.639.1312 (Phone)
202.508.9336 (Fax)
andrew.wilson@bakerbotts.com

Arthur J. Gollwitzer (06225038)
agollwitzer@michaelbest.com
James P. Fieweger (6206915)
jpfieweger@michaelbest.com
MICHAEL BEST & FRIEDRICH, LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
312.222.0800 (Phone)

*Attorneys for Defendants Cambium Networks, Inc. et. al*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2020, I electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF UBIQUITI INC.'S MOTION TO COMPEL DE-DESIGNATION OF DEFENDANTS' ATTORNEYS' EYES ONLY PRODUCTION AND FOR SANCTIONS** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

>  */s/ G. Hopkins Guy III*
>  G. Hopkins Guy III