# EXHIBIT 6

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
     UBIQUITI NETWORKS, INC.,          )
 4                                     )
                      Plaintiff,       )
 5                                     )
     -vs-                              )  Case No. 18 C 5369
 6                                     )
     CAMBIUM NETWORKS, INC.,           )
 7   CAMBIUM NETWORKS, LTD., BLIP      )
     NETWORKS, LLP, WINNCOM            )
 8   TECHNOLOGIES, INC., SAKID         )
     AHMED, and DMITRY MOISEEV,        )  Chicago, Illinois
 9                                     )  December 9, 2019
                      Defendants.      )  9:30 a.m.
10

11                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE GARY FEINERMAN
12

13   APPEARANCES:

14   For the Plaintiff:     FOX, SWIBEL, LEVIN & CARROLL, LLP
                            BY:  MR. ERIK J. IVES
15                               MR. DAVID E. KOROPP
                            200 West Madison Street
16                          Suite 3000
                            Chicago, Illinois  60606
17                          (312) 224-1239

18   For the Defendants:    BAKER BOTTS, LLP
                            BY:  MR. HOPKINS GUY
19                          1001 Page Mill Road
                            Building 1, Suite 200
20                          Palo Alto, California  94304
                            (650) 739-5000
21

22   Court Reporter:

23              CHARLES R. ZANDI, CSR, RPR, FCRR
                     Official Court Reporter
                   United States District Court
24            219 South Dearborn Street, Room 2144E
                    Chicago, Illinois  60604
25               Telephone:  (312) 435-5387
              email:  Charles_zandi@ilnd.uscourts.gov
```

1   APPEARANCES:   (Continued)

2   For the Defendants:        MICHAEL BEST & FRIEDRICH, LLP
                               BY:   MR. JAMES P. FIEWEGER
3                              444 West Lake Street
                               Suite 3200
4                              Chicago, Illinois   60606
                               (312) 222-0800
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings heard in open court:)

2            THE CLERK:  18 C 5369, Ubiquiti Networks versus

3    Cambium Networks.

4            MR. IVES:  Good morning, your Honor.  Erik Ives for

5    plaintiff.

6            MR. KOROPP:  Good morning, your Honor.  David Koropp

7    for Ubiquiti.

8            MR. GUY:  Good morning, your Honor.  Hopkins Guy with

9    Cambium.

10           MR. FIEWEGER:  And Jim Fieweger for Cambium.

11           THE COURT:  Good morning.  We're here for a status

12   hearing.  Thank you for the status report.

13           So, is there anything further that either side would

14   like to address or emphasize with respect to the matters that

15   divide you?

16           MR. KOROPP:  Sure.  From my perspective, your Honor,

17   there's two main issues that split us at this point.  I think

18   we've worked hard to agree on a lot of things.

19           Bifurcation, our understanding is that bifurcation

20   was taken off the table with your prior ruling.

21           THE COURT:  No.

22           MR. KOROPP:  Okay.

23           THE COURT:  Your understanding is incorrect.

24           MR. KOROPP:  Okay.  And --

25           THE COURT:  Was there a motion to bifurcate?

1    MR. KOROPP:  Well, what happened was when they --

2    THE COURT:  Was there a motion to bifurcate?

3    MR. KOROPP:  No, your Honor.  They did not move to

4  bifurcate.

5    THE COURT:  There was a motion to do what?  To reopen

6  discovery.

7    MR. KOROPP:  And part of that motion, the second part

8  of that motion, and it was a whole section, was to reopen it

9  without bifurcation.  And so when you granted the motion

10  without any explanation otherwise, that's what we took from

11  it.  But we hear what you're saying.

12    THE COURT:  Yeah.

13    MR. IVES:  And to clarify one other thing, your

14  Honor, the motion to dismiss they filed in the alternative

15  asked for exactly the same schedule that they're proposing

16  here.  As part of their motion to dismiss, they filed that

17  exact request.

18    THE COURT:  Okay.  So, anyway, I wasn't intending to

19  rule one way or the other on bifurcation in that order, so

20  let's just discuss it.

