**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| UBIQUITI INC., f/k/a Ubiquiti Networks, Inc., | |
| *Plaintiff*, | Civil Action No.: 1:18-cv-05369 |
| v. | JURY TRIAL DEMANDED |
| CAMBIUM NETWORKS, INC.; CAMBIUM NETWORKS, LTD.; BLIP NETWORKS, LLC; WINNCOM TECHNOLOGIES, INC.; SAKID AHMED; and DMITRY MOISEEV | Hon. J. Gary S. Feinerman |
| *Defendants*. | |

**PLAINTIFF UBIQUITI INC.'S REPLY IN SUPPORT OF
MOTION TO COMPEL DE-DESIGNATION OF DEFENDANTS'
ATTORNEYS' EYES ONLY PRODUCTION AND FOR SANCTIONS[1]**

Defendants contend they acted in good faith when they designated 99.9% of their production as Attorneys' Eyes' Only ("AEO").[2]  Merely to state this proposition is to mock its legitimacy.  Defendants' wholesale failure to make a good faith effort to determine which of its documents are validly entitled to AEO protection violates the Protective Order and governing law, and has unfairly impeded Ubiquiti from conferring with its outside counsel on facts learned in discovery.  To allow this litigation to proceed (and any meaningful settlement discussions to

---

[1] Capitalized terms shall bear the same meaning as defined in Ubiquiti's Motion to Compel De-Designation of Defendants' Attorneys' Eyes Only Production and for Sanctions (Dkt. No. 132, the "Motion") and Defendants' Opposition thereto (Dkt. No. 146, the "Opposition").  Given the Court's entry of a modified Protective Order to address source code review protocols (without any modification of relevant designation provisions), Ubiquiti shall refer to the "Protective Order" as encompassing both the original version (Dkt. No. 102) and the modified version (Dkt. No. 154).

[2] In light of Defendants' attempts to distinguish between the two forms of attorneys' eyes only designations (*see* Opp. at 2 n.4, 8-9), Ubiquiti shall use "AEO" to refer collectively to designations restricting access to outside attorneys only, and shall use the terms "CONFIDENTIAL RESTRICTED – ATTORNEYS' EYES ONLY" ("CR-AEO") and "OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" ("Source Code AEO") where referring to these specific labels.

occur), Ubiquiti's counsel must be permitted to disclose material evidence to, and confer with, its in-house client attorneys under the terms of the Protective Order.  Accordingly, Ubiquiti requests that the Court grant its Motion in full.

**I.     Defendants Violated the Protective Order and Abused the Discovery Process by Failing to Designate Production Documents in Good Faith.**

Defendants' overbroad AEO designations violate the Protective Order and controlling law.  Rather than recognize this deficiency and agree to re-designate them, Defendants double-down and attempt to justify their misconduct through a wide-array of misleading characterizations and unsupported accusations.  As detailed herein, these arguments each lack legal and factual merit, and should be rejected.

**A.     Defendants Indiscriminately Designated Virtually Their Entire Production As Attorneys' Eyes Only (AEO) In Violation of Applicable Law.**

In their Opposition, Defendants claim they did not indiscriminately apply AEO designations to their entire production, as evidenced by the fact that "Defendants' production included ***thousands*** of documents with different designations and many with no confidentiality designation at all."  Opp. at 2 (emphasis in original).  This assertion is simply false.

Defendants admit that 61,873 out of 61,957 production documents (99.9%) were designated AEO in a manner that restricted access to outside counsel only.  *See* Opp. at 2 n.4, 4 ¶ 3 (citing Swenson Dec. ¶ 1).  A mere 84 files (0.136%) were designated in a manner permitting disclosure to Ubiquiti's in-house counsel. These summary data do not even tell the full story:

1)     <u>Non-Designated Documents – Duplicate AEO Designations</u>:  Out of the 84 files that were not designated as AEO:  (i) twenty are merely blank pieces of paper denoted, "UNSUPPORTED OR EXCLUDED FILE TYPE," that contain no content (incredibly, Ubiquiti noted another 3,286 instances in which such production slip sheets are actually designated AEO – all of which are subject to a pending meet/confer request seeking production of readable files);

and (ii) out of the remaining 64 files (comprised primarily of marketing materials), many appear to have been designated as AEO elsewhere in their production.[3]

