IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CAMBIUM NETWORKS, INC.;<br>CAMBIUM NETWORKS, LTD.;<br>BLIP NETWORKS, LLC;<br>WINNCOM TECHNOLOGIES, INC.;<br>SAKID AHMED; and<br>DMITRY MOISEEV<br><br>*Defendants*. | Civil Action No.: 1:18-cv-05369<br><br>**JURY TRIAL DEMANDED** |

## JOINT STATUS REPORT

Plaintiff Ubiquiti Inc. (f/k/a Ubiquiti Networks, Inc.) ("Ubiquiti"), by and through its undersigned counsel, and Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev ("Defendants") (collectively Defendants and Ubiquiti are referred to as the "Parties"), by and through their undersigned counsel, respectfully submit this Joint Status Report pursuant to the Court's order that the Parties report on the progress made meeting and conferring regarding the redaction of certain contested documents solely for the purpose of initial settlement negotiations. Dkt. 167.

The Parties hereby confirm that they have been able to agree upon certain redactions for the de-designation of contested documents for purposes of the forthcoming magistrate settlement conference pursuant to the Court's instruction at the June 10, 2020 hearing. *See* Dkt. No. 167.

1

I. **Ubiquiti's Position**

In reaching this meet-and-confer agreement for purposes of settlement, Ubiquiti expressly reserved all rights with respect to its pending Motion for De-Designation and agreed to accept Defendants' redactions solely for the purpose of resolving the pending matter as it pertains to Ubiquiti's submission of its pre-settlement conference demand letter as directed by the Court.

For the reasons set forth herein, Ubiquiti continues to request that the Court grant the relief sought in the pending Motion for De-Designation, the grounds for which are only further highlighted by the parties' recent meet-and-confer process. Ubiquiti maintains its position that none of the information in the contested documents (or any of the other non-source code documents produced by Defendants) satisfies the requirements to be designated attorneys' eyes only (AEO) under the terms of the Protective Order and applicable law. Defendants have still not provided any adequate explanation for how any of the contents contain "information so sensitive that its dissemination to those [in-house counsel representatives] identified in 14(b)(2) and 14(b)(7) would cause demonstrable harm to the [Defendants]," Dkt. 154, at ¶ 7; nor have Defendants identified any legal authority to support the near-complete (99.9%) designation of their production as AEO.

The recent meet-and-confer process demonstrates the perverse situation that Defendants' abusive AEO designations have created whereby:

1. Ubiquiti had to take the first step, identifying key documents and proposing redactions to Defendants—thus identifying for the benefit of Defendants the specific information that Ubiquiti's counsel has deemed to be significant at this early stage of the litigation.

2. Defendants responded by refusing to counter-propose redactions until Ubiquiti provided even more disclosures with respect to the relevance of the specific information at issue—including legal and factual contentions regarding its damages theory. These demands were made notwithstanding the fact that (i)

2

        Defendants have already confirmed the relevance of this information in voluntarily producing this material as responsive to their own MIDP disclosures; and (ii) Defendants have refused to answer any of Ubiquiti's contention interrogatories.

3. The parties then met and conferred on a document-by-document basis. During that process Defendants again demanded that Ubiquiti identify the relevance of specific documents on a line-by-line and word-by-word basis. In one example, Defendants redacted an entire document full of single-spaced text, and only relented on a few lines when Ubiquiti explained the relevance of those specific sentences. *See*, *e.g.*, Exhibit A (meet/confer e-mail communications) p. 2. In another, Ubiquiti was forced to request removal of redactions of certain words. *Id.* p. 1-2.

4. In order to be able to show its in-house counsel any of the supporting information sought to be cited in its pre-settlement conference demand letter, Ubiquiti's counsel necessarily had to agree to these line-by-line redactions without consultation with its client—who will now receive piece-meal information long after every other party and counsel in the case, without the benefit of being able to confer with its outside counsel regarding the remaining content of these documents (or any other document contained in Defendants' production).

