IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UBIQUITI NETWORKS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CAMBIUM NETWORKS, INC.;<br>CAMBIUM NETWORKS, LTD.;<br>BLIP NETWORKS, LLC;<br>WINNCOM TECHNOLOGIES, INC.;<br>SAKID AHMED; and<br>DMITRY MOISEEV<br><br>*Defendants*. | Civil Action No.: 1:18-cv-05369<br><br>**JURY TRIAL DEMANDED** |

**JOINT STATUS REPORT**

Plaintiff Ubiquiti Inc. (f/k/a Ubiquiti Networks, Inc.) ("Ubiquiti"), by and through its undersigned counsel, and Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev ("Defendants") (collectively Defendants and Ubiquiti are referred to as the "Parties"), by and through their undersigned counsel, respectfully submit this Joint Status Report pursuant to the Court's order that the Parties submit an updated status report on logistics for the disclosure of the 18 Files. Dkt. 178; *see also* Dkt. 170.

**I.     Source Code Review – Inspections and Location**

Defendants, through their expert Mr. Atif Hashmi, inspected Ubiquiti's source code in the Palo Alto, California office of Simpson, Thacher & Bartlett LLP on June 25, 29, and 30, and July 7.

Defendants have not scheduled additional days for further review.

1

In terms of review locations, Ubiquiti continues to investigate a location in Las Vegas, Nevada, following Defendants renewed request on July 3. As Ubiquiti previously advised the Court and Defendants, finding a review location in Las Vegas has been difficult, especially given the COVID-19 circumstances. Nonetheless, Ubiquiti has identified a candidate law firm and is investigating the logistics presently.

Defendants continue to investigate the possibility of producing their source code at their counsel's office in Washington, D.C., following Ubiquiti's renewed request during the July 7 meet and confer. Defendants have a meeting scheduled for Friday, July 24 with their counsel's office administrators and firm management to seek formal permission and to review and approve logistics for conducting the review.

**II.     Source Code Review – Content of Ubiquiti's Source Code Production**

The parties' respective statements as to the status of source code review are set forth below.

### A.     Ubiquiti's Statement

Defendants continue to misrepresent the parties' disputes regarding Ubiquiti's production of source code, most notably by making inaccurate statements and conflating the nature of data stored in flash memory of M-Series devices and source code stored in a source code repository.

This section provides additional updates Defendants requested to be removed from the joint report and addresses the confusion Defendants created.

#### 1.     Updates Defendants Requested to be Removed from the Joint Report

As of Monday, July 20, both parties have submitted their written settlement demand letters to Magistrate Judge Cummings.

In terms of source code review, Defendants were scheduled to continue their source code inspection (in Palo Alto) on July 7–10. Mr. Hashmi conducted review for a half day on July 7 and canceled the remaining appointments on July 8–10.

### 2. Defendants' Inconsistent Approach Regarding Proprietary Data

Defendants have taken inconsistent positions as to Ubiquiti's production of the configuration and calibration data at issue in this case.

In the initial joint report on source code production, Defendants listed "configuration and calibration files" as a "File Name" in a table that listed the names of 18 source code modules above it. Dkt. 173 p. 5.

Most recently (as of the evening of July 21), Defendants asserted that such data constitutes the "18th File reference[d] in paragraph 39 of the FAC." They make that assertion despite the fact that Defendants previously checked-off the 18 modules—one-by-one—as having been produced. Dkt. 173 p. 5 (*see* 18 "Yes"s).

Notwithstanding that Defendants now attempt to treat data and source code as the same thing, they stated to this Court in the most recent report that "source code that reads data from a partition provides no indication of the actual data stored (or read from) that partition." Dkt. 177 p. 6 (emphasis added).

In short, Defendants acknowledge that data stored in flash memory on the devices are not a source code module at the same time they demand that such flash memory contents be produced as one of the source code modules.

### 3. Production of Source Code and Identification of Data

Defendants are best situated to explain what data (configuration or calibration data) they accessed, used, modified, and/or copied ("Used") in connection with developing, distributing, and running Elevate—including by reverse-engineering Ubiquiti M-Series devices that stored

3

such information in flash memory partitions (which Ubiquiti specifically identified). Defendants do not deny that they purchased and reverse-engineered such devices. Thus, that information is responsive to written discovery Ubiquiti served in February and should be produced as soon as possible.

Ubiquiti produced the applicable <u>source code</u> in organized fashion, along with the information it uses in the ordinary course of business to track authorship, revision history, users, etc. Defendants began reviewing the source code on June 25.

Ubiquiti also identified the two small (non-voluminous) portions of flash memory that store the configuration and calibration <u>data</u> on its M-Series devices.

