1           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    UBIQUITI NETWORKS, INC.,           )
                                        )
4              Plaintiff,               )
                                        )
5         v.                            )  No. 18 CV 05369
                                        )
6    CAMBIUM NETWORKS, INC., et al.,    )  Chicago, Illinois
                                        )  June 22, 2020
7              Defendants.              )  9:30 a.m.

8           TRANSCRIPT OF TELEPHONIC PROCEEDINGS

9           BEFORE THE HONORABLE GARY S. FEINERMAN

10   APPEARANCES TELEPHONICALLY:

11   For the Plaintiff:         FOX SWIBEL LEVIN & CARROLL, LLP
                                BY:  MR. DAVID E. KOROPP
12                                   MR. ERIK J. IVES
                                     MR. STEVEN J. REYNOLDS
13                              200 West Madison Street, Suite 3000
                                Chicago, Illinois 60606
14                              (312) 224-1200
                                dkoropp@foxswibel.com
15
     For the Defendants:        BAKER BOTTS, LLP
16                              BY:  MR. JON V. SWENSON
                                1001 Page Mill Road
17                              Building 1, Suite 200
                                Palo Alto, California 94304
18                              (650) 739-7500
                                jon.swenson@bakerbotts.com
19

20   Court Reporter:            Judith A. Walsh, CSR, RDR, F/CRR
                                Official Court Reporter
21                              219 South Dearborn Street, Room 2118
                                Chicago, Illinois 60604
22                              (312) 702-8865
                                judith_walsh@ilnd.uscourts.gov
23

24

25

1  (Proceedings heard telephonically:)

2  THE CLERK:  18 C 5369, Ubiquiti Networks versus

3  Cambium Networks.

4  MR. KOROPP:  Good morning, your Honor.  Dave Koropp

5  here for Ubiquiti.  And I'm here with my colleagues Erik Ives

6  and Steven Reynolds.

7  MR. SWENSON:  Good morning, your Honor.  Jon Swenson

8  on behalf of the defendant.

9  THE COURT:  And anyone else from the defendant?

10  All right.  So thank you for the status report.  I

11  think the status report might have given me more than I needed

12  to know but maybe not.  So let me ask this question:  Does

13  each side have what it needs in order to prepare the

14  settlement demand and the settlement offer and to go forward

15  with the settlement conference?

16  Plaintiff?

17  MR. KOROPP:  And, Erik, why don't you take that.

18  MR. IVES:  Thank you.  Good morning, your Honor.

19  Yes, your Honor.  For -- as stated in the status report, for

20  that very limited purpose, the meet and confer satisfied our

21  abilities to provide that information to our client for that

22  settlement demand letter, but for the reasons stated in the

23  status report, we would request that the Court rule upon the

24  motion to de-designate in full and grant the relief requested.

25  THE COURT:  Okay.  Defendant, do you have everything

1    you need?

2            MR. SWENSON:  Your Honor, the one piece that we still

3    don't have that we need in order to respond to the settlement

4    demand likely -- obviously, we haven't seen it -- is access to

5    the 18 files.  We're still working through that trying to

6    figure out an appropriate location to access those files.  So

7    that would be the one critical piece from defendants' point of

8    view.

9            THE COURT:  Okay.  And where do you stand on getting

10   access to those files?

11           MR. SWENSON:  So, your Honor, we undertook a

12   modification of the protective order whereby the files could

13   be hosted at a law firm of the producing party near the expert

14   that's inspecting the files.  Our expert who we want to use is

15   in Las Vegas.  And we've been trying to get confirmation from

16   plaintiff as to whether or not they're able to produce the

17   files in Las Vegas or the Las Vegas area.

18           We haven't gotten final word from them on that.  Once

19   we get that, we'll be able to move forward.

20           THE COURT:  Okay.  Plaintiff, what are your thoughts

21   on that?

