**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |
|---|---|
| UBIQUITI NETWORKS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CAMBIUM NETWORKS, INC.; <br> CAMBIUM NETWORKS, LTD.; <br> BLIP NETWORKS, LLC; <br> WINNCOM TECHNOLOGIES, INC.; <br> SAKID AHMED; and <br> DMITRY MOISEEV <br><br> *Defendants*. | Civil Action No.: 1:18-cv-05369 <br><br> **JURY TRIAL DEMANDED** |

**JOINT STATUS REPORT**

Plaintiff Ubiquiti Inc. (f/k/a Ubiquiti Networks, Inc.) ("Ubiquiti"), by and through its undersigned counsel, and Defendants Cambium Networks, Inc., Cambium Networks, Ltd., Blip Networks, LLC, Winncom Technologies, Inc., Sakid Ahmed, and Dmitry Moiseev ("Defendants") (collectively Defendants and Ubiquiti are referred to as the "Parties"), by and through their undersigned counsel, respectfully submit this Joint Status Report pursuant to the Court's order that the Parties submit an updated status report on logistics for the disclosure of the 18 Files. Dkt. 182; *see also* Dkt. 170.

**I.      Source Code Review – Inspections and Location**

Defendants, through their expert Mr. Atif Hashmi, inspected Ubiquiti's source code in the Palo Alto, California office of Simpson, Thacher & Bartlett LLP on June 25, 29, and 30, and July 7.

On August 4, Defendants requested appointments to inspect Ubiquiti's source code on August 12 and 13. Ubiquiti advised Defendants that the attorney in charge of monitoring such review in Palo Alto (in a small office, which has been technically closed due to the pandemic) was on vacation those days and heavily constrained the week after that. Ubiquiti advised that it was investigating alternatives. Ubiquiti made progress on that front; it is finalizing the engagement of a law firm in Las Vegas for inspection of Ubiquiti source code and expects to ship the source code review computer there this week and notified Defendants of this development today, August 17, 2020 by providing a draft of this Joint Status Report.

Defendants conveyed their appreciation for Ubiquiti's progress in identifying a review location in Las Vegas but requested that their expert who is local to the Palo Alto facility, Mr. Hashmi, be permitted to finish his review and analysis tasks at the Palo Alto facility as requested before transitioning the source code to Las Vegas, which will allow for an orderly transition of review tasks and assignments between the experts. Ubiquiti agreed to follow up with information regarding the upcoming availability of the Palo Alto review facility.

Ubiquiti, through its expert Mr. Josh Siegel, inspected Cambium's source code in in the Washington D.C. office of Baker Botts L.L.P on August 12, 13, and 14.

## II.     Source Code Review – Content of Ubiquiti's Source Code Production

The parties' respective statements as to the status of source code review are set forth below.

### A.     Ubiquiti's Statement

This statement addresses the issues Ubiquiti understands to be outstanding (e.g., those Defendants raised with Ubiquiti as of the time the parties exchanged position statements on Monday, August 17, 2020). Ubiquiti reserves the right to address any new issues raised by Defendants in their "Statement," either in a subsequent report or at the August 19 status hearing.

### 1.      Settlement Conference Status and Updates

As of July 20, both parties submitted their written settlement demand letters to Magistrate Judge Cummings. The parties are scheduled to appear before Magistrate Judge Cummings for a settlement conference on September 3, 2020.

On July 24, Defendants provided two documents in connection with their response to Ubiquiti's damages calculations (for settlement purposes only). One was marked Attorneys' Eyes Only ("AEO") such that it cannot be shared with Ubiquiti's in-house representatives. That same day, Ubiquiti's counsel notified Defendants that the AEO document failed to disclose any contextual information (e.g., definitions of the column headings) necessary to analyze it and suggested that Defendants provide additional information. Defendants have not done so.

### 2.      Ubiquiti Source Code Production and Supplemental Production of Data Stored on M-Series Devices

Ubiquiti complied with its obligations to produce source code. Additionally, Ubiquiti produced data stored on the M-Series devices (e.g., in partitions of memory).