21    MR. KOROPP:  Sure.  So, your Honor, frankly, for the

22  reasons that we've put in our brief -- and, yes, you're right,

23  they never have moved for bifurcation, which we think is --

24  this is not the proper venue to do that, but obviously we will

25  do --

1      THE COURT:  Let's assume that it is.

2      MR. KOROPP:  Right.  We will do exactly what your

3  Honor asks us to do.

4      We don't think that bifurcation makes sense because

5  number one, it would not dispose of the case.  To determine

6  the GPL issue is not case dispositive.  There is use of

7  third-party software that we got from non-GPL sources, Atheros

8  is an example of that in our complaint.  There's no contention

9  by them, no allegation by them, nothing because -- in part

10  because they have never filed a motion, but they're not

11  claiming that Atheros is GPL in any way.

12      The configuration files and the data files, they've

13  never contended that those are GPL-based.  If they violated

14  our user agreement, then they have no right and no authority

15  to use any of that information, your Honor, the Atheros

16  software, the data configuration files; and their obligation

17  under the UL is simple:  Stop using it and destroy all

18  software using it and return all software that you've given

19  out.  They didn't do any of that.  None of that will be

20  resolved if you bifurcate and decide that there are other

21  parts of the firmware that are covered by GPL.

22      In addition, we have false advertising claims, we

23  have tortious interference claims, none of which are fully

24  dependent on the GPL issue.  So, in our mind, your Honor, this

25  entire bifurcation request is premised on the notion that

1   they're going to win.  If they -- and even if they do win,

2   it doesn't dispose of the case.

3          And I would put to you that right now, there's no

4   basis to believe they're going to win the GPL issue.  They

5   gave you their expert report.  It was -- you know, to quote

6   Mr. Biden, it was malarkey.  That was the best they could do.

7          THE COURT:  Okay.  I think I said last time no one

8   should even talk about the expert report because it was in

9   the context of a 12(b)(6) motion, and it's outside the

10  pleadings.  So, I'll confess, I didn't even look at it

11  because it's completely irrelevant to a 12(b)(6).

12         MR. KOROPP:  Right.  Well --

13         THE COURT:  So, I obviously didn't make any rulings

14  one way or the other on whether the defendants were correct

15  on the merits on the GPL issue.  All I was looking at was the

16  first amended complaint to see if the pleading defect

17  identified in the original complaint had been remedied.  And

18  the answer to that was yes, but just barely; and Ubiquiti

19  could have done a lot better job and been a lot more clear

20  than it actually did.  But you made it over the line, so I

21  think all of that's now open and hasn't been ruled on.

22         MR. KOROPP:  Yes, so -- right.

23         THE COURT:  Yeah.

24         MR. KOROPP:  But for that reason, your Honor -- and

25  my only point was that had you had an opportunity to read that

1  report, I think you would have come to the same conclusion

2  that we're asking you to come to, which is right now, there's

3  no basis to believe that the programs that are at issue are

4  infected by the GPL; and discovery may -- they can take

5  discovery on that, but right now, the complaint going forward,

6  there's no basis to believe that.

7         And like I said, and it's not case dispositive.  So,

8  I think it would be highly prejudicial to us at this point to

9  continue to not let us take discovery on the merits of the

10  case, which I haven't been involved in this case the entire

11  time, but it was filed in August of 2018.  I'm not saying --

12  it sounds like we had some decent fault in that, but the

13  reality is, a lot of time has gone by.  That's just -- putting

14  it aside, it has.  Witnesses' memories are fading.  We have

15  witnesses who are overseas in the Czechoslovakia or whatever.

16         THE COURT:  Czech Republic.

17         MR. KOROPP:  Czech Republic, yes.  I'm sorry.

18         THE COURT:  Or Slovakia.

19         MR. IVES:  It might be the Ukraine.

20         MR. KOROPP:  I believe it is Ukraine.  So, there's

21  difficulties here.

22         And we've proposed a schedule that, frankly, I think

23  is aggressive.  All of discovery would be completed and

24  dispositive motions by this year.  Their proposal -- you know,

25  by 2020, your Honor.  Their proposal takes you into April of

1   2020, and that's the first time, you know, that we're at

2   loggerheads on the motions.  It could be another, you know,

3   months before that's resolved.  And again, it's all premised

4   on they would win.  If they don't, we've lost almost another

5   year; whereas, under our proposal, we're done.