2) <u>Improper Source Code AEO Designations</u>: While Ubiquiti acknowledges Defendants designated 3,657 documents as Source Code AEO (as distinct from the 58,216 documents they marked CR-AEO), this designation likewise prevents disclosure to Ubiquiti's in-house attorneys and thus there exists no basis to draw a distinction between these AEO designations for purposes of this Motion. Furthermore, much like the rest of Defendants' production, many of the documents that bear this Source Code AEO designation are not actually protectable in this manner. For instance, numerous of these documents refer to publicly-available source code – including that of a competitor (*see, e.g.*, Ives Reply Decl. ¶ 3 & Ex. B at CMBM-00172869) – while others are not even source code, and instead include e-mails and other documents (*see, e.g., id.* at CMBM-00038908-12, CMBM-00119755), and at least 50 more are Common Gateway Interface scripts bearing ***Ubiquiti copyrights*** as to which there exists no basis for an AEO designation to be applied (*see, e.g., id.* at CMBM-00003166-68). All of these improper AEO designations must be withdrawn under the Protective Order.

Throughout their Opposition, Defendants criticize Ubiquiti for not having distinguished the aforementioned categories from the CR-AEO designations referred to in its Motion.[4] But such criticism is misplaced. Defendants in no way contested Ubiquiti's assertion that Defendants

---

[3] *See* Declaration of Erik J. Ives in Support of Reply ("Ives Reply Decl."), at ¶ 2 (attached hereto as Appendix 1). As just one example of this duplication (and yet another example of Defendants' total disregard of their duty to only designate documents AEO in good faith), an Elevate logo file bearing no designation was separately designated AEO along with other Elevate logo files when attached to a parent email simply stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ives Reply Decl. at ¶ 2 & Ex. A.

[4] *See, e.g.*, Opp. at 2-3 (claiming that Ubiquiti's request to de-designate is based on a "false narrative" and "premised on a falsehood"); *id.* at 8-9 (claiming that Ubiquiti's counsel "failed to review Defendants' production carefully enough to notice that over 3,700 documents were not designated 'Confidential Restricted – Attorneys' Eyes Only'").

had designated "their entire production" as CR-AEO during the parties' pre-filing meet/confer. Mot. Ex. D at 4-5.[5]  Because Defendants' production contained no confidentiality metadata field (thus necessitating a page-by-page review to identify such designations), Defendants were the only ones in the position to do so.  And Defendants' rampant use of CR-AEO designations on non-substantive documents only further corroborated Ubiquiti's understanding that this designation had been applied to all documents.  Regardless, for purposes of this Motion, it is immaterial whether Defendants applied AEO designations to 100% or 99.9% of their production.

Defendants also characterize their designations as having been performed "appropriately as best they could", and completed in "good faith" "notwithstanding some mis-designated documents."  Opp. at 8, 13.  Defendants then argue that Ubiquiti's re-designation request should be rejected since it is based on "only five documents (out of the 60,000 produced) that were given a confidentiality designation when they arguably should not have been designated confidential."  *Id.* at 9.  This type of rhetoric distracts from the actual matter at hand.  Ubiquiti made clear that those five documents were chosen as mere examples of over-designation.  *See* Mot. at 7.  Many, many more exist in the production.  As just a few more examples:

- Attached to this Reply is a random sample of thirty (30) files from Defendants' production (representing file #s 1-10, 20,001-20,010, and 40,001-40,010) – all of which Defendants designated AEO.  *See* Ives Reply Decl. at ¶ 4 & Ex. C.  Not a single one of these documents warrants AEO designation.  Indeed, the vast majority are nothing more than routine internal and customer communications (re: Elevate troubleshooting and promotions) and system-generated e-mails (e.g. calendar invites and system alerts).[6]

- A file name search for "Accepted" identifies 362 autoreply calendar appointment acceptance emails, just one of which has any substantive text outside of the

---

[5] Defendants' assertion that the Motion was filed "***despite Defendants having informed them [Ubiquiti's counsel] of this***" (Opp. at 8-9, emphasis in original), is simply false and belied by the actual content of Defendants' May 15, 2020 meet/confer correspondence.

[6] This sample is illustrative in that it also includes substantive internal communications that are directly relevant to the claims and damages at issue (*see*, *e.g.*, *id.* at CMBM-00052663-64), which document necessarily must be re-designated as Confidential for the reasons set forth in Parts I.B. and I.C. below.

to/from/subject fields – all of which Defendants improperly designated AEO. *See* Ives Reply Decl. at ¶ 5.