This process is highly prejudicial to Ubiquiti and undermines the foundation and purpose of the federal discovery rules. Defendants' near-complete (99.9%) designation of their production of AEO is wholly unsupported by applicable law and necessitates that Ubiquiti identify documents it believes to be relevant to opposing counsel <u>before</u> even being able to discuss theories based upon them with its own client. Such forced-disclosure necessarily includes work product of Ubiquiti's counsel; indeed, Defendants demanded explanations of relevance at a word-by-word level in the documents. Further, the forced-disclosure provides an unfair advantage to Defendants by giving them notice of Ubiquiti's counsel's work product even <u>before</u> Ubiquiti's in-house counsel, including with respect to theories that Ubiquiti's in-house counsel may ultimately choose not to pursue. Finally, it provides a one-way street: Defendants counsel can—and did—use this process to leverage informal contention discovery from Ubiquiti while refusing (to-date) to answer interrogatories on that same issue.

    Finally, this process is antithetical to Defendants' stated desire to engage in meaningful

settlement negotiations with Ubiquiti to resolve this action. By forcing Ubiquiti's in-house counsel to operate in the dark as to the content of Defendants' production (save for a handful of heavily redacted documents), Defendants have necessarily deprived Ubiquiti of its ability to fully evaluate the merits of any settlement proposed by Defendants—while also conveying the impression that Defendants are concealing responsive documents and information regarding the results of the Elevate program that will ultimately be at issue in this litigation.

In order to allow this litigation to proceed—both substantively and in terms of settlement discussions—Defendants must be required to de-designate their production to Confidential in accordance with the terms of the Protective Order and controlling law. Accordingly, for the reasons set forth herein and its prior briefing, Ubiquiti respectfully requests that the Court grant the relief requested in the Motion for De-Designation.

## II. Defendants' Position

The agreement reached by the parties concerning materials that could be shown to Ubiquiti's identified in-house counsel for settlement purposes demonstrates that Ubiquiti's motion to compel de-designation of Defendants' production was entirely unnecessary. A similar agreement could have been reached had Ubiquiti either satisfied its meet and confer obligations under the Protective Order or merely given Defendants a reasonable time to respond (beyond the zero-business day demand for Defendants to review certain "Exhibit B" documents[1]). Indeed, Defendants demonstrated their willingness to resolve these issues without motion practice by de-designating portions of 128 pages of *additional* materials (beyond the documents identified in Ubiquiti's Motion to Compel), which Ubiquiti identified as essential to forming a settlement

---

[1] The "Exhibit B" documents refer to the documents listed in Exhibit B (Dkt. 134) to Ubiquiti's Motion to Compel De-Designation (Dkt. 132) and the "Exhibit D" documents refer to the documents listed in Exhibit D (Dkt. 161) to Ubiquiti's Reply (Dkt. 157).

offer for the first time this week. Ubiquiti's premature motion entirely skipped this process and instead necessitated costly motion practice, further delaying the settlement demand Defendants have sought for nearly 2 years. And the fact that Ubiquiti continues to identify information it deems necessary to form a settlement demand over two weeks after its settlement demand was due is telling.

All of the designated materials identified by Ubiquiti (including the Exhibit B and D documents attached to in support of its Motion and Reply, as well as the additional materials separately identified this week) easily qualify as "Confidential Restricted – Attorneys' Eyes Only" ("Restricted-AEO") under the Protective Order, as these documents contain information that "is so sensitive that its dissemination to [Ubiquiti's in-house counsel] and [witnesses at depositions] would cause demonstrable harm to [Cambium]." Dkt. 154 at § 7. These documents contain sensitive business plans and projections for numerous products, including products beyond those at issue in this case. Disclosure of this information to Cambium's direct competitor would create the risk of use by Ubiquiti of this sensitive information in competition with Cambium, and is precisely what the Protective Order is designed to avoid. The very documents cited to by Ubiquiti in support of its motion therefore support Defendants' position rather than Ubiquiti's. Defendants' designation of these materials is entirely appropriate.