Thus, Ubiquiti has complied with its obligations to produce documents/information, as they are kept in the ordinary course of business, and to identify the basis for its claims. By contrast, Defendants seek to have Ubiquiti hypothesize about what data Defendants may have Used, instead of providing the relevant documents and information in their possession, custody, and control that would clarify the matter. It is an overt attempt to conceal their actions and an improper refusal to comply with their discovery obligations.

Defendants' intransigence notwithstanding, on Monday, July 20, Ubiquiti provided non-limiting guidance to Defendants—above and beyond what the discovery rules require. Ubiquiti's counsel identified specific modules, tools, files, folders, and search terms to locate portions of the source code that read the calibration and configuration data at issue (which are stored in the partitions of flash memory on the devices).[1]

---

[1] On the evening before the filing of this report, Defendants responded with yet more demands for specific information—again without acknowledging whether or not their expert is actually able to identify and/or access it. The requests are confusing at least because they continue to conflate proprietary data and source code.

Ubiquiti provided such information without waiver of Ubiquiti's position that it is Defendants' duty to produce data they Used and to investigate the factual/expert bases for their own defenses. Further, Ubiquiti reiterates and reserves all rights pending Defendants' production of documents and information demonstrating their own Use of such data.

### 4. Defendants' Misleading Attorney-Argument

In their filings (including in these joint reports), Defendants are given to providing generalized statements, detached from Ubiquiti's actual production. Such statements provide little guidance as to the status of Ubiquiti's production.

For example, in the most recent joint status report, Defendants made the following assertions. After the report was filed, on July 20, Ubiquiti provided Defendants the following explanations and requested that Defendants address them specifically:

| Defendants' Assertions | Ubiquiti's Explanations |
|---|---|
| First, source code that reads data from a partition provides no indication of the actual data stored (or read from) that partition. Dkt. 177 p. 6. | Defendants Used such information when developing Elevate. Thus, they necessarily had (and have) at least some indication of the actual data. Defendants have not denied this fact. Moreover, the source code necessarily indicates the structure of the data it reads. Indeed, it is highly unlikely that Defendants (including their partner, Global Logic) wrote source code for Elevate that read data that Defendants had "no indication" about.<br><br>Further, Defendants' expert now has the benefit of having reviewed Ubiquiti source code. Thus, that access to source code, along with the knowledge Defendants procured themselves through their reverse engineering and Use, should provide information regarding the data in question. It appears instead that Defendants refuse to acknowledge how they accessed and Used the data—perhaps to withhold information that will support Ubiquiti's claims. |
| Indeed, there would be no point in storing the data on a partition if the data being read was already stored in the source code. | This statement is not accurate, and certainly not categorically correct. For example, data stored in source code may be written to a file for other, independent portions of code to access. The source code may also include sample files, developer comments, and format descriptions related to the data. |

5

| **Defendants' Assertions** | **Ubiquiti's Explanations** |
|---|---|
| *Id.* p. 6-7 | Similarly, the source code may contain default values to be used in case of data corruption or a factory reset. |
| After determining that Ubiquiti's source code production contained substantial deficiencies from what Ubiquiti was ordered to produce, Defendants canceled the remaining inspection days that week in order to attempt to address and resolve these issues with Ubiquiti before commencing further inspection of an incomplete production. *Id.* p. 5 n.2. | Defendants acknowledge that the 18 modules have been produced, including those portions of source code that read and/or write to data partitions. Further, prior to the filing of the status report, Ubiquiti corrected Defendants' claim that full versions of AirOS were not produced.<br><br>Defendants only reviewed code for one half-day (Tuesday, July 7). Defendants then serially canceled the remaining days with very little notice before each, even after multiple requests from us for earlier cancelation notices:<br><br>▪ July 8 (canceled on the morning of the scheduled review)<br>▪ July 9 (canceled at 9:29 pm the night before)<br>▪ July 10 (canceled 6:34 pm on the night before)<br><br>Thus, Defendants either (1) canceled those reviews for another reason than they represented to the Court or (2) purposely withheld notice until the last minute to cause expense and disruption to Ubiquiti and the producing law firm. |

Defendants responded to Ubiquiti's specific requests by categorically refusing to identify or clarify any of Defendants' statements. More particularly, they refused (1) to admit or deny that Defendants Used the data on Ubiquiti M-Series Devices during development, testing, and marketing of Elevate, (2) to agree to produce information regarding their Use of data on Ubiquiti Devices, (3) to state whether the statements in the table above were supported by their review of specific portions of Ubiquiti's source code as opposed to its counsel speaking in mere generalities about hypothetical source code when purportedly providing the Court a status update on review of the 18 modules, (4) to state whether their expert was in fact able to locate applicable source code files Ubiquiti has now identified (despite Defendants' protestations as to the lack of information produced by Ubiquiti), (5) to provide any basis for their statement that

6

"Ubiquiti's source code production contained substantial deficiencies from what Ubiquiti was ordered to produce" even after Ubiquiti identified that the purportedly missing full versions of AirOS code are located in one of <u>two</u> top-level directories in the source code folder of the production computer, or (6) to explain the inconsistency between their statements to the Court and their actions in canceling scheduled source code review dates.