22           MR. KOROPP:  Judge Feinerman, Steve Reynolds has

23   taken the lead for plaintiffs on the source code issue, and so

24   I'll turn it over to him on that if that pleases the Court.

25           THE COURT:  That's fine.

4

1       MR. REYNOLDS:  Your Honor, the short answer is we're

2  working on it.  Defendants initially identified Palo Alto as

3  their preferred location.  We got a source code computer out

4  there, made all the arrangements.  We're ready to go.  They

5  now -- they then told us they would like to do it in Las

6  Vegas.

7       We advised that there are some logistical issues

8  there and asked that they consider Los Angeles as Los Angeles

9  is nearby.  And we're understanding that they were going to

10  get back to us on that.  But in short, the discussions are

11  moving forward between the parties.

12       THE COURT:  Okay.  How long do you think it will take

13  for you to determine how and where the 18 files will be

14  disclosed, and how long do you think it will take for you to

15  actually disclose those files to the defendants' expert?

16       MR. REYNOLDS:  Your Honor, this is Steve Reynolds

17  again.

18       They're ready to go in Palo Alto right now with the

19  exception that defendants on Friday said they would like two

20  more pieces of software on the review computer which I think

21  we can accommodate.  If they accept Los Angeles, probably just

22  a few days, just the time it takes to ship the computer down

23  there.

24       If they stick with Las Vegas, Las Vegas is just an

25  interesting location because there are not a lot of major law

1    firms, and we haven't been able to identify one that has a

2    relationship with our client down there.  So Las Vegas may

3    take a little bit longer.

4              THE COURT:  Okay.

5              MR. SWENSON:  Your Honor, if I may make a proposal.

6    You know, obviously --

7              THE COURT:  And you are who?

8              MR. SWENSON:  Sorry.  This is Jon Swenson for the

9    defendants.

10             THE COURT:  Okay.  Go ahead.

11             MR. SWENSON:  If I may make a proposal because

12   obviously, we want to move this along as quickly as possible

13   and get access to these 18 files so that we can, you know,

14   move through the settlement demand process.  You know, we're

15   willing to have an interim expert at least take a look at the

16   files in Palo Alto.  We could start that tomorrow.

17             And we can at least do an initial analysis with the

18   caveat that, you know, plaintiff continue in good faith, maybe

19   within the next three to five days, to get back to us as to

20   whether or not we can actually accomplish the bulk of the

21   review in the Las Vegas area.

22             THE COURT:  Okay.  Why don't you -- why don't you

23   guys discuss this offline.

24             Let's set this, Jackie, for a status hearing during

25   the week of July 6th.

6

1      THE CLERK:  One moment.

2      How about July 9th at 9:30 a.m.

3      THE COURT:  And then let me ask the parties to file a

4  status report by July 3rd.  Just bring me up to speed on this

5  18 files issue and letting me know whether the parties have

6  either already disclosed them or have a plan to disclose them

7  and, in particular, whether the defendants have what they need

8  from the 18 files in order to go forward with the settlement

9  process.

10      And if you figure all this out beforehand, just file

11  a status report when you figure it all out because then I can

12  tell Judge -- Magistrate Judge Cummings that he's good to go

13  on the settlement process, and he can get started as soon as

14  possible on that.  All right?

15      MR. REYNOLDS:  Your Honor, this is Steve Reynolds.

16  If I just might make two notes for the record on that.  I

17  think that we can proceed as Mr. Swenson suggests.  We would

18  need their in-house expert to sign on the protective order.

19  We do have to get those other two files installed on the

20  computer which sometimes can create a logistic issue.

21      So, you know, if I said tomorrow, I don't know that

22  we can do it tomorrow but -- in Palo Alto, but certainly

23  within the next couple of days.  I don't see an issue there.

24      MR. SWENSON:  Your Honor, Jon Swenson here.  You

25  know, Judge Cummings' order regarding the settlement process

1    ordered Ubiquiti to provide a settlement demand within 14 days

2    after the Court's ruling on the de-designation motion.  Given

3    that Ubiquiti now has what it needs to provide its settlement

4    demand and has for since, I believe, last Wednesday, we'd ask

5    that at least that process go forward so that there's no delay

6    in terms of getting that initial settlement demand out.