Specifically, as detailed in its prior status report submissions, Ubiquiti produced the source code for each version of the 18 modules for inspection, as well as several registered versions of the entire code base for the airOS firmware. The source code for each version of the 18 modules is set out in a separate folder.[1]

---

[1] As noted above, Ubiquiti is finalizing the engagement of a Las Vegas law firm to host any continued review of Ubiquiti's source code. This change was made both to relieve the Simpson Thacher firm of the burden associated with hosting source code review during the COVID-19 pandemic and in response to Defendants' multiple specific requests to have the source code review transferred to Las Vegas. On August 17, 2020, Defendants characterized Ubiquiti's plan to ship its source code review computer to Las Vegas as "previously unannounced" and requested to continue the inspection in Palo Alto "until the tasks and analysis currently being performed by Mr. Hashmi can be completed and we have time to coordinate the transition of review tasks to Mr. Zeidman in Las Vegas." Defendants' claimed surprise at the change in source code review location does not square with its previous requests that Ubiquiti identify a venue in Las Vegas to host the source code review and for updates of Ubiquiti's progress on that front. *See, e.g.,* Dkt. 173 p. 6 ("Defendants identified Las Vegas, Nevada as their preferred location for inspection of Ubiquiti's source code under the Protective Order in this case (Dkt. 154), but Ubiquiti

Ubiquiti has further responded to Defendants' requests for the production of additional data used on Ubiquiti devices, notwithstanding Defendants' failure to comply with its own discovery obligations on this topic. As detailed in prior status report submissions, Defendants are best situated to explain what data (configuration and calibration data) they accessed, used, modified, and/or copied ("Used") in connection with developing, distributing, and running Elevate—including by reverse-engineering Ubiquiti M-Series devices that stored such information in memory partitions (which Ubiquiti specifically identified). Defendants do not deny that they purchased and reverse-engineered such devices. Thus, that information is responsive to written discovery Ubiquiti served in February. Defendants continue to outright refuse to produce any such information or provide written discovery responses addressing it.[2] Nevertheless, Ubiquiti has produced supplemental data to address Defendants' meet-and-confer requests with respect to these topics.

a)      **Calibration Data**

Notwithstanding it being Defendants' obligation to produce calibration data they Used and have in their possession, Ubiquiti made a substantial production of such data, including producing the calibration data sets for over 400 M-Series devices. Along with that data, Ubiquiti produced a spreadsheet identifying the sample of devices from which the calibration data were collected, the

---

has so-far failed to accommodate any inspection there and has not provided Defendants with any update as to its investigation into a conforming review location since mid-June."); Dkt. 179 p. 2 (joint report regarding progress on identifying a Las Vegas location).

[2] As of July 27, Defendants offered to "make available for inspection all M-Series devices in their possession, custody, and control and agree to supplement their written interrogatory responses to the interrogatories identified in your letter—Common interrogatories 2 and 3—to describe the relatively trivial development activity attributable to Elevate." Defendants have not explained how such inspection would be possible under the circumstances of the pandemic. And Defendants have not supplemented their interrogatory responses to date.

device name, device id, subsystem id, cpu label, cpu id, part number, creation date, and MAC address.

### b) Configuration Data

Notwithstanding it being Defendants' obligation to produce configuration data they Used and have in their possession, Ubiquiti previously advised Defendants of how to locate specific files (e.g., .CFG files) in Ubiquiti source code from where the default configuration data written to each device is copied. Dkt. 179-1, p. 3.

### c) Previously Disclosed Information regarding Calibration and Configuration Data

The above information was provided following, and in addition to, Ubiquiti's previous identification of the two small (non-voluminous) portions of memory that store the above data on the M-Series devices at issue.

### 3. Asymmetric Source Code Production

Ubiquiti produced the applicable source code in organized fashion, along with the information it uses in the ordinary course of business to track authorship, revision history, users, etc.

After initial inspection of Defendants' code, however, it appears Defendants failed to do the same. Defendants' production contains a few sets of release notes, but no SVN logs or change logs from SVN. As a general matter, release notes provide a high-level description of the changes a company wishes to provide to its customers. The SVN data, by contrast, would show each change, who made it and when, and possibly developer comments/tags related to the update in code.

Ubiquiti will meet-and-confer with Defendants regarding the asymmetric production of source code.

### 4. Defendants' Inconsistent Approach Regarding Proprietary Data

As set forth in the previous, July 22 status report, Defendants have taken inconsistent positions as to Ubiquiti's production of source code and the configuration and calibration data at issue in this case. Dkt. 179, p. 3-4. Defendants have made no attempt to resolve such inconsistencies in its demands.

### B. Defendants' Statement

### 1. Ubiquiti's Production of its Source Code and the 18 Files

Ubiquiti still refuses to produce or identify "Ubiquiti's proprietary compilations of data contained in its calibration and configuration files of the Firmware," which Ubiquiti alleges to be one of the 18 Files identified in Ubiquiti's First Amended Complaint ("FAC"). Dkt. 65, ¶39. However, Defendants will likely be in a position to advance their analysis of the allegations surrounding these materials, contingent upon Ubiquiti providing direct responses to several straightforward questions which Defendants submit once again to Ubiquiti in this status report below. Defendants have not been able to further investigate whether Ubiquiti's claims to production of "three full versions of AirOS source code" (including all OpenWRT code used therein) are accurate since the review computer was not available last week and will not be available this week.[3]

Ubiquiti served an unannounced supplemental production on August 7, 2020, containing mostly unreadable data that appears to correspond to a particular memory partition[4] that Ubiquiti previously indicated is ***associated with the allegedly proprietary calibration data*** (the "calibration

---

[3] Having come to realize that Ubiquiti was not going to supplement its source code production to include the asserted configuration and calibration information, Defendants decided to move forward with its analysis and inspection of those materials that Ubiquiti did produce.