6          And if they want to file their motion for summary

7   judgment on GPL issues, they can do that.  It won't end the

8   case.  But I don't think it would harm them in any material

9   way, compared to the significant harm that I believe we will

10  suffer if we continue to be completely denied discovery.

11         THE COURT:  All right.  What are your thoughts?

12         MR. GUY:  Thank you, your Honor.  First of all, the

13  idea that we're not being prejudiced by this in opening

14  discovery is just false, absolutely false.  We have been

15  chasing a ghost, your Honor, for over a year.  We finally

16  pinned them down to 18 files, and we would like to resolve

17  this.

18         My client has had to spend over a million dollars

19  chasing down all of this, and now he's talking about

20  international discovery in the Ukraine.  I can only imagine

21  what that will cost.  So, open discovery will be highly

22  prejudicial.

23         At the same time, although they have passed muster

24  under the pleading requirement that requires this Court to

25  assume every fact they allege is true, what they allege, we

1   believe, and we've asserted and we tried to do everything we

2   could within the four corners of the complaint, anything they

3   allege with what they attached, is they have a GNU license.

4   And we were able to show from the public domain that you could

5   go out and find those files, and I think that their expert

6   responded that maybe two or three of them couldn't be found.

7        So, we have 18 files, and when we had the hearing

8   back in September, I was arguing that the GNU license went

9   further than just the license in 18 files.  If they take a

10  file and they put it in and it becomes Chapter 1 of a

11  10-chapter section of code, then that entire 10 chapters is

12  licensed.  And that's verbatim out of the GNU license.

13       So, what we want to do is at the first blush, your

14  Honor, is to resolve this issue of what is protectable under

15  the GNU licenses because that issue has not been resolved.

16       The Court said then -- and I was bringing this issue

17  to the Court's attention, and the Court said, "Right.  But at

18  least you have a start here.  You have 18 things.  And then if

19  they seek discovery on 19 through 28, you can say, 'Well,

20  where is that in the complaint?'  And then you'll either get

21  an answer you like or you don't like; and if there's a

22  discovery scope issue, bring it to me."

23       So, what I'm trying to do is to go to the next step

24  on the merits, which is, fine, they're saying it's these

25  18 files, and that's what the case is limited to; but they're

1 using this as an open door, I think, to go in and expand into
2 a lot of very, very expensive discovery when we believe the
3 vast majority --
4         THE COURT:  Well, how do we know that?
5         MR. GUY:  Pardon?
6         THE COURT:  How do you know that they're going to go
7 beyond the 18?
8         MR. GUY:  Because they sent us 510 document requests.
9         THE COURT:  But those are all withdrawn.
10         MR. GUY:  Your Honor, they're just waiting --
11         THE COURT:  You know, I read the status report, so I
12 know they were all withdrawn.  Yes?
13         MR. GUY:  Well, your Honor, suppose they send us 100.
14         THE COURT:  Then do you have to answer them, or can
15 you say, "No, this is just the 18, and you can only do the 18
16 and the judge said only the 18.  Please withdraw those other
17 ones."  And if they say, "No," you can bring it to me, and you
18 can say, "See, I told you so."
19         MR. GUY:  But what --
20         THE COURT:  And then I get mad at them, and that's
21 a good day for you.  Or they can just do what they said they
22 were going to do and just limit it to the 18, in which case
23 it's not -- it's not un-burdensome, I wouldn't say that, but
24 it's not as burdensome as you fear.
25         MR. GUY:  Well, the point, thought, I want to make

1  sure is clear with the Court, what I'm trying to do is get to

2  the next step.  We don't say that the 18 represent

3  patentable -- I mean, protectable rights; and rather than open

4  up discovery all the way to a traditional open discovery with

5  a dispositive motion after close of discovery on everything,

6  on the 18, we'd like to have a dispositive motion early.  And

7  so if there are really only three files that are at issue

8  here, we can deal with those.

9         THE COURT:  Okay.  But let's not -- just because

10  there's a deadline of whenever -- what's the plaintiff's

11  proposal for dispositive motions?  It's December 22nd.  You

12  don't have to wait until December 22nd.  You could file it in

13  April if you want.

14         MR. GUY:  Understood, your Honor.

15         THE COURT:  And how -- is there going to be discovery

16  in the Ukraine?