- A file name search for "Automatic Reply" identifies 225 out-of-office e-mails – all of which Defendants improperly designated AEO. *See* Ives Reply Decl. at ¶ 6.

- Finally, the 20 additional documents that Defendants recently de-designated represent further examples, while also highlighting that Defendants' re-designation of this random (small) set of documents is merely an attempt to deflect attention from its abusive designations. *See* Opp. at 6, 14 (citing Swenson Decl. Ex. 4).

This brief could spend dozens of pages summarizing the tens of thousands of overbroad AEO designations applied by Defendants. But that is not necessary, as it is incumbent upon Defendants to have properly applied designations in good faith. The overarching data and underlying content of Defendants' production confirm they ignored this obligation, and indiscriminately applied AEO designations without any evaluation of the documents themselves.

In addition to violating the express terms of the Protective Order, it is well established that a party's excessive and indiscriminate use of AEO designations in this manner constitutes discovery abuse in violation of the "good faith" requirement inherent in Rule 26(c). *See* Mot. at 6 (citing *In re Ullico Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006); *THK America, Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 646 (N.D. Ill. 1993)). Defendants do not even attempt to distinguish the present circumstances from those analogous cases cited in Ubiquiti's Motion, wherein courts have uniformly deemed AEO designations at rates far less than Defendants to be excessive and presumptively improper. *See*, *e.g.*, *THK America*, 157 F.R.D. at 645 (holding 79% AEO rate to be "absurdly high"); *Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229, 2014 WL 6886923, at *3-5 (D. Col. Dec. 5, 2014) (sanctioning party who designated 90% of production as AEO); *In re Ullico*, 237 F.R.D. at 317-18 (finding 99% confidentiality rate to be a gross abuse of designation); *Procaps S.A. v. Patheon Inc.*, No. 12-cv-24356, 2015 WL 4430955, *7 (S.D. Fla. July 20, 2015) (noting that designation percentages of 95% have "frequently been condemned").

Moreover, none of the case law cited in Defendants' Opposition actually supports Defendants' designation of 100% (or 99.9%) of its production as AEO. For example, the primary case Defendants rely on is entirely inapposite because it involved a designation that expressly permitted the documents at issue to be viewed by a limited number of in-house counsel – in precisely the same manner provided by 'Confidential' designations in this case. *See Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 1299701, at *3 (D.N.J. Apr. 16, 2012) (recognizing the "'Highly Confidential' designation in this case allows in-house counsel to see such documents"). The remaining cases cited in Defendants' brief likewise support granting Ubiquiti's motion – not denying it. *See, e.g.*, *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *6-8 (W.D. Mich. Feb. 9, 2009) (refusing to enter the "most restrictive possible protective order" to limit the disclosure of historic pricing information to outside counsel only, while recognizing that "[i]t is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client").[7] In sum, there exists no authority on which Defendants can rely to justify their overbroad and indiscriminate AEO designations.

**B.    The Exhibit B Production Documents Must Be De-Designated to Confidential (Not AEO).**

Defendants persist in their refusal to re-designate the documents attached as Exhibit B to the Motion from AEO to "Confidential – Subject to Protective Order" (herein "Confidential") based on the purported harm that may occur if such information were disclosed to Ubiquiti. *See*

---

[7] In citing to *Ubiquiti Networks, Inc. v. Kozumi USA Corp.* No. 12-cv-2582, 2013 WL 772664, at *2-3 (N.D. Cal. 2013), Defendants also claim that there is a purported history of Ubiquiti "run[ning] up" costs by challenging improper designations. Opp. at 7 n.5, 15. Yet again, this claim is false. The *Kozumi* court *agreed* with Ubiquiti that defendants in that case "overused and abused the confidentiality designations available under the Stipulated Protective Order," yet declined to impose sanctions because the defendants had already agreed to "remove[] the AEO designations from 95 percent of the documents" – which is the opposite of what Defendants have done here. *Kozumi*, 2013 WL 772664, at *2-3.