It is therefore Defendants' position that any further disputes over confidentiality designations should be worked out between the parties—the very same process that lead to successful resolution of this dispute—and only *after* the settlement conference, in the event the parties do not settle the case.

Defendants also contend that Ubiquiti should complete its production under the MIDP and provide its damages calculation so that the parties can take a consistent approach going

forward with respect to designation of confidential information. Ubiquiti's current production is no doubt incomplete. To date Ubiquiti has produced only 84 documents even though it was required to produce at least the following categories of documents under the MIDP standing order:

| |
|---|
| Documents related to the development of the Ubiquiti 18 Modules |
| All versions of source code that Ubiquiti has made publicly available and/or distributed subject to an open source license |
| Customer contracts related to M-series devices |
| Documents evidencing Ubiquiti's investment in M-series devices, the AirMAX protocol, and airOS |
| Documents showing the loss by Ubiquiti of any customers or any prospective customers, and the cause of any such loss |
| A computation of each category of damages claimed … and a description of the documents or other evidentiary material on which it is based |

*See* Defendants' First Supplemental MIDP Disclosures at 6-8; Defendants' Second Supplemental MIDP Disclosures at 6-8. Ubiquiti is required to produce these documents without "party-initiated discovery requests." *See* Mandatory Initial Discovery Users' Manual for the Northern District of Illinois ("MIDP Manual") at 3-4. Surely Ubiquiti knew that "documents related to the development of the Ubiquiti 18 Modules," "publicly available" and "open source" versions of its source code, and documents evidencing Ubiquiti's "investment" in the technology at issue are documents that the MIDP requires it to "accelerate the disclosure of" in lieu of "more costly party-initiated discovery." MIDP Manual at 3. But to date Ubiquiti has refused to satisfy its

obligations under the MIDP, including production of the "18 files" the Court recognized as critical to figuring out what is relevant to the case.

Dated:  June 18, 2020                                         Respectfully submitted,

| FOX, SWIBEL, LEVIN & CARROLL, LLP | BAKER BOTTS L.L.P. |
|---|---|
| */s/ Steven J. Reynolds* | */s/ Jon V. Swenson* |
| David Koropp (ARDC #6201442) | G. Hopkins Guy, III (CA Bar No. 124811) |
| dkoropp@foxswibel.com | Jon V. Swenson (CA Bar No. 233054) |
| Erik J. Ives (ARDC #6289811) | Karina Smith (CA Bar No. 286680) |
| eives@foxswibel.com | 1001 Page Mill Road |
| Steven J. Reynolds (ARDC #6293634) | Building One, Suite 200 |
| sreynolds@foxswibel.com | Palo Alto, CA 94304-1007 |
| Steven L. Vanderporten (ARDC # 6314184) | 650.739.7500 (Telephone) |
| svanderporten@foxswibel.com | 650.739.7699 (Facsimile) |
| Fox Swibel Levin & Carroll LLP | hop.guy@bakerbotts.com |
| 200 W. Madison St., Suite 3000 | jon.swenson@bakerbotts.com |
| Chicago, IL 60606 | karina.smith@bakerbotts.com |
| | |
| *Attorneys for Plaintiff Ubiquiti Inc., f/k/a Ubiquiti Networks, Inc.* | *Local Counsel:* |
| | James P. Fieweger (Bar ID No. 6206915) |
| | Michael Best & Friedrich, LLP |
| | 444 W. Lake Street. Suite 3200 |
| | Chicago, IL  60606 |
| | 312.222.0800 (Telephone) |
| | jpfieweger@michaelbest.com |
| | |
| | Arthur Gollwitzer, III (Bar ID No. 6225038) |
| | Michael Best & Friedrich, LLP |
| | 2801 Via Fortuna, Suite 300 |
| | Austin, Texas 78746 |
| | 512.640.3160 (Telephone) |
| | agollwitzer@michaelbest.com |
| | |
| | *Attorneys for Defendants Cambium Networks, Inc. et. al* |