### 5. Objection to One-Sided Discovery

On June 10, Ubiquiti requested that Defendants identify a location near Potomac, Maryland, at which its expert could inspect Cambium's source code. In the July 7 meet-and-confer, Defendants' counsel advised Ubiquiti's counsel that they have not been able to identify such a location in either Potomac or Washington D.C.

Defendants have been reviewing and digesting Ubiquiti's source code for almost a month now. In comparison, Defendants have failed to provide Ubiquiti access to Defendants' code (or the configuration and calibration data they Used)—despite Ubiquiti having first requested, on June 10, access to Defendants' code in the Maryland, MD Area. Thus, Ubiquiti's ability to develop its source code claims is at a standstill. Ubiquiti is instead forced to respond to ever increasing demands of Defendants to provide analyses that are more appropriately the job of Defendants and their expert.

The asymmetric production is especially notable given that Ubiquiti is now making progress on production in a second remote city, one (Las Vegas) that is a relatively niche legal market. Defendants have failed to make progress on production, even though Washington, D.C., is a much larger legal market and their outside counsel of record has an office of their own there.

Ubiquiti requests that, to the extent further status reports are required, the Court order that such status reports be bilateral, to make clear that Defendants are required to comply with their

7

own obligation to produce source code. Ubiquiti will address Defendants' other discovery deficiencies in meet-and-confers and move the Court as necessary.

### B. Defendants' Statement

Ubiquiti still refuses to comply with the Court's Order to produce the 18 Files. Specifically, Ubiquiti refuses to produce or identify "Ubiquiti's proprietary compilations of data contained in its calibration and configuration files of the Firmware," which Ubiquiti alleges to be one of the 18 Files identified in Ubiquiti's First Amended Complaint ("FAC"). Dkt. 65, ¶39. Regarding production of the entire AirOS code base, Defendants' expert was unable to locate that production during his initial inspection and Defendants have been unable to verify Ubiquiti's claims to the contrary[2] because Defendants have instructed their expert to cease review until Ubiquiti has identified the allegedly proprietary data it asserts (the "18th File") rather than continue review of an incomplete production.[3] The parties appear to be fast-approaching, if not already at, an impasse on Ubiquiti's production of the 18th File. Accordingly, Defendants once again request that the Court order at least an additional status report and/or conference to discuss Ubiquiti's failure to produce the 18 Files that it has alleged form the basis of its case.

Ubiquiti has failed to meaningfully respond to Defendants' repeated pursuit of the 18th File. Just this morning, Ubiquiti again refused to identify the 18th File and indicated that it is still

---

[2] Ubiquiti identified two folders on the review computer titled "production" and "registered_works" that allegedly contain "three full versions of AirOS source code." Defendants' remain skeptical of this claim, considering that name of one of the folders, "registered_works," appears to correspond to Ubiquiti's defined term "Registered Firmware" in the FAC, which referred to just a small portion (17 Files) of its code base—not the "full version". It is also not clear why the "full versions" would be spread across two different folders. Nevertheless, Defendants will reserve formally raising this objection again until their expert returns to confirm Ubiquiti's claims.

[3] Defendants completed their initial assessment of the materials produced by Ubiquiti on the source code review computer on July 7 and have confirmed (unsurprisingly) that the vast majority of many of the 18 Files consist nearly entirely of GPL-licensed open source code authored by third parties despite Ubiquiti's misrepresentations to the Court on this very issue. Defendants also determined that Ubiquiti failed to identify the 18th File, and therefore have not scheduled further review of Ubiquiti's incomplete production in order to attempt to address and resolve these issues with Ubiquiti. If Ubiquiti continues to refuse to produce or identify the allegedly proprietary compilations of data, Defendants will seek dismissal based on the overwhelming amount of GPL-licensed code included in the 17 Files that were produced and Ubiquiti's refusal to produce or identify the 18th File.