7            MR. IVES:  And, your Honor, this is Erik Ives for

8    Ubiquiti.  We had fully planned to move forward with that as

9    quickly as possible with the caveat that the 14 days -- we

10   didn't receive the documents until Friday and were not able to

11   share those with our client until Friday.  But that said, we

12   had actually hoped to get it, pending feedback from our client

13   on the documents and the content of the letter, to Judge

14   Cummings as soon as possible well within that 14-day period.

15           THE COURT:  Okay.  So I guess, so let's just -- that

16   sounds great.  So why don't we just hold on to that status

17   date and to the status report just so I can be assured that

18   everything is proceeding apace.  But what I'll do is I'll just

19   let Judge Cummings know that the plaintiff at least has what

20   it needs to do a settlement demand and, therefore, his process

21   can go forward if he's comfortable doing so without my having

22   ruled on the motion in its entirety.

23           All right?  Is that all right with the parties?

24           MR. SWENSON:  Yes, for defendant, your Honor.  That's

25   perfectly acceptable.  Thank you.

1       MR. KOROPP:  Yes.

2       THE COURT:  All right.  Anything further you'd like

3   to address?

4       MR. SWENSON:  Not from defendants, your Honor.

5       MR. IVES:  Your Honor, this is Erik Ives.  There were

6   two issues that we would still like to address.  One is the

7   overarching nature of your Honor's ruling on the AEO motion

8   because as listed in the status report and just as a matter of

9   practicality, the parties need to continue proceeding with the

10  case as we don't know when the settlement conference will, in

11  fact, be scheduled.

12       And certainly, the timeframe that your Honor set,

13  even the extended deadline set after the last hearing

14  (inaudible) that the parties will be moving forward with

15  discovery in the case as a whole.  And for all the reasons

16  listed in our motion and highlighted by the recent process,

17  there -- it is absolutely the case that over-designation has

18  occurred and that it is highly prejudicial to Ubiquiti as

19  we're moving forward with discovery.

20       And so we would ask that the Court rule on that

21  motion although from your Honor's comments, I take it that

22  your Honor was not intending to do so today.

23       THE COURT:  No, I'm not going to do so before the

24  settlement conference just because if you were my only case or

25  if you were one of ten cases I had then, yes, I certainly

1    would have the time to devote to it, and I would give you what

2    might end up being an advisory ruling on that.  But I have

3    probably 300 cases that are all deserving of attention, and if

4    a case is going to settle -- well, let me step back.

5          The reason why I was so focused on what do you need

6    to go forward with the settlement conference was because if

7    you're going to settle the case, then we don't have to devote

8    further party resources towards resolving this motion and we

9    don't have to devote -- I don't have to devote my resources,

10    my limited time to resolve that motion.

11          So I want the parties to have what they need to go

12    forward with the settlement conference.  And if the case

13    settles, then the motion is denied as moot as to the

14    designations.  And if the case doesn't settle, then

15    absolutely, I'll get you a ruling on that motion as soon as

16    I'm able.  And so, therefore, if I had nothing else to do and

17    was, like, playing golf or -- which I don't do anyway or

18    working on your motion, I would rule on your motion.

19          But I have hundreds of other cases clamoring for my

20    attention, and it doesn't make sense from a judicial economy

21    standpoint to rule on a motion that could very well be mooted.

22    So you correctly inferred or deduced from my comments that I

23    won't be ruling on the motion before the settlement conference.

24          That's not an invitation to the defendants to drag

25    things out because if you start dragging things out, and I

1   don't anticipate they will, but if they start dragging things

2   out, that changes the calculus.  And if the case doesn't

3   settle, obviously that motion will rise to the top of my list,

4   and I'll rule on it as soon as I can.  All right.

5           MR. IVES:  Understood, your Honor.  The second

6   issue -- and we do very much appreciate your time and

7   attention on this matter in assisting the parties.

8           The second issue was one that we briefly previewed

9   for you last status hearing but unfortunately, if you might

10  recall, the parties had started dropping off the line and so

11  we did not end up having an opportunity to discuss it with

12  your Honor.