[4] Ubiquiti contends that the actual name of this memory partition is highly confidential source code, so it is referred to herein as the "calibration data partition".

data partition").[5] However, Ubiquiti refuses to respond to Defendants' repeated requests—which they issued by email immediately after receiving Ubiquiti's production on August 10, 2020—*to identify that information as the asserted calibration data at issue* as the Court ordered. Specifically, Ubiquiti's production contained a large .csv file that contains what appears to be hexadecimal data from the calibration data partition for about 530 of Ubiquiti's devices. Ubiquiti also produced about 450 unreadable ".bin" files. Defendants are not able to deduce any information from the .bin files other than that the file name for those files appears to contain a MAC identifier corresponding to an individual device—presumably an M-Series device. Ubiquiti has refused to provide any additional information regarding the data produced *nor have they identified that data as corresponding to any asserted calibration information*.

Defendants can only guess that this data is the information that Ubiquiti refers to as "calibration information" in the First Amended Complaint. If it is, it appears to be from about 530 sampled Ubiquiti devices that are in *Ubiquiti's* possession. By its very nature, any calibration information from those devices is not the information that would be at issue in this case. Rather, Defendants assume that Ubiquiti is providing this information as representative information that contains "calibration information" but not the actual "calibration information" at issue in this case as identified in the First Amended Complaint. Ubiquiti should be required to confirm its position that it does not know what the "calibration information" that it has asserted in this case is other than to say it is the same type of information provided in the recent production. Defendants would then be able to address this allegation.

---

[5] Ubiquiti's supplemental production also contained numerous versions of its GPL Archives and SDK's for AirOS. Defendants subsequently identified additional versions of those materials that should be produced, and Ubiquiti has agreed to produce those additional materials.

As to the unidentified and allegedly proprietary configuration information, ***Ubiquiti's production does not appear to contain any disclosure of such data*** (other than default configuration files that Ubiquiti previously identified as confidential source code, but were produced with Ubiquiti's publicly released AirOS Software Development Kits ("SDKs"), which were published for years without any proprietary restrictions).[6] For example, the AirOS 5.3 SDK, released at least on February 3, 2011, states that the default configuration parameters and values are:

```
users.status=enabled
users.1.status=enabled
users.1.name=ubnt
users.1.password=VvpvCwhccFv6Q
httpd.status=enabled
radio.status=enabled
radio.countrycode=840
radio.1.status=enabled
radio.1.devname=ath0
radio.1.mode=Managed
radio.1.ieee_mode=auto
radio.1.low_txpower_mode=disabled
radio.1.txpower=28
radio.1.ack.auto=enabled
radio.1.ackdistance=600
radio.1.acktimeout=31
radio.1.cwm.enable=0
radio.1.cwm.mode=1
radio.1.clksel=1
radio.1.polling=enabled
radio.1.pollingnoack=0
radio.1.pollingpri=
radio.1.dfs.status=enabled
wireless.status=enabled
wireless.1.status=enabled
wireless.1.devname=ath0
```

---

[6] Although Defendants understand that issues beyond the production of the 18 Files are not the subject matter of this status report, Ubiquiti has still failed to meet numerous discovery obligations, including production of the Software Development Kits that apparently contain most, if not all, of the information asserted in this case and that have been repeatedly released to the public. Likewise, Ubiquiti has not answered discovery identifying which portions of any of the 18 Files were written by authors other than Ubiquiti.

```
wireless.1.security=none
wireless.1.ssid=ubnt
wireless.1.hide_ssid=disabled
wireless.1.addmtikie=enabled
bridge.status=enabled
bridge.1.devname=br0
bridge.1.fd=1
bridge.1.port.1.devname=eth0
bridge.1.port.2.devname=ath0
bridge.1.port.3.devname=eth1
netconf.status=enabled
netconf.1.status=enabled
netconf.1.devname=eth0
netconf.1.ip=0.0.0.0
netconf.1.netmask=255.255.255.0
netconf.1.up=enabled
netconf.1.promisc=enabled
netconf.2.status=enabled
netconf.2.devname=ath0
netconf.2.ip=0.0.0.0
netconf.2.netmask=255.255.255.0
netconf.2.up=enabled
netconf.2.promisc=enabled
netconf.2.allmulti=enabled
netconf.3.status=enabled
netconf.3.devname=br0
netconf.3.ip=192.168.1.20
netconf.3.netmask=255.255.255.0
netconf.3.up=enabled
dhcpd.status=disabled
dhcpd.1.status=disabled
dhcpc.status=disabled
dhcpc.1.status=enabled
dhcpc.1.devname=br0
route.status=enabled
route.1.status=enabled
route.1.devname=br0
route.1.gateway=192.168.1.1
route.1.ip=0.0.0.0
route.1.netmask=0
ebtables.status=enabled
ebtables.1.status=enabled
ebtables.1.cmd=-t nat -A PREROUTING --in-interface ath0 -j arpnat --arpnat-
target ACCEPT
ebtables.2.status=enabled
```

```
ebtables.2.cmd=-t nat -A POSTROUTING --out-interface ath0 -j arpnat --arpnat-
target ACCEPT
ebtables.3.status=enabled
ebtables.3.cmd=-t broute -A BROUTING --protocol 0x888e --in-interface ath0 -j
DROP
sshd.port=22
sshd.status=enabled
```