17         MR. KOROPP:  Your Honor, the only reason -- and I

18  would preface this by saying I've been practicing in this

19  court for 30 years.  I've never had an issue with abuse of

20  discovery or anything like that.

21         But the Ukraine issue is that's where the people who

22  wrote their program are.  They hired a company in Ukraine.  I

23  don't want to go to Ukraine, but regardless, there's a

24  possibility that that may become an issue in their source

25  code; but I can't control who they hired to write it.

1      THE COURT:  I understand.  So what --

2      MR. KOROPP:  And we would certainly do whatever we

3  can to do it by video or whatever we can do to make it work.

4      THE COURT:  Is Ukraine like Japan, where you have to

5  jump through a million hoops to even get a deposition, or is

6  it more open like Canada?

7      MR. KOROPP:  Well, we had this discussion, I think,

8  prior frankly to me being here, was you had mentioned that

9  they are their agents of Cambium, that you would hold them to

10  a much more lax standard in terms of producing these people

11  and not making it so difficult for us to do that.

12      Because I have not taken any discovery, I honestly

13  don't know what the status is of these people and whether they

14  are simply agents that could be deposed in that way.  I don't

15  know the minutiae of Ukraine practice in terms of taking a

16  deposition there.  And we'll find that out, and we'll

17  obviously do whatever we can to not make that burdensome.

18      And it's not like -- as I said, your Honor, that's

19  not necessarily number one on our discovery list, either, but

20  it is a possibility that depending on who else was developing

21  that program, they may be at issue.

22      But I think as counsel appears to concede, it's not

23  case-dispositive even -- and again, to the extent it has any

24  value, it's premised on that they would win, which I don't

25  think that's a fair premise right now or a fair basis to

1    prevent us from going ahead with discovery.

2           And as your Honor pointed out, everything else has

3    been withdrawn because we looked at it and we said, "Yeah, a

4    lot of this is not relevant anymore.  It's certainly too

5    many."  And our case management order doesn't call for 500

6    document requests.  Personally, I've never seen that, so

7    that's not what we're going to do.

8           And I think we can -- if you've seen from the rest of

9    the case management order, if you put aside bifurcation, other

10   than one other issue about number of hours for depositions,

11   we've agreed on everything else.  So, we're not being

12   difficult in that respect, and we're not being unprofessional,

13   and we're not taking advantage in a way we shouldn't.

14          MR. GUY:  Your Honor, if I may be heard.  On the

15   Ukraine issue, my understanding is that, yes, we did use a

16   Ukrainian outfit to do that; but then one of the people who

17   was involved in that went over to work for them, and we now

18   understand he's moved on.

19          So, the -- I don't know what the extent of that

20   discovery is going to be, other than the fact it will be

21   expensive.

22          But I would like -- before I go to Ukraine or pay

23   someone to go there, I'd like to know that the case is limited

24   to, I don't know, is it 18 files or is it one or two or none?

25   And so before I do that -- I mean, that will be horrendously

1  expensive.  So, I hear the Court that we can proceed with
2  summary judgment promptly, and that, certainly, we will do.
3            But my point here is that rather than open up
4  discovery at this juncture to literally 18 files that we have
5  already shown the Court can take judicial notice of --
6            THE COURT:  No, I can't.
7            MR. GUY:  -- we show are in the public domain.
8            THE COURT:  Wrong.  I can't take judicial notice of a
9  contested expert report.  Judicial notice under Federal Rule
10 of Evidence 201 are things that are not contestable, and I
11 think your expert report is contestable.  You may end up being
12 right, but it's not a judicial notice issue.
13           MR. GUY:  It's a total -- you know, to be right and
14 then cost my client another 1- or $2 million is terrible.
15           THE COURT:  I agree, but there are -- you have
16 remedies for that as well, and you've hinted at those remedies
17 in the status report.
18           MR. GUY:  I agree, your Honor, and I mean, we have
19 done everything we can to find out is there anything
20 protectable here so that we could address it; and that's where
21 we're at loggerheads.  And the big issue is they continue to
22 make a claim based upon more -- they exclude the licensed-in
23 products -- I mean the licensed-in materials, but they don't
24 exclude the full extent of the GNU license, which they do say
25 supersedes their license.

1    So, I understand we can bring a summary judgment

2    motion promptly, and we will do so.  We already have the

3    expert report and the declaration, so I think we've done the

4    bulk of the work and we'll proceed apace.