Opp. at 2, 10-13. In so doing, Defendants largely ignore the enhanced security protections afforded to the parties as direct competitors under the Protective Order, whereby access to documents marked Confidential is restricted to just "2 in-house counsel or employees who are not competitive decision makers" that are "determined in good faith [to be] reasonably necessary to the conduct of the litigation." Protective Order at §§ 2, 5, 14.[8] In hypothesizing about the alleged risks of Confidential documents being shown to Ubiquiti deposition witnesses (Opp. at 2, 10-11), Defendants likewise ignore that the Protective Order restricts such access only for witnesses to "whom disclosure is reasonably necessary" (Protective Order at § 14(b)(7)).[9]

Defendants also argue that their AEO designations are proper because the Exhibit B documents allegedly contain material that is "so sensitive" that disclosure to Ubiquiti "would cause demonstrable harm to Cambium." Opp. at 10; *see id.* at 10-13. Yet, as detailed in the Motion (and observable within the Exhibit B files themselves), these documents are each between 2 and 4 years old and do not contain any trade secrets or other highly confidential subject matter. Moreover, Defendants' claims as to the "highly-sensitive" nature of this information are unsupported and instead appear to have been generated without any substantive scrutiny, which even their handpicked excerpts show. *See* Swenson Decl. Ex. 5. For example:

- CMBM-00066211 is an almost 3-year-old e-mail chain with no detailed or technical information. With just a few short paragraphs in total, it merely gives Cambium's business strategy a tautological description (███████████████) in the same manner

---

[8] In an attempt to justify their unsupported fears, Defendants claim Ubiquiti's counsel "could not identify who those [in-house attorney] individuals at Ubiquiti would be." Opp. at 6; *see also id.* at 9. This is not true, as Ubiquiti's counsel has expressly advised Defendants that these individuals will be the "two in-house counsel with direct involvement and/or decisionmaking authority in this action" (Swenson Decl. Ex. 1 at pg. 7), and further confirmed during the parties' telephonic meet/confer that they will be identified by name/title in advance of any disclosure. Defendants further ignore that (i) identification of these individuals has not previously been needed in light of Defendants' refusal to designate documents as Confidential, and (ii) Defendants have likewise not identified their own client representatives to date.

[9] Defendants' speculative concerns likewise ignore the reality that Ubiquiti's counsel is unlikely to re-direct its own employees using Cambium documents on which he/she would lack foundation to testify.

described in Cambium's public 10-K filings.  It certainly does <u>not</u> contain "specific revenue numbers," as Defendants assert.  *See* Swenson Decl. Ex. 5, at 15.

- As pertains to CMBM-00037126, Defendants argue that the referenced information "focuses on Cambium's internal, confidential strategic plans with respect to pricing strategy" (*id.* at 20), when in fact the quoted text is from an April 2017 e-mail chain with a third-party supplier for Cambium and numerous other companies.

- In another instance, Defendants focus on an excerpt originating from a public, online forum.  *Compare id.* at 19-20, *with* http://community.cambiumnetworks.com/t5/ePMP-Elevate/ePMP-Elevate/td-p/62730/page/2# (last visited June 8, 2020).

Finally, it is inescapably true that the information contained in Exhibit B is directly relevant to the claims in this case (*see infra* at Part I.C.).  Defendants' own descriptions concede that this information includes strategic plans, operation and profits realized from the Elevate project that is the focus of this litigation.  *See* Swenson Decl. Ex. 5.

In the end, Defendants' entire argument for maintaining these AEO designations is premised upon speculative allegations implying that Ubiquiti's outside counsel and its two in-house attorneys will violate the terms of the Protective Order.  Significantly, however, controlling law makes clear that this is not a proper basis upon which to restrict access to relevant documents in litigation.  *See*, *e.g.*, *Motorola, Inc. v. Lemko Corp.,* No. 08 C 542, 2010 WL 2179170, at *4-5 (N.D. Ill. June 1, 2010) (holding that there was no appreciable risk of disclosure of sensitive competitive information where the recipients are subject to the court's protective order and its non-disclosure/non-use restrictions); *JAB Distribs., LLC v. London Luxury, LLC,* No. 09–CV–5831, 2010 WL 4008193, at *3 (N.D. Ill. Oct.13, 2010) ("A party cannot simply assert—without any support—that the pertinent protective order displays a systemic weakness that renders its prophylactic powers inefficacious. Were it otherwise, a litigant could wholly frustrate the process of discovery that is fundamental to the litigation

8

system.").[10]  For each and all of these reasons, the Exhibit B documents should properly be de-designated from AEO to Confidential.