"look[ing] into" what its asserted proprietary compilations of data are. *See* Ex. A at 1 (Demonstrating Ubiquiti's inability to confirm whether the data files Ubiquiti identified by email on July 20—the only data files identified by Ubiquiti to date—contain Ubiquiti's asserted compilations of data). But the Court expressly rejected this "wait and see" approach to broad claims on allegedly proprietary source code and information in dismissing Ubiquiti's original complaint. *See* Dkt. 59 at 9 ("Until Ubiquiti spells out at least the general nature of its allegedly misused firmware that is not covered by the GPL and other open source software licenses, Defendants will not have adequate notice of Ubiquiti's claims."). Ubiquiti was required to identify this information ***in the FAC***—over a year later Ubiquiti still refuses to do so despite repeated orders from the Court.

In response, Ubiquiti first contends that Defendants must inspect the portions of Ubiquiti's source code that read from and write to the configuration and calibration partitions—portions of code Ubiquiti first identified this week—in order to determine what Ubiquiti contends is its proprietary information. *See* Ex. A at 3-4. However, Ubiquiti's identification of code that ***reads from and writes to configuration and calibration partitions*** is not a substitute for ***production of the actual data that is alleged to be proprietary***. And Defendants sought clarity from Ubiquiti as to whether certain data files identified by Ubiquiti constituted its proprietary configuration information (See, Ex. A at 2)—Ubiquiti was simply not sure. If Ubiquiti is unsure of what its proprietary data is, Defendants surely will not be able to determine it. This illustrates the precise problem with Ubiquiti's proposal. Ubiquiti first must produce the allegedly proprietary configuration and calibration data as the Court ordered.

Ubiquiti also contends that it is Defendants' obligation to identify and produce "information regarding their use of the configuration and calibration data" and that Ubiquiti's

9

allegedly proprietary data must be deduced from information in Defendants' own possession, custody, and control that was used to create Defendants' Elevate firmware. *See* Ex. A at 3. But Defendants have ***already*** produced ***thousands*** of development documents, including all discoverable development information in its possession, custody, or control that is proportionate to the needs of the case. Defendants' production obligations—and particularly obligations surrounding production of Cambium's development of Elevate—are fully satisfied given the needs of the case at this time. Ubiquiti's position here also improperly attempts to shift its burden to Defendants to identify Ubiquiti's own allegedly proprietary data. Defendants have no way of knowing what Ubiquiti alleges to be proprietary and Ubiquiti has thwarted (*See* Ex. A at 1) Defendants' attempts to guess (*See* Ex A at 2).

Ubiquiti also alleges that Defendants made "a number of statements to the Court that were factually inaccurate and/or not based upon any actual substantive review or analysis" in last week's status report. *See* Ex. A at 3-4. These allegations are entirely baseless and are asserted as a diversion from Ubiquiti's clear and inexcusable failure to produce or identify its 18 Files. First Ubiquiti contends that code that reads data provides "at least some indication of the actual data." Ex. A at 4 (emphasis in original). But the Court didn't order "some indication of" the 18 Files—it ordered Ubiquiti to produce and identify them. This is a superfluous distinction that has nothing to do with the parties' dispute and does not explain Ubiquiti's failure to produce the 18th File.

Ubiquiti next states that Defendants' assertion that production of source code that reads from and writes to partitions is insufficient under the Court's order is somehow deficient because "data stored in source code may be written to a file." Ex. A at 4. Again, this is entirely beside

the point. Ubiquiti refuses to admit that data stored in its source code is the proprietary compilations of data it asserts or otherwise identify that information.

Dated: July 22, 2020

FOX, SWIBEL, LEVIN & CARROLL, LLP

*/s/ Steven J. Reynolds*
David Koropp (ARDC #6201442)
dkoropp@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Steven J. Reynolds (ARDC #6293634)
sreynolds@foxswibel.com
Steven L. Vanderporten (ARDC # 6314184)
svanderporten@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

*Attorneys for Plaintiff Ubiquiti Inc., f/k/a Ubiquiti Networks, Inc.*

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Jon V. Swenson*
G. Hopkins Guy, III (CA Bar No. 124811)
Jon V. Swenson (CA Bar No. 233054)
Karina Smith (CA Bar No. 286680)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Telephone)
650.739.7699 (Facsimile)
hop.guy@bakerbotts.com
jon.swenson@bakerbotts.com
karina.smith@bakerbotts.com

*Local Counsel:*

James P. Fieweger (Bar ID No. 6206915)
Michael Best & Friedrich, LLP
444 W. Lake Street. Suite 3200
Chicago, IL 60606
312.222.0800 (Telephone)
jpfieweger@michaelbest.com

Arthur Gollwitzer, III (Bar ID No. 6225038)
Michael Best & Friedrich, LLP
2801 Via Fortuna, Suite 300
Austin, Texas 78746
512.640.3160 (Telephone)
agollwitzer@michaelbest.com

*Attorneys for Defendants Cambium Networks, Inc. et. al*