13          THE COURT:  Sure.

14          MR. IVES:  And that is a mutual date for production

15  of a privilege log.  Defendants have taken the position that

16  they don't believe that a privilege log needs to be submitted

17  until the end of the case or the end of fact discovery,

18  sometime near the end.

19          It's our position that we need to receive a privilege

20  log so that the parties can evaluate those claims of

21  privilege, and to the extent that any privilege issues need to

22  be dealt with that they're dealt with prior to fact witness

23  depositions occurring because we certainly don't want to be in

24  a position where we have to reopen fact witness depositions.

25  And so we asked for a reasonable date sometime in mid to late

1    July.  That was originally asked in June.

2         We're not trying to be overly burdensome here, but

3    defendants made their production in March.  So the documents,

4    to the extent they're being withheld on privilege, were long

5    ago identified.  And to be frank, we have concerns as to the

6    manner in which they identified them given how overbroad their

7    AEO designations were done.

8         And so we do want a mutual date for a privilege log

9    to be exchanged between the parties as to existing

10   productions.  And obviously, the parties would be under a duty

11   to supplement reasonably moving forward, but that initial date

12   is something that the parties are at an impasse on it, and

13   we'd like the guidance of the Court to the extent you're able

14   to give it to us.

15        THE COURT:  Sure.  Defendants, what are your

16   thoughts?

17        MR. SWENSON:  Your Honor, if I may, that was a --

18   this is Jon Swenson for defendants.

19        Our position has always been that the parties should

20   have a mutual date for exchange of privilege logs once

21   document production is substantially complete.  We're not

22   looking to wait until the end of fact discovery.  But the

23   matter of fact here is that Ubiquiti, we just figured out over

24   the last couple of weeks, is now claiming that its document

25   production is complete at 84 documents.

1    And it just hasn't complied with the mandatory

2  initial disclosures.  It hasn't provided information regarding

3  the development of the accused firmware, how it was developed,

4  how it related to open source, what open source was in there.

5  They admit open source was in there, how that was developed.

6  All those documents that we laid out in our mandatory initial

7  disclosures that were unobjected to, Ubiquiti hasn't produced.

8    So its production and the 84 documents, I think what

9  we need to have happen is to have Ubiquiti come into

10  compliance with the mandatory initial disclosures, produce

11  core documents related to this case.  And once that production

12  is complete and Ubiquiti has done its investigation and

13  produced its, you know, 62,000 documents like defendants did,

14  then we can agree on a date for mutual exchange of privilege

15  logs.

16    Frankly, I think the same thing should apply to a

17  discussion of appropriate confidentiality designations because

18  I think when we're in a position where Ubiquiti has complied

19  with its obligations and done its production, it's probably

20  not going to be lobbing, you know, stones from its glass

21  house, you know, at defendant.

22    So I think that's a really serious issue that we need

23  to work through.  And we've put the -- some of that in our

24  status report.  But that's a gating issue to both the

25  privilege log and I think the confidentiality issue as well.

1          THE COURT:  Okay.  Well, I mean, it sounds like if

2     the case goes to a settlement conference and it doesn't

3     settle, the defendants will be moving to compel the plaintiff

4     to produce the documents that the defendants believe the

5     plaintiff has not produced.  Is that correct?

6          MR. SWENSON:  I think that's correct.  I think it's

7     beyond that as well because, you know, plaintiff had

8     obligations under the MIDP to produce core documents, and they

9     just didn't do it.  So, you know, we're trying to focus on

10    resolving the case, working through the settlement process and

11    not running up expensive discovery disputes.

12         But I think your Honor is correct, is that if we get

13    through the settlement process and we don't resolve the case,

14    we're going to have to move forward with some sort of motion

15    practice, unfortunately.

16         THE COURT:  That's fine.  Well, let me give the

17    privilege log issue some thought.  And I'll address it in the

18    order that I'll enter today.

19         Anything further?

20         MR. IVES:  Your Honor, this is Erik Ives.  Only in 20

21    seconds, the MIDP issue they're raising was raised for the

22    first time, I believe, last week.  It is not a ripe issue.

23    And, in fact, we have responded to every RFP that they issued

24    and have produced all responsive documents that we identified

25    in those RFPs.