Again, while Defendants have repeatedly sought clarification that this "configuration information" is the default configuration information previously released to the public by Ubiquiti in its SDK, Ubiquiti has refused to provide that confirmation. To the extent that Ubiquiti is making a claim to "configuration information" that goes beyond the default configuration and extends to information created by the end user, Ubiquiti must make that claim clear and Defendants would then be able to address this information.

Thus, while Defendants are now technically in possession of certain (mostly unreadable) data produced by Ubiquiti, they are simply not able to determine whether that data corresponds to the asserted compilations of data without clear identification from Ubiquiti. Moreover, it is not clear what impact Ubiquiti's unannounced production has on its previous position—*i.e.*, that Defendants must identify Ubiquiti's asserted proprietary data by inspecting the portions of Ubiquiti's source code that read from and write to the identified configuration and calibration partitions. *See* Dkt. 179, Joint Status Report (July 22, 2020) at 3-7 (containing Ubiquiti's purported justification for demanding Defendants' production of Ubiquiti's data). And the parties have not advanced their discussion of Ubiquiti's demand for Defendants to produce Ubiquiti's allegedly proprietary data beyond the positions outlined in the prior status report, Defendants' assessment and request for clarification of Ubiquiti's supplemental production, and Ubiquiti's continued refusal to specifically identify its asserted data.

### 2.     Ubiquiti's Objection to Allegedly "One-Sided" Discovery

Despite Ubiquiti's baseless allegation in the previous status report unilaterally claiming that "Defendants have failed to make progress on production [of Cambium's source code]" (Dkt. 179 at 7) Defendants had actually made significant progress on accommodating Ubiquiti's review as quickly as possible under the laws of DC and neighboring states.  Ubiquiti's allegation was not only irrelevant to the subject of the status report (which the Court requested to stay abreast of deficiencies in Ubiquiti's production of the 18 Files), it was entirely unsupported. In fact, the DC office of Defendants' counsel was in condition to host the review as early as July 31st—just over a week after Ubiquiti's unsupported allegations as to allegedly obstructive behavior of Defendants' in this regard.  Ubiquiti conducted and, at least tentatively, completed its inspection of Cambium's source code August 12-14.

Dated: August 17, 2020

FOX, SWIBEL, LEVIN & CARROLL, LLP

*/s/ Steven J. Reynolds*
David Koropp (ARDC #6201442)
dkoropp@foxswibel.com
Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Steven J. Reynolds (ARDC #6293634)
sreynolds@foxswibel.com
Steven L. Vanderporten (ARDC # 6314184)
svanderporten@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

*Attorneys for Plaintiff Ubiquiti Inc., f/k/a*
*Ubiquiti Networks, Inc.*

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ G. Hopkins Guy, III*
G. Hopkins Guy, III (CA Bar No. 124811)
Jon V. Swenson (CA Bar No. 233054)
Karina Smith (CA Bar No. 286680)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
650.739.7500 (Telephone)
650.739.7699 (Facsimile)
hop.guy@bakerbotts.com
jon.swenson@bakerbotts.com
karina.smith@bakerbotts.com

*Local Counsel:*

James P. Fieweger (Bar ID No. 6206915)
Michael Best & Friedrich, LLP
444 W. Lake Street. Suite 3200
Chicago, IL 60606
312.222.0800 (Telephone)
jpfieweger@michaelbest.com

Arthur Gollwitzer, III (Bar ID No. 6225038)
Michael Best & Friedrich, LLP
2801 Via Fortuna, Suite 300
Austin, Texas 78746
512.640.3160 (Telephone)
agollwitzer@michaelbest.com

*Attorneys for Defendants Cambium Networks,*
*Inc. et. al*