5    If we can, then, your Honor, all I'm asking is that

6    discovery be somehow limited during this period before we get

7    our summary judgment along.  I think that's incredibly

8    reasonable in light of the burden that we're under.

9    THE COURT:  Okay.  I'm going to adopt the plaintiff's

10   proposed schedule and adopt the plaintiff's proposed limits on

11   deposition hours and the like.  That doesn't mean that the

12   plaintiff can take 50 hours of deposition of the defendants

13   and 35 hours of deposition of non-parties.  That's just the

14   outer limit.  And if one side or the other thinks that the

15   other side has propounded written discovery or is seeking

16   depositions that is beyond the scope of discovery that is

17   either allowed under Rule 26(b)(1) or that makes sense in

18   terms of where we are at this point in the case, then talk

19   to each other about it; and if you have a dispute, you can

20   bring it to me.

21   So, for example, probably an easy example, before

22   you -- everybody goes to the Ukraine or hires, you know, a

23   particular New York lawyer to go over there and to take

24   depositions or videos for documentaries in the Ukraine,

25   before that happens, maybe we ought to figure out what --

1   which of the 18 are in the case or not.

2          Now, if the defendants are dragging their feet on

3   bringing a summary judgment motion on the 18, then I'll be

4   more receptive to see things the plaintiff's way on that

5   particular issue.  If the defendants haven't moved for

6   summary judgment but it's because the plaintiff is dragging

7   its feet on discovery, then I'll be more inclined to see

8   things on the defendants' issue.

9          That's just an illustration of -- because I don't

10  know how this is going to play out, I don't know how long the

11  targeted discovery that the defendants have in mind will take

12  because I don't know how cooperative each side's going to be,

13  I don't want to map out exactly how things are going to go at

14  this particular point in time.

15         It's going to be -- if there are disputes over scope,

16  if there are disputes over timing, it will be an entirely

17  fact-and-circumstances-dependent inquiry from my perspective;

18  and I'll just have to ask and figure out what has happened and

19  who's doing what and where you are.

20         But there are -- nearly all cases that I have, we're

21  able to figure things out without bifurcation.  In other

22  words, discovery's -- proceeds without bifurcation in a manner

23  that is sensitive to the overriding imperatives that are in

24  Rule 26(b)(1).

25         And again, I'm not saying that you're all going to

1    agree on it.  You might not.  But if you disagree, you can
2    bring it to me.

3         And I just want to make clear, just because I'm
4    saying, I don't know how many hours for non-parties, you know,
5    50 hours rather than 35 hours, it may end up being 35 hours is
6    all that's required, but I don't want to put an artificial
7    limit because it may be that you need 40 or 42 or 45.  I don't
8    know.  But you just can't take non-party depositions to fill
9    the 50 hours and say, "Well, it's 49 hours, so we're fine."
10   No.  It may end up being 20 hours.  I don't know.  It all
11   depends on who you want to depose and on what subject.

12        So, the outer limit's 50 on the non-parties.  In
13   terms of party depositions, it's 35 hours for each party
14   group, although I don't know how you're going to take 35 hours
15   of deposition on an individual defendant.  I think you're
16   stuck with seven.  So, again, that's another situation where
17   the outer bound is not going to be the actual bound.

18        So, we'll just go with the plaintiff's proposal with
19   all the caveats that I've just mentioned.

20        I am going to refer this case to the magistrate judge
21   for purposes of a settlement conference.  And I'm not saying
22   that now is the right time for a settlement conference.  We
23   have a bit of an unusual situation where the defendants want
24   a settlement conference and the plaintiff doesn't.  95,
25   99 percent of the time, it's the converse.

1       But I would like for the magistrate judge to start

2   these discussions with you and figure out when would be the

3   right time.  And it's not like the magistrate judge, whoever

4   it's going to be -- and we're going to have to get a new

5   magistrate judge because Mason has retired.  They're not going

6   to be able to get you in in the next month or so anyway.  So,

7   you'll have those discussions with the magistrate judge as to

8   when will be the right time.