### C.    Defendants' Overbroad Attorneys' Eyes Only (AEO) Designations Have Prejudiced Ubiquiti and Obstructed the Parties' Settlement Efforts.

At the very outset of their Opposition (in both the introduction and argument sections), Defendants contend Ubiquiti's in-house counsel should not need to access Defendants' discovery because they have previously been provided with information regarding the approximate number of Elevate users/sales for settlement purposes.  *See* Opp. at 1, 7-9.  This argument is illogical, and directly contradicts the adversarial legal process.

As an initial matter, it is well established that a party is necessarily prejudiced by overbroad AEO designations that restrict outside counsel's ability to disclose and discuss material evidence with its client.[11]  As just one example of the specific prejudice imposed here, Ubiquiti cannot possibly have complied with Magistrate Judge Cumming's requirements for submission of its pre-settlement conference demand letter without referencing the evidence (on liability) and financial data (on damages) that has been produced to date – let alone been able to confer with and obtain authorization from Ubiquiti's in-house attorneys regarding the terms of its

---

[10] *See also*, *e.g.*, *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1085-86 (N.D. Ill. 2015) ("In attempting to meet its burden as the designating party to show that there is good cause for maintaining the AEO designation on the challenged groups of documents, Tru Group has made only the kinds of broad allegations of unspecified harm that consistently have been found insufficient to justify the 'extreme measure' of preventing a party's attorneys from sharing the documents with their clients … In short, Tru Group's broad allegations of harm are insufficient to show that the years-old information poses any on-going competitive threat to the defendants or any unwarranted commercial advantage to GMT."); *Countryman v. Cmty. Link Fed. Credit Union*, No. 1:11–CV–136, 2012 WL 1143572, at *7 (N.D. Ind. Apr. 3, 2012) ("the Court will not presume that any party to the case will violate its [protective order] terms, which have been made an order of this Court").

[11] *See*, *e.g.*, *Glob. Material Techs*, 133 F. Supp. 3d at 1088 (holding that trial preparation is made more difficult and expensive when a party's attorney is unable to share with the party facts that are material to its prosecution of the case); *Team Play Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005) (noting that "if [AEO] designation is not removed, Boyer's counsel will be prohibited from discussing the damages aspect of his case with their client and Boyer will have no information on which to make an intelligent decision as to what a reasonable settlement figure might be").

demand.[12]  Nor should Ubiquiti's outside counsel be forced to identify each specific document that it wishes to discuss with its client by requiring that it seek permission from Defendants to do so via a de-designation request (which requests have been refused in any event).

Defendants are likewise wrong to continually reference Ubiquiti's election not to make a formal settlement demand prior to obtaining discovery as an alleged sign that it is pursuing this litigation in bad faith.  In fact, the discovery obtained to date has only served to confirm the wisdom of its decision.  While the Court need not address the merits of this action in deciding this de-designation Motion, it is nevertheless instructive that Defendants would have Ubiquiti (and this Court) believe that the parties' settlement discussions should focus solely on the approximate number of Elevate users/sales.[13]  That is far from the case.  Documents produced by Defendants confirm that Ubiquiti's damages extend far beyond mere sales of Elevate software.



---

[12] Magistrate Judge Cummings recognized this same reality in granting Ubiquiti's motion for extension (over Defendants' opposition) in order to "allow the parties to properly prepare settlement submissions that will prove beneficial in future settlement negotiations."  Dkt. No. 144.

[13] *See* Opp. at 1, 7 & Swenson Decl. Ex. 2.

[14]



Defendants further seek to prevent Ubiquiti's counsel from conferring with its client as to the full extent of Ubiquiti's damages, including the disgorgement of Cambium's profits resulting from this illegal scheme as reflected within the documents attached as Motion Exhibit B (addressed in further detail in Part I.B. above).

The information and documents detailed herein are directly relevant to Ubiquiti's prosecution of this action, as well as Ubiquiti's preparation for the upcoming settlement conference. Yet, to date, Ubiquiti's counsel has not been able to share any of this material with its client on account of Defendants' improper AEO designations. It must be left up to Ubiquiti, not Defendants, to decide the evidence, documents, and information to be (i) presented in the pre-settlement conference submission, (ii) evaluated by its in-house client attorneys for purposes

---

15

of formulating Ubiquiti's settlement demand, and/or (iii) relied upon by Ubiquiti to prosecute its claims. For that to happen, Defendants' overbroad AEO designations must be stricken.