14

1       The issue is simply that in a supplemental disclosure

2   issued on the same day as their RFPs, they're essentially

3   claiming that their identification of universe of relevant

4   documents, somehow that required us to produce, not in

5   response to the RFPs they issued on the same day but to

6   essentially those very issues.  It is not a ripe issue.  We

7   disagree with the reading of it, but we're working to try to

8   resolve it with them.  So it's just simply not ripe, and it

9   should not impact when the parties will have a mutual date for

10  producing a privilege log.  I mean, that date is mutual.

11      And essentially, with confidentiality privilege,

12  every time that we ask them for something that's reasonably

13  required by the law, they lash out on us on a new issue.  And

14  all we're trying to do is not run up costs but to continue to

15  move the case forward as it needs to to meet existing

16  deadlines.  And so that is our goal, is to make sure that

17  we're not in a position where we are not able to meet your

18  Honor's deadlines because we essentially went to a standstill

19  on discovery.

20          THE COURT:  Okay.  I --

21          MR. SWENSON:  Your Honor?

22          THE COURT:  Go ahead.

23          MR. SWENSON:  Your Honor, just briefly, the purpose

24  of the MIDP was to eliminate the process for costly document

25  productions.  And it's simply not credible to say that 84

1    documents is all the documents related to the core issues in

2    this case.  And yes, we did issue some targeted RFPs related

3    to the 18 files because we wanted to focus particularly on

4    that.  That doesn't relieve them of their obligations to

5    respond to the information under the MIDP.

6            And, in fact, our disclosures that we put out there

7    on the deadline for providing the disclosures, they never

8    objected to that, so we in good faith thought that they were

9    collecting and producing that information to us.

10           THE COURT:  Okay.  I -- you know, this is -- again, I

11   don't have a motion in front of me.  84 documents does seem a

12   bit light in a case like this, but I don't know.  I mean, I --

13   without knowing anything more, it seems a bit light, but who

14   knows.  Maybe there's an explanation.  And if the case doesn't

15   settle, I'm sure this issue will be teed up in front of me and

16   both sides will be able to give me their views, and I'll be

17   able to make a fully informed decision.

18           Anything further?

19           MR. SWENSON:  Your Honor, we would just ask that we

20   not have to issue requests for production covering all the

21   MIDP categories.  You know, those should be treated as areas

22   where they need to investigate and produce information unless

23   we receive specific objection from them.  Right now, what

24   we've received from them is they don't have to comply with the

25   MIDPs, those don't control.  And we don't think that's the

1    process.

2              THE COURT:  Okay.

3              MR. IVES:  Your --

4              THE COURT:  You know what, you guys are fighting

5    about a motion that hasn't been filed yet.  So it's not

6    productive at this point.  I said, 84 documents seems kind of

7    light if, in fact, that was the full extent of the plaintiffs'

8    MIDP document production.  That said, who knows.  Maybe

9    there's an explanation, I don't know, and this can all be

10   worked out.

11             If you want to file your motion now, file your motion

12   now.  If you want to wait until after the settlement

13   conference, wait until after the settlement conference.  It's

14   completely up to you.  I just don't think it's productive to

15   discuss it any further at this point.

16             Anything else?

17             MR. IVES:  Thank you, your Honor.

18             THE COURT:  Anything else?

19             MR. KOROPP:  No, your Honor.  And we just thank you

20   for your time today.

21             THE COURT:  Okay.  Thanks.

22             MR. SWENSON:  Thank you.

23        (Proceedings adjourned at 9:52 a.m.)

24

25

1   C E R T I F I C A T E

2       I, Judith A. Walsh, do hereby certify that the

3   foregoing is a complete, true, and accurate transcript of the

4   telephonic proceedings had in the above-entitled case before

5   the Honorable GARY S. FEINERMAN, one of the judges of said

6   court, at Chicago, Illinois, on June 22, 2020.

7

8   /s/ *Judith A. Walsh, CSR, RDR, F/CRR*_____     July 27, 2020

9   Official Court Reporter

10  United States District Court

11  Northern District of Illinois

12  Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25