9       Anything else that you'd like to discuss?

10      MR. GUY:  Your Honor, just in terms of what we've

11  stated here, we have -- we've attempted to engage in informal

12  settlement discussions according to what we said in the --

13      THE COURT:  I'm sorry.  Let me interrupt you.

14      There's one way in which I'm not adopting the

15  plaintiff's discovery schedule, and that's the February 25th

16  date for issuing initial written discovery requests.  That's

17  the deadline, but if the defendants would like to issue their

18  written discovery now, they can.  It's just that the initial

19  round should be served no later than February 25th.

20      So, again, if the defendants want to get in early

21  and drill down on these 18 and see whether it's GPL or not,

22  you can get started right now.  All right?

23      MR. GUY:  Your Honor, can we move the January 3rd,

24  2020, supplement MIDP at least out seven days until the 10th?

25      THE COURT:  Yeah.  I understand why, and so why don't

1  we move the January 3rd date to the 10th, and then we'll move
2  the January 10th date to the 17th.
3          MR. GUY:  Thank you.
4          MR. IVES:  And, your Honor, I believe under the
5  rules, one more date would move then.  If the disclosures
6  aren't in until the 10th, would the production of ESI that's
7  triggered by those disclosures go back seven days as well?
8          THE COURT:  Yes, whatever the rule is.
9          MR. IVES:  So that would be February 8th, then.
10          MR. GUY:  Thank you.  Thank you, counsel.
11          THE COURT:  All right.  Anything else you'd like to
12  discuss?
13          MR. GUY:  Your Honor, we had -- just on the
14  settlement, although we mentioned informal discussions, we
15  have yet to get a settlement demand after more than a year, so
16  we don't even know what their demand is in terms of any
17  monetary amount.  So, I don't want to leave the Court with the
18  impression that we are discussing.  We have provided the
19  number of units that Elevate has been used at their request,
20  and I just wanted to leave the Court with that.
21          THE COURT:  Sure.  And I think if you have questions
22  on that and you want to get the ball moving, that will be in
23  the magistrate judge's purview.
24          MR. GUY:  One final thing.  Given the Court's -- and
25  I want to thank you for this, your enormous investment in the

1  motions to dismiss, discovery issues will remain with you, is
2  that correct?
3            THE COURT:  Yes.  I keep discovery.
4            MR. GUY:  Thank you.
5            THE COURT:  Anything further?
6            MR. KOROPP:  The only last thing, your Honor, and we
7  just didn't -- hopefully, I think we're going to be able to
8  resolve it.  The defendants filed 37 affirmative defenses, the
9  vast majority of which are simply one sentence, things like,
10  "You acted unfairly," or whatever.  We've informed them that
11  that's not proper practice here in the Northern District.
12            We're going to try to resolve it informally.  We may
13  appear in front of you again to resolve some of that, but
14  hopefully not.  And we've taken the step of saying, "Let's
15  just try to do this amicably rather than immediately rushing
16  in with the motions."
17            MR. GUY:  Your Honor, the first I heard of it was
18  9:00 a.m. this morning, so we'll address it.
19            THE COURT:  Very good.
20            MR. GUY:  Thank you, Judge.
21            THE COURT:  Thanks.
22            THE CLERK:  Do you want to set another date?
23            THE COURT:  Let's set a next date, the week of
24  February 17th.
25            THE CLERK:  How about February 20th, 9:00 a.m.

1    MR. KOROPP:  Thank you, your Honor.

2    MR. GUY:  I'm sorry, your Honor.  I didn't hear that.

3  That was for the --

4    MR. KOROPP:  20th.

5    THE COURT:  February 20th, does that work?

6    MR. GUY:  For which date?  I'm sorry.

7    THE COURT:  For the next status hearing.

8    MR. GUY:  Okay.

9    MR. IVES:  Yes, your Honor.  That works for

10  plaintiff.

11    MR. GUY:  Sorry.

12    THE COURT:  That's all right.

13    MR. KOROPP:  Well, happy holidays if we don't see you

14  before then.

15    THE COURT:  You, too.

16    MR. GUY:  Yes, that's fine.  Thank you, your Honor.

17    THE COURT:  Okay.  Thank you.

18    MR. IVES:  Thank you.

19   (Which were all the proceedings heard.)

20                    CERTIFICATE

21   I certify that the foregoing is a correct transcript from

22  the record of proceedings in the above-entitled matter.

23

24  /s/Charles R. Zandi              December 11, 2019

25  ——————————————        ——————————————
    Charles R. Zandi               Date
    Official Court Reporter