## II.    Defendants' Meritless Accusations Do Not Excuse Their Discovery Misconduct.

In their Opposition, Defendants repeatedly attempt to distract the Court from their overbroad AEO designations by lobbing unfounded accusations against Ubiquiti. Each of these arguments lacks merit and should be disregarded. For instance:

(a) <u>Ubiquiti's Compliance with Its Meet/Confer Obligations</u>: Defendants repeatedly accuse Ubiquiti of having failed to comply with its meet/confer obligations prior to the filing of this Motion. *See* Opp. at 1-3, 8, 14-15. The written record on this point speaks for itself, and confirms that Ubiquiti repeatedly attempted to resolve this matter via the meet/confer process over the course of more than 2 ½ weeks prior to the filing of this Motion, including written communications sent on May 20th (requesting a response by close of business May 22nd) and May 23rd (requesting a response on May 26th) that were simply ignored by Defendants. *See* Mot. at 3-5, ¶¶ 3, 3(a)-(d) & Exs. C & D.[16] Had Defendants responded to Ubiquiti's meet/confer requests – or even reached out to request further time to do so – the parties may have been able to resolve certain aspects of this matter without court intervention. Every one of Defendants' complaints about timing ring hollow, as they refused to respond in any manner until forced to do so by the Court. *See* Dkt. No. 138. And even then, Defendants persisted in refusing to comply

---

[16] Defendants' abbreviated references to the Court's Covid-19 General Administrative Orders in this context are also misplaced. *See* Opp. at 2-3, 5. Ubiquiti's counsel has repeatedly sought to work with Defendants' counsel to accommodate any delays or concerns arising from the Covid-19 pandemic. Yet, not once did Defendants request additional time to confer on this matter. And even now, Defendants have failed to identify any reason why this designation challenge could not timely be addressed between counsel. Moreover, any such extensions would have only served to delay resolution of this matter, as Defendants unilaterally denied Ubiquiti's challenge in their May 15, 2020 e-mail (before choosing to simply ignore Ubiquiti's subsequent communications).

with their obligations to re-designate documents in good faith under the terms of the Protective Order. *See* Ives Reply Decl. at ¶¶ 8-12; Swenson Decl. Exs. 1 & 4.

(b) <u>Allegedly Improper Motive for Challenging Designations</u>: Defendants further accuse Ubiquiti of having improperly challenged Defendants' AEO designations "merely to run up Defendants' costs." Opp. at 7; *see also id.* at 1, 7-9. Nothing could be further from the truth. Defendants' overbroad AEO designations have prevented Ubiquiti's counsel from being able to consult with its client in any way regarding the discovery produced in this case. Given the impending deadline for the filing of Ubiquiti's pre-settlement conference demand letter (which deadline Defendants refused to extend even after the filing of this Motion), Ubiquiti had no choice but to seek assistance of the Court.

(c) <u>Defendants' Flawed Production Comparisons</u>: Defendants also attempted to justify their non-compliance by comparing the volume of the parties' respective productions. *See* Opp. at 2-3. Yet, Defendants ignore that Ubiquiti has produced all responsive documents requested by Defendants, and that Defendants have not made a single objection or meet/confer request as to contents of Ubiquiti's written discovery responses or document production.[17] Defendants' comparison is further skewed by the fact that they chose to strategically respond to Plaintiffs' discovery requests with a proverbial 'document dump' containing a wide array of non-substantive documents (such as the out of office messages detailed above, among numerous others). Finally, this flawed comparison is ultimately irrelevant to the pending Motion, and in no way justifies Defendants' failure to comply with the terms of the Protective Order in this case.

---

[17] As this Court is well aware, the parties have engaged in meet/confer discussions with respect to the production of source code, which matter has been fully resolved pursuant to the parties' recent meet/confer and the Court's entry of a modified protective order (Dkt. Nos. 145, 154). However, no further objections have been made with respect to Ubiquiti's discovery responses.

### III.    The Relief Requested in Ubiquiti's Motion Should Be Granted.

Defendants have abjectly failed to designate their production in "good faith" as required under the terms of the Protective Order.  Defendants have further exacerbated this matter by refusing to respond in good faith to Ubiquiti's meet/confer requests – thus necessitating the filing of this Motion.  And even now, rather than concede the need to re-designate their document production, Defendants attempt to justify their misconduct by, among other tactics:    (i) questioning Ubiquiti's counsel's motives for seeking to discuss the content of Defendants' discovery with its client; and (ii) demanding that Defendants be allowed to control the flow of information to be considered by Ubiquiti for settlement purposes.  In these circumstances, the relief requested in Ubiquiti's Motion is both necessary and warranted.  Specifically, there exists good cause for the Court to enter an order granting the following:

(a) Exhibit B De-Designation:  Compelling Defendants to de-designate the specific documents attached as Exhibit B to the Motion from AEO to "Confidential-Subject to Protective Order", which reduced designation is both necessary and proper for the reasons documented in Part I.B. above.[18]

(b) De-Designation Procedures:  Compelling Defendants to re-designate their remaining production in accordance with the terms of the Protective Order, to be completed within twenty-one (21) days or such other period as determined at the Court's discretion.[19]

---

[18] As noted in Defendants' Opposition, Ubiquiti has previously clarified that a typographical error exists in the conclusion of the Motion, in which the numbering for Exhibit "A" and Exhibit "B" were transposed.  As made clear from the contents of the Motion, as well as the parties' meet/confer correspondence pre-dating the Motion, it has always been Ubiquiti's position that the Exhibit B documents should be designated as "Confidential-Subject to Protective Order".

[19] It remains Ubiquiti's position that the Exhibit A documents, as well as the non-confidential documents attached to this Reply, are required to be de-designated to "no designation" under the terms of the Protective Order.  Nevertheless, rather than require the Court to enter a ruling as to each of these individual documents, Ubiquiti requests that they be subject to re-designation pursuant to this procedure.

Given the breadth and continued nature of Defendants' improper AEO designations, Ubiquiti further requests that the entire production be tentatively designated as Confidential during this process (with exception of source code files).[20] This procedure is both warranted under applicable law[21] and necessary to allow Ubiquiti's counsel the ability to confer with in-house counsel on its forthcoming settlement demand letter (required to be filed within 14 days after the Court's ruling on this Motion).

(c) <u>Reimbursement of Fees/Costs</u>: Awarding Ubiquiti reimbursement of its reasonable costs and attorneys' fees incurred in connection with this Motion pursuant to Rule 26(c) and Rule 37(a)(5). *See* Mot. at 10-11 (collecting cases); *see*, *e.g.*, *Procaps*, 2015 WL 4430955, at *6 ("the failure to obey a protective order's prohibition against indiscriminate designations is covered by Rule 37 and its fee-shifting presumption in favor of the prevailing party on a motion to compel").[22]

## **CONCLUSION**

For the reasons set forth herein and in the original Motion, Plaintiff Ubiquiti Inc. requests this Court to grant the Motion and enter an order granting the specific relief requested herein.

---

[20] As proposed in Ubiquiti's May 29, 2020 meet/confer correspondence (Swenson Decl. Ex. 1 at pg. 6), Ubiquiti has no objection to Defendants' continued use of the designation of "Outside Attorneys' Eyes Only – Confidential Source Code" for production files that actually contain source code.

[21] *See*, *e.g.*, *In re Ullico*, 237 F.R.D. at 318 (ordering party to re-do its entire confidentiality designations) (*citing Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (imposing a short deadline for party to reclassify its production as a result of its improper classifications)).

[22] Notably, even if Defendants' sweeping AEO designations had not been done in bad faith, bad faith is not required to enter Rule 37 sanctions based on Defendants' discovery violations. *See id.* at *11, fn. 5 (imposing sanctions as a "consequence of taking certain unsuccessful discovery positions, such as indiscriminately designating 95% of a large-scale document production as 'highly confidential'").

Dated:  June 8, 2020

Respectfully submitted by:

FOX SWIBEL LEVIN & CARROLL LLP

*/s/ Erik J. Ives*
David Koropp (ARDC #6201442)
dkoropp@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Steven J. Reynolds (ARDC #6293634)
sreynolds@foxswibel.com
Steven L. Vanderporten (ARDC # 6314184)
svanderporten@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

*Attorneys for Plaintiff Ubiquiti Inc., f/k/a Ubiquiti Networks, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 8, 2020, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/ Erik J. Ives*
Erik